# United States District Court
# Eastern District of New York

14-CV-5456
(Mauskopf, D.J.)

ABU KHAN,

*Petitioner*,

against

WILLIAM J. CONNELLY,

*Respondent*.

## AFFIDAVIT AND MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

RICHARD A. BROWN
District Attorney
Queens County
*Attorney for Respondent*
125-01 Queens Boulevard
Kew Gardens, New York  11415
(718) 286-5882

JOHN M. CASTELLANO
JILL A. GROSS-MARKS
   Assistant District Attorneys
      *Of Counsel*

MAY 8, 2015

## **TABLE OF CONTENTS**

**Page No.**

AFFIDAVIT IN OPPOSITION TO PETITION FOR A
WRIT OF HABEAS CORPUS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    Factual and Legal Background. . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    The Direct Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    The Post-Conviction Motions. . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    The Current Petition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

MEMORANDUM OF LAW IN OPPOSITION TO PETITION
FOR A WRIT OF HABEAS CORPUS. . . . . . . . . . . . . . . . . . . . . . . 14

    POINT ONE

        PETITIONER'S CHALLENGE TO THE
        CONDUCT OF THE PROSECUTOR IS
        PROCEDURALLY BARRED FROM THIS
        COURT'S REVIEW BY AN ADEQUATE AND
        INDEPENDENT STATE PROCEDURAL
        GROUND. IN ANY EVENT, THE
        PROSECUTOR'S CONDUCT WAS PROPER AND
        DID NOT DEPRIVE PETITIONER OF A FAIR
        TRIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    POINT TWO

        PETITIONER'S INEFFECTIVE-ASSISTANCE-
        O F - T R I A L - C O U N S E L C L A I M I S
        PROCEDURALLY BARRED FROM REVIEW BY
        AN ADEQUATE AND INDEPENDENT STATE
        PROCEDURAL GROUND. IN ANY EVENT,
        PETITIONER'S CLAIM IS MERITLESS. . . . . . . . . . . . . . . 30

POINT THREE

PETITIONER CANNOT SHOW THAT THE
STATE COURT'S REJECTION OF HIS
INEFFECTIVE APPELLATE COUNSEL CLAIM
IS CONTRARY TO, OR AN UNREASONABLE
APPLICATION OF, CLEARLY ESTABLISHED
SUPREME COURT PRECEDENT. . . . . . . . . . . . . . . . . . . . . 46

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ABU KHAN,                                        :
                                                 :     **AFFIDAVIT IN**
                        Petitioner,              :     **OPPOSITION TO**
                                                 :     **PETITION FOR A**
       - against -                               :     **WRIT OF HABEAS**
                                                 :     **CORPUS**
WILLIAM J. CONNELLY,                             :
                                                 :     CV-14-5456 (RRM)
                        Respondent.              :
-------------------------------------------------------x

STATE OF NEW YORK)
                           ) ss.:
COUNTY OF QUEENS )

        JILL A. GROSS MARKS, an attorney admitted to practice in this

Court, being duly sworn, deposes and states as follows:

        1.     I am an Assistant District Attorney, of counsel to Richard

A. Brown, the District Attorney of Queens County.  I am submitting this

affidavit and the accompanying memorandum of law in opposition to the *pro

se* petition of Abu Khan that was filed in the United States District Court on

September 24, 2014.  I make the statements in this affidavit on information and

belief, based on my review of the records and files of the Queens County

District Attorney's Office.

2.     By agreement with the Attorney General of the State of New York, the District Attorney of Queens County represents respondent in this matter.

3.     In addition to its answer, the state is also submitting, in digital and paper format, the following documents: a) transcripts of petitioner's trial; (b) petitioner's brief in the Appellate Division, Second Department, and the state's responsive brief; c) petitioner's application to the New York Court of Appeals for leave to appeal and the state's letter in response; (d) petitioner's first and second motions pursuant to section 440.10 of the New York Criminal Procedure Law, the state's responses, and the court's decisions; (e) petitioner's applications for leave to appeal from the denials of his Article 440 motions, the state's responses, and the court's decisions; (f) petitioner's application to the Appellate Division for a writ of error *coram nobis*, the responses of counsel and the state, and the court's decision; and (g) petitioner's applications for leave to appeal from denials of his writ, the state's response, and the court's decision.

## **Factual and Legal Background**

4.     On numerous occasions in 1997 to 2000, petitioner  had sexual contact with his five to eight year old step-daughter AM at their home

-2-

in Queens County.  Between 2001 and 2004 the family was living in Florida. On November 30, 2004, petitioner raped twelve-year old AM during a visit to her grandmother's home in Queens County.  AM stayed with her grandmother for remainder of the school year, returning home to Florida in August 2005, by which point petitioner was estranged from AM's mother.  The following Easter Sunday, April 16, 2006, AM disclosed the rape to her mother.[1]

5. Petitioner was charged with Rape in the First Degree (N.Y. Penal Law § 130.35[4]),  Course of Sexual Conduct Against a Child in the Second Degree (N.Y. Penal Law §130.80), Endangering the Welfare of a Child (N.Y. Penal Law § 260.10[1]), and Sexual Abuse in the Second Degree (N.Y. Penal Law § 130.60[2])(Queens County Indictment Number 2147/06).

6. Thereafter, petitioner proceeded to trial before the Honorable Ronald D. Hollie, a Justice of the Supreme Court, Queens County, and a jury.  At the conclusion of the trial, petitioner was found guilty of all counts and sentenced to concurrent determinate prison terms of fourteen years for rape, ten years for sexual conduct, five years for endangering, and one year

---

[1]The description of the trial evidence set forth in the state's brief to the Appellate Division is incorporated here by reference.

-3-

for sexual abuse, plus a period of post-release supervision.   Petitioner is currently incarcerated pursuant to this judgment of conviction.

## The Direct Appeal

7.     On or about March 7, 2011, petitioner, represented by counsel, filed a direct appeal in the Appellate Division, Second Department, claiming that he was denied a fair trial when the trial court received evidence of petitioner's uncharged Florida crimes against the same victim and photographic portraits of the child victim when she was five to seven years of age.

8.     On May 23, 2011, the State filed a brief in response, arguing that  the evidence of uncharged crimes when the family lived in Florida was relevant and properly admitted to explain the father/daughter relationship between petitioner and the victim, to complete the temporal gap in the narrative of the charged crimes, and to rebut the defense claim that the victim's delayed disclosure was a fabrication.  And the school photographs of the child were relevant to establish the victim's age and state of mind when the abuse started, which was ten years before the trial.  The trial court exercised sound discretion in concluding the evidence was far more probative than prejudicial.

9.     In a decision and order dated October 25, 2011, the Appellate Division, Second Department, affirmed petitioner's conviction, holding that the trial court "providently exercised its discretion in permitting the prosecution to elicit evidence that the [petitioner], charged with sexually touching the younger-than-11-year-old victim from 1997 to 2000 while the family lived in Queens, and with one rape of the victim in Queens in November 2004, raped the victim on frequent occasions between 2001 and 2004 while the family lived in Florida. The evidence was properly admitted to demonstrate the [petitioner's] pattern of escalating sexual conduct toward the victim during the period between the charged crimes, and as relevant background information to enable the jury to understand the [petitioner's] relationship with the victim and to place the events in question in a believable context, particularly since the [petitioner] raised the issue of the victim's delayed disclosure of the charged criminal conduct."  *People v. Khan*, 88 A.D.3d 1014, 1014-1015 (2d Dept. 2011).  Moreover, the Appellate Division held, "the probative value and the need for the evidence outweighed any potential prejudice to the [petitioner], particularly in light of the Supreme Court's limiting instruction to the jury as to the proper use of the uncharged crimes evidence."  *Id*.  In addition, the court held, "the Supreme Court providently exercised its discretion in admitting into

evidence two photographs depicting the victim at ages five and seven to illustrate the victim's age when the sexual contact allegedly began and to corroborate testimony regarding the change in the victim's physical appearance." *Id.*

10.     In a letter dated November 9, 2011, petitioner, through counsel, filed an application in the New York Court of Appeals seeking permission to appeal the Appellate Division's decision.  Petitioner asked the court to consider all of the claims that he had raised in the Appellate Division. In a letter dated January 6, 2012, the state opposed petitioner's application, and in a certificate dated January 19, 2012, the Court denied the application. *People v. Khan*, 18 N.Y.3d 884 (2012) (Smith, J.).

### The Post-Conviction Motions

11.     In papers dated November 28, 2011, petitioner *pro se* moved before the Supreme Court, Queens County to vacate his judgment of conviction, pursuant to section 440.10 of the New York Criminal Procedure Law, raising three claims.   First, petitioner claimed that prosecutorial misconduct occurred because the prosecutor (A) lacked physical evidence to support the claims, noting the state's expert found no physical evidence or visible physical injuries to corroborate alleged accusations, and relying on the

medical testimony at trial, (B) alleged that petitioner was dishonorably discharged from the army, did not provide financial support to the mother of his children, and referred to the "arabic" origin of petitioner's name, and c) allegedly harbored bad feelings for petitioner.  Second, petitioner claimed he had newly discovered evidence to counter the assertions made by the prosecutor, relying on a certificate stating petitioner was honorably discharged, tracers for payments to the mother of his children, and a photograph allegedly of the trial assistant.  Third, petitioner claimed he received the ineffective assistance of trial counsel, who failed to understand the law, to investigate or object to important issues, to communicate with petitioner or prepare him to testify, and to produce an expert medical witness.

12.   In an affirmation filed April 11, 2012 in opposition to petitioner's motion, the state argued that petitioner's motion to vacate judgment was procedurally barred pursuant to C.P.L. § 440.10(2)(c) because petitioner's claims were readily apparent from the record and thus could have been raised on direct appeal, but petitioner failed to raise them on appeal.  The state further argued that petitioner's motion to vacate judgment was meritless pursuant to C.P.L. § 440.30(4)(d) because the allegations of fact essential to support the motion were made solely by petitioner, unsupported by any other

affidavit or evidence, and there was no reasonable possibility that they were true.

13. In a decision and order dated July 12, 2012, Supreme Court denied the motion. The court held that petitioner had not "set forth sufficient newly discovered evidence of such a nature that if said evidence had been received at trial, the verdict would have been more favorable to the [petitioner]" (Decision and Order at 2) and that petitioner's other claims were barred from review in a collateral motion to vacate because they were record-based and could have been raised on appeal or were raised on appeal and denied (*Id.*).

14. Petitioner, *pro se,* sought leave to appeal from that order, the state opposed that application, and in an order dated October 19, 2012, the application was denied by a Justice of the Supreme Court, Appellate Division, Second Department.

15. On or about November 13, 2012, petitioner *pro se* filed a motion in the Appellate Division, Second Department, seeking a writ of error *coram nobis* and claiming he was denied the effective assistance of appellate counsel who failed to communicate with petitioner prior to submitting the brief on direct appeal, and failed to investigate the medical evidence of rape or to

consult defense experts to rebut the People's expert medical and psychological evidence regarding the significance of a lack of physical evidence in a rape case and the workings of the Child Sexual Abuse Accommodation Syndrome.

16.     On December 13, 2012, the State received an affirmation from petitioner's appellate attorney responding to petitioner's *coram nobis* application. Counsel disputed petitioner's allegations about appellate counsel and stated that petitioner's suggested claim of ineffective assistance of counsel – based on a failure to call a defense expert to support petitioner's defense – could not have been raised on appeal as it would have required information outside the record.

17.     On February 8, 2013, the State filed their papers opposing petitioner's application for a writ of *coram nobis* on the grounds that appellate counsel provided petitioner with effective assistance by raising meaningful and well-researched issues in his brief, appellate counsel need not have raised every non-frivolous issue urged by petitioner, and counsel reasonably decided not to raise any of petitioner's claims in his brief on direct appeal.

18.     In an order dated April 17, 2013, the Appellate Division, Second Department ruled that petitioner "has failed to establish that he was denied the effective assistance of appellate counsel" and denied the writ.

19.    Petitioner filed a *pro se* application in the Court of Appeals, seeking leave to appeal from that denial, the State opposed that application, and on June 27, 2013, the Court issued its certificate denying petitioner leave to appeal (Graffeo, J).

20.    While the *coram nobis* was pending in the Appellate Division, on or about December 4, 2012, petitioner *pro se* filed a second motion in the Supreme Court, Queens County, seeking to vacate his judgment under Section 440.10 of the Criminal Procedure Law and claiming he received the ineffective assistance of trial counsel on the ground that counsel failed to consult or call defense experts to challenge the People's two expert witnesses – the medical expert who testified that the lack of evidence of penetration or injury to the genitalia did not negate the allegations of rape and sexual abuse, and the psychological expert who testified about the Child Sexual Abuse Accommodation Syndrome.

21.    On February 21, 2013, the State filed its affirmation and memorandum of law opposing petitioner's motion for post-conviction relief under Section 440.10 of the Criminal Procedure Law on the grounds that petitioner's claim of ineffective assistance of counsel was meritless and failed

to allege "any ground constituting a legal basis for the motion," citing C.P.L. § 440.30(a).

22.     In an order dated March 6, 2013, the Supreme Court denied petitioner's motion as procedurally barred and meritless. The court held that petitioner had not "set forth sufficient newly discovered evidence of such a nature that if said evidence had been received at trial, the verdict would have been more favorable to the [petitioner]" (Decision and Order at 2) and that petitioner's other claims were barred from review in a collateral motion to vacate because they were record-based and could have been raised on appeal or were raised on appeal and denied  (*Id*.).

23.     Petitioner *pro se* filed an application in the Appellate Division, Second Department, seeking leave to appeal from that denial, the state opposed petitioner's application, and on June 11, 2013, the Appellate Division, Second Department, denied the leave application.

## **The Current Petition**

24.     In papers dated September 9, 2014, petitioner moved *pro se* in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising three claims of error.   First, petitioner claims that prosecutorial misconduct occurred when the prosecutor allowed perjured testimony at trial,

-11-

apparently by allowing the mother of his children to testify she received no child support, mentioned that petitioner's name was arabic and that he was dishonorably discharged from the army after a fight, and proceeded on the theory that the crime occurred at 11:00 p.m. on November 30, 2004 as stated in the criminal complaint, when the bill of particulars said it occurred at 1:00 p.m. Second, petitioner claims he was denied the effective assistance of appellate counsel, who failed to claim that petitioner was denied the effective assistance of trial counsel for not challenging the medical evidence regarding penetration, and for not consulting a medical expert for that purpose. Third, petitioner claims he was denied the effective assistance of counsel, who failed to utilize medical experts to challenge the "medical evidence and testimony" from the State's expert which showed "no physical or visible evidence to support corroboration of sexual assault."

25.    The petition should be denied. Petitioner's claims of prosecutorial misconduct (Point I) and ineffective assistance of trial counsel (Point III) are procedurally barred from review by an adequate and independent state procedural ground that petitioner cannot overcome and the claims are meritless. And petitioner cannot show, as he must to prevail on his claim of ineffective assistance of appellate counsel (Point II), that the state court's

rejection of his claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

WHEREFORE, and for the reasons stated in the attached memorandum of law, the Court should summarily deny the petition for a writ of habeas corpus.

_____
Jill A. Gross Marks
Assistant District Attorney
(718) 286-5882

Sworn to before me this
___ day of May, 2015.

_____
Notary Public

To:   Abu Khan
      07A4685
      Fishkill Correctional Facility
      P.O. Box 1245
      Beacon, New York 12508

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ABU KHAN,                                    :
                                             :     **MEMORANDUM OF**
                    Petitioner,              :     **LAW IN OPPOSITION**
                                             :     **TO PETITION FOR A**
        - against -                          :     **WRIT OF HABEAS**
                                             :     **CORPUS**
WILLIAM J. CONNOLLY,                         :
                                             :
                                             :     CV-14-5456 (RRM)
                                             :
                    Respondent.              :
------------------------------------------------------x

This Memorandum of Law, together with the accompanying Affidavit, is submitted in opposition to petitioner's application for a writ of habeas corpus.

## POINT ONE

**PETITIONER'S CHALLENGE TO THE CONDUCT OF THE PROSECUTOR IS PROCEDURALLY BARRED FROM THIS COURT'S REVIEW BY AN ADEQUATE AND INDEPENDENT STATE PROCEDURAL GROUND. IN ANY EVENT, THE PROSECUTOR'S CONDUCT WAS PROPER AND DID NOT DEPRIVE PETITIONER OF A FAIR TRIAL (Responding to Ground I of the Petition).**

In his first post-conviction motion in the Supreme Court, petitioner challenged the conduct of the prosecutor, claiming certain questions and comments were improper and deprived him of a fair trial. The Supreme Court held that petitioner's claims were barred from review and the Appellate Division denied petitioner's application to appeal from that decision. Because the state courts explicitly enforced a state procedural rule against petitioner with respect to this claim, this Court is procedurally barred from reaching the merits of the claim. In any event, the claim is without merit as the prosecutor's conduct was entirely proper.

Petitioner's claims are procedurally barred from review in this Court by an adequate and independent state procedural ground because petitioner failed to comply with New York's procedural rules. If a claim has

been procedurally defaulted in state court, a federal court may address its merits only if the petitioner can show both cause for the procedural default and that he will be prejudiced by non-review of the claim or, alternatively, that a fundamental miscarriage of justice will occur if the court does not review the claim. *See Murray v. Carrier*, 477 U.S. 478, 485, 492 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994). Constitutionally ineffective assistance of counsel can constitute cause, but only if an independent Sixth Amendment claim has been previously submitted to the state courts. *See Edwards v. Carpenter*, 529 U.S. 446 (2000); *Murray v. Carrier*, 477 U.S. at 488. The alleged ineffective-assistance-of-counsel claim must be exhausted like any other federal constitutional claim, even if the claim is being raised only to establish "cause" to excuse a procedural default regarding an unrelated constitutional claim. *Id*.; *Murray v. Carrier*, 477 U.S. at 488-491.

In addition to showing cause to excuse a state procedural default, a petitioner must also establish that he will be prejudiced if the Court does not review his defaulted claim. Prejudice may be established by showing that, but for the default, there is a reasonable probability that the outcome of the relevant proceeding would have been different. *See Strickler v. Greene*, 527

U.S. 263 (1999).  And a petitioner cannot establish prejudice when the alleged constitutional claim is without merit.  *Capiello v. Hoke*, 698 F. Supp. 1042 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988).

Petitioner claims that the prosecutor committed misconduct by allowing the mother of his children to testify she received no child support, by mentioning during opening statement that petitioner's name was arabic, by asking petitioner during cross-examination whether he was dishonorably discharged from the army, and by alleging the crime occurred at 11:00 p.m. as charged in the criminal complaint and grand jury instead of at 1:00 p.m. as stated in the bill of particulars.

Here, when petitioner raised all but one of these claims (the time of the crime) in his November 11, 2011 motion to vacate judgment pursuant to New York Criminal Procedure Law § 440.10, the court rejected the claims as procedurally barred under section 440.10 (2)(c) of the Criminal Procedure Law on the ground that  they appeared on the record and could have been raised on direct appeal.

The court's decision constituted a plain statement that it was relying on petitioner's failure to comply with a state procedural rule.   This adequate and independent procedural bar now precludes review of petitioner's

claims in this Court.  *See Sweet v. Bennett*, 353 F.3d 135 (2d Cir. 2003);

*Aparicio v. Artuz*, 269 F.3d 78, 92-93 (2d Cir. 2001); *Reyes v. Keane*, 118 F.3d

136, 139-40 (2d Cir.1997);  *Harvey v. Portuondo*, 2002 U.S. Dist. LEXIS

16322 (E.D.N.Y. 2002).

   Moreover, the Appellate Division's subsequent decision

summarily rejecting petitioner's application for leave to appeal the lower

court's decision does not mean that the appellate court considered the merits

of petitioner's claims.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991);

*Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993).  Because the lower court

rejected petitioner's prosecutorial misconduct claim on a procedural ground,

there is no reason to doubt that the Appellate Division, like the lower court

before it, relied on the procedural bar to reject petitioner's application.

   Where, as here, petitioner's claims are barred by an adequate and

independent state ground, federal *habeas* review of the claim is barred unless

petitioner can demonstrate both cause for his non-compliance with New York's

procedural rule and actual prejudice resulting from it, or that the failure to

consider the claims will result in a fundamental miscarriage of justice.  *See*

*Colemen v. Thompson*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. at 298-99;

*Reed v. Ross*, 468 U.S. 1, 11 (1984); *Engle v. Isaacs*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. at 87.

In this case, petitioner has established neither cause for his procedural default nor that he would be prejudiced should the Court not review his claims.  Indeed, although petitioner apparently relies on a claim of ineffective assistance of appellate counsel to establish cause for his procedural default, when petitioner raised that claim in state court, it was denied as meritless.  *See Edwards v. Carpenter*, 529 U.S. at 452.  And, as shown in Point Three, *infra*, because petitioner cannot show that the state court's adjudication of the ineffective assistance claim was contrary to, or an unreasonable application of, clearly established Supreme Court law, he cannot establish cause for the default.

Because petitioner cannot demonstrate cause for the procedural default, this Court need not even address whether petitioner would be prejudiced by non-review of the claim of prosecutorial misconduct, since both parts of the "cause and prejudice test" must be met for petitioner to overcome the default.  *See Murray v. Carrier*, 477 U.S. at 498 (federal courts should adhere to the "cause and prejudice test" in the conjunctive); *Francis v. Henderson*, 425 U.S. 536, 542 (1976) (requiring not only a showing of cause

for the procedural default, but also a showing of actual prejudice).   In any event, petitioner could never show that he would be prejudiced should the Court not review his claim as it is meritless.

Generally, issues concerning the propriety of comments made by a prosecutor at trial or during summation do not present federal constitutional questions.  *See e.g., Gonzales v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 [1974]); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Garofolo v. Coomb*, 804 F.2d 201, 206 (2d Cir. 1986).  A prosecutor's remarks, even if improper and beyond the bounds of fair advocacy, would not warrant the granting of a writ of *habeas corpus* unless the remarks caused the petitioner substantial prejudice.  *See, e.g., Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir.), *cert. denied*, 501 U.S. 1221 (1990); *see also United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990); *United States v. Nersesian*, 824 F.2d 1294, 1327 (2d Cir.), *cert. denied*, 484 U.S. 957 (1987); *Udzinski v. Kelly*, 734 F. Supp. 76, 85 (E.D.N.Y. 1990).

For a petitioner to establish a claim of constitutional error on the ground of prosecutorial misconduct, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned."  *Darden v.*

*Wainwright*, 477 U.S. at 181. "The relevant question, the Supreme Court has held, is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. at 637). And even though a federal appellate court might be inclined to exercise supervisory powers to correct an error, this fact alone does not establish the existence of a due process violation. Indeed, the Second Circuit has held that it is a "rare case" in which even improper summation comments will be deemed so prejudicial as to support issuance of a writ of *habeas corpus*. *See Floyd v. Meachum*, 907 F.2d 347, 348 (2d Cir. 1990).

The Supreme Court has included many considerations in evaluating allegedly improper comments made by a prosecutor. In evaluating the propriety of these remarks, the Court has looked to whether the comments manipulated or misstated evidence, and to whether they implicated other specific rights of the accused, such as the right to counsel or the right to remain silent. *Darden v. Wainwright*, 477 U.S. at 182. In evaluating the effect of these comments, the Court has looked to whether the objectionable comment was invited by the defense, whether the court issued appropriate instructions to the jury, how heavily the evidence weighed against petitioner, and the

opportunity of the defense to address or counter the prosecutor's allegedly improper comments. *Id*. at 182-83; *see United States v. Young*, 470 U.S. at 13; *Donnelly v. DeChristoforo*, 416 U.S. at 645. And, the People's comments or questions "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Young*, 470 U.S. at 13.

In assessing whether a prosecutor's improper comments have substantially prejudiced a petitioner, the court should consider the severity of the prosecutor's alleged misconduct, any curative measures that the trial court may have taken to ameliorate the error and prevent resulting prejudice, and whether the petitioner's conviction was certain absent the prejudicial conduct. *See United States v. Elias*, 285 F.3d 183 (2d Cir. 2002); *Floyd v. Meachum*, 907 F.2d 347, 348 (2d Cir. 1990); *Gonzales v. Sullivan*, 934 F.2d at 424; *Udzinski v. Kelly*, 734 F. Supp. at 85. The Second Circuit has reiterated Supreme Court precedent that "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding," quoting *United States v. Young*, 470 U.S. 1, 11-12 (1985), and held that "[r]eversal is an ill suited remedy for prosecutorial misconduct . . . ." *United States v. Modica*, 663 F.2d

1173, 1184 (2d Cir. 1981); *accord United States v. Elias*, 285 F.3d at 190.  The

Second Circuit has also held that "the severity of the misconduct is mitigated

if the misconduct is an aberration in an otherwise fair proceeding."  *Id*.; *see*

*United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995).

       Here, the challenged conduct did not constitute misconduct at all,

and certainly did not did not so infect the trial with unfairness that petitioner

was denied due process. *Darden v. Wainwright, supra*, 477 U.S. at 181.

       Petitioner claims – without elaboration – that the prosecutor

allowed perjured testimony at trial (Ground I).  Insofar as petitioner is referring

to the claim he made in his first post-conviction motion, petitioner's argument

is that the prosecutor "allowed perjured testimony at trial" when Leslie

Martinez, the victim's mother, testified during the State's case that since 2005,

after the parties separated, Leslie did not seek any court order for financial

support from petitioner and he was not voluntarily supporting her financially

(Leslie: 377-378).  During her cross-examination by petitioner, Leslie denied

receiving from petitioner checks or money orders, apparently in the amount of

$175.00 and dated after December of 2004 (Leslie: 401). Those documents

were not admitted into evidence, but petitioner included these or similar

documents in his first post-conviction motion (*see* Exhibit C to Petitioner's

November 28, 2011 Motion). But petitioner has not, nor could he, demonstrate

that Ms. Martinez was not telling the truth about the finances.  And, petitioner

cannot demonstrate, nor does he even try, as he must to establish his claim, that

the prosecutor knew Martinez was not telling the truth and deliberately allowed

that testimony to stand.  *See, e.g., United States v. Josephberg*, 562 F.3d 479,

494-495 (2d Cir. 2009).  Petitioner's claim of prosecutorial misconduct on this

ground is meritless.

Petitioner also errs in claiming that the prosecutor committed

misconduct by "falsifying military documents" to state that petitioner was

"dishonorably discharged for a fight" (Ground I).  When petitioner testified at

trial, he told the jury that he had served in the marine corps and had been

honorably discharged (Petitioner: 628).  During cross-examination, the State

asked petitioner if he remembered being dishonorably discharged, and when

he testified that he did not, the State showed him a document, and asked him

if that refreshed his recollection.  Petitioner testified that it did not (Petitioner:

648-649). A few questions later, the State asked petitioner, "Isn't it true sir that

you were involved in an incident at a bar while you were in the marine corps

that caused you to be dishonorably discharge from the marines?" (Petitioner:

650).  Petitioner answered, "Not that I can recall" (Petitioner: 650).  The

-24-

document the State used to try to refresh petitioner's recollection was not introduced into evidence and no further evidence was elicited before the jury on the subject.

Far from indicating anything false, never mind intentionally false, the record establishes that the State had a good-faith basis for asking this question. *United States v. Coffey,* 823 F.2d 25, 27-28 (2d. Cir. 1987). The prosecutor showed the petitioner a document to refresh his recollection about a dishonorable discharge and asked him whether he recalled a fight in a bar leading to that discharge. But petitioner claimed he had no recollection, and the questioning ceased.

Moreover, the court's instruction to the jury that a question by itself is not evidence, and that it is the question, coupled with the answer, that constitutes evidence, prevented any resulting prejudice. *See Floyd v. Meachum*, 907 F.2d at 348; *Gonzales v. Sullivan*, 934 F.2d at 424; *Udzinski v. Kelly*, 734 F. Supp. at 85. Indeed, during his summation remarks, petitioner reminded the jury about petitioner's background, noting (without objection) his honorable discharge from the marines (Defense Summation: 806).

Furthermore, the subject of petitioner's marine service and discharge bore solely on his credibility as a witness and had no relevance to the

-25-

elements of any crime.  No evidence was admitted contradicting petitioner's claim of an honorable discharge, the jury was instructed to ignore the State's question, and during summation defense counsel reminded the jury that petitioner had been discharged honorably. Petitioner cannot demonstrate that he was denied a fair trial, and the writ should not issue on this basis. *See, e.g., United States v. Dixon*,  511 Fed. Appx. 48 (2d Cir. 2013).

Petitioner's next claim, that misconduct occurred when the state referred to petitioner's arabic descent, is equally without merit.  During opening statement, the state informed the jury that the petitioner, Abu Khan, was the stepfather of AM, but that instead of being her "protector" he abused her  (State's Opening: 331-332).  After summarizing the evidence that the jury would hear, the prosecutor stated, "Ironically, . . . the [petitioner's] first name is Abu A-B-U which in Arabic means father.  But a father he was not" (State's Opening: 333-334).  The defense objection to the latter as more befitting a summation was sustained.

On this record, the state did not, as petitioner claims, say anything prejudicial or misleading, and certainly does not establish, as it must to warrant a granting the writ, that the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

*Dawkins v. Artuz*, 152 Fed. Appx. 45, 46-47 (2d Cir. 2005) *citing Darden v. Wainwright, supra*, 477 U.S. at 181   Indeed, as the jury knew to disregard any evidence or comments after a sustained objection, petitioner cannot establish that the jury considered the comment at all.  And given the prosecutor's theme, that petitioner abused his position of trust as a step-father, the sole reference to the ironic meaning of his name can hardly have influenced the jury.  This is especially true, given that petitioner told the jury he was not born outside the United States, in Trinidad and Tobago (Petitioner: 628).  Nor did petitioner have any objection to the evidence of the close familial ties between his family and the victim's family that dated back generations to their time in Trinidad (Leslie: 356) and of their travels to Florida to celebrate the West Indian Festival (Leslie: 364).  Moreover, the State also referred to petitioner as "Jimmy" (State's Opening: 333), a common American nickname, and elicited evidence that from multiple witnesses that petitioner was known as "Jimmy" to many in the family (Leslie Martinez: 356; Ann Martinez: 430; AM: 461).  Petitioner cannot establish that the isolated comment to which an objection was overruled either infected the conviction or deprived him of due process and the writ should not issue on this basis.

-27-

Nor was petitioner denied due process, as he claims, when the state proceeded to trial alleging that petitioner raped the victim at 11:00 p.m. on November 30, 2004.  This portion of petitioner's claim was raised at trial as a due process violation, but was not raised on direct appeal, and is thus unexhausted and not properly before the Court.  28 U.S.C. § 2254(b)(1); *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rose v. Lundy*, 455 U.S. 509 (1982);  *Grey v. Hoke*, 933 F.2d 117 (2d Cir. 1991).  But because it is completely meritless, the claim may be entertained and denied.  28 U.S.C. § 2254(b)(2). The date and time of November 30, 2004 at 11:00 p.m. is the precise date and time set forth in the criminal complaint and in the grand jury minutes. The bill of particulars, a document provided during the discovery process, apparently contained a typographical error indicating that the time was 1:00 p.m. instead of 11:00 p.m.  During preliminary trial proceedings, counsel for petitioner claimed this was a due process violation and moved for dismissal, alleging that petitioner had an alibi for 1:00 PM (Proceedings: 323). The trial court properly denied the motion, noting that petitioner's prior motion to dismiss based on any alleged insufficiency or discrepancy in the grand jury proceedings – during which petitioner was accused of committing the crime at 11:00 p.m. on November 30, 2004 – had been dismissed, so "the matter has

been if not directly certainly indirectly addressed earlier in these proceedings" (Proceedings: 323-324). Furthermore, as the court also properly concluded, the notation in the bill of particulars was most likely a "typo" and that based on the pleadings and the overall proceedings the defense was fully aware of the date and place involved (Proceedings: 324). *See, e.g., People v. Smith*, 4 N.Y.3d 806 (2005); *People v. Ray*, 71 N.Y.2d 849 (1988). On this record, petitioner's claim that the state changed the time to 11:00 PM is contradicted by the record, and his related assertion, that the change denied him of due process or was due to intentional misconduct by the State is scurrilous and without merit. *See Darden v. Wainwright, supra*, 477 U.S. at 181.

In sum, petitioner's claim of prosecutorial misconduct is procedurally barred from this Court's review by an adequate and independent state procedural ground. In any event, petitioner's claim of prosecutorial misconduct does not rise to the level of a federal constitutional violation and petitioner's request for *habeas corpus* relief should be denied.

-29-

## POINT TWO

**PETITIONER'S INEFFECTIVE-ASSISTANCE-OF-TRIAL-COUNSEL CLAIM IS PROCEDURALLY BARRED FROM REVIEW BY AN ADEQUATE AND INDEPENDENT STATE PROCEDURAL GROUND. IN ANY EVENT, PETITIONER'S CLAIM IS MERITLESS (Responding to Ground III of the Petition).**

Petitioner's Ground Three is entitled "Medical Evidence and Testimony" and states that this claim was raised in a motion under C.P.L. § 440.10 that was decided on March 6, 2013. In that motion, petitioner challenged defense counsel for failing to utilize an expert to challenge the State's medical evidence and testimony of penetration. Thus, reading the *pro se* petition liberally, the claim may be viewed as raising a claim of the ineffectiveness of trial counsel. That this is petitioner's intended claim is further supported by his *coram nobis* claim (discussed in Point Three, *infra*) in which he faults appellate counsel for the same alleged failing.

Read in this light, petitioner now claims that he received the ineffective assistance of trial counsel, who failed to consult a medical expert to challenge the State medical expert's evidence of no physical or visible evidence to support the sexual abuse. But, as with petitioner's claim of

prosecutorial misconduct, petitioner's claim of ineffectiveness is procedurally barred from this Court's review because petitioner failed to comply with New York's procedural rules (as discussed in Point One).

Here, when petitioner raised the claims that trial counsel was ineffective in his second motion to vacate judgment pursuant to New York Criminal Procedure Law § 440.10, the court rejected the claims because they appeared on the record and could have been raised on direct appeal. Thus, the court found that the claims were procedurally barred pursuant to C.P.L. § 440.10 (2)(c).

The court's decision included a plain statement that it was relying on petitioner's failure to comply with a state procedural rule. This adequate and independent procedural bar now precludes review of petitioner's claims in this Court. *E.g. Sweet v. Bennett*, 353 F.3d 135 (2d Cir. 2003) and similar cases cited in Point One, *supra*.

Similarly, the Appellate Division's subsequent decision summarily rejecting petitioner's application for leave to appeal the lower court's decision does not mean that that court considered the merits of petitioner's claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993). Because the lower court

-31-

rejected petitioner's ineffectiveness claim on procedural grounds, there is no reason to doubt that the Appellate Division, like the lower court before it, relied on the procedural bar to reject petitioner's application.

And, as in Point One, federal *habeas* review of the claim is barred because petitioner has not – nor could he – demonstrate both cause for his non-compliance with New York's procedural rule and actual prejudice resulting from it, or that the failure to consider the claims will result in a fundamental miscarriage of justice. *See Colemen v. Thompson*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. at 298-99; *Reed v. Ross*, 468 U.S. 1, 11 (1984); *Engle v. Isaacs*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. at 87.

Petitioner cannot establish cause for the default, since, as discussed in Points Three, the state court's decision that petitioner was not denied the effective assistance of appellate counsel was neither contrary to, to, nor an unreasonable application of, clearly established Supreme Court law.

In any event, petitioner could never show that he would be prejudiced should the Court not review his claim that trial counsel was ineffective as it is meritless.   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that, to establish a claim of ineffective assistance of counsel, a *habeas corpus* petitioner must show that his counsel

-32-

supplied deficient representation, and that the petitioner suffered prejudice as a result of that deficient performance. *Id*. at 687-88. As to the first requirement, counsel's conduct must have so undermined the adversarial process that the process cannot be relied upon as having produced a just result. *Id*. at 686. Courts reviewing the conduct of counsel must be aware of the temptation to "second-guess" counsel and "every effort must be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689; *United States v. Cronic*, 466 U.S. 648, 658 (1984). As the *Strickland* Court stated, "the petitioner must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. In this regard, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. And "[t]hat presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" *Yarborough v.*

*Gentry*, 540 U.S. 1, 9 (2003) (quoting *Massaro v. United States*, 538 U.S. 500 [2003]).  In this vein, the presumption means that the absence of a direct explanation in the record for counsel's conduct may be construed against the petitioner.  *See Jermyn v. Horn*, 266 F.3d 257 (3d Cir. 2001) (counsel's failure to raise doubts about petitioner's competence was not ineffective where counsel retained expert and report of expert was not in record; only reasonable conclusion was that report contained no useful information).

As to the second showing, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 698.  In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.  *Id.*

Here, the record demonstrates that petitioner received effective representation at all stages of the proceedings and that counsel was well prepared for trial and had a suitable understanding of both the law and the facts relevant to petitioner's case.  *See United States v. DiPaolo*, 804 F.2d 225, 234 (2d Cir. 1986) (petitioner was not denied effective assistance of counsel where

-34-

counsel appeared well prepared and had good understanding of facts and legal principles involved in case); *Wise v. Smith*, 735 F.2d 735 (2d Cir. 1984) (counsel, who was well prepared and had a good grasp of the facts and an adequate understanding of the law, was not ineffective). Counsel exhibited a more-than-adequate knowledge of the criminal law, and advanced a plausible theory of defense that was established through legitimate legal tactics.

In the end, of course, there was not much that counsel could have done considering the robust evidence of petitioner's guilt that included the victim's description of her relationship with her step-father over the years and identification of him as her attacker, her mother's account of the victim's changes and difficulties during the time-period, coupled with her emotional outcry after the mother and step-father separated, the psychologist's explanation of the Child Sexual Abuse Accommodation Syndrome, including a failure or delay in disclosure, and the medical expert's explanation that physical evidence of abuse and penetration is often not present given the highly elastic quality of the vagina.

Despite all that evidence, defense counsel had a well-reasoned trial strategy designed to undermine the credibility of the complainant and to demonstrate that her outcry was delayed not because she was a victim of abuse,

or suffered from the Child Sexual Abuse Accommodation Syndrome, but rather because the claims were simply untrue and were motivated to vindicate her family after petitioner failed to pay child support.  At trial, defense counsel followed these themes during his cross-examination and summation arguments.

Indeed, and contrary to petitioner's claims, counsel vigorously and effectively cross-examined the State's medical and psychological experts. From Dr. Rosenfeld, the physician who examined the victim, defense counsel elicited that the doctor had testified in the past, always for victims (Rosenfield: 570-571). Counsel confronted Dr. Rosenfeld with the contrary view of Dr. Robert Friendlander, whose opinion was that he was "not aware of any evidence that penetrating a girl of any age with an erect normal size penis is likely to leave the hymen intact" (Rosenfield: 577-578).  Dr. Rosenfeld testified that she was not familiar with Friedlander's work and that she disagreed with his statement (Rosenfield: 576, 578). Counsel elicited from the doctor that the victim had said she had a boyfriend, contradicting the victim's own testimony that she did not (Rosenfield: 572).

During his examination of Dr. Lewittes, the psychologist with expertise in  CSAAS, counsel elicited that the doctor's testimony was "generalized" and not specific to this victim, whom he had never met

-36-

(Lewittes: 623).  Lewittes acknowledged the possibility that a child does not

disclose the abuse because there was no abuse in the first place (Lewittes: 623),

and that the doctor has seen false claims of abuse by children (Lewittes: 624).

Counsel elicited from Lewittes that one of the reasons for false claims of abuse

was "revenge" -- testifying that the child may feel this gives them "power" and

the claim is a "way to get back at somebody who they are angry at" (Lewittes:

624-625).

Defense counsel used this evidence during his summation

argument, telling the jury there were six witness but only four of them counted

(Defense Summation: 695) – a clear message to ignore the testimony of the two

experts.  Counsel challenged the credibility of the complainant, reminding the

jury that she did not tell anybody contemporaneously and waited quite a while

to report the crimes (Defense Summation:  697).  Counsel argued that the

complainant's claimed fear of petitioner did not jive with the facts, questioning

why she would voluntarily accompany petitioner to Long Island to return the

truck that last night in Queens when she could have stayed home with her

grandmother (Defense Summation: 698-699).  Counsel also pointed to the

animosity between petitioner and the mother.  Similarly, counsel denigrated the

significance of the medical expert, remarking,  "just because an expert give you

a certain opinion," if it does not "jibe with your common sense and your opinion, you do not have to accept that opinion.  You have a right to reject that opinion.  I urge you to do that in this particular case" (Defense Summation: 701).  Counsel asked the jury to listen carefully to the judge's instructions regarding expert testimony, reiterating that "just because an expert is a so-called expert you do not have to accept their opinion on the situation" (Defense Summation: 707).  As for Dr. Rosenfeld, the medical expert, counsel remarked that she had been working at the Queens Child Advocacy Center for twelve years, had testified on at least five-hundred occasions, not once for a petitioner, and that because of her "bias" her testimony should be viewed with "a good deal of skepticism" (Defense Summation: 702, 705). Counsel remarked that while the physical evidence was not inconsistent with the allegations, it was also consistent with a lack of sexual abuse or rape (Defense Summation: 704). As for the psychologist Lewittes, counsel reminded the jury that his testimony was not specific to this case or this complainant, but was simply general information about the syndrome (Defense Summation: 706), that Lewittes admitted he had come across instances where a child had made "false allegations of sexual abuse," for which there were a number of possible reasons, including jealousy, revenge and mental disease (Defense Summation:

706).  Counsel also addressed the non-support claim, reminding the jury of the evidence that petitioner said he provided support to Leslie Martinez until she moved without giving him her new address (Defense Summation: 701).

When all of the actions taken by defense counsel are viewed as whole, there is no question that petitioner received "meaningful representation."

Petitioner, however, now claims that trial counsel was ineffective for failing to consult an expert medical witness who could have commented on the lack of physical or visible evidence of sexual abuse. But petitioner is wrong.

Indeed, there is no "*per se* rule that requires trial attorneys to seek out an expert."  *Gersten v. Senkowski*, 426 F.3d 588, 609 (2d Cir. 2005), quoting district court's opinion, 299 F. Supp.2d 84, 100-101 (E.D.N.Y. 2004)(JBW).  Moreover, the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'" *Strickland*, 466 U.S. at 689 "has particular force" in this case, because petitioner bases his ineffective-assistance claim "solely on the trial record." *Yarborough v. Gentry*, 540 U.S. at 9.    *See Eze v. Senkowski*, 321 F.3d 110, 127-28, 136 (2d Cir. 2003) (declining to conclude that counsel was ineffective for failing to rebut

-39-

expert testimony of sexual abuse without input from counsel regarding his rationale for his conduct).[2] Accordingly, the absence of a direct explanation in the record for counsel's conduct should be construed against the petitioner. *See Jermyn v. Horn*, *supra*, 266 F.3d 257.

In any event, the presumption of effectiveness is supported by the record, which demonstrates that defense counsel investigated the medical evidence, had a strategy to counter it, and chose to present an expert view contradictory to the state's evidence view through cross-examination of the state's medical expert. Thus, as discussed above, counsel confronted the state's medical witness with the writings of a medical expert and highlighted those discrepancies during summation. This was a wise and undoubtedly reasoned strategy. Indeed, there is no indication that Dr. Friedlander, or any other medical expert, would have been available to testify for the petitioner. *See e.g. Flick v. Warren,* 465 Fed. Appx 461, 465 (6th Cir. 2012) ("Effective assistance does not require counsel to continue contacting experts until he found one . . . willing to testify against the prosecution's theory of the case").

_____

[2] The determination at bar must be based on the state court record, and the record as it stands makes manifest that counsel had a strategy. Indeed, while additional off-the-record facts potentially critical to resolving this question could have been available, the record is sufficient to deny petitioner's claim.

Moreover, by presenting the expert's writings, counsel avoided the substantial risks attendant to presenting a live witness. *See, e.g., People v. Henderson*, 118 A.D.3d 1020 *leave to appeal granted*, 24 N.Y.3d 1084 (2014)(defense counsel's use of medical expert backfired, resulting in a finding that defense counsel was ineffective). For instance, a defense expert may, based upon ethical considerations or loyalty to the field, be compelled to make concessions while on the stand. Indeed, that is what occurred when counsel challenged the state's expert. Utilizing the expert's writings instead of live testimony removes that risk of a backfire – a writing cannot make any damaging concessions or be impeached. Counsel understood the benefits and risks of relying on an expert and used the deft and subtle approach of exposing the jury to the expert through cross-examination instead of through direct testimony.

In cases like *Gersten v. Senkowski*, *supra*, 426 F.3d 588, on the other hand, the court questioned a finding of effectiveness when defense counsel simply conceded the medical evidence without any investigation into whether it could be challenged. *Gersten*, 426 F.3d at 608-609 (counsel failed to examine the colposcopic slides purportedly indicating trauma, rebut expert medical testimony, and consult with or present an expert on the Child Sexual

Abuse Accommodation Syndrome); *Pavel v. Hollins*, 261 F.3d 210, 224 (2d Cir. 2001); *Lindstadt v. Keane*, 239 F.3d 199, 201 (2d Cir. 2001)(counsel committed several errors).   For instance, in *Pavel v. Hollins*, trial counsel submitted an affidavit in which he admitted that he "did not prepare a defense" because he "concluded that the State's case was without merit." *Id.,* 261 F.3d at 212 n.2. The Second Circuit found that counsel actions were not "based on strategic considerations." Id. at 217 n.7.

But here, trial counsel went beyond the minimums found wanting in these Second Circuit cases*.   See, e.g. O'Halloran v. Gonyea*, 2014 U.S. Dist. LEXIS 179610 (N.D.N.Y. 2014)(failure to utilize a medical expert is not dispositive of ineffectiveness when counsel was able to mount an effective cross-examination without the expert); *Fuentes v. Griffin*, 2013 U.S. Dist. LEXIS 188874, n.13 (E.D.N.Y 2013)(in lengthy footnote, distinguishing Second Circuit cases as inapposite, and noting that, in those cases, counsel's conduct was "egregious" or not "based on strategic considerations"); *Rodriguez v. Schneiderman*, 2013 U.S. Dist. LEXIS 188538, 58-59 and n. 14 (S.D.N.Y. 2013)(rejecting claim that counsel was ineffective because, in contrast to *Gersten* and *Eze*,  petitioner's trial counsel adequately prepared for and contested the testimony of the prosecution's psychological expert).

Here, based simply on the trial record, and without the benefit of additional off-the-record facts, there can be no question that counsel familiarized himself with the "vagaries of abuse indicia," consulted expert materials prior to trial, and utilized those materials to impeach the state's medical evidence. *See Eze v. Senkowski*, 321 F.3d 110, 127-28, 136 (2d Cir. 2003) (noting the need for "defense counsel to, at a minimum, consult with an expert to become educated about the 'vagaries of abuse indicia' is critical" but declining to conclude that counsel was ineffective for failing to rebut expert testimony of sexual abuse without input from counsel regarding his rationale for his conduct).[3]

There can be no question that counsel was aware of the state's medical evidence, consulted an expert's opinion, and had a strategy, consistent with that opinion and petitioner's defense that no penetration occurred, to challenge that evidence. Counsel confronted the State's medical expert with the contradictory view of Dr. Friendlander, thus exposing the jury to the view that some experts dispute the existence of "evidence that penetrating a girl . .

---

[3] The determination at bar must be based on the state court record, and the record as it stands makes manifest that counsel had a strategy. While additional off-the-record facts potentially critical to resolving this question could have been available, the record is sufficient to deny petitioner's claim.

. with an erect normal size penis is likely to leave the hymen intact" (Rosenfield: 577-578). This is far from the situation in cases such as *Gersten v. Senkowski*, *supra,* 426 F.3d 588, where defense counsel not only failed to inspect the state's medical evidence or to consult a medical expert of its own, but actually conceded the state's medical evidence and presented no defense case at all. Here, counsel for petitioner was familiar with the medical evidence, consulted the medical literature (and may have also spoken to an expert), challenged the state's medical evidence, and presented a strong defense case. Counsel utilized an expert's writings to inform the jury that the state's view of the evidence was not a universally-held view and that petitioner's position also had support in the medical community. And, as noted, counsel further belittled the state's expert during summation.

Moreover, during its final charge to the jury, the Court instructed that while the jury had heard two experts testify and present their opinions, the jury need not accept the expert's testimony. Rather, the Court instructed the jury that it should treat the expert the same as it would any witness's testimony (Jury Charge: 746-747).

Petitioner's position overstates the value of the expert, ignores the strategy utilized by the defense, and cannot demonstrate a reasonable

-44-

probability of a different result had counsel's followed a different strategy regarding the expert. *See, e.g. Strickland v. Washington*, 466 U.S. 668; *Gersten v. Senkowski*, 426 F.3d 588; *Rodriguez v. Schneiderman*, 2013 U.S. Dist. LEXIS 188538, 58-59.

In sum, petitioner's claim that he received the ineffective assistance of trial counsel is procedurally barred from this Court's review by an adequate and independent state procedural ground. In any event, because petitioner fails to demonstrate that counsel was less than competent in his approach to the medical expert, and fails to demonstrate that trial counsel's chosen strategy prejudiced the defense, petitioner's claim of trial counsel's ineffectiveness does not rise to the level of a federal constitutional violation and his request for *habeas corpus* relief should be denied.

## POINT THREE

**PETITIONER CANNOT SHOW THAT THE STATE COURT'S REJECTION OF HIS INEFFECTIVE APPELLATE COUNSEL CLAIM IS CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT PRECEDENT (Answering Ground II of the Petition).**

The Appellate Division reasonably rejected on the merits petitioner's claim that he was denied the effective assistance of appellate counsel. This adjudication on the merits bars habeas relief in this Court unless petitioner can establish that the adjudication was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. This he cannot do.

A state court adjudicates a federal claim on the merits when it disposes of the claim "on the merits," and reduces its disposition to judgment. *Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001). When the state court is determined to have adjudicated the claim on the merits, a federal *habeas* court must defer to the state court's decision in the manner prescribed in 28 U.S.C. § 2254(d)(1).

Here, the Appellate Division's decision rejecting petitioner's application for a writ of error *coram nobis* claim constitutes an adjudication on the merits. There is no question that the Appellate Division adjudicated the merits of petitioner's claim that trial counsel was ineffective. The appellate court specifically ruled that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Khan,* 105 A.D.3d 975 (2d Dept. 2013). Because the state court clearly decided this issue "on the merits" (*see Jimenez v. Walker*, 458 F.3d 130), this Court is now required to apply section 2254's standard of deference to that ruling. *Sellan v. Kuhlmann*, 261 F.3d 303 (2d Cir. 2001).

Under that section, this Court may not grant a writ of *habeas corpus* petition unless the petitioner establishes that the state court's rejection of his claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" 28 U.S.C. § 2254(d) (1), (2); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Woods v. Donald*. __ U.S. __, 2015 U.S. Lexis 2123 *1 (March 30, 2015)(writ may not issue unless the petitioner establishes that the state court's rejection of his claim was based on an unreasonable determination of the facts in light of the evidence presented to the state courts). The

"standard is intentionally 'difficult to meet.'" *Woods v. Donald*. __ U.S. __, 2015 U.S. Lexis 2123 at *5, quoting *White v. Woodall*, 572 U.S. __, 2014 U.S. Lexis   (2014).  Indeed, under this deferential standard of review, even an incorrect determination must be upheld if it is reasonable. *Williams v. Taylor*, 529 U.S. at 410.

Furthermore, in order to succeed on a claim of ineffective assistance of counsel under the deferential standard of section 2254(d), a *habeas* petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied its decision incorrectly." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  Rather, it is a petitioner's burden to show that the state court applied a  standard other than *Strickland*, or applied *Strickland* to the facts of the case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19 (2002); *Bell v. Cone*, 535 U.S. at 698-99.

Here, petitioner has failed to establish that the state court adopted a legal standard that was "contrary to" *Strickland* or that it unreasonably applied that case. In reaching its decision, the Appellate Court relied on *People*

-48-

*v. Stultz,* an opinion of the New York Court of Appeals that case is fully consonant with *Strickland.*   Indeed, the Second Circuit has held that the meaningful representation standard for ineffective assistance of appellate counsel is . . . not contrary to *Strickland. See, e.g., Eze v. Senkowski*, 321 F.3d at 124.  Moreover, the State analyzed petitioner's ineffectiveness claim under *Stultz* and *Strickland* in its opposing papers (at pages 9-11), and thus those opinions and their reasoning were all before the Court in rejecting petitioner's claim.

    In this case, appellate counsel not only raised the only potentially meritorious issue before the Appellate Division and properly omitted issues that lacked merit, but also submitted a brief that was well-written, with relevant legal and factual arguments.  The brief submitted by appellate counsel was persuasive, competent, thorough, and wholly adequate in presenting petitioner's strongest claims to this Court.  It effectively summarized the record and presented the hearing and trial proceedings in a light favorable to petitioner.  And appellate counsel chose colorable claims when he argued that petitioner's right to a fair trial was violated by the admission of uncharged Florida crime-evidence and photographic portraits of the child at the ages of five to seven.   Indeed, this Court found defense counsel's arguments

-49-

compelling enough to warrant a relatively lengthy opinion, explaining why the trial court's challenged evidentiary rulings were proper. *See People v. Khan*, 99 A.D.3d 1014, 1014-1015 (2d Dept. 2011).

And had defense counsel succeeded in arguing that the uncharged-Florida-crime evidence and the photographs of the victim as a little girl were improperly admitted, he would have had a very strong argument that petitioner's conviction should be reversed because of the damaging nature of that evidence. Any experienced appellate attorney's review of the record would have revealed that these evidentiary issues were the most compelling issues on appeal. Thus, appellate counsel's raising of these issues, and his capable discussion of the relevant law and facts, is strong evidence of his effectiveness. When all of the actions taken by defense counsel are viewed as whole, there is no question that petitioner received Thus, petitioner received competent and "meaningful" representation.

Petitioner, however, claims that he was denied effective assistance of appellate counsel, on the sole ground that appellate counsel failed to raise a claim that trial counsel was ineffective for allegedly failing to challenge the medical evidence of penetration and to utilize a medical expert to assist him for that purpose. But appellate counsel was not ineffective for winnowing out that

claim because, as discussed in Point Two, it is meritless.  Thus, appellate counsel was not ineffective for failing to raise the claim on appeal, and the Appellate Division properly rejected petitioner's application for *coram nobis* relief.

In sum, the appellate court's decision rejecting petitioner's ineffective appellate counsel claim is entitled to deference in this Court.  And it was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  As a result, petitioner is not entitled to the issuance of the writ on his ineffective appellate counsel claim.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court should summarily deny the petition for a writ of *habeas corpus*.

Respectfully submitted,

RICHARD A. BROWN
District Attorney
Queens County

JOHN M. CASTELLANO
JILL A. GROSS MARKS
        Assistant District Attorneys
            of Counsel

May 8, 2015