SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
----------------------------------------
THE PEOPLE OF THE STATE OF NEW YORK

                    Plaintiff


            -against-                                AFFIDAVIT


ABU KHAN                                            Ind. No. 2147/06


                    Defendant
----------------------------------------

STATE OF NEW YORK      )
                       )ss.:
DUTCHESS COUNTY        )


        ABU KHAN, being duly sworn, depose and says:

1.   I am the Defendant in the above entitled proceeding, I make this
     Affidavit in support of Notice of Motion, pursuant to Criminal Procedure
     Law § 440.10(1)(H) for an order of the Court (vacating the Conviction) on
     the grounds that the Defendant was denied the guaranteed Constitutional
     right to effective assistance of trial counsel where;

A.   Trial Counsel's failure to consult with or call a medical expert, or to
     review or challenge the medical evidence of penetration.

B.   Trial counsel's failure to consult with the Defendant or conduct an
     investigation concerning the facts of the case prior to trial, did infact
     prejudice the Defendant and served to undermine the effective cross
     examination of the prosecutors' expert witnesses.


2.   Having been arraigned, indicted and bound for trial, the Defendant entered
     a plea of not guilty to all charges. The Defendant was tried before the
     Supreme Court, Queens County (Hollie, J). By a judgment of the Supreme

Court, Queens County (Hollie, J) on July 24, 2007 upon being convicted and found guilty of:

- Rape in the first degree (Penal Law § 130.05[4]).

- Course of Sexual Conduct against a child in the 2nd degree (Penal Law § 130.80)

- Endangering the welfare of a child (Penal Law § 260.10[1]) and;

- Sexual abuse in the 2nd degree (Penal Law § 130.60[2]). then sentenced to concurrent determinate prison term of 14 years for rape, 10 years for sexual conduct, 5 years for endangering the welfare of a child and 1 year for sexual abuse, plus post release supervision.

The Defendant is currently incarcerated pursuant to said judgment, and currently held and bound at the custody of the New York State Department of Corrections, and staff, located at:

GREEN HAVEN CORRECTIONAL FACILITY

594 State Route 216
Stormville, N.Y. 12582

## DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

A.   Defense counsel's failure to consult with or call a medical expert, or review or challenge the medical evidence of Penetration.

In the case at bar, the defense (Trial Counsels Mr. Samuel Viruet and Mr. Robert Johnston, did infact failed to call as a witness, or even to consult with [In preparation of trial, and cross examination of the prosecution's Expert Witness] any Medical Expert on Child Sexual Abuse.

In the case at bar, trial counsels Mr. Viruet and Mr. Johnston, essentially conceded that the physical evidence was indicative of sexual penetration without conducting any investigation as to whether this was the case.

Had trial counsels conducted such an investigation, they would have likely discovered that exceptionally qualified Medical Experts could be found, who would testify that the prosecution's physical evidence was not indicative of sexual penetration and provided no corroboration whatsoever of the alleged victim's story. Trial counsels could have presented a strong affirmative case, that the charged crime did not occur and the alleged victim's story was incredible in its entirety.

As a Federal District Court noted in a similar case "In light of the daughter's allegations of continuing rape and sodomy over a period of years, the absence of physical indicia of such abuse would necessarily have been troubling to a trier of fact". 299 F.Supp.2d at 91.

In the case at bar, the prosecution's expert witness records reveal no hymenal clefs, which would have been evidence of vaginal penetration,

no indication. which would have been evidence of anal penetration.

Furthermore, all other physical observations relied on in concluding that penetration had taken place, infact provided no support for that conclusion. The Defendant affirms that such a lack of physical evidence of penetration would cast serious doubt on the alleged victim's story of daily/weekly forcible penetration over a period of years. Moreover, where the trier of facts to credit expert testimony of the type the Defendant offers in this State Collateral Attack (instant motion) the prosecution's case would arguable amount to the uncorroborated and demonstrably incredible testimony of the alleged victim.

In the case at bar, the prosecution's case rested centrally on the alleged victim's testimony and it's corroboration by the indirect physical evidence as interpreted by the prosecution's medical expert[s]. The medical expert[s] testimony was central not only because it constituted the most extensive corroboration that any crime occurred, but because to undermine the alleged victim's credibility and thus, the entire prosecution's case as to all charges.

If a medical examination of the alleged victim failed to reveal any evidence, clinically indicative of sexual penetration, that failure would constitute strong affirmative evidence that forced penetration did not occur - particularly forced penetration of the frequency alleged by the accused in the case at bar. Thus, the medical expert consultation or testimony is particularly critical to an effective defense in sexual abuse cases where (as in the case at bar) direct evidence is limited to the victim's testimony. See, Eze, 321 F.3d at 128; Pavel, 261 F.3d at 224; Lindatadt, 239 at 201.

The evidence adduced at trial may be summarized as follows:

It was alleged that in October 1996, then, 29 year old defendant (ABU

KHAN a.k.a. Jimmy) began dating a woman named Leslie martinez, whom was nearly 10 years his junior, and had been married with two children (See T.T. pgs: 357-358, 387) a four year old daughter and a two year old boy (See T.T. pgs: 355, 359, 462). That in 2997, the defendant and Leslie, along with her children began living together as a family, moving into a three bedroom condominium in College Point (See T.T. pgs: 359-360, 428, 432) owned and occupied by Leslie's mother Ann martinez, and her common law husband Hubert Chan (See T.T. pgs: 355, 359, 431-432, 462) Ann had known the defendant's family from Trinidad (See T.T. pg: 356). Furthermore, that when they later moved into Leslie's mother's home in Queens, New York, that her daughter Ashley was a few months shy of five years old (See T.T. 1 and 2 et al T.T. pgs: 493-494). One night, thereafter, the defendant is alleged to have touched Ashley in a way that she did not like to be touched (See T.T. pg: 464). Ashley alleged that she had been having nightmares after watching a scary movie "Candyland" and had been having trouble sleeping so she had went down the spiral staircase from the loaf she shared with her little brother to her parents' bedroom below to ask one of them to come upstairs and help her get to sleep, her mother had been sleeping and the defendant had been up watching wrestling on television (See T.T. pgs: 465-466). It was further alleged that the defendant took Ashley upstairs and began telling her a story of a little girl whom was trying to put a star on a Christmas tree. During the story, the defendant allegedly took Ashley's hand and placed it on top of his boxer shorts, and made her touch his penis, which she alleges to feel through the boxer shorts (See T.T. pgs: 465-468).

After that night, the defendant is alleged to have forced Ashley to touch his his penis about five to ten times while living in Queens (See T.T. pg: 468). On those occasions, the defendant is alleged to have touched Ashley's

breasts and other places on her body that she did not want to be touched (See T.T. pg: 486).

In May of 2001, the defendant and Leslie moved with the children to Florida (See T.T. pgs: 364-365, 367, 390). In Florida, it was alleged that Ashley had been having problems in school concerning her behavior, and failing grades (See T.T. pgs: 365, 372) Ashley was not getting along with anyone, and did not get along with anyone at home, she gained alot of weight and argued and fought with everyone (See T.T. pgs: 369-372) that during this period the defendant used to enter her room and have sex with her, putting his penis in her vagina, and continued to have sex frequently (See T.T. pgs: 469-471).

It was alleged that Ashley had been very young when the defendant began touching her in New York City, and had no idea whether the defendant's actions were right or wrong (See T.T. pg: 469), that the defendant had told Ashley that he was making her a woman and that he would have done the same thing to his own daughter (See T.T. pg:469).

In November 2004, then, 12 year old Ashley was suspended from school, and the defendant and Ann booked Ashley a flight to New York for November 30, 2004 (See T.T. pgs: 372-374, 407-408, 506). Ashley had no say in her flight arrangements. The defendant met Ashley at the airport and drove her to her grandmother's house. That afternoon, they ate Chinese food and went shopping (See T.T. pgs: 475-476) that around 7(PM) after her grandmother (Ann) arrived home from work, she greeted Ashley and Hubert drove the defendant to Long Island to return his work vehicle, Ashley went with them for the ride, and they returned back at around 9-10(PM), Ann had been in bed and did not see Ashley again that night, at about 11(PM) Ashley alleges that she had been watching television, when the defendant entered the room and began touching her arms and breasts (See T.T. pgs: 476-477).

Ashley told the defendant to leave her alone, and went down stairs to the living room to watch television, and the defendant followed her down stairs and sat next to her and continued to touch her breasts (See T.T. pgs: 476-477) Furthermore, the defendant took off his T-shirt and boxers, and removed Ashley's T-shirt and shorts, and began having sex with her, moving his body back and forth, after a while removing his penis from Ashley and ejaculating into a napkin, then walking away not saying anything to Ashley, while Ashley sat there as if nothing happened (See T.T. pgs: 478, 481-483).

The next day (December 1. 2004) the defendant took Ashley shopping in Brooklyn, then that evening the defendant left to Florida where the defendant and Leslie broke up their relationship with each other due to personal differences, and the defendant returned to New York and found an apartment in the Bronx, when he allegedly stopped providing Leslie with financial support (See T.T. pgs: 377, 395, 396, 397).

In August 2005 Ashley returned to Florida to her mother, on Easter Sunday, of April 16, 2006 Ashley is alleged to have revealed to her mother what the defendant had done to her (See T.T. pgs: 379-384), and Leslie and Ashley reported the allegations to authorities in Florida, whom in turn forwarded said allegations to authorities in New York (See T.T. pgs: 385-388). On June 13, 2006 Detective Luz Fugueroa of Queens County Child Abuse squad was assigned to investigate the allegations against the defendant (See T.T. pgs: 450-453) and on June 13, 2006, said detective interviewed Ashley and her grandmother Ann in New York (See T.T. pgs: 453, 488).

On June 15, 2006, the defendant was arrested (See T.T. Pgs: 456-457). On June 16, 2006, then 14 year old Ashley was interviewed by the Queens County prosecutor (See T.T. 459, 488) and on June 21, 2006 Ashley underwent an assault examination at the Queens Child Advocacy Center (See T.T. Pgs: 489,

552-553) where Ashley was examined by Medical Director (Dr. Jamie Hoffman-Rosenfeld) alleged to be an expert in the field of pediatrics and child sexual abuse (See T.T. pg: 531) with thirty years of experience (See T.T. pg: 566).

Ashley told said doctor that she had been sexually abused, and that she had a boyfriend, but never had sex with him (See T.T. pgs: 551-586).

On July 5, 2007 Ashley returned for further medical examinations, and was placed on her back, her feet were placed in stirrups, and her knees were dropped to the sides. A "Speculum was placed inside of her vagina, the doctor used the larger of two adult speculums because Ashley "Clearly" had the size and stature of an adult woman and "developmentally" had adult genetalia". The doctor used a Colposcope* which is an instrument that provides a powerful light and magnification to examine the genetalia of children who have been suspected of being sexually abused.

---

\*      Colposcpoe   =   Is known as a gynecological tool that magnifies and photographs areas where injuries or trauma may be visible (See 426 F.3d 588, at 594, as defined by one Dr. Bella Silecchia, Director of Pediatrics Service Program at Nassau County Medical Center.

The doctor took genital and anal samples and determined that Ashley did not have any sexually transmitted diseases. Furthermore, said doctor observed that Ashley was at the most advanced stage of puberty -- meaning she was an adult female with pale pink estrogenized hymen. The doctor also observed that Ashley had a symmetric, uninterrupted, narrow hymenal rim with no visible injury or scars (See T.T. pgs: 537-564).

On March 12, 2007, Ashley was examined at the Queens Medical Facility, this time by Dr. Rosenfeld and another doctor (See T.T. Pgs: 492, 560) the same large speculum was used and a different technique was employed to really stretch the [Hymenal] membrane to make sure the doctor's had seen everything (See T.T. Pgs: 560-561) Ashley felt the examination hurt a little more than the last time, but understood it was because [the doctor] wanted to make sure (See T.T. Pg: 492). The doctor was spreading apart the lips on her vagina, sticking the "Plastic thing" inside her vagina, opening it up so she could get a better view, taking pictures and collecting genital and anal samples (See T.T. Pgs: 492, 561-562). The examination yielded no new information, as she first stated in her second report, dated March 12, 2007. There, doctor Rosenfled reiterated that Ashley had a thin uninterrupted hemenal membrane without "indentifiable" transection and that the absence of a complete transection does not negate abuse or penetration since Ashley's vaginal opening and the elastic nature of the thin hymen is "More than adequate to enable penetration to occur without trauma to the hymen" (See Tirla people's exhibit 3).

Doctor Hoffman-Rosenfled explained that the hymen is the "Membranal tissue that surrounds the opening of the vagina and must be passed through before entering the vaginal canal (See T.T. Pgs: 540, 546, 547) Rosenfeld debunked the "Myth" that the presence of an opening in the hymen of a female

means there has been penetration, explaining that the opening is present at the time of birth (See T.T. Pg: 543) furthermore, that an "Imperforate" hymen – without an opening – is an "abnormality" that must be corrected surgically (See T.T. Pgs: 544, 545), said doctor went on to testify that "in a young girl the hymen is "very thin" and almost transparent (See T.T. Pgs: 544, 545) that a couple of years before menstruation, estrogen -- the female hormone responsible for puberty -- causes the hymenal tissue to become "Boggy, stretchable, elastic, and resilient", (See T.T. Pg: 541) that the hymenal tissue is "required to stretch with penetration of the vagina, and the introduction of estrogen during prepubescence allows this stretching to occur without "breakage" or other injury (See T.T. Pgs: 545, 546, 563) that estrogen is very "powerful" and can also obliterate an old trauma, because of these estrogen effects, whether there has been sexual trauma may be "difficult if not impossible to detect visually once the girl goes through puberty".

Doctor Rosenfeld also testified that the average age girls begin puberty around eight or nine, at that time the female hormones begin to cause changes in girls, typically the growth of breast buds, and hair in the armpits and genitalia, and changes to the hymenal tissue (See T.T. Pgs: 541-542).

Furthermore, that the first menstrual period, and development of adult features, normally occur within two to three years after the onset of puberty (See T.T. Pg: 542) because of the estrogen effects, the hymen is "not a structure that necessarily gets injured with sexual abuse, sexual assault, or voluntary sex" (See T.T. Pgs: 569-570). After intercourse, the hymen does not necessarily have any visible injury [of being] torn or broken, or any other physical evidence of the penetration trauma of intercourse (See T.T. Pg: 569) many women never bleed with first intercourse and the majority of teenagers and women who report sexual activity – whether consensual or non consensual

- 12 -

have no evidence of traumatic injury to the hymenal tissue (See T.T. Pg: 563). As one example, Rosenfeld described a study of thirty pregnant teenagers who were examined for "any evidence of traumatic injury to the genetalia, specifically the hymen, and in the majority of these cases their hymen had no visible injury" (See T.T. Pg: 569) that girls had "visible hymens that looked like they had not been traumatized in any way" (See T.T. Pg: 569) even when the woman is examined in the "acute period" there may be "no visible physical medical evidence of injury to the genetilia because of the unique nature of the tissue" -- its ability to stretch and its resilience (See T.T. Pg: 565) by the same token, when there is injury, it can heal over time and "leave absolutely nothing visible to be seen" (See T.T. Pg: 563) and the healing can occur within a matter of days. So when there is any delay between the event and the examination, the "healing can be complete without any visible residual" (See T.T. Pgs: 563-564) Rosenfeld further testified that "if any adult male had placed his penis inside Ashley when she was twelve, move it in and out of her vagina, and then removed it, and if Ashley was examined one and one half years later with a visible hymen and no visible injury or scarring, there was "absolutely nothing about that scenario that is inconsistent with allegations of sexual assault" (See T.T. Pg: 567) Rosenfeld testified that the answer was the same if the scenario changed, and the intercourse had started when Ashley was eight, and continued weekly for one or two years (See T.T. Pgs: 583-586).

On cross examination, defense counsel (Johnson) apparently intended to question Dr. Hoffman-Rosenfeld about the alleged victim's sexual history to demonstrate that she had engaged in sexual behavior with her alleged boyfriend. Counsel thus, moved on to ask about scars, bruises, scrapes and scratches and doctor Rosenfled discovered having found none, said doctor

stated; "There was nothing on physical exam, there was no physical evidence correct". (See T.T. Pgs: 573, 574, 585).

Trial counsels apparently, did not ask to be allowed to examine the slides of the photographs taken during Dr. Rosenfeld's examination using the Colposcope during pre trial disclosure, and counsels did not once refer to these slides during cross examination. The defendant hereforth, contends that the trial counsels faulted in failing to conduct an adequate pre-trial investigation into critical medical evidence, for example; Trial counsels never obtained copies of the colposcopic slides and never arranged for their evaluation by an independent expert. The defendant affirms that this error was most substantial because it limited trial counsel's ability to effectively cross examine Dr. Rosenfled, and trial counsel's cross examination in fact demonstrated that counsel possessed "little understanding of the medical fundamentals and how they might impact an expert's evaluation of the critical question in this case". The defendant further affirms that "had trial counsels consulted with a medical expert, it is likely he would have been able to present expert testimony to largely rebut the conclusions of Dr. Rosenfeld, this would have cast considerable doubt on Dr. Rosenfeld's testimony that no physical evidence is need in order to believe that said victim was sexually abused, and supported and inference that "no sexual abuse had occurred and that no penetrating sexual activity whatsoever had taken place". The defendant further claims that trial counsels faulted for deciding on a theory of defense without having conducted an adequate investigation into alternative, complementary defense. Clearly, failing to discover and present potentially exculpatory evidence, could not be explained by any reasonable trial strategy. This was particularly the case, because the exculpatory evidence that counsels failed to discover would have been entirely consistent with the fact that

~e was no penetration, or sexual abuse. Moreover, a defense backed by expert witness testimony would have been considerably more compelling than a simple denial of sexual abuse, because it would have not only rebutted the prosecution's medical evidence, but would have also cast considerable doubt on all of the accusations made by Ashley in her testimony. Moreover, at trial the prosecution called Dr. Don Lewittes as an expert witness, a New York State Licensed Psychologist, whom testified on behalf of the prosecution concerning "Child Sexual Abuse Accommodation Syndrome" and as to the impact of traumatizing events on memory the "blurring effect" et al the on set of adolescence could trigger disclosure of child sexual abuse because it increases a child's awareness of her own sexuality. The defendant contends that if counsels would have at minimum investigated and or consulted with an expert in the field of psychology, concerning what the prosecution's expert witness testified about, then trial counsels would have found that at least once before the prosecution's expert psychologist testified in a similar case (426 F.3d 588, *600, Gersten v. Senkowski, (C.A.2(N.Y.)2005) where, one doctor John C. Yuille, a forensic psychologist and professor at the University of British Colombia, submitted an affidavit reviewing Dr. Lewittes's testimony (similar to that which he gave in the case at bar) Dr. Yuille is a member of various professional associations for forensic psychologists and the author of over seventy published journal articles, six texts, and twenty one text chapters on topics related to the psychology of child sexual abuse. Dr. Yuille's work has included training law enforcement in evaluation of the credibility of allegations of child sexual abuse, and he has testified as an expert on the psychology of child sexual abuse in numerous judicial proceedings in the United States and Canada. In vast majority of these cases he testified on behalf of the government. In the Gersten v. Senkowski

case, Dr. Yuille stated that "in point for point of fact, what was once known as 'Child Sexual Abuse Accommodation Syndrome' is no longer regularly accepted in the child abuse research community". he further reported that the inventor of the theory, Dr. Roland Summit, "has retreated from this position of classifying it as a 'Syndrome'", and that "research in the field that the 'Symptoms' which were alleged components of the syndrome do not occur regularly enough in those who truly have the victims of sexual abuse to call it a syndrome". Dr. Yuille concluded that "Dr. Lewittes' testimony with regard to the Child Sexual Abuse Accommodation Syndrome and its alleged five components has no validity and is not regularly accepted in the scientific community". Furthermore, regarding Dr. Lewittes testimony as to the impact of traumatizing events on the memory-the "blurring effect" Dr. Yuille stated bluntly that, after a distinguished career focused on understanding "issues of suggestibility, memory and child sexual abuse", he could state with some assurance that Dr. Lewittes' opinion that trauma 'blurs' memory is erroneous, and that "the best research in the field of child sexual abuse, memory and suggestibility uniformly reveals that trauma, has varying effects on the memory, ranging from memory enhancement to diminishment". Moreover, regarding Dr. Lewittes' testimony that the onset of adolescence could trigger disclosure of child sexual abuse, because it increases a child's awareness of her own sexuality, Dr. Yullie reported that "in his years of research in this field, he never encountered this proposition", in short "this theory has no scientific validity in the field of child sexual abuse". Dr. Yullie concluded that had he been consulted by the defense prior to trial, he would have offered the opinion contained in an affidavit he provided, and had he been called to testify, he would have given testimony contained in his affidavit (cf: 426 F.3d 588, *601).

In regards to the expert testimony of Dr. Rosenfled, and her allegation

- 16 -

that no physical evidence of sexual abuse, and or penetration does not negate
the claim of sexual abuse. The defendant affirms that in the case of Gersten
v. Senkowski, 426 F.3d 588 (C.A 2(N.Y.)2005) where a defendant was accused of
sexually assaulting his daughter between the years 1990, 1995 and 1998 at ages
5-13, one doctor, Jocelyn Brown, specializing in pediatric medicine and the
founding and then current director of the Child Advocacy Center at Columbia
Presbyterian Hospital, submitted and affidavit (in that case) reviewing the
medical evidence. Dr. Brown's work primarily concerns forensic medicine in the
area of child sexual abuse, and her practice frequently involves close
cooperation with law enforcement. Dr. Brown had testified as an expert witness
in New York State criminal proceedings in approximately 80 cases, in 78 of
these she testified on behalf of the government. In her affidavit submitted
upon reviewing the prosecution's medical expert's testimony and medical
records and slides of the magnified photographs taken during the examination
through the colposcope, Dr. Brown found that the clefs at the 5, 9, and 11
o'clock position on the alleged victim's hymen, reported by one Dr. Silecchia
(expert witness for the prosecution in the Gersten v. Senkowski case) Dr.
Brown noted a number of erroneous aspects of Dr. Silecchia's testimony. First,
Dr. Brown stated that Dr. Silecchia was incorrect in stating that "Clefs" and
"Notches" are 'v shape' interruptions of the hymenal tissue. Moreover,
"Notches are commonly found on the hymenal tissue of adolescents and are not
indicative of penetrating trauma to the hymen". That on the other hand "Clefs,
which are 'v shape' and are transsections in the hymenal tissue beginning from
its edge, or rim, to its base, are indications of penetrating trauma".
Furthermore, Dr. Brown's review of the colposcopic slides did not reveal any
clefs at the reported locations. Rather, these magnified photographs of the
alleged victim's hymen revealed only one notch at the 4 o'clock position, and
no clefs. Moreover, regarding the anal examination conducted by Dr. Silecchia

in the Gersten v. Senkowski case, Id, upon review of the medical records ect.,

Dr. Brown found that the magnified photographs of the alleged victim's anus

taken through the colposcope and found that they did not reveal the "tearing

of the mucosa" or the "smoothed out rectal mucosa or ruga of puckering around

the anus" reported by that case's expert witness Dr. Silecchia. Moreover, Dr.

Brown stated that "the association of these findings are not currently

recognized in the scientific community as dispositive of penetrating trauma to

the anus" Dr. Brown further stated that the "healed tissue with a scar

discovered by Dr. silecchia was "of no clinical significance" of factors

unrelated to penetrating trauma of the anus", thus, in essence, in the Gersten

v. Senkowski case, id, Dr. Brown concluded that the physical evidence did not

appear in any aspect to be indicative of penetrating trauma to the alleged

victim's vagina or anus, and thus none of the medical evidence corroborated

the allegations of abuse or the alleged victim's testimony. Dr. Brown further

stated that had she been consulted by the defense prior to trial, she would

have offered the opinions contained in her affidavit, and had she been called

to testify, she would have given the testimony contained in her affidavit.

Considering the facts found during his legal research of the facts of the case

at bar, the defendant affirms that he has indeed been denied the effective

assistance of trial counsel, based upon the above facts, moreover, that the

outcome of the defendant's case at bar would have been different, if trial

counsel would have made proper investigation in regards to the medical

evidence submitted at trial, and if said trial counsel would have sought to

consult with at minimum with expert witness in the fields of psychology and or

child sexual abuse, then said counsel would have infact been informed enough

to make an affirmative defense with certainty that there was no physical

evidence of penetration, and or sexual abuse, and that the allegations made

- 18 -

against the defendant were simply untrue.

The situation may have been different in a case where objective evidence exists implicating the defendant in a crime, such as bodily fluids, identified as the defendant's, or where the prosecution offered third party eye witness, but where (as in the case at bar) the only direct evidence that any crime occurred or, that if it did, the defendant committed it, was the testimony of the alleged victim, and for a defense counsel to simply concede to the medical evidence (as in the case at bar) without any investigation into whether it could be challenged, was indeed performance that the state Court should not reasonably find to be objectively reasonable. Cf; Eze id.

A lesson to be learn from Lindstadt and Pavel is that when a defendant is accused (as in the case at bar) of sexually abusing a child and the evidence is such that the case will turn on accepting one party's word over the other's, the need for a defense counsel to at minimum consult with an expert to become educated about the 'vagaries of abuse indicia' is critical. The importance of consultation and pre-trial investigation is heightened where, as in the case at bar, the physical evidence is less that conclusive and open to interpretation. 321 F.3d at 128.

As the District Court Correctly Noted;

"There is no pre-se rule that requires an attorney to seek out an expert" 299 F.Supp. 2d at 100-01. We do not even mean to hold that expert consultation is always necessary in order to provide effective assistance of counsel in child sexual abuse cases – we need not address the issue in such generality, but do note the Supreme Court's cautionary observation that a standard of reasonableness applied as if one stood in counsel's shoes spawns few hard edged rules. Rompilla v. Beard, 545 U.S. 374; 125 S.Ct. 2456, 2462, 162 L.Ed. 2d 360 (2005). However, the defendant affirms that in the case at bar, such a

failure was not justified as an objectively reasonable strategic choice. here no facts known to a trial defense counsel at the time that he adopted a trial strategy that involved conceding the prosecutor's medical evidence could justify that concession. Particularly troubling is counsel's failure to examine prior to trial the colposcopic slides that were made to record the physical evidence of trauma purportedly observed by the prosecution's expert witness, as a direct photographic record of the trauma or lack thereof, to the alleged victim. It would be difficult to exaggerate the significance of these slides to defendant's case. Defendant counsel's apparent failure to even request to examine them was a serious dereliction on his duty to investigate the facts and circumstances of the defendant's case. See ABA STANDARDS FOR CRIMINAL JUSTICE 4-4.1 (3d d. 1993) "Defense Counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities". See also ROMPILLA 125 S.Ct. at 2466 (finding ABA STANDARD USEFUL "Guidelines to determining what is reasonable" (Quoting WIGGINS V. SMITH, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed. 2d 471 )2003).

As it turned out (in the case at bar) defendant's trial counsel was unable to present any evidence/explanation for the evidence other than the defendant's guilt. This was not the result of a reasonable strategic decision, but only of counsel's failure to conduct an adequate pre-trial investigation of the evidence. Even assuming counsel's knowledge that the alleged victim had, as a matter of fact been penetrated, this could not excuse counsel's complete failure (as in the case at bar) to investigate whether the prosecution would be capable of proving that the penetration had occurred. Knowledge of such penetration is not equivalent to knowledge that an investigation of evidence of penetration would be fruitless.

- 20 -

Moreover, defense counsel may fail to conduct an investigation and then rely on resulting ignorance to excuse his failure to explore a strategy that would likely have yielded exculpatory evidence. For counsel to forgo even an investigation of the possibility of challenging the physical evidence, in favor of an unsupported theory that someone other than the defendant penetrated the victim, or an unsupported assumption that the victim would not testify, was not an objectively reasonable performance. Most importantly, there was nothing strategic about a decision to concede the physical evidence, with no educated basis for doing so, in favor of uninvestigated and univestigable theories about the victim's relationship with a possible boyfriend and her willingness to testify falsely against the defendant.

As the District Court noted; failing to present exculpatory evidence is not a reasonable trial strategy. 299 F.Supp. 2d at 104. Thus, the County Court's holding otherwise, which was not supported by any analysis or argument to justify a conclusion that counsel's decision to settle on a defense without having conducted an adequate pre-trial investigation of possible alternative strategies and defense was objectively reasonable, was an unreasonable application of Strikland.

As if the above claims were not bad enough, in the case at bar, in connection to the above claims, the defendant affirms that the prosecution offered its psycological expert testimony in order to bolster the alleged victim's credibility, primarily by explaining her failure to reveal the abuse earlier and her inability to provide a consistent and detailed account of the abuse alleged.

The defense counsel's failure to consult or call an expert on the psychology of child sexual abuse, or educate himself sufficiently on the scientific issues, therefore, said counsel was unable to mount an affective

cross-examination, and missed an opportunity to rebut this attempt at bolstering the alleged victim's credibility.

In the case at bar, the prosecution's entire case rested on the credibility of the alleged victim's testimony. Indeed, even a minimal amount of investigation into the purported "child sexual abuse accomodation syndrome" would have revealed that it lacked any scientific validity for the purpose for which the prosecution utilized it, as a generalized explanation of children's reactions to sexual abuse, including delayed disclosure and blurred memory.

Similarly, it would appear that had trial counsel investigated the possibility of challenging the prosecution's psychological expert, he would have discovered that exceptionally qualified experts could have been found who would challenge the scientific validity of the prosecution expert's other theories about, for example, adolescence prompting disclosure of sexual abuse.

Clearly, defense counsel's lack of preparation and failure to challenge the credibility of key prosecution witness, could not be based on sound trial strategy, and it was an unreasonable application of Strickland for any county Court to hold otherwise.

Sentiments have been expressed by lower New York Courts, See; e.g. People v. Michael M. 162 Misc. 2d 803, 618 N.Y.S. 2d 171, 177-78 (1994) (discussing at length the scientific literature on child suggestibility in abuse cases); in re R/M Children, 165 Misc. 2d 441, 627 N.Y.S. 2d 869, 872-73 (N.Y. Fam. Ct. 1995)(Same). In the case at bar if defense would have investigated such[7] literature, he would have found and made an affirmative defense that suggestibility lead to said child to make said claims contrary to the facts that the medical records show no sign of penetration or sexual abuse, furthermore, and if said counsel may had consulted with and presented an expert witness on said fact (for the purpose of aiding trial counsel with the

assistance of an expert said field) or presented an expert witness concerning testimony of physical indicia of sexual abuse, then the results of said trial would have been different. In at least two cases for the Second Circuit, Habeas Corpus relief had been granted to a defendant on the ground that (as in the case at bar) their trial counsel was ineffective for failing to consult with a medical expert familiar with issues concerning child sexual abuse. In Lindstadt v. Keane for example, the Court suggested that it is "difficult to imagine a child abuse case ... where the defense would not be aided by the assistance of an expert" 239 F.3d 201 (quoting Beth A. Townsend, defending the "indifensible". A primer to defending allegations of child abuse. 45 A.F.L. Rev. 261, 270 (1998).

In Pavel v. Hollins, the Court likewise found that a criminal defendant had been prejudiced (as in the case at bar) by counsel's failure to call a medical expert witness to testify -- or at least to advise counsel concerning indicia of physical abuse in a child molestation case. 261 F.3d at 224-25. The Pavel Court further noted that there is "little question that a child sexual abuse case often present a fertile, indeed, a necessary, area for expert assistance". Id, at 224 (quoting United States v. Tornowski, 29 M.J. 574,580 (1998); See also Holsomback v. White, 133 F.3d 1382, 1387 (11 Cir. 1998) (Counsel ineffective for failure to call medical expert to testify about physical abuse in child sexual abuse case).

Apparently. failure to consult a medical expert knowledgeable about physical indicia of child sexual abuse would appear, after review of the above cited facts to be evidence of nearly per-se ineffectiveness in this circuit and clearly in the case at bar.

the defendant affirms that the prosecution's case rested entirely on the credibility of the alleged victim. All other evidence presented by the

- 23 -

prosecution was indirect evidence offered to corroborate aspects of the alleged victims story. The defendant argues that defense counsel's failure to investigate the prosecution's evidence led said counsel to decide not to challenge what was clearly the most significant corroborative evidence (the medical expert testimony) that the physical condition of the alleged victim supported a conclusion that penetration had taken place. Furthermore, counsel's decision not to consult with or call an expert precluded counsel from offering a potentially persuasive affirmative argument that the alleged victim's condition was not indicative of or consistent with forced sexual penetration.

Counsel's failure also prevented him from challenging the psychological evidence offered to explain the victim's delay in coming forward and failure to recall events in detail as the result of something other than a lack of credibility which would as a general matter be a common inference to draw from such shortcomings. Thus, the defendant was indeed prejudiced by trial counsel's shortcomings, and if not for said counsel's shortcomings the outcome of the case would have been different.

In light of the alleged victim's allegations of continuing rape and sodomy over a period of years, the absence of physical indicia of such abuse would necessarily have been troubling to a trier of fact. 299 F.Supp. 2d at 91.

The defendant further contends that the trial counsel's should have consulted with and called as well as investigated the expert witness evidence, clearly, while it itself is not an attack on the alleged victim's credibility, would have made a potentially persuasive attack based on the absence of physical indicia of abuse that a reasonable trier of fact would expect to be present in light of the alleged victim's story. Although the prosecution may

- 24 -

characterize their evidence against the defendant as "overwhelming" on the contrary, the evidence presented by the prosecution to establish the defendant's guilt was no stronger than it was in Lindstadt, which the United States Court of Appeals characterized as "a case of underwhelming evidence". 239 F.3d at 205. In the Lindstadt case as here, the prosecution presented the victims' eyewitness testimony, corroborative testimony from the victim's mother and the medical expert who examined her, and bolstering testimony from an expert on child phsychology, Id at 195. In Lindstadt, as here, the only direct evidence against the defendant consisted of the eyewitness testimony of the alleged victim, which was not corroborated by testimony from any other eyewitnesses.

Here, other than the prosecution's questionable medical expert testimony, the prosecution offered no objective evidence to support an inference that any crime took place at all, and presented no physical evidence linking the defendant to any crime that occurred. No semen or bodily fluids were recovered that could be connected to the defendant. Rather, all of the prosecution's evidence, with the exception of the alleged victim's testimony and the prosecution's questionable medical expert testimony – such as the mother's testimony about emotional outburst on revealing the abuse, and the psychological expert's explanation of the victim's delay and lack of detailed memory – was only indirect and weakly corroborative of the victim's story or was offered to bolster her credibility.

Not only was the evidence against the defendant relatively thin, but most of it could have been, but was not, effectively challenged by the defense or an informed cross examination. The victim's credibility, the psychological expert's bolstering, and the medical expert medical testimony concluding that penetration had taken place, all could have been seriously undermined had

defendant's trial counsel offered the expert testimony that was available but he failed to discover.

As where the record evidence in support of a guilty verdict is thin, as is here, there is more likely to be prejudice. This is even more true where counsel's failures to to something as important as the medical evidence in this case -- the only objective evidence that a crime occurred and the only evidence directly corroborating any aspect of the victim's story. See Lindstadt, 239 F.3d at 204. Thus, based upon the above cited facts, the defendant argues that he has been denied effective assistance of counsel as guaranteed by the 6th Amendment to the united States Constitution, according to the provisions of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The defendant was indeed prejudiced by trial counsel's errors, because "given the significance of the [medical] experts testimony", "There is a reasonable probability that the defendant would have not been convicted had defense counsel conducted an adequate investigation into the medical evidence and called an expert to testify". "Trial counsel's failure as to the psychological expert testimony, taken together with the failure to consult with a medical expert, rendered the case for ineffectiveness all the more serious", considering the importance of this omitted expert testimony, the defendant's C.P.L. § 440.10 Motion to Vacate the Judgment of Conviction should be granted.

The indictment dismissed, or a new trial ordered, and for all other relief this Court may deem just and proper.

Respectfully Submitted

cc: Richard A. Brown
    District Attorney of
    Queens County, N.Y.

Sworn to before me this

21ˢᵗ day of Nov. 2012

Notary Public

KEITH J. SPOSATO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SP6248188
Qualified in Putnam County
My Commission Expires September 19, 2015

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY  NEW YORK
---------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

                    Plaintiff                          AFFIDAVIT OF SERVICE
                                                            BY MAIL

        --against--

ABU KHAN                                          Queens County
                                                  Indict. No. 2147/2006

                    Defendant
---------------------------------------------------
STATE OF NEW YORK      )
                       )ss.:
COUNTY OF DUTCHESS     )


        I, ABU KHAN, having first been duly sworn, depose and say that:

1.    I am the above named defendant, am 18 years of age or older, and am currently incarcerated in the Green Haven Correctional Facility, located at P.O. Box 4000, Stormville, New York 12582.

2.    On the below indicated date of notarization, I served a true and correct copy of the herewith Notice of Motion and Affidavit on opposing counsel, Queens County District Attorney, by placing said documents in a properly addressed envelope with postage prepaid and placing said envelope in the prison mailbox.


                                          Respectfully Submitted

                                          _____


Sworn to before me this

_21ˢᵀ_ day of _Nov_. 2012

_____
Notary Public

KEITH J. SPOSATO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SP6248188
Qualified in Putnam County
My Commission Expires September 19, 2015

Courtesy Copy

Original Filed in ECF
docket number 14-CV-5456

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:   SECOND DEPARTMENT
----------------------------------------x    A.D. No. 07-07185

THE PEOPLE OF THE STATE OF NEW YORK,    :    Queens Co. Ind. No.
                                             2147/06
                    Respondent,         :    Return Date: 2/1/13

              -against-                 :    AFFIRMATION OF
                                             APPELLATE COUNSEL
ABU KHAN,                               :    IN RESPONSE TO
                                             APPELLANT'S MOTION
                    Defendant-Appellant.:    FOR A WRIT OF ERROR
                                             CORAM NOBIS
----------------------------------------x

     JONATHAN M. KRATTER, an attorney admitted to practice in the

courts of this State, hereby affirms under the penalties of perjury

that the following statements are true, except those made on

information and belief, which he believes to be true:

     1.  I am associated with the office of Lynn W. L. Fahey, who

was assigned by order of this Court, dated July 30, 2009, to

represent appellant on appeal from a judgment rendered in Supreme

Court, Queens County, on July 24, 2007, under Indictment 2147/06,

convicting him, after a jury trial, of rape in the first degree

[P.L. §130.35(4)], course of sexual conduct against a child in the

second degree [P.L. §130.80], endangering the welfare of a child

[P.L. §260.10], and sexual abuse in the second degree [P.L.

§130.60(2)].

2.  I make this affirmation in response to appellant's motion for a writ of error <u>coram</u> <u>nobis</u>, which is on the February 1, Court's 2013, motion calendar.

3.  Appellant was accused of sexually abusing his girlfriend's young daughter while the family lived in Queens County.  She testified that, after the family moved to Florida in May of 2001, appellant began having frequent intercourse with her and that in November of 2004, when she and appellant were both in Queens, he had intercourse with her there as well.  I drafted a brief for appellant arguing that admission of the numerous rapes in Florida and of photographs of the complainant at the time the incidents began was highly prejudicial and lacked probative value.

4.  In a decision and order dated October 25, 2011, this Court affirmed the judgment.

5.  Leave to appeal to the Court of Appeals was denied by Hon. Robert S. Smith on January 19, 2012.

6.  In his motion for a writ of error *coram nobis*, appellant complains that I failed to correspond with him about the issues to be raised in his appeal or to send him a copy of the brief before filing it.  He also asserts that I should have argued that his trial attorney was ineffective for failing to call expert witnesses to counter the expert testimony presented by the prosecution.

2

7.  Appellant's contentions that I did not correspond with him about issues or send him a copy of the brief before filing it are inaccurate.  My letters that appellant has attached to his motion discuss the issues, and my February 23, 2011, letter states that a draft of the brief was enclosed.

8.  The appellate record does not contain facts necessary to appellant's claims that his trial attorney was ineffective for failing to call expert witnesses, so I could not raise those points in his appeal.  Only information outside the record information can establish that defense counsel could have called experts who would have substantially supported appellant's defense.

Dated:     New York, NY
           December 10, 2012

_____
          Jonathan M. Kratter

3

Courtesy Copy
Original Filed in ECF
docket number 14-cv-5456

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
----------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,       :      Return Date:
                                                   February 8, 2013

                              Respondent,   :

                                            :      AFFIRMATION IN
                                                   OPPOSITION TO
                                                   DEFENDANT'S
          -against-                         :      MOTION FOR A WRIT
                                                   OF ERROR *CORAM*
                                            :      *NOBIS*

ABU KHAN,

                                            :      Queens County
                                                   Ind. No. 2147/06

                              Defendant.    :
----------------------------------------------------------------x      A.D. No. 2007-07185

      JILL A. GROSS MARKS, an attorney duly admitted to practice in the State

of New York, affirms the following statements to be true under the penalty of perjury:

      1.     I am an Assistant District Attorney, of counsel to Richard A. Brown, the

District Attorney of Queens County.  I am submitting this affirmation in opposition to

defendant's motion for a writ of error *coram nobis*.  I make the statements in this affirmation

upon information and belief, based on my review of the records and files of the Queens

County District Attorney's Office.

### Factual and Legal Background

      2.     On numerous occasions in 1997 to 2000, defendant had sexual contact

with his five to eight year old daughter "AM" at their home in Queens County.  Defendant's

sexual contact with AM escalated to rape on numerous occastions between 2001 and 2004

when the family was living in Florida. On November 30, 2004, defendant raped twelve-year-

old AM at her grandmother's home in Queens County.  The next day, defendant went to Florida, but was estranged from AM's mother; AM stayed with her grandmother for the school year, returning home to Florida in August 2005. The following Easter, AM disclosed the rape to her mother.

3.    For these crimes, defendant was charged with Rape in the First Degree (Penal Law § 130.35[4]),  Course of Sexual Conduct Against a Child in the Second Degree (Penal Law §130.80), Endangering the Welfare of a Child (Penal Law § 260.10[1]), and Sexual Abuse in the Second Degree (Penal Law § 130.60[2])(Queens County Indictment Number 2147/06).

4.    Defendant proceeded to trial before the Honorable Ronald D. Hollie, Supreme Court, Queens County, and a jury.  At the conclusion of the trial, defendant was found guilty of all counts and sentenced to concurrent determinate prison terms of fourteen years for rape, ten years for sexual conduct, five years for endangering, and one year for sexual abuse, plus post-release supervision.

5.    On March 15, 2011, defendant perfected his direct appeal by filing a brief, through counsel, with this Court, raising one two-part claim.  Defendant argues he was denied a fair trial when the trial court improperly exercised its discretion in allowing the People to present uncharged-crime evidence that defendant began raping his stepdaughter when she was around nine years old and the family lived in Florida and two old photographs depicting her age when defendant began to sexually abuse her ten years before trial.

2

6.      The People filed a respondent's brief, arguing that the uncharged-crime evidence was relevant to explain the father/daughter relationship between defendant and the victim, to complete the temporal gap in the narrative of the charged crimes, and to rebut the defense claim that the victim's delayed disclosure was a fabrication.  And the school photographs of the child were relevant to establish the victim's age and state of mind when the abuse started ten years before trial.  The People further argued that the trial court exercised sound discretion in concluding the evidence was far more probative than prejudicial and defendant's conviction should be affirmed.

7.      In a decision and order dated October 25, 2011, this Court affirmed defendant's conviction, holding that the trial court "providently exercised its discretion in permitting the prosecution to elicit evidence that the defendant, charged with sexually touching the younger-than-11-year-old victim from 1997 to 2000 while the family lived in Queens, and with one rape of the victim in Queens in November 2004, raped the victim on frequent occasions between 2001 and 2004 while the family lived in Florida. The evidence was properly admitted to demonstrate the defendant's pattern of escalating sexual conduct toward the victim during the period between the charged crimes, and as relevant background information to enable the jury to understand the defendant's relationship with the victim and to place the events in question in a believable context, particularly since the defendant raised the issue of the victim's delayed disclosure of the charged criminal conduct." *People v. Khan*, 99 A.D.3d 1014, 1014-1015 (2d Dept. 2011).  Moreover, this Court held, "the

3

probative value and the need for the evidence outweighed any potential prejudice to the defendant, particularly in light of the Supreme Court's limiting instruction to the jury as to the proper use of the uncharged crimes evidence." *Id.*

8.     On December 12, 2011, defendant's subsequent application to the Court of Appeals for leave to appeal the Appellate Division's denial of permission to file a supplemental brief was dismissed, *People v. Khan,* 18 N.Y.3d 859 (2011), and on January 19, 2012, his application for leave to appeal the Appellate Division's affirmance of the judgement of conviction was denied. *People v. Khan*, 18 N.Y.3d 884 (2012) (Smith, J.).

9.     In a letter dated February 20, 2012, defendant sought leave to reargue his appeal to the Appellate Division. The People submitted opposition papers, and in an order dated April 6, 2012, the Appellate Division denied reargument.

10.     In the meantime, on or about March 16, 2013, defendant also moved in the trial court for an order vacating his judgment of conviction pursuant to section 440.10 of the Criminal Procedure Law. Defendant claimed the evidence was insufficient and weighed against the verdict, he received the ineffective assistance of trial counsel, and there was unspecified newly discovered evidence.

11.     In responsive papers dated April 11, 2012, the People argued that the claims were procedurally barred and the motion should be summarily denied. In particular, the People argued:  a) the claims were based on the record of the proceedings in the trial court and could have been raised on direct appeal; and (b) allegations of facts essential to support

4

the motion were made solely by the defendant, unsupported by any other affidavit or evidence, and there was no reasonable possibility that these unsupported allegations were true.

12.   By decision and order dated July 12, 2012, Supreme Court (Hollie, J.) denied defendant's motion "in all respects."   In a memorandum opinion, the court held that defendant was barred from raising issues that were based on the record because defendant could have raised them on appeal but failed to do so (*Id.*)  In addition, the court held that defendant had not "set forth sufficient newly discovered evidence of such a nature that if said evidence had been received at trial, the verdict would have been more favorable to the defendant" (*Id.*).

13.   Subsequently, on August 6, 2012, defendant sought leave to appeal to this Court from Supreme Court's order of denial.  The People submitted opposition papers, and in an order dated October 19, 2012, this Court denied leave.

**The Present Motion**

14.   In papers dated November 13, 2012, defendant moves *pro se* for a writ of error *coram nobis*, claiming that he was denied the effective assistance of appellate counsel who failed to communicate with defendant prior to submitting the Appellate Division brief,  and failed to investigate the medical evidence of rape or to consult defense experts to rebut the People's expert medical and psychological evidence regarding the significance of a lack of physical evidence in a rape case and the workings of the Child Sexual Abuse

5

Accommodation Syndrome.[1]

15.     On December 13, 2012, the People received an affirmation from defendant's appellate attorney in response to defendant's *coram nobis* application.

16.     As explained more fully in the attached memorandum of law, defendant's claim of ineffective assistance of appellate counsel is meritless and his application should be denied.

WHEREFORE, and for the reasons set forth in the accompanying memorandum of law, the People respectfully request that defendant's motion for a writ of error *coram nobis* be denied.

Dated:_____ Kew Gardens, New York
            February 8, 2013

_____
JILL GROSS MARKS
Assistant District Attorney
(718) 286-5882

To:     Abu Khan
        07-A-4685
        Green Haven Correctional Facility
        P.O. Box 4000
        Stormville, N.Y. 12582

_____

[1] On or about November 21, 2013, defendant filed a section 440.10 motion to vacate the judgment of conviction in Queens County Supreme County, claiming he received the ineffective assistance of trial counsel who a) failed to adequately investigate the case; and b) failed to consult with or call a medical expert to challenge the medical evidence of penetration and the viability of the Child Sexual Abuse Accommodation Syndrome. The People's response to that motion is to be filed February 20, 2013.

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
-------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,    :       **MEMORANDUM**

                        Respondent,       :         **OF LAW**

        -against-               :

ABU KHAN,                      :

          Defendant.          :

-------------------------------------------------------------------x

## ARGUMENT

## DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

Defendant's appellate counsel provided him with effective assistance by raising meaningful and well-researched issues in his brief. Moreover, appellate counsel need not have raised every non-frivolous issue urged by defendant in his motions. Instead, appellate counsel properly exercised professional judgment in determining which issues to raise on appeal. And because defendant's claims are not properly appellate claims, counsel reasonably decided not to raise any of them in his brief on direct appeal. Indeed, defendant fails to raise a cognizable claim to support his contention that appellate counsel was ineffective and the writ should be denied.

To establish a claim of ineffective assistance of appellate counsel, a defendant must establish that his attorney did not provide him with "meaningful representation." *People v.*

7

*Stultz*, 2 N.Y.3d 277 (2004).  Thus, the  "essential inquiry in assessing the constitutional

adequacy of appellate representation is   .   .   .   whether, viewed objectively, counsel's

actions are consistent with those of a reasonably competent appellate attorney." *People v.*

*Borrell*, 12 N.Y.3d 365, 368 (2009); *see also People v. Ramchair*, 8 N.Y.3d 313, 316 (2007).

The Court of Appeals has noted that meaningful representation of an appellate

attorney "need not be perfect." *People v. Borrell*, 12  N.Y.3d at 368.  Thus, the Court has

explicitly stated that "this standard is not stringent – that it is in fact 'undemanding.'" *Id.,*

citing *People v. Turner*, 5 N.Y.3d 476, 482 (2005).  Indeed, the Court of Appeals has stated

that it has "often tolerated errors by counsel where the overall representation was nonetheless

capable of characterization as 'meaningful.'" *People v. Borrell*, 12 N.Y.3d at 368.  In short,

"the relevant and, indeed, dispositive threshold issue" when courts consider *coram nobis*

applications "is not whether defendant's representation could have been better but whether

it was, on the whole, constitutionally adequate." *Id.* at 370.

When considering the effectiveness of an appellate attorney, the appellate court should

review the "fairness of the proceedings as a whole." *Stultz*, 2 N.Y.3d at 284.  It follows that

the length of the brief and number of issues raised are significant but not dispositive factors

in assessing counsel's tactics. *Stultz*, 2 N.Y.3d at 285.  Consequently, counsel does not have

to "brief or argue every issue that may have merit" and "ha[s] latitude in deciding which

points to advance and how to order them." *Stultz*, 2 N.Y.3d at 285; *see People v. Borrell*, 12

N.Y.3d at 368; *see generally Jones v. Barnes*, 463 U.S. 745, 751-754 (1983).

8

Further, to establish ineffectiveness of counsel on appeal, a defendant must "'demonstrate the absence of [any] strategic or other legitimate explanations' for a decision not to brief" an issue." *People v. Borrell*, 12 N.Y.3d at 369, citing *People v. Rivera*, 71 N.Y.2d 705, 709 (1988). And a defendant cannot do this if the record reveals any strategy "*that might well have been* pursued by a reasonably competent attorney." *People v. Satterfield*, 66 N.Y.2d 796, 799 (1985) (emphasis added); *Flores*, 84 N.Y.2d at 188.

Finally, the competence of counsel is presumed. *People v. Postell*, 45 A.D.3d 609, 610 (2d Dept. 2007); *see Rivera*, 71 N.Y.2d at 709. The presumption of competence that is part of the "meaningful representation" standard applies to appellate counsel as well, recognizing that "[j]ust as defense attorneys enjoy a wide latitude in defending clients at the trial level, appellate lawyers treat cases with considerable differences in style and approach." *Stultz*, 2 N.Y.3d at 285.

When evaluating the appellate representation under the federal standards, a court must review appellate counsel's performance according to the two-pronged standard established for reviewing a trial counsel's performance in *Strickland v. Washington*, 466 U.S. 668, supra. See *Evitts v. Lucy*, 469 U.S. 387 (1985). This test requires that a defendant demonstrate first, that counsel's performance fell below an objective standard of reasonableness, and then, that there is a "reasonable probability" that, but for counsel's error, the outcome would have been different. *Strickland v. Washington*, 466 U.S. at 688-94.

As such, in attempting to demonstrate that appellate counsel's performance was

9

deficient based on a failure to raise a claim, a defendant must demonstrate more than the omission by appellate counsel of a non-frivolous argument; the defendant must also show that but for the failure to raise the argument, there is a reasonable probability that the outcome of the appellate process would have been different. *See Jameson v. Coughlin*, 22 F.3d 427, 429 (2d Cir.), *cert. denied*, 513 U.S. 888 (1994); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.), *cert. denied*, 513 U.S. 820 (1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1993), *cert. denied*, 508 U.S. 912 (1993).   There is  a strong presumption that an appellate counsel's decision not to raise other claims falls within a wide range of reasonable professional conduct. *Holmes v. Bartlett*, 810 F. Supp. 550, 561 (S.D.N.Y. 1993) quoting *Strickland v. Washington*, 466 U.S. at 689.

Applying these principles to defendant's claims, defendant here has not overcome the presumption of adequate assistance by showing that counsel's actions were deficient and prejudicial to him.   In this case, appellate counsel not only raised the only potentially meritorious issue before this Court and properly omitted issues that lacked merit, but also submitted a brief that was well-written, with relevant legal and factual arguments.   The one-point-brief submitted by appellate counsel was persuasive, competent, thorough, and wholly adequate in presenting defendant's strongest claims to this Court.   It effectively summarized the record and presented the hearing and trial proceedings in a light favorable to defendant. And appellate counsel chose colorable claims when he argued that defendant's right to a fair trial was violated by the admission of uncharged Florida crime-evidence and photographic

portraits of the child at the ages of five to seven.  Indeed, this Court found defense counsel's arguments compelling enough to warrant a relatively lengthy opinion, explaining why the trial court's challenged evidentiary rulings were proper.

Defendant, however, claims that he was denied effective assistance of appellate counsel because the issues raised by counsel were meritless, or could not have resulted in a reversal of his conviction, and because he failed to "raise a solidly meritorious argument regarding consultation with medical experts" (Defendant's Motion at 13).  Thus, although defendant claims counsel's assistance "was so nominal it amounted to the substantial equivalent of being assigned no counsel at all" (*Id.* at 1), defendant fails to identify any weakness at all in appellate counsel's chosen claims, relying instead on a general complaint that counsel "submit[ted] poorly drafted arguments" (*Id.* at 3, 13).  Defendant also asserts that, if more than nominal, counsel's assistance "still did not reach a level of performance sufficient to satisfy an objective standard of reasonableness" (*Id.* at 1).  Defendant is wrong, and his generalizations fail to appreciate the careful selection of appellate issues demonstrated in counsel's brief.  Indeed, had defense counsel succeeded in arguing that the uncharged-Florida-crime evidence and the photographs of the victim as a little girl were improperly admitted, he would have had a very strong argument that defendant's conviction should be reversed because of the damaging nature of that evidence.  Any experienced appellate attorney's review of the record would have revealed that these evidentiary issues were the most compelling issues on appeal. Thus, appellate counsel's raising of these issues, and his capable discussion of the relevant law and facts, is strong evidence of his

effectiveness.

Nor is there any merit to defendant's complaint about the issues appellate counsel should have raised. Defendant claims counsel was ineffective for "omitt[ing] meritorious arguments upon which a reversal of the conviction could of [sic] been had" (id at 3). Defendant cites (at page 3) appellate counsel's failure to consult a medical expert "to rule out . . . penetration" and a psychological expert to address the child sexual abuse accommodation syndrome. These issues, defendant claims, "were supported by both the facts in the record and prior decisional law. . . and should have been obvious from even a casual reading of the record" (Id at 3-4). But the consultation of experts is not the province of appellate counsel and hence the failure to do so would not have been a claim cognizable on direct appeal. In short, as the issues that defendant claims counsel failed to argue have no place in an appellate brief, defense counsel properly declined to raise them.

At most, appellate counsel could have argued that trial counsel was ineffective for failing to consult experts, but that is not defendant's claim. Nor would such a claim have been proper. As appellate counsel correctly notes in his responsive affidavit, defendant's claim of trial counsel's ineffectiveness could not have been raised on appeal. Defendant's *coram nobis* papers are replete with references to material about the potential nature and scope of testimony from defense experts -- but none of that is part of the record on appeal. Thus, a claim based on those allegations could not have been raised on direct appeal.

In any event, defendant has raised essentially the same claims of counsel's ineffectiveness in a motion now pending in Supreme Court, Queens County, under section

440.10 of the Criminal Procedure Law. That is the proper forum for review of the merits of defendant's claim of trial counsel's ineffectiveness, at least in the first instance, and defendant's application for *coram nobis* relief on this ground must be rejected.

In sum, defendant received the effective assistance of appellate counsel, and none of the claims raised by defendant could have been successful if raised by counsel on appeal. For this reason, defendant's petition for *coram nobis* relief should be denied.

## CONCLUSION

For the reasons stated above, defendant's motion for a writ of error *coram nobis* should be summarily denied.

Respectfully submitted,

RICHARD A. BROWN
District Attorney
Queens County

JOHN M. CASTELLANO
JILL A. GROSS MARKS
    Assistant District Attorneys
     of Counsel

February 8, 2013

Courtesy Copy
Original Filed in ECF
docket number. 14-CV-5456

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-20
-----------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,  :

                         Respondent,  :

                 -against-  :

ABU KHAN,  :

                      Defendant.  :
-----------------------------------------------------------------x

Return Date:
February 20, 2013

**AFFIRMATION IN
OPPOSITION TO
DEFENDANT'S
SECOND MOTION
TO VACATE
CONVICTION**

Queens County
Indictment Number
2147/06

         JILL A. GROSS MARKS, an attorney duly admitted to practice in the State of New York, affirms the following statements to be true under the penalty of perjury:

         1.     I am an Assistant District Attorney, of counsel to Richard A. Brown, the District Attorney of Queens County. I am submitting this affirmation in opposition to defendant's *pro se* motion, sworn November 21, 2012, to vacate his judgment of conviction pursuant section 440.10 of the Criminal Procedure Law. I make the statements in this affirmation upon information and belief, based upon my review of the records and files of the Queens County District Attorney's Office.

### Factual and Legal Background

         2.     On numerous occasions in 1997 to 2000, defendant had sexual contact

with his five to eight year old daughter "AM" at their home in Queens County. Defendant's sexual contact with AM escalated to rape on numerous occasions between 2001 and 2004 when the family was living in Florida. On November 30, 2004, defendant raped twelve-year-old AM at her grandmother's home in Queens County. The next day, defendant returned to Florida, but was estranged from AM's mother; AM stayed with her grandmother for the school year, returning home to Florida in August 2005. The following Easter, AM disclosed the rape to her mother.

3.      For these crimes, defendant was charged with Rape in the First Degree (Penal Law § 130.35[4]), Course of Sexual Conduct Against a Child in the Second Degree (Penal Law §130.80), Endangering the Welfare of a Child (Penal Law § 260.10[1]), and Sexual Abuse in the Second Degree (Penal Law § 130.60[2])(Queens County Indictment Number 2147/06).

4.      Defendant proceeded to trial before the Honorable Ronald D. Hollie, Queens County, Supreme Court, and a jury. At the conclusion of the trial, defendant was found guilty of all counts and sentenced to concurrent determinate prison terms of fourteen years for rape, ten years for sexual conduct, five years for endangering and one year for sexual abuse, plus post-release supervision.

5.      On March 15, 2011, defendant perfected his appeal by filing a brief, through counsel, in the Appellate Division, raising one two-part claim. Defendant argued he was denied a fair trial when the trial court improperly exercised its discretion in allowing

2

the People to present uncharged-crime evidence that defendant began raping his stepdaughter when she was around nine years old and the family lived in Florida and two photographs depicting her age when defendant began to sexually abuse her, about ten years before trial.

6.   The People filed a respondent's brief, arguing that the uncharged-crime evidence was relevant to explain the father/daughter relationship between defendant and the victim, to complete the temporal gap in the narrative of the charged crimes, and to rebut the defense claim that the victim's delayed disclosure was a fabrication.   And the school photographs of the child were relevant to establish the victim's age and state of mind when the abuse started ten years before trial.   The People further argued that the trial court exercised sound discretion in concluding the evidence was far more probative than prejudicial and defendant's conviction should be affirmed.

7.   In a decision and order dated October 25, 2011, the Appellate Division affirmed defendant's conviction, holding that the trial court "providently exercised its discretion in permitting the prosecution to elicit evidence that the defendant, charged with sexually touching the younger-than-11-year-old victim from 1997 to 2000 while the family lived in Queens, and with one rape of the victim in Queens in November 2004, raped the victim on frequent occasions between 2001 and 2004 while the family lived in Florida. The evidence was properly admitted to demonstrate the defendant's pattern of escalating sexual conduct toward the victim during the period between the charged crimes, and as relevant background information to enable the jury to understand the defendant's relationship with the

3

victim and to place the events in question in a believable context, particularly since the defendant raised the issue of the victim's delayed disclosure of the charged criminal conduct." *People v. Khan,* 99 A.D.3d 1014, 1014-1015 (2d Dept. 2011). Moreover, the Court held, the trial court "providently exercised its discretion in admitting into evidence two photographs depicting the victim at ages five and seven to illustrate the victim's age when the sexual contact allegedly began and to corroborate testimony regarding the change in the victim's appearance." *Id.*

8.     On December 12, 2011, defendant's subsequent application to the Court of Appeals for leave to appeal the Appellate Division's denial of permission to file a supplemental brief was dismissed, *People v. Khan,* 18 N.Y.3d 859 (2011), and on January 19, 2012, his application for leave to appeal the Appellate Division's affirmance of the judgement of conviction was denied.   *People v. Khan,* 18 N.Y.3d 884 (2012) (Smith, J.).

9.     In a letter dated February 20, 2012, defendant sought leave to reargue his appeal to the Appellate Division.  The People submitted opposition papers, and in an order dated April 6, 2012, the Appellate Division denied reargument.

10.     In the meantime, on or about March 16, 2012, defendant moved in this Court for an order vacating his judgment of conviction pursuant to section 440.10 of the Criminal Procedure Law.  Defendant claimed the evidence was insufficient and weighed against the verdict, he received the ineffective assistance of trial counsel, and there was unspecified newly-discovered evidence.

11.    In responsive papers dated April 11, 2012, the People argued that the motion should be summarily denied because the claims were procedurally barred. In particular, the People argued a) the claims were based on the record of the proceedings in the trial court and could have been raised on direct appeal; and b) allegations of fact essential to support the motion were made solely by defendant, unsupported by any other affidavit or evidence, and there was no reasonable possibility that they were true.

12.    By decision and order dated July 12, 2012, Supreme Court (Hollie, J.) denied defendant's motion "in all respects." In a memorandum opinion, the Court held that defendant was barred from raising issues that were based on the record because defendant could have raised them on appeal but failed to do so (Decision at 2). In addition, the Court held that defendant had not "set forth sufficient newly discovered evidence of such a nature that if said evidence had been received at trial, the verdict would have been more favorable to the defendant" (*Id.*).

13.    Subsequently, on August 6, 2012, defendant sought leave to appeal to the Appellate Division from Supreme Court's order of denial. The People submitted opposition papers, and in an order dated October 19, 2012, the Appellate Division denied the application.

14.    On or about November 13, 2012, defendant filed a motion in the Appellate Division, seeking a writ of error *coram nobis*, claiming that he was denied the effective assistance of appellate counsel. Defendant claimed that appellate counsel was

5

ineffective for failing a) to communicate with defendant prior to submitting the Appellate Division brief,  and b) to investigate the medical evidence of rape or to consult defense experts to rebut the People's expert medical and psychological evidence regarding the significance of a lack of physical evidence in a rape and the workings of the Child Sexual Abuse Accommodation Syndrome.  Appellate Counsel and the People submitted opposing papers and defendant's application is currently pending.

## The Present Motion

15.     In papers sworn on or about November 21, 2013, defendant filed a motion in this Court seeking to vacate the judgment of conviction under section 440.10 of the Criminal Procedure Law on the ground that he received the ineffective assistance of trial counsel as guaranteed by the United States Constitution (Motion at 26).  Defendant claims counsel failed to consult or call defense experts to challenge the People's two expert witnesses-- the medical expert who testified that the lack of evidence of penetration or injury to the genitalia did not negate the allegations of rape and sexual abuse, and the psychological expert who testified about the Child Sexual Abuse Accommodation Syndrome.

6

16.    As discussed in the attached Memorandum of Law, this Court should

deny defendant's claim because it is procedurally barred and meritless.

        **WHEREFORE**, defendant's motion should be denied.

Dated:    Kew Gardens, New York
          February 20, 2013


                                        _____
                                        JILL A. GROSS MARKS
                                        Assistant District Attorney
                                        (718) 286-5882


To:    Abu Khan
       07-A-4685
       Green Haven Correctional Facility
       P.O. Box 4000
       Stormville, N.Y. 12582

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-20
-------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,   :      **MEMORANDUM**
                                               **OF LAW**

                      Respondent,    :

      -against-                   :

ABU KHAN,                        :

          Defendant.         :

-------------------------------------------------------------------x

## ARGUMENT

### DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

      This Court should deny defendant's claim that his trial counsel was ineffective because the trial record affirmatively demonstrates that defense counsel employed a viable, if ultimately unsuccessful, trial strategy. Defense counsel had an effective trial strategy to use the lack of medical evidence of penetration or injury to argue that the complainant's claims were fabricated, and that her belated outcry, rather than being symptomatic of a child suffering from the Child Sexual Abuse Accommodation Syndrome, showed the complainant was motivated by revenge and retribution for her family due to defendant's failure to provide financial support. And defense counsel supported that theory through vigorous and capable cross-examination of the experts, presentation of defense evidence, and summation argument. Defendant's testimony was designed to sow a reasonable doubt that he could have sexually

assaulted and raped his daughter over such a long period without being discovered.

Defendant, however, claims that defense counsel was ineffective for failing to consult or present defense experts to establish that the Child Sexual Abuse Syndrome is not unanimously accepted in the field and to dispute the likelihood of a rape or sexual abuse occurring without leaving any physical injury or changes in the female genitalia. But defense counsel adequately presented these theories, primarily through cross-examination, and summation argument, and counsel cannot be second-guessed for choosing one particular strategy over another. Thus, defense counsel cannot be held ineffective for failing to follow the strategy now suggested by defendant.

In any event, defendant cannot demonstrate prejudice because the testimony about whether the complainant, with no observable injury to her genitalia, could have been raped or abused, and with symptoms similar to those manifested by known sufferers of the Child Sexual Abuse Accommodation Syndrome, was elicited from experts whose credentials defendant does not and cannot question. Thus, defense counsel cannot be held ineffective for failing to pursue a strategy which is founded on a flawed scientific theory, and which would have been ultimately unsuccessful in light of the strong evidence presented at trial.

The right to the effective assistance of counsel is guaranteed under both the Federal and State Constitutions. *See* U.S. Const., 6th Amend.; N.Y. Const., art. I, § 6. Under the New York rule, what qualifies as effective assistance varies with the unique circumstances of each representation. *People v. Benevento*, 91 N.Y.2d 708, 712 (1998);

9

*People v. Baldi*, 54 N.Y.2d 137 (1981). In order to succeed on a claim that trial counsel was ineffective under the state constitution, a defendant must demonstrate, viewing the totality of the evidence, the law, and the circumstances of that particular case, that counsel failed to provide "meaningful representation." *People v. Benevento*, 91 N.Y.2d at 712 (quoting *People v. Baldi*, 54 N.Y.2d at 147 [1981]); *see also People v. Satterfield*, 66 N.Y.2d 796, 798-799 (1985). Meaningful representation "includes a prejudice component which focuses on the fairness of the process as a whole rather than [any] particular impact on the outcome of the case." *People v. Henry*, 95 N.Y.2d 563, 566 (2000), *citing People v. Benevento*, 91 N.Y.2d at 714.

Courts should apply a "flexible approach" when evaluating ineffective assistance of counsel claims. *People v. Henry*, 95 N.Y.2d at 565, citing *People v. Benevento*, 91 N.Y.2d at 712. The question is whether the attorney committed "egregious and prejudicial" error such that defendant did not receive a fair trial. *See People v. Benevento*, 91 N.Y.2d at 713 (quoting *People v. Flores*, 84 N.Y.2d 184, 188-189 [1994]). What is guaranteed is a fair trial, "not necessarily a perfect one." *People v. Benevento*, 91 N.Y.2d at 712; *see also People v. Flores*, 84 N.Y.2d at 187. A defendant's conviction may have had little, if anything, to do with counsel's performance, and courts are properly skeptical when "disappointed prisoners try their former lawyers on charges of incompetent representation." *People v. Benevento*, 91 N.Y.2d at 712 (quoting *People v. Brown*, 7 N.Y.2d 359, 361 [1960]).

When applying this standard, however, courts must take care not to confuse true ineffectiveness of counsel with mere losing tactics and not accord "undue significance" to retrospective analysis. *People v. Benevento*, 91 N.Y.2d at 712; *People v. Baldi*, 54 N.Y.2d at 145. Thus, courts should neither second-guess the wisdom of counsel's strategy nor probe counsel's subjective reasons for choosing that strategy. So long as the defendant was afforded "meaningful representation," it is irrelevant whether a course chosen by a defendant's counsel was the best trial strategy, or even a good one. *People v. Satterfield*, 66 N.Y.2d at 799-800. Indeed, trial practice is "as much an art as a science," and trial lawyers must, given the unique attributes of each case, devise and execute appropriate strategy. *People v. Ellis*, 81 N.Y.2d 854,856 (1993). The chosen strategy need only be "reasonable and legitimate" under the circumstances to prevent a finding of ineffective assistance. *People v. Benevento*, 91 N.Y.2d at 713; *see also People v. Lane*, 60 N.Y.2d 748,750 (1983). Unless a defendant can show that there was no "legitimate reason" to pursue a particular strategy, a defense attorney must be presumed to have rendered adequate assistance to a defendant. *People v. Benevento*, 91 N.Y.2d at 712; *People v. Rivera*, 71 N.Y.2d 705, 709 (1988). A "simple disagreement" with strategies, weighed long after the trial, is insufficient. *People v. Benevento*, 91 N.Y.2d at 713 (quoting *People v. Flores*, 84 N.Y.2d at 187).

In order to prevail on a claim of ineffectiveness under the Sixth Amendment to the U.S. Constitution, a defendant must satisfy a somewhat different test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate, first, that counsel's

performance fell below an objective standard of reasonableness and, second, that the deficient performance deprived the defendant of a fair result. *See People v. Cuesta*, 177 A.D.2d at 641; *People v. Sullivan*, 153 A.D.2d 223, 226-227 (2d Dept. 1990). It is the defendant's burden not only to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (*Strickland v. Washington*, 466 U.S. at 689; *People v. Cuesta*, 177 A.D.2d at 641), but also to demonstrate a reasonable probability that, but for the substandard performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. at 694; *People v. Cuesta*, 177 A.D.2d at 641; *People v. Sullivan*, 153 A.D.2d at 226-227.

Moreover, only in "rare instances" will an "isolated error" by otherwise competent counsel operate to deprive a defendant of effective representation. *People v. Turner*, 5 N.Y.3d 476 (2005); *accord People v. Borrell*, 12 N.Y.3d 365, 368 (2010). In this regard, "is well settled that the failure to call a particular witness does not necessarily amount to ineffective assistance of counsel." *People v. Muller*, 57 A.D.3d 1113, 1114 (3d Dept. 2008). Similarly, a failure to present a particular witness or medical evidence will not render a counsel's performance ineffective where "trial counsel's omission [does] not prejudice the defense or defendant's right to a fair trial." *People v. Hobot*, 84 N.Y.2d 1021, 1024 (1995); *accord People v. Kilbury*, 83 A.D.3d 1579 (4th Dept. 2011), *leave denied*, 17 N.Y.3d 860 (counsel not ineffective for failing to call expert on Child Sexual Abuse Accommodation Syndrome) *People v. Flores*, 83 A.D.3d 1460 (4th Dept. 2011), *affirmed*, 2012 NY LEXIS

12

1318 (June 7, 2012)( defendant convicted of rape, sodomy and sexual abuse of a nine-year-old did not receive ineffective assistance of defense counsel because counsel failed to hire an expert to refute the People's experts); *People v. Auleta*, 82 A.D.3d 1417 (3d Dept. 2011), *leave denied* 17 N.Y.3d 813 (defendant convicted of rape did not receive ineffective assistance at trial where he failed to demonstrate that trial counsel's failure to call medical expert deprived him of a fair trial -- medical expert testified there was no evidence of physical trauma or injury, defense counsel highlighted this testimony, and defendant's affidavit did not contradict this testimony); *People v. Guay*, 72 A.D.3d 1201 (3d Dept. 2010) *affirmed* ___ N.Y.3d ___, 2011 NY LEXIS 3221 *(*November 15, 2011*)*(defendant convicted of rape, sexual abuse and endangering did not receive ineffective assistance of counsel because counsel failed to obtain an independent medical exam); *People v. Hamms*, 55 A.D.3d 1142 (3d Dept 2008) *appeal denied* 11 N.Y.3d 925 (January 27, 2009)(defendant convicted of rape and endangering did not receive ineffective assistance of counsel because counsel failed to call an expert medical witness; *see also People v. Ransome*, 207 A.D.2d 504 (2d Dept. 1994)(same regarding expert on battered woman syndrome); *People v. McDonald*, 79 A.D.3d 771 (2d Dept 2010) *leave denied* 16 N.Y.3d 861 (2011)  (same regarding expert on eyewitness identifications); *People v. Ariosa*, ___ A.D.3d ___, 955 N.Y.S.2d 244, 2012 NY App Div LEXIS 8138 (3d Dept 2012)(same regarding expert on handling and weight of seized marihuana); *see also People v. Daniels*, 35 A.D. 2d 495, 496 (2d Dept. 2006) (failure to hire print expert not ineffective where counsel had strategy to mitigate weight of People's

13

evidence).

A trial court may deny a defendant's motion pursuant to section 440.10 on ineffectiveness grounds without holding a hearing where the motion can "be determined on the trial record and defendant's submissions on the motion." *People v. Satterfield*, 66 N.Y.2d 796, 799 (1985). Indeed, section 440 provides that a court may deny a motion on the merits where "[t]he moving papers do not allege any ground constituting a legal basis for the motion" C.P.L. § 440.30(a).

That is precisely the case here. Defendant has not met his burden of proving that his trial counsel's assistance was ineffective or that defendant did not receive a fair trial because his counsel's conduct was "egregious and prejudicial." Accordingly, this Court should reject his claims without a hearing.

The trial record establishes that defendant received the effective assistance of counsel and defendant's allegations do nothing to refute that conclusion. Defense counsel had a well-reasoned trial strategy designed to undermine the credibility of the complainant and to demonstrate that her outcry was delayed not because she was a victim of abuse, or suffered from the Child Sexual Abuse Accommodation Syndrome in particular, but rather because the claims were simply untrue and were motivated to vindicate her family after defendant failed to pay child support. At trial, defense counsel followed these themes during his cross-examination and summation arguments. Defendant vigorously and effectively cross-examined the people's medical and psychological experts. From Dr. Rosenfeld, the

14

physician who examined the victim, defense counsel elicited that the doctor had testified in the past, always for victims (Rosenfield: 570-571). Counsel confronted Dr. Rosenfeld with the contrary view of Dr. Robert Friendlander, whose opinion was that he was "not aware of any evidence that penetrating a girl of any age with an erect normal size penis is likely to leave the hymen intact (Rosenfield: 577-578). Dr. Rosenfeld testified that she was not familiar with Friedlander's work and that she disagreed with his statement (Rosenfield: 576, 578). Counsel elicited from the doctor that the victim had said she had a boyfriend contradicting the victim's own testimony that she did not (Rosenfield: 572).

During his examination of Dr. Lewittes, the psychologist with expertise in CSAAS, counsel elicited that Lewittes testimony was "generalized" and not specific to this victim, whom he had never met (Lewittes: 623). Lewittes acknowledged the possibility that a child does not disclose the abuse because there was no abuse in the first place (Lewittes: 623), and that the doctor has seen false claims of abuse by children (Lewittes: 624). Counsel elicited from Lewittes that one of the reasons for false claims of abuse was "revenge" -- testifying that the child may feel this gives them "power" and the claim is a "way to get back at somebody who they are angry at" (Lewittes: 624-625).

Defense counsel used this evidence during his summation argument, telling the jury there were six witness but only four of them counted (Defense Summation: 695) signaling that the testimony of the two experts was useless. Counsel challenged the credibility of the complainant, reminding the jury that she did not tell anybody

contemporaneously and waited quite a while to report the crimes (Defense Summation: 697).

Counsel argued that the complainant's claimed fear of defendant did not jive with the facts,

questioning why she would voluntarily accompany defendant to Long Island to return the

truck that last night in Queens when she could have stayed home with her grandmother

(Defense Summation: 698-699). Counsel also pointed to the animosity between defendant

and the mother. Similarly, counsel denigrated the significance of the medical expert,

remarking, "just because an expert give you a certain opinion," if it does not "jibe with your

common sense and your opinion, you do not have to accept that opinion. You have a right

to reject that opinion. I urge you to do that in this particular case" (Defense Summation:

701). Counsel asked the jury to listen carefully to the judge's instructions regarding expert

testimony, reiterating that "just because an expert is a so-called expert you do not have to

accept their opinion on the situation" (Defense Summation: 707). As for Dr. Rosenfeld, the

medical expert, counsel remarked that she had been working at the Queens Child Advocacy

Center for twelve years, had testified on at least five-hundred occasions, not once for a

defendant, and that because of her "bias" her testimony should be viewed with "a good deal

of skepticism" (Defense Summation: 702, 705). Counsel remarked that while the physical

evidence was not inconsistent with the allegations, it was also consistent with a lack of sexual

abuse or rape (Defense Summation: 704). As for the psychologist Lewittes, counsel

reminded the jury that his testimony was not specific to this case or this complainant, but was

simply general information about the syndrome (Defense Summation: 706), that Lewittes

admitted he had come across instances where a child had made "false allegations of sexual abuse," for which there were a number of possible reasons, including jealousy, revenge and mental disease (Defense Summation: 706). Counsel also addressed the non-support claim, reminding the jury of the evidence that defendant said he provided support to Leslie Martinez until she moved without giving him her new address (Defense Summation: 701).

Defendant, however, now claims that trial counsel was ineffective for failing to present an expert witness who would have testified that the Child Sexual Abuse Accommodation Syndrome has been discredited. But defendant is wrong. Indeed, the Appellate Division, Second Department recently rejected this precise argument in *People v. Green*, 92 A.D.3d 894 (2d Dept. 2012), holding that "defendant failed to support his claim that the Child Sexual Abuse Accommodation Syndrome has been discredited within the scientific community" *id* at 896, citing *People v. Spicola*, 2011 N.Y. Lexis 505 (March 31, 2011*)* and rejecting *Gersten v. Senkowski*, 426 F.3d 588, 600 (2d Cir 2005), upon which defendant relies. Thus, defendant's reliance on the contrary statements of a forensic psychologist named John C. Yuille, as reported in *Gersten,* must fail. In short, although Yuille is cited by defendant as stating that "'what was once known as Child Asexual Abuse Accommodation Syndrome is not longer regularly accepted in the child abuse research community. . . because the symptoms which were alleged components of the syndrome do not occur regularly enough in those who truly have been victims of sexual abuse to call it a syndrome" (Defendant's motion at 16), that position is not the law in New York. *E.g. People*

17

*v. Spicola,* 2011 N.Y. Lexis 505 (March 31, 2011*); People* v. *Green,* 92 A.D.3d 894; and

cannot form the basis of an ineffectiveness claim. Thus, defendant simply cannot support

his claim, that the prosecution's entire case rested on the credibility of the victim, and the

prosecution used the CSAAS to explain children's reactions to sexual abuse, including

delayed disclosure and blurred memory, and that counsel, by failing to consult or call a

psychological expert on child sexual abuse "was unable to mount an effective cross-

examination and missed an opportunity to rebut this attempt at bolstering the alleged victim's

credibility" (Motion at 21-22). Indeed, apart from the fallacy of defendant's argument that

CSAAS has been discredited, the record belies defendant's claim, as previously discussed.

Thus, counsel did not need to consult an expert to vigorously examine the People's experts.

Rather, counsel used the strategy of confronting the witness with the writings of other experts

on the subject. In any event, that one expert has disagreed with the People's expert does not

render the second expert the authority. Indeed, a careful reading of the testimony establishes

that Dr. Lewittes acknowledged that CSAAS was a syndrome, and that it can be a useful tool

for understanding and treating victims, but is by no means a boilerplate for the conduct of

every victim. Defendant misreads the expert testimony, overstates its meaning, overlooks the

defense's strategy, and fails to demonstrate that a defense expert would have changed the

result.

Moreover, as previously noted, the failure to call a particular witness does not

necessarily amount to ineffective assistance of counsel. *See, e.g., People v. Muller,* 57

A.D.3d at 1114. And a failure to present a particular witness or medical evidence will not render a counsel's performance ineffective where, as here, "trial counsel's omission [did] not prejudice the defense or defendant's right to a fair trial." *People v. Hobot*, 84 N.Y.2d at 1024; *see People v. Kilbury*, 83 A.D.3d 1579 (counsel not ineffective for failing to call expert on Child Sexual Abuse Accommodation Syndrome) *People v. Flores*, 83 A.D.3d 1460(counsel for defendant convicted of rape, sodomy and sexual abuse of a nine-year-old not ineffective for failing to hire an expert to refute the People's experts); *People v. Auleta*, 82 A.D.3d 1417(counsel for defendant convicted of rape not ineffective because defendant failed to demonstrate that trial counsel's failure to call medical expert deprived him of a fair trial -- medical expert testified there was no evidence of physical trauma or injury, defense counsel highlighted this testimony, and defendant's affidavit did not contradict this testimony); *People v. Guay*, 72 A.D.3d 1201(counsel for defendant convicted of rape, sexual abuse and endangering not ineffective for failing to obtain an independent medical exam); *People v. Hamms*, 55 A.D.3d 1142 (counsel for defendant convicted of rape and endangering not ineffective for failing to call an expert medical witness). Because defendant fails to demonstrate that counsel was less than competent in his approach to the experts, and fails to demonstrate that trial counsel's chosen strategy prejudiced the defense, he fails to sustain his claim of ineffectiveness and his motion should be summarily denied.

## CONCLUSION

For the reasons stated above, defendant's motion should be summarily denied.


Respectfully submitted,


RICHARD A. BROWN
District Attorney
Queens County


JOHN M. CASTELLANO
JILL A. GROSS MARKS
     Assistant District Attorneys
      of Counsel


`February 20, 2013

Courtesy Copy

Original Filed in ECF
docket number 14-CV-5456

Jusso-
Marks

SUPREME COURT
CRIMINAL TERM-PART K-20 QUEENS COUNTY
125-01 QUEENS BLVD., KEW GARDENS, NY 11415

P R E S E N T:
HON. RONALD D. HOLLIE,
JUSTICE
------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK          Ind. No. 2147/06
:
Motion: To Vacate Judgment

CPL § 440:10

-against-          :

ABU KHAN
:
Defendant.
------------------------------------------------------------X

The following papers numbered
1 to 3 submitted on this motion.

Abu Khan, Pro Se
For The Motion

Richard A. Brown, D.A.
A.D.A. Edward D. Saslaw
Opposed

Notice of Motion, and Affidavits Annexed...............          ......1 - 2....
Answering and Reply Affidavits...............................          ...... 3 ......

The defendant's motion pursuant *CPL § 440:20* is denied.   See the accompanying
memorandum

Dated: March 6, 2013

RONALD D. HOLLIE, J.S.C.

**MEMORANDUM**

SUPREME COURT: QUEENS COUNTY

CRIMINAL TERM: PART K-20

_____

THE PEOPLE OF THE STATE OF NEW YORK :　　　BY:  RONALD  D.  HOLLIE, J.S.C.

　　　　　　　- against -　　　　　　　:　　　DATED: March 6,   2013

　　　　　　　　　　　　　　　　　　　　　　MOTION: To Vacate Judgment
　　　　　　　　　　　　　　　　　　　　　　　　　C.P.L § 440.10

ABU  KHAN　　　　　　　　　　　　　　　　　IND. NO.:  2147/06

　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　Defendant.

_____

　　　The defendant's pro se motion pursuant to C.P.L § 440.10 to Vacate Judgment is denied.

　　　　The defendant by this pro se motion seeks to vacate the judgment. The People  filed opposition to the instant motion by affirmation.. On March 29, 2007 the  defendant was convicted after jury trial before this Court of Rape in the First Degree, Course of Sexual Conduct Against a Child in the second Degree, Endangering the Welfare of a Child ans Sexual Abuse in the Second Degree. The defendant was sentenced to concurrent determinate terms of incarceration of fourteen years for the conviction of rape, ten years for sexual conduct, five years for endangering the welfare of a child, and one year for sexual abuse with a additional period of post release supervision.

On October 25, 2011, the Appellate Division, Second Department affirmed the defendant's conviction. *People v. Khan, 88 A.D.3d 1014.* The Court of Appeals denied the defendant leave to appeal his conviction on January 19, 2012. See *People v. Khan, 18 N.Y.3d 884.* On April 6, 2012 the Appellate Division Second Department denied re argument of that decision. Subsequently, the defendant filed motion with this court which was denied October 19, 2012. The defendant thereafter sought leave to appeal the October 19, 2012 order of this court to the Appellate Division, Second Department and that application was denied. On November 13, 2012. A motion seeking a writ of *error coram nobis* was filed by the defendant in the Appellate Division, Second on November 13, 2012 stating that he was denied ineffective assistance of counsel and a decision on that motion is pending. The defendant now by this motion again seeks to vacate judgment and alleges ineffective assistance of counsel.

The defendant has failed, to set forth sufficient newly discovered evidence of such a nature that if said evidence had been received at trial, the verdict would have been more favorable to the defendant.. Additionally, with respect to issues which defendant failed to raise on appeal and those issues which he raised on appeal and were denied, he is now barred from raising the issues in the instant motion.

Accordingly, the defendant's motion is denied in all respects.

Dated: March 6, 2013

RONALD D. HOLLIE, J.S.C.

Courtesy Copy

Original Filed in ECF
docket number 14-CV-5456

Gross-Marks)
Castellano

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:   SECOND DEPARTMENT
-------------------------------------------------
The People of the State of New York

                 Respondent,

    -against-

Abu Khan

           Defendant-Appellant.
-------------------------------------------------

NOTICE OF APPLICATION
FOR LEAVE TO APPEAL
CPL 460.15

Ind. No. 2147/2006

PLEASE TAKE NOTICE, that the above named defendant-appellant will make application before a Justice of the Supreme Court, Appellate Division, Second Department, at his chambers at 45 Monroe Place, Brooklyn, New York, on the 11th of April 2013, at 10:00 AM in the forenoon of that day, for a certificate pursuant to N.Y. Crim. Proc. Law § 460.15 granting permission to appeal and certifying that the above entitled cause involves questions of law and fact which ought to be reviewed by the Appellate Division, Second Department, and allowing an appeal to the said Court from the order of the Supreme Court, County of Queens, entered on the 6th day of March 2013, denying a motion by the defendant, made pursuant to N.Y. Crim. Proc. Law § 440.10, and from each and every part of said order.

Dated: March 27th, 2013

                                Respected Submitted,

                                Abu Khan, Pro Se
                                Defendant-Appellant, 07A4685
                                Green Haven Correctional Facility
                                P.O. Box 4000
                                Stormville, NY 12582

To: Richard A. Brown
    District Attorney
    125-01 Queens Blvd.
    Kew Gardens, NY 11415

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:  SECOND DEPARTMENT
------------------------------------------
the People of the State of New York

                    Respondent,

       -against-

Abu Khan

          Defendant-Appellant.
------------------------------------------

AFFIDAVIT IN SUPPORT
OF MOTION FOR LEAVE
TO APPEAL
CPL 460.15

Ind. No. 2147/2006

STATE OF NEW YORK   )
                  )ss.:
COUNTY OF DUTCHESS  )

     Abu Khan, being duly sworn, deposes and says:

1. I am the above named defendant-appellant, and I am familiar with all the facts and circumstances herein.

2. This affidavit is submitted in support of an application pursuant to N.Y. Crim. Proc. Law §§ 450.15, 460.15 and this Court's Rules § 760.16(e), for a certificate granting permission to appeal to this Court from an order of the Supreme Court, Queens County, Hon. Hollie, J., dated March 6, 2013, denying defendant's motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10(1)(H).

3. The question of law or fact which is claimed ought to be reviewed is whether the trial court properly denied a motion to vacate judgment where there was a constitutional violation issue concerning ineffective trial counsel, as a result denied defendant-appellant his right to a fair trial. U.S. Const., Amend. XIV; N.Y. Const. Art. I, § 6.

4. No prior application for such certificate has been made.

### PROCEDURAL HISTORY OF THE CASE

5. The defendant-appellant was convicted of Rape in the first degree on July

24, 2007. As a result of this conviction the defendant-appellant was sentenced to an indeterminate term of imprisonment of 14 years and 5 years PRS. The conviction was affirmed by this court on October 25, 2011 (People v. Khan, 88 A.D.3d 1014), and leave to appeal to the New York Court of Appeals was denied on January 19, 2012 (People v. Khan, 18 N.Y.3d 884).

## THE MOTION PURSUANT TO CPL 440.10

6. By notice of motion dated November 21, 2012, defendant moved to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10(1)(h) on the ground that the defendant was denied the effectiveness of trial counsel. A copy of the motion to vacate and the exhibits supporting that motion are submitted herewith as "Exhibit A".

The motion was supported by trial transcripts showing that an extremely detailed medical examination failed to provide any corroboration of sexual assaults the complainant described, trial counsel's failure in lacking investigation and preparation, failure to consult or call an expert for defense, falls within ineffective assistance of counsel. See People v. Richard R, 31 Misc. 3d 1212 (April 12, 2011), also see, Gersten v. Senkowski, 426 F. 3d 588, 607 (2d Cir. 2005), which denied defendant his right to a fair trial. U.S. Const., XIV; N.Y. Const., Atr. 1 § 6.

Counsel's overall lack of investigation, poor preparation, failure to understand facts and law of case and failure to consult with or call an expert in such field, failure to pursue reasonable consistent trial strategy including last minute decision to call defendant to testify without preparation, constitute actual prejudice that had probable effect on outcome of verdict and denied defendant a fair trial for purposes of ineffective assistance of counsel claim. U.S.C.A. Const. Amend. 6.

## THE TRIAL COURTS OPINION

Without an evidentiary hearing, the trial court denied the motion to vacate judgment relying short, that defendant has failed to set forth sufficient newly discovered evidence of such a nature.

A copy of the trial court's order is submitted herewith as "Exhibit B".

Right to effective assistance of counsel is basic right guaranteed by both Federal and New York State Constitutions. U.S.C.A. Const. Amend. 6; McKinney's Const. Art. 1, § 6. There is no set litmus test determining what constitutes ineffective or inadequate legal representation, but rather, law, evidence and unique circumstances of each particular case must be viewed as a whole. U.S.C.A. Const. Amend. 6; McKinney's Const. Art. 1 § 6.

This very serious motion was decided by the court below without benefit of an evidentiary hearing, the order denying the relief sought was granted upon exhibits submitted in support of motion. Under these circumstances, I respectfully submit that the case should be appropriately be heard on the merits in this Court.

WHEREFORE, for the foregoing reasons it is respectfully submitted that defendant's application for certificate granting leave to appeal be granted in all respects.

Matthew J. Farrand
Notary Public State of NY
No. 01FA6249046
Qualified in Dutchess County
My Comm. Expires 9/16/2015

Respectfully submitted,

Sworn to before me this

27th day of March, 2013

Notary Public

- 04 -

Courtesy Copy
Original Filed in ECF
docket number 14-CV-5456

# Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

D37953
C/kmb

_____AD3d_____

RANDALL T. ENG, P.J.
MARK C. DILLON
RUTH C. BALKIN
JEFFREY A. COHEN, JJ.

2007-07185                                           DECISION & ORDER

The People, etc., respondent,
v Abu Khan, appellant.

(Ind. No. 2147/06)

Abu Khan, Stormville, N.Y., appellant pro se.

Richard A. Brown, District Attorney, Kew Gardens, N.Y. (John M. Castellano and Jill Gross Marks of counsel), for respondent.

Lynn W. L. Fahey, New York, N.Y. (Jonathan M. Kratter of counsel), former appellate counsel.

Application by the appellant for a writ of error coram nobis to vacate, on the ground of ineffective assistance of appellate counsel, a decision and order of this Court dated October 25, 2011 (*People v Khan*, 88 AD3d 1014), affirming a judgment of the Supreme Court, Queens County, rendered July 24, 2007.

ORDERED that the application is denied.

The appellant has failed to establish that he was denied the effective assistance of appellate counsel (*see Jones v Barnes*, 463 US 745; *People v Stultz*, 2 NY3d 277).

ENG, P.J., DILLON, BALKIN and COHEN,  JJ., concur.

ENTER:

April 17, 2013

PEOPLE v KHAN, ABU

Courtesy Copy
Original Filed in ECF
docket number 14-CV-5456

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
-----------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,   :

                    Respondent,   :

                            :

          -against-          :

                            :

ABU KHAN,

                            :

                 Defendant.   :
-----------------------------------------------------------------x

Return Date:
April 19, 2013

AFFIRMATION IN
OPPOSITION TO
DEFENDANT'S
MOTION FOR LEAVE
TO APPEAL

Queens County
Ind. No. 2147/06.

A.D. No. 2013-3604

JILL A. GROSS MARKS, an attorney duly admitted to practice in the State of New York, affirms the following statements to be true under the penalty of perjury:

1.    I am an Assistant District Attorney, of counsel to Richard A. Brown, the District Attorney of Queens County. I am submitting this affirmation in opposition to defendant's motion for leave to appeal from a March 6, 2013 decision of the Supreme Court denying his motion pursuant to section 440.10 of the Criminal Procedure Law. I make the statements in this affirmation upon information and belief, based on my review of the records and files of the Queens County District Attorney's Office.

## Factual and Legal Background

2.      On numerous occasions in 1997 to 2000, defendant had sexual contact with his five to eight year old daughter "AM" at their home in Queens County. Defendant's sexual contact with AM escalated to rape on numerous occasions between 2001 and 2004 when the family was living in Florida. On November 30, 2004, defendant raped twelve-year-old AM at her grandmother's home in Queens County. The next day, defendant went to Florida, but was estranged from AM's mother; AM stayed with her grandmother for the school year, returning home to Florida in August 2005. The following Easter, AM disclosed the rape to her mother.

3.      For these crimes, defendant was charged with Rape in the First Degree (Penal Law § 130.35[4]),  Course of Sexual Conduct Against a Child in the Second Degree (Penal Law §130.80), Endangering the Welfare of a Child (Penal Law § 260.10[1]), and Sexual Abuse in the Second Degree (Penal Law § 130.60[2])(Queens County Indictment Number 2147/06).

4.      Defendant proceeded to trial before the Honorable Ronald D. Hollie, Supreme Court, Queens County, and a jury.  At the conclusion of the trial, defendant was found guilty of all counts and sentenced to concurrent determinate prison terms of fourteen years for rape, ten years for sexual conduct, five years for endangering, and one year for sexual abuse, plus post-release supervision.

5.      On March 15, 2011, defendant perfected his direct appeal by filing a

2

brief, through counsel, with this Court, raising one two-part claim. Defendant argues he was denied a fair trial when the trial court improperly exercised its discretion in allowing the People to present uncharged-crime evidence that defendant began raping his stepdaughter when she was around nine years old and the family lived in Florida and two old photographs depicting her age when defendant began to sexually abuse her ten years before trial.

6.     The People filed a respondent's brief, arguing that the uncharged-crime evidence was relevant to explain the father/daughter relationship between defendant and the victim, to complete the temporal gap in the narrative of the charged crimes, and to rebut the defense claim that the victim's delayed disclosure was a fabrication.  And the school photographs of the child were relevant to establish the victim's age and state of mind when the abuse started ten years before trial.  The People further argued that the trial court exercised sound discretion in concluding the evidence was far more probative than prejudicial and defendant's conviction should be affirmed.

7.     In a decision and order dated October 25, 2011, this Court affirmed defendant's conviction, holding that the trial court "providently exercised its discretion in permitting the prosecution to elicit evidence that the defendant, charged with sexually touching the younger-than-11-year-old victim from 1997 to 2000 while the family lived in Queens, and with one rape of the victim in Queens in November 2004, raped the victim on frequent occasions between 2001 and 2004 while the family lived in Florida. The evidence was properly admitted to demonstrate the defendant's pattern of escalating  sexual conduct

3

toward the victim during the period between the charged crimes, and as relevant background information to enable the jury to understand the defendant's relationship with the victim and to place the events in question in a believable context, particularly since the defendant raised the issue of the victim's delayed disclosure of the charged criminal conduct." *People v. Khan*, 99 A.D.3d 1014, 1014-1015 (2d Dept. 2011). Moreover, this Court held, "the probative value and the need for the evidence outweighed any potential prejudice to the defendant, particularly in light of the Supreme Court's limiting instruction to the jury as to the proper use of the uncharged crimes evidence." *Id.*

8.     On December 12, 2011, defendant's application to the Court of Appeals for leave to appeal the Appellate Division's denial of permission to file a supplemental brief was dismissed, *People v. Khan*, 18 N.Y.3d 859 (2011), and on January 19, 2012, his application for leave to appeal the Appellate Division's decision affirming the judgement of conviction was denied. *People v. Khan*, 18 N.Y.3d 884 (2012) (Smith, J.).

9.     In a letter dated February 20, 2012, defendant sought leave to reargue his appeal to this Court. The People submitted opposition papers, and in an order dated April 6, 2012, the Court denied reargument.

10.     In the meantime, on or about March 16, 2013, defendant also moved in the trial court for an order vacating his judgment of conviction pursuant to section 440.10 of the Criminal Procedure Law. Defendant claimed the evidence was insufficient and weighed against the verdict, he received the ineffective assistance of trial counsel, and there was

4

unspecified newly discovered evidence.

11.     In responsive papers dated April 11, 2012, the People argued that the claims were procedurally barred and the motion should be summarily denied. In particular, the People argued:  a) the claims were based on the record of the proceedings in the trial court and could have been raised on direct appeal;  and b) allegations of facts essential to support the motion were made solely by the defendant, unsupported by any other affidavit or evidence, and there was no reasonable possibility that these unsupported allegations were true.

12.     By decision and order dated July 12, 2012, Supreme Court (Hollie, J.) denied defendant's motion "in all respects." In a memorandum opinion, the court held that defendant was barred from raising issues that were based on the record because defendant could have raised them on appeal but failed to do so (*Id.*)  In addition, the court held that defendant had not "set forth sufficient newly discovered evidence of such a nature that if said evidence had been received at trial, the verdict would have been more favorable to the defendant" (*Id.*).

13.     Subsequently, on August 6, 2012, defendant sought leave to appeal to this Court from Supreme Court's order of denial.  The People submitted opposition papers, and in an order dated October 19, 2012, this Court denied leave.

14.     On or about November 13, 2012, defendant moved in this Court, *pro se*, for a writ of error *coram nobis*, claiming that he was denied the effective assistance of

5

appellate counsel who failed to communicate with defendant prior to submitting the

Appellate Division brief, and failed to investigate the medical evidence of rape or to consult

defense experts to rebut the People's expert medical and psychological evidence regarding

the significance of a lack of physical evidence in a rape case and the workings of the Child

Sexual Abuse Accommodation Syndrome.

15.     On December 13, 2012, defendant's appellate counsel submitted an

affirmation opposing defendant's *coram nobis* application, and on February 8, 2013, the

People submitted their opposing affirmation and memorandum of law.   In an order dated

April 17, 2013, the Court denied defendant's application, holding that he failed to establish

theat he was denied the effective assistance of appellate counsel. *People v. Abu Khan*, ___

A.D.3d ___, Case No. 2007-07185 (Second Department, Decided April 17, 2013)

16.     On or about December 4, 2012, defendant filed a motion in Queens

County Supreme County, seeking to vacate the judgment of conviction under section 440.10

of the Criminal Procedure Law.  Defendant claimed he received the ineffective assistance

of trial counsel who a) failed to adequately investigate the case; and b) failed to consult with

or call a medical expert to challenge the medical evidence of penetration and the viability of

the Child Sexual Abuse Accommodation Syndrome.

17.     On February 20, 2013, the People filed their opposing papers, arguing

that defendant's motion should be denied because the trial record affirmatively demonstrates

that defense counsel employed a viable trial strategy. Defense counsel had an effective trial

strategy to use the lack of medical evidence of penetration or injury to argue that the

6

complainant's claims were fabricated, and that her belated outcry, rather than being symptomatic of a child suffering from the Child Sexual Abuse Accommodation Syndrome, showed the complainant was motivated by revenge and retribution for her family due to defendant's failure to provide financial support. And defense counsel supported that theory through vigorous and capable cross-examination of the experts, presentation of defense evidence, and summation argument.   Defendant's testimony was designed to sow a reasonable doubt that he could have sexually assaulted and raped his daughter over such a long period without being discovered.

18.   In an order dated March 6, 2013, the court denied defendant's motion "in all respects."

### The Present Motion

19.   By his present motion, dated March 27, 2013, defendant seeks leave under section 460.15 of the Criminal Procedure Law for permission to appeal Supreme Court's denial of his section 440.10 motion.   Defendant claims (at ¶ 3) the case involves a question of law or fact that ought to be reviewed by this Court, namely, whether the trial court properly denied a motion to vacate judgment where there was a constitutional violation concerning his right to the effective assistance of trial counsel.

20.   But as discussed in the People's opposing affirmation and memorandum of Law (Exhibit A), defendant's claim of ineffectiveness is meritless.   And nothing in defendant's present filing changes that result.   Apart from rehashing his unmeritorious arguments to the motion court, defendant argues, without any basis, that an

evidentiary hearing is warranted. As defendant fails to demonstrate that the summary denial of his motion was improper, or to present any question that warrants further review, defendant's leave application should be denied.

**WHEREFORE,** and for the reasons stated in the accompanying exhibit, defendant's motion should be denied.

Dated:      Kew Gardens, New York
           April 18, 2013

                          JILL A. GROSS MARKS
                          Assistant District Attorney
                          (718) 286-5882

To:    Abu Khan
       07-A-4685
       Green Haven Correctional Facility
       P.O. Box 4000
       Stormville, N.Y. 12582

# *EXHIBIT A*

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY:  CRIMINAL TERM:  PART K-20
-------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,                    :          Return Date:
                                                                                      February 20, 2013

                                            Respondent,            :

                                                                            :          AFFIRMATION IN
                                                                                      OPPOSITION TO
                                                                            :          DEFENDANT'S
                             -against-                                                 SECOND MOTION
                                                                            :          TO VACATE
                                                                                      CONVICTION

ABU KHAN,                                                                 :

                                                                            :

                                                                            :          Queens County
                                                                                      Indictment Number
                                            Defendant.             :          2147/06
-------------------------------------------------------------------x

JILL A. GROSS MARKS, an attorney duly admitted to practice in the State
of New York, affirms the following statements to be true under the penalty of perjury:

1.       I am an Assistant District Attorney, of counsel to Richard A. Brown, the
District Attorney of Queens County.  I am submitting this affirmation in opposition to
defendant's *pro se* motion, sworn November 21, 2012, to vacate his judgment of conviction
pursuant section 440.10 of the Criminal Procedure Law.  I make the statements in this
affirmation upon information and belief, based upon my review of the records and files of
the Queens County District Attorney's Office.

## Factual and Legal Background

2.       On numerous occasions in 1997 to 2000, defendant had sexual contact

with his five to eight year old daughter "AM" at their home in Queens County. Defendant's sexual contact with AM escalated to rape on numerous occasions between 2001 and 2004 when the family was living in Florida. On November 30, 2004, defendant raped twelve-year-old AM at her grandmother's home in Queens County. The next day, defendant returned to Florida, but was estranged from AM's mother; AM stayed with her grandmother for the school year, returning home to Florida in August 2005. The following Easter, AM disclosed the rape to her mother.

3. For these crimes, defendant was charged with Rape in the First Degree (Penal Law § 130.35[4]), Course of Sexual Conduct Against a Child in the Second Degree (Penal Law §130.80), Endangering the Welfare of a Child (Penal Law § 260.10[1]), and Sexual Abuse in the Second Degree (Penal Law § 130.60[2])(Queens County Indictment Number 2147/06).

4. Defendant proceeded to trial before the Honorable Ronald D. Hollie, Queens County, Supreme Court, and a jury. At the conclusion of the trial, defendant was found guilty of all counts and sentenced to concurrent determinate prison terms of fourteen years for rape, ten years for sexual conduct, five years for endangering and one year for sexual abuse, plus post-release supervision.

5. On March 15, 2011, defendant perfected his appeal by filing a brief, through counsel, in the Appellate Division, raising one two-part claim. Defendant argued he was denied a fair trial when the trial court improperly exercised its discretion in allowing

2

the People to present uncharged-crime evidence that defendant began raping his stepdaughter when she was around nine years old and the family lived in Florida and two photographs depicting her age when defendant began to sexually abuse her, about ten years before trial.

6.     The People filed a respondent's brief, arguing that the uncharged-crime evidence was relevant to explain the father/daughter relationship between defendant and the victim, to complete the temporal gap in the narrative of the charged crimes, and to rebut the defense claim that the victim's delayed disclosure was a fabrication.  And the school photographs of the child were relevant to establish the victim's age and state of mind when the abuse started ten years before trial.  The People further argued that the trial court exercised sound discretion in concluding the evidence was far more probative than prejudicial and defendant's conviction should be affirmed.

7.     In a decision and order dated October 25, 2011, the Appellate Division affirmed defendant's conviction, holding that the trial court "providently exercised its discretion in permitting the prosecution to elicit evidence that the defendant, charged with sexually touching the younger-than-11-year-old victim from 1997 to 2000 while the family lived in Queens, and with one rape of the victim in Queens in November 2004, raped the victim on frequent occasions between 2001 and 2004 while the family lived in Florida. The evidence was properly admitted to demonstrate the defendant's pattern of escalating sexual conduct toward the victim during the period between the charged crimes, and as relevant background information to enable the jury to understand the defendant's relationship with the

3

victim and to place the events in question in a believable context, particularly since the defendant raised the issue of the victim's delayed disclosure of the charged criminal conduct." *People v. Khan*, 99 A.D.3d 1014, 1014-1015 (2d Dept. 2011). Moreover, the Court held, the trial court "providently exercised its discretion in admitting into evidence two photographs depicting the victim at ages five and seven to illustrate the victim's age when the sexual contact allegedly began and to corroborate testimony regarding the change in the victim's appearance." *Id.*

8.   On December 12, 2011, defendant's subsequent application to the Court of Appeals for leave to appeal the Appellate Division's denial of permission to file a supplemental brief was dismissed, *People v. Khan*, 18 N.Y.3d 859 (2011), and on January 19, 2012, his application for leave to appeal the Appellate Division's affirmance of the judgement of conviction was denied.  *People v. Khan*, 18 N.Y.3d 884 (2012) (Smith, J.).

9.   In a letter dated February 20, 2012, defendant sought leave to reargue his appeal to the Appellate Division.  The People submitted opposition papers, and in an order dated April 6, 2012, the Appellate Division denied reargument.

10.   In the meantime, on or about March 16, 2012, defendant moved in this Court for an order vacating his judgment of conviction pursuant to section 440.10 of the Criminal Procedure Law.  Defendant claimed the evidence was insufficient and weighed against the verdict, he received the ineffective assistance of trial counsel, and there was unspecified newly-discovered evidence.

4

11.     In responsive papers dated April 11, 2012, the People argued that the motion should be summarily denied because the claims were procedurally barred. In particular, the People argued a) the claims were based on the record of the proceedings in the trial court and could have been raised on direct appeal; and b) allegations of fact essential to support the motion were made solely by defendant, unsupported by any other affidavit or evidence, and there was no reasonable possibility that they were true.

12.     By decision and order dated July 12, 2012, Supreme Court (Hollie, J.) denied defendant's motion "in all respects." In a memorandum opinion, the Court held that defendant was barred from raising issues that were based on the record because defendant could have raised them on appeal but failed to do so (Decision at 2). In addition, the Court held that defendant had not "set forth sufficient newly discovered evidence of such a nature that if said evidence had been received at trial, the verdict would have been more favorable to the defendant" (*Id.*).

13.     Subsequently, on August 6, 2012, defendant sought leave to appeal to the Appellate Division from Supreme Court's order of denial. The People submitted opposition papers, and in an order dated October 19, 2012, the Appellate Division denied the application.

14.     On or about November 13, 2012, defendant filed a motion in the Appellate Division, seeking a writ of error *coram nobis*, claiming that he was denied the effective assistance of appellate counsel. Defendant claimed that appellate counsel was

5

ineffective for failing a) to communicate with defendant prior to submitting the Appellate Division brief, and b) to investigate the medical evidence of rape or to consult defense experts to rebut the People's expert medical and psychological evidence regarding the significance of a lack of physical evidence in a rape and the workings of the Child Sexual Abuse Accommodation Syndrome. Appellate Counsel and the People submitted opposing papers and defendant's application is currently pending.

### The Present Motion

15.     In papers sworn on or about November 21, 2013, defendant filed a motion in this Court seeking to vacate the judgment of conviction under section 440.10 of the Criminal Procedure Law on the ground that he received the ineffective assistance of trial counsel as guaranteed by the United States Constitution (Motion at 26). Defendant claims counsel failed to consult or call defense experts to challenge the People's two expert witnesses-- the medical expert who testified that the lack of evidence of penetration or injury to the genitalia did not negate the allegations of rape and sexual abuse, and the psychological expert who testified about the Child Sexual Abuse Accommodation Syndrome.

16.   As discussed in the attached Memorandum of Law, this Court should

deny defendant's claim because it is procedurally barred and meritless.

**WHEREFORE**, defendant's motion should be denied.

Dated:     Kew Gardens, New York
           February 20, 2013


                              _____
                              JILL A. GROSS MARKS
                              Assistant District Attorney
                              (718) 286-5882


To:   Abu Khan
      07-A-4685
      Green Haven Correctional Facility
      P.O. Box 4000
      Stormville, N.Y. 12582

7

SUPREME COURT OF THE STATE OF NEW YORK
QUEENS COUNTY: CRIMINAL TERM: PART K-20
-------------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,        :

                       Respondent,        :

      -against-        :

ABU KHAN,        :

          Defendant.        :

-------------------------------------------------------------------x

**MEMORANDUM
OF LAW**

## ARGUMENT

## DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

This Court should deny defendant's claim that his trial counsel was ineffective because the trial record affirmatively demonstrates that defense counsel employed a viable, if ultimately unsuccessful, trial strategy. Defense counsel had an effective trial strategy to use the lack of medical evidence of penetration or injury to argue that the complainant's claims were fabricated, and that her belated outcry, rather than being symptomatic of a child suffering from the Child Sexual Abuse Accommodation Syndrome, showed the complainant was motivated by revenge and retribution for her family due to defendant's failure to provide financial support. And defense counsel supported that theory through vigorous and capable cross-examination of the experts, presentation of defense evidence, and summation argument. Defendant's testimony was designed to sow a reasonable doubt that he could have sexually

8

assaulted and raped his daughter over such a long period without being discovered.

Defendant, however, claims that defense counsel was ineffective for failing to consult or present defense experts to establish that the Child Sexual Abuse Syndrome is not unanimously accepted in the field and to dispute the likelihood of a rape or sexual abuse occurring without leaving any physical injury or changes in the female genitalia. But defense counsel adequately presented these theories, primarily through cross-examination, and summation argument, and counsel cannot be second-guessed for choosing one particular strategy over another. Thus, defense counsel cannot be held ineffective for failing to follow the strategy now suggested by defendant.

In any event, defendant cannot demonstrate prejudice because the testimony about whether the complainant, with no observable injury to her genitalia, could have been raped or abused, and with symptoms similar to those manifested by known sufferers of the Child Sexual Abuse Accommodation Syndrome, was elicited from experts whose credentials defendant does not and cannot question. Thus, defense counsel cannot be held ineffective for failing to pursue a strategy which is founded on a flawed scientific theory, and which would have been ultimately unsuccessful in light of the strong evidence presented at trial.

The right to the effective assistance of counsel is guaranteed under both the Federal and State Constitutions. *See* U.S. Const., 6th Amend.; N.Y. Const., art. I, § 6. Under the New York rule, what qualifies as effective assistance varies with the unique circumstances of each representation. *People v. Benevento*, 91 N.Y.2d 708, 712 (1998);

9

*People v. Baldi*, 54 N.Y.2d 137 (1981). In order to succeed on a claim that trial counsel was ineffective under the state constitution, a defendant must demonstrate, viewing the totality of the evidence, the law, and the circumstances of that particular case, that counsel failed to provide "meaningful representation." *People v. Benevento*, 91 N.Y.2d at 712 (quoting *People v. Baldi*, 54 N.Y.2d at 147 [1981]); *see also People v. Satterfield*, 66 N.Y.2d 796, 798-799 (1985). Meaningful representation "includes a prejudice component which focuses on the fairness of the process as a whole rather than [any] particular impact on the outcome of the case." *People v. Henry*, 95 N.Y.2d 563, 566 (2000), *citing People v. Benevento*, 91 N.Y.2d at 714.

Courts should apply a "flexible approach" when evaluating ineffective assistance of counsel claims. *People v. Henry*, 95 N.Y.2d at 565, citing *People v. Benevento*, 91 N.Y.2d at 712. The question is whether the attorney committed "egregious and prejudicial" error such that defendant did not receive a fair trial. *See People v. Benevento*, 91 N.Y.2d at 713 (quoting *People v. Flores*, 84 N.Y.2d 184, 188-189 [1994]). What is guaranteed is a fair trial, "not necessarily a perfect one." *People v. Benevento*, 91 N.Y.2d at 712; *see also People v. Flores*, 84 N.Y.2d at 187. A defendant's conviction may have had little, if anything, to do with counsel's performance, and courts are properly skeptical when "disappointed prisoners try their former lawyers on charges of incompetent representation." *People v. Benevento*, 91 N.Y.2d at 712 (quoting *People v. Brown*, 7 N.Y.2d 359, 361 [1960]).

When applying this standard, however, courts must take care not to confuse true ineffectiveness of counsel with mere losing tactics and not accord "undue significance" to retrospective analysis. *People v. Benevento*, 91 N.Y.2d at 712; *People v. Baldi*, 54 N.Y.2d at 145. Thus, courts should neither second-guess the wisdom of counsel's strategy nor probe counsel's subjective reasons for choosing that strategy. So long as the defendant was afforded "meaningful representation," it is irrelevant whether a course chosen by a defendant's counsel was the best trial strategy, or even a good one. *People v. Satterfield*, 66 N.Y.2d at 799-800. Indeed, trial practice is "as much an art as a science," and trial lawyers must, given the unique attributes of each case, devise and execute appropriate strategy. *People v. Ellis*, 81 N.Y.2d 854, 856 (1993). The chosen strategy need only be "reasonable and legitimate" under the circumstances to prevent a finding of ineffective assistance. *People v. Benevento*, 91 N.Y.2d at 713; *see also People v. Lane*, 60 N.Y.2d 748, 750 (1983). Unless a defendant can show that there was no "legitimate reason" to pursue a particular strategy, a defense attorney must be presumed to have rendered adequate assistance to a defendant. *People v. Benevento*, 91 N.Y.2d at 712; *People v. Rivera*, 71 N.Y.2d 705, 709 (1988). A "simple disagreement" with strategies, weighed long after the trial, is insufficient. *People v. Benevento*, 91 N.Y.2d at 713 (quoting *People v. Flores*, 84 N.Y.2d at 187).

In order to prevail on a claim of ineffectiveness under the Sixth Amendment to the U.S. Constitution, a defendant must satisfy a somewhat different test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate, first, that counsel's

11

performance fell below an objective standard of reasonableness and, second, that the deficient performance deprived the defendant of a fair result. *See People v. Cuesta*, 177 A.D.2d at 641; *People v. Sullivan*, 153 A.D.2d 223, 226-227 (2d Dept. 1990). It is the defendant's burden not only to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (*Strickland v. Washington*, 466 U.S. at 689; *People v. Cuesta*, 177 A.D.2d at 641), but also to demonstrate a reasonable probability that, but for the substandard performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. at 694; *People v. Cuesta*, 177 A.D.2d at 641; *People v. Sullivan*, 153 A.D.2d at 226-227.

Moreover, only in "rare instances" will an "isolated error" by otherwise competent counsel operate to deprive a defendant of effective representation. *People v. Turner*, 5 N.Y.3d 476 (2005); *accord People v. Borrell*, 12 N.Y.3d 365, 368 (2010). In this regard, "is well settled that the failure to call a particular witness does not necessarily amount to ineffective assistance of counsel." *People v. Muller*, 57 A.D.3d 1113, 1114 (3d Dept. 2008). Similarly, a failure to present a particular witness or medical evidence will not render a counsel's performance ineffective where "trial counsel's omission [does] not prejudice the defense or defendant's right to a fair trial." *People v. Hobot*, 84 N.Y.2d 1021, 1024 (1995); *accord People v. Kilbury*, 83 A.D.3d 1579 (4th Dept. 2011), *leave denied*, 17 N.Y.3d 860 (counsel not ineffective for failing to call expert on Child Sexual Abuse Accommodation Syndrome) *People v. Flores*, 83 A.D.3d 1460 (4th Dept. 2011), *affirmed*, 2012 NY LEXIS

12

1318 (June 7, 2012)( defendant convicted of rape, sodomy and sexual abuse of a nine-year-old did not receive ineffective assistance of defense counsel because counsel failed to hire an expert to refute the People's experts); *People v. Auleta*, 82 A.D.3d 1417 (3d Dept. 2011), *leave denied* 17 N.Y.3d 813 (defendant convicted of rape did not receive ineffective assistance at trial where he failed to demonstrate that trial counsel's failure to call medical expert deprived him of a fair trial -- medical expert testified there was no evidence of physical trauma or injury, defense counsel highlighted this testimony, and defendant's affidavit did not contradict this testimony); *People v. Guay*, 72 A.D.3d 1201 (3d Dept. 2010) *affirmed* ___ N.Y.3d ___, 2011 NY LEXIS 3221 (November 15, 2011)(defendant convicted of rape, sexual abuse and endangering did not receive ineffective assistance of counsel because counsel failed to obtain an independent medical exam); *People v. Hamms*, 55 A.D.3d 1142 (3d Dept 2008) *appeal denied* 11 N.Y.3d 925 (January 27, 2009)(defendant convicted of rape and endangering did not receive ineffective assistance of counsel because counsel failed to call an expert medical witness); *see also People v. Ransome*, 207 A.D.2d 504 (2d Dept. 1994)(same regarding expert on battered woman syndrome); *People v. McDonald*, 79 A.D.3d 771 (2d Dept 2010) *leave denied* 16 N.Y.3d 861 (2011) (same regarding expert on eyewitness identifications); *People v. Ariosa*, ___ A.D.3d ___, 955 N.Y.S.2d 244, 2012 NY App Div LEXIS 8138 (3d Dept 2012)(same regarding expert on handling and weight of seized marihuana); *see also People v. Daniels*, 35 A.D. 2d 495, 496 (2d Dept. 2006) (failure to hire print expert not ineffective where counsel had strategy to mitigate weight of People's

13

evidence).

A trial court may deny a defendant's motion pursuant to section 440.10 on ineffectiveness grounds without holding a hearing where the motion can "be determined on the trial record and defendant's submissions on the motion." *People v. Satterfield*, 66 N.Y.2d 796, 799 (1985). Indeed, section 440 provides that a court may deny a motion on the merits where "[t]he moving papers do not allege any ground constituting a legal basis for the motion" C.P.L. § 440.30(a).

That is precisely the case here. Defendant has not met his burden of proving that his trial counsel's assistance was ineffective or that defendant did not receive a fair trial because his counsel's conduct was "egregious and prejudicial." Accordingly, this Court should reject his claims without a hearing.

The trial record establishes that defendant received the effective assistance of counsel and defendant's allegations do nothing to refute that conclusion. Defense counsel had a well-reasoned trial strategy designed to undermine the credibility of the complainant and to demonstrate that her outcry was delayed not because she was a victim of abuse, or suffered from the Child Sexual Abuse Accommodation Syndrome in particular, but rather because the claims were simply untrue and were motivated to vindicate her family after defendant failed to pay child support. At trial, defense counsel followed these themes during his cross-examination and summation arguments. Defendant vigorously and effectively cross-examined the people's medical and psychological experts. From Dr. Rosenfeld, the

14

physician who examined the victim, defense counsel elicited that the doctor had testified in the past, always for victims (Rosenfield: 570-571). Counsel confronted Dr. Rosenfeld with the contrary view of Dr. Robert Friendlander, whose opinion was that he was "not aware of any evidence that penetrating a girl of any age with an erect normal size penis is likely to leave the hymen intact (Rosenfield: 577-578). Dr. Rosenfeld testified that she was not familiar with Friedlander's work and that she disagreed with his statement (Rosenfield: 576, 578). Counsel elicited from the doctor that the victim had said she had a boyfriend contradicting the victim's own testimony that she did not (Rosenfield: 572).

During his examination of Dr. Lewittes, the psychologist with expertise in CSAAS, counsel elicited that Lewittes testimony was "generalized" and not specific to this victim, whom he had never met (Lewittes: 623). Lewittes acknowledged the possibility that a child does not disclose the abuse because there was no abuse in the first place (Lewittes: 623), and that the doctor has seen false claims of abuse by children (Lewittes: 624). Counsel elicited from Lewittes that one of the reasons for false claims of abuse was "revenge" -- testifying that the child may feel this gives them "power" and the claim is a "way to get back at somebody who they are angry at" (Lewittes: 624-625).

Defense counsel used this evidence during his summation argument, telling the jury there were six witness but only four of them counted (Defense Summation: 695) signaling that the testimony of the two experts was useless. Counsel challenged the credibility of the complainant, reminding the jury that she did not tell anybody

15

contemporaneously and waited quite a while to report the crimes (Defense Summation: 697).

Counsel argued that the complainant's claimed fear of defendant did not jive with the facts,

questioning why she would voluntarily accompany defendant to Long Island to return the

truck that last night in Queens when she could have stayed home with her grandmother

(Defense Summation: 698-699). Counsel also pointed to the animosity between defendant

and the mother. Similarly, counsel denigrated the significance of the medical expert,

remarking, "just because an expert give you a certain opinion," if it does not "jibe with your

common sense and your opinion, you do not have to accept that opinion. You have a right

to reject that opinion. I urge you to do that in this particular case" (Defense Summation:

701). Counsel asked the jury to listen carefully to the judge's instructions regarding expert

testimony, reiterating that "just because an expert is a so-called expert you do not have to

accept their opinion on the situation" (Defense Summation: 707). As for Dr. Rosenfeld, the

medical expert, counsel remarked that she had been working at the Queens Child Advocacy

Center for twelve years, had testified on at least five-hundred occasions, not once for a

defendant, and that because of her "bias" her testimony should be viewed with "a good deal

of skepticism" (Defense Summation: 702, 705). Counsel remarked that while the physical

evidence was not inconsistent with the allegations, it was also consistent with a lack of sexual

abuse or rape (Defense Summation: 704). As for the psychologist Lewittes, counsel

reminded the jury that his testimony was not specific to this case or this complainant, but was

simply general information about the syndrome (Defense Summation: 706), that Lewittes

16

admitted he had come across instances where a child had made "false allegations of sexual abuse," for which there were a number of possible reasons, including jealousy, revenge and mental disease (Defense Summation: 706).  Counsel also addressed the non-support claim, reminding the jury of the evidence that defendant said he provided support to Leslie Martinez until she moved without giving him her new address (Defense Summation: 701).

Defendant, however, now claims that trial counsel was ineffective for failing to present an expert witness who would have testified that the Child Sexual Abuse Accommodation Syndrome has been discredited. But defendant is wrong.  Indeed, the Appellate Division, Second Department recently rejected this precise argument in *People v. Green*, 92 A.D.3d 894 (2d Dept. 2012), holding that "defendant failed to support his claim that the Child Sexual Abuse Accommodation Syndrome has been discredited within the scientific community" *id* at 896, citing *People v. Spicola*, 2011 N.Y. Lexis 505 (March 31, 2011) and rejecting *Gersten v. Senkowski*, 426 F.3d 588, 600 (2d Cir 2005), upon which defendant relies.  Thus, defendant's reliance on the contrary statements of a forensic psychologist named John C. Yuille, as reported in *Gersten*,  must fail.  In short, although Yuille is cited by defendant as stating that "'what was once known as Child Asexual Abuse Accommodation Syndrome is not longer regularly accepted in the child abuse research community. . . because the symptoms which were alleged components of the syndrome do not occur regularly enough in those who truly have been victims of sexual abuse to call it a syndrome" (Defendant's motion at 16), that position is not the law in New York. *E.g. People*

17

v. *Spicola*, 2011 N.Y. Lexis 505 (March 31, 2011); *People* v. *Green*, 92 A.D.3d 894; and

cannot form the basis of an ineffectiveness claim. Thus, defendant simply cannot support

his claim, that the prosecution's entire case rested on the credibility of the victim, and the

prosecution used the CSAAS to explain children's reactions to sexual abuse, including

delayed disclosure and blurred memory, and that counsel, by failing to consult or call a

psychological expert on child sexual abuse "was unable to mount an effective cross-

examination and missed an opportunity to rebut this attempt at bolstering the alleged victim's

credibility" (Motion at 21-22). Indeed, apart from the fallacy of defendant's argument that

CSAAS has been discredited, the record belies defendant's claim, as previously discussed.

Thus, counsel did not need to consult an expert to vigorously examine the People's experts.

Rather, counsel used the strategy of confronting the witness with the writings of other experts

on the subject. In any event, that one expert has disagreed with the People's expert does not

render the second expert the authority. Indeed, a careful reading of the testimony establishes

that Dr. Lewittes acknowledged that CSAAS was a syndrome, and that it can be a useful tool

for understanding and treating victims, but is by no means a boilerplate for the conduct of

every victim. Defendant misreads the expert testimony, overstates its meaning, overlooks the

defense's strategy, and fails to demonstrate that a defense expert would have changed the

result.

Moreover, as previously noted, the failure to call a particular witness does not

necessarily amount to ineffective assistance of counsel. *See, e.g., People v. Muller*, 57

18

A.D.3d at 1114. And a failure to present a particular witness or medical evidence will not render a counsel's performance ineffective where, as here, "trial counsel's omission [did] not prejudice the defense or defendant's right to a fair trial." *People v. Hobot*, 84 N.Y.2d at 1024; *see People v. Kilbury*, 83 A.D.3d 1579 (counsel not ineffective for failing to call expert on Child Sexual Abuse Accommodation Syndrome) *People v. Flores*, 83 A.D.3d 1460(counsel for defendant convicted of rape, sodomy and sexual abuse of a nine-year-old not ineffective for failing to hire an expert to refute the People's experts); *People v. Auleta*, 82 A.D.3d 1417(counsel for defendant convicted of rape not ineffective because defendant failed to demonstrate that trial counsel's failure to call medical expert deprived him of a fair trial -- medical expert testified there was no evidence of physical trauma or injury, defense counsel highlighted this testimony, and defendant's affidavit did not contradict this testimony); *People v.* Guay, 72 A.D.3d 1201(counsel for defendant convicted of rape, sexual abuse and endangering not ineffective for failing to obtain an independent medical exam); *People v. Hamms*, 55 A.D.3d 1142 (counsel for defendant convicted of rape and endangering not ineffective for failing to call an expert medical witness).  Because defendant fails to demonstrate that counsel was less than competent in his approach to the experts, and fails to demonstrate that trial counsel's chosen strategy prejudiced the defense, he fails to sustain his claim of ineffectiveness and his motion should be summarily denied.

## CONCLUSION

For the reasons stated above, defendant's motion should be summarily denied.

Respectfully submitted,

RICHARD A. BROWN
District Attorney
Queens County

JOHN M. CASTELLANO
JILL A. GROSS MARKS
        Assistant District Attorneys
        of Counsel

February 20, 2013

AFFIDAVIT OF
<u>SERVICE BY MAIL</u>

State of New York )
                          )ss:
County of Queens )

      CAROL PIERSA,  being duly sworn, deposes and states as follows:

      1. I am over the age of 18 years and not a party to this action.

      2. On April 19, 2013, I served the within Affirmation In Opposition To Defendant's

Motion For Leave To Appeal in the case of <u>People v. Abu Khan,</u> on the following defendant:

*Abu Khan*
*07-A-4685*
*Green Haven Correctional Facility*
*P.O. Box 4000*
*Stormville, New York 12582*

by causing a true and correct copy of the document to be placed in a post-paid wrapper

and then deposited in the official depository maintained and controlled by the United

States Postal Service located at 125-01 Queens Boulevard, Kew Gardens, NY, 11415.

                              _____
                                    CAROL PIERSA

Sworn to before me this
19th day of April, 2013

_____
    Notary Public

Danielle Fenn
Notary Public
State of New York County of Queens
Registration #02FE616951
Commission Expires 6/26/2014 2015

**Courtesy Copy**

RECEIVED

COURT OF APPEALS OF THE STATE OF NEW YORK   Original Filed in ECF   Docket number 14-CV-5456   MAY 09 2013

NEW YORK STATE
COURT OF APPEALS

---------------------------------------------

ABU KHAN,

    Plaintiff-Appellant  .

       -against-

THE PEOPLE OF THE STATE OF
NEW YORK, ·

Defendant-Respondent.

---------------------------------------------

NOTICE OF MOTION
FOR LEAVE TO APPEAL
TO COURT OF APPEALS
FROM THE DECISION
AND ORDER OF THE
APPELLATE DIVISION
2nd JUDICIAL DEP'T

Index No.

Please Take Notice;

    That upon the annexed affidavit of ABU KHAN, sworn to on this 6th day of May, 2013, · upon the record on appeal in the Appellate Division Second Judicial Department, from the Order of the Supreme Court, Queens County, entered in the office of the clerk of the County of Queens on April 17, 2013, dismissing the Plaintiff-Appellant's NOTICE OF MOTION for Writ of Error Coram Nobis, the Notice of entry thereof, the unanimous order of the Appellate Division Second Department, without opinion, affirming that order of April 17, 2013, entered in the office of the clerk of the Appellate Division Second Judicial Department on April 17, 2013.

    ABU KHAN, plaintiff-appellant, will move this Court of Appeals of the State of New York, at a stated Term thereof, appointed to be held at the courthouse of the Court of Appeals, Court of Appeals Hall, 20 Eagle street, Albany, New York 12207-1095, on the 30th day of May 2013, at the opening of Court on that day or as soon thereafter as counsel can be heard, for an order allowing an appeal to be taken herein by ABU KHAN, Plaintiff-Appellant to this Court from the order of unanimous affirmance, pursuant to CPLR 5602(a)(1) and for such other relief in the circumstances as may be just and proper.

- 01 -

The grounds upon which such leave is asked are set forth in detail in the attached copy of Writ of Error Coram Nobis.

Date: Stormville, NY 12582
      May 6, 2013

Respectfully Submitted,

ABU KHAN
DIN: 07A4685
Plaintiff-Appellant
(in Pro-Se)
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

Matthew J. Farrand
Notary Public State of NY
No. 01FA6249046
Qualified in Dutchess County
My Comm. Expires 9/26/2015

Sworn to before me this

6th day of May 2013

Notary Public

- 02 -

Courtesy Copy
Original Filed in ECF
docket number 14-CV-5456



# Supreme Court of the State of New York
# Appellate Division : Second Judicial Department

M157792
L/

JOHN M. LEVENTHAL, J.

2013-03604

DECISION & ORDER ON APPLICATION

The People, etc., plaintiff,
v Abu Khan, defendant.

(Ind. No. 2147/06)

Application by the defendant, pursuant to CPL 450.15 and 460.15 for a certificate granting leave to appeal to this Court from an order of the Supreme Court, Queens County, dated March 6, 2013, which has been referred to me for determination.

Upon the papers filed in support of the application and the papers filed in opposition thereto, it is

ORDERED that the application is denied.

JOHN M. LEVENTHAL
Associate Justice

June 11 , 2013

PEOPLE v KHAN, ABU



DISTRICT ATTORNEY
QUEENS COUNTY
125-01 QUEENS BOULEVARD
KEW GARDENS, NEW YORK 11415-1568
(718) 286-6000

Courtesy Copy
Original Filed in ECF
docket number 14-CV-5456

**Richard A. Brown**
District Attorney

June 19, 2013

The Honorable Victoria A. Graffeo
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York 12207-1095

Re:  People v. Abu Khan
     Queens County Indictment Number 2147/06

Your Honor:

The People oppose defendant's application for permission to appeal to the Court of Appeals from the April 17, 2013 order of the Appellate Division, Second Department, denying his application for a writ of error <u>coram</u> <u>nobis</u>. <u>People v. Khan</u>, 105 A.D. 3d 975 (2d Dept. 2013). Defendant's leave application should be denied because it presents no novel issue of law or any issue of statewide significance.

Indeed, although in his Notice of Motion defendant claims he is relying on a May 6, 2013 affidavit to support his request for the Court to review the Appellate Division's decision, defendant failed to serve or file any affidavit with his motion. Instead, defendant relies solely on the papers submitted below. Since defendant fails to provide any new argument, nor any reason at all to fault the Appellate Division's decision, the People rely on their papers submitted to that Court (People's affirmation and memorandum of law in opposition to defendant's application for a writ of error <u>coram</u> <u>nobis</u>, attached as Exhibit A) in response to defendant's arguments in that Court. The only noteworthy addition to those papers is that the Article 440 motion pending at that time has since been denied, as has defendant's application for leave to appeal from that denial to the Appellate Division. <u>See</u> <u>People v Abu Khan</u>, Decision of June 11, 2013 (Attached as Exhibit B). And, as more fully discussed in those papers, appellate counsel provided defendant with effective assistance. <u>Strickland v. Washington</u>, 466 U.S. at 668-690; <u>People v. Stultz</u>, 2 N.Y.3d 277, 285 (2004);

People v. Abu Khan                                                      Page 2
June 19, 2013

People v. Benevento, 91 N.Y.2d 708, 712 (1998). The Appellate Division agreed, and
defendant presents no reason, and certainly no good reason, for a different result in this
Court.

      In sum, defendant's motion should be denied as his claims do not present this
Court with any leave-worthy issue and should be summarily denied.


                 Sincerely,

                 Jill Gross Marks
                 Assistant District Attorney
                 (718) 286-5882

cc:    Mr. Abu Khan
       07-A-4685
       Green Haven Correctional Facility
       P.O. Box 4000
       Stormville, NY 12582-4000

# *EXHIBIT A*

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,      :      Return Date:
                                                 February 8, 2013
                              Respondent,  :

                                           :     AFFIRMATION IN
                                                 OPPOSITION TO
                                                 DEFENDANT'S
          -against-                        :     MOTION FOR A WRIT
                                                 OF ERROR *CORAM*
                                           :     *NOBIS*

ABU KHAN,
                                           :     Queens County
                                                 Ind. No. 2147/06
                              Defendant.   :
------------------------------------------------------------------x     A.D. No. 2007-07185

   JILL A. GROSS MARKS, an attorney duly admitted to practice in the State

of New York, affirms the following statements to be true under the penalty of perjury:

   1.  I am an Assistant District Attorney, of counsel to Richard A. Brown, the

District Attorney of Queens County.  I am submitting this affirmation in opposition to

defendant's motion for a writ of error *coram nobis*.  I make the statements in this affirmation

upon information and belief, based on my review of the records and files of the Queens

County District Attorney's Office.

### Factual and Legal Background

   2.  On numerous occasions in 1997 to 2000, defendant had sexual contact

with his five to eight year old daughter "AM" at their home in Queens County.  Defendant's

sexual contact with AM escalated to rape on numerous occasions between 2001 and 2004

when the family was living in Florida. On November 30, 2004, defendant raped twelve-year-

old AM at her grandmother's home in Queens County. The next day, defendant went to Florida, but was estranged from AM's mother; AM stayed with her grandmother for the school year, returning home to Florida in August 2005. The following Easter, AM disclosed the rape to her mother.

3.      For these crimes, defendant was charged with Rape in the First Degree (Penal Law § 130.35[4]), Course of Sexual Conduct Against a Child in the Second Degree (Penal Law §130.80), Endangering the Welfare of a Child (Penal Law § 260.10[1]), and Sexual Abuse in the Second Degree (Penal Law § 130.60[2])(Queens County Indictment Number 2147/06).

4.      Defendant proceeded to trial before the Honorable Ronald D. Hollie, Supreme Court, Queens County, and a jury. At the conclusion of the trial, defendant was found guilty of all counts and sentenced to concurrent determinate prison terms of fourteen years for rape, ten years for sexual conduct, five years for endangering, and one year for sexual abuse, plus post-release supervision.

5.      On March 15, 2011, defendant perfected his direct appeal by filing a brief, through counsel, with this Court, raising one two-part claim. Defendant argues he was denied a fair trial when the trial court improperly exercised its discretion in allowing the People to present uncharged-crime evidence that defendant began raping his stepdaughter when she was around nine years old and the family lived in Florida and two old photographs depicting her age when defendant began to sexually abuse her ten years before trial.

6. The People filed a respondent's brief, arguing that the uncharged-crime evidence was relevant to explain the father/daughter relationship between defendant and the victim, to complete the temporal gap in the narrative of the charged crimes, and to rebut the defense claim that the victim's delayed disclosure was a fabrication. And the school photographs of the child were relevant to establish the victim's age and state of mind when the abuse started ten years before trial. The People further argued that the trial court exercised sound discretion in concluding the evidence was far more probative than prejudicial and defendant's conviction should be affirmed.

7. In a decision and order dated October 25, 2011, this Court affirmed defendant's conviction, holding that the trial court "providently exercised its discretion in permitting the prosecution to elicit evidence that the defendant, charged with sexually touching the younger-than-11-year-old victim from 1997 to 2000 while the family lived in Queens, and with one rape of the victim in Queens in November 2004, raped the victim on frequent occasions between 2001 and 2004 while the family lived in Florida. The evidence was properly admitted to demonstrate the defendant's pattern of escalating sexual conduct toward the victim during the period between the charged crimes, and as relevant background information to enable the jury to understand the defendant's relationship with the victim and to place the events in question in a believable context, particularly since the defendant raised the issue of the victim's delayed disclosure of the charged criminal conduct." *People v. Khan*, 99 A.D.3d 1014, 1014-1015 (2d Dept. 2011). Moreover, this Court held, "the

3

probative value and the need for the evidence outweighed any potential prejudice to the defendant, particularly in light of the Supreme Court's limiting instruction to the jury as to the proper use of the uncharged crimes evidence." *Id.*

8. On December 12, 2011, defendant's subsequent application to the Court of Appeals for leave to appeal the Appellate Division's denial of permission to file a supplemental brief was dismissed, *People v. Khan,* 18 N.Y.3d 859 (2011), and on January 19, 2012, his application for leave to appeal the Appellate Division's affirmance of the judgement of conviction was denied. *People v. Khan,* 18 N.Y.3d 884 (2012) (Smith, J.).

9. In a letter dated February 20, 2012, defendant sought leave to reargue his appeal to the Appellate Division. The People submitted opposition papers, and in an order dated April 6, 2012, the Appellate Division denied reargument.

10. In the meantime, on or about March 16, 2013, defendant also moved in the trial court for an order vacating his judgment of conviction pursuant to section 440.10 of the Criminal Procedure Law. Defendant claimed the evidence was insufficient and weighed against the verdict, he received the ineffective assistance of trial counsel, and there was unspecified newly discovered evidence.

11. In responsive papers dated April 11, 2012, the People argued that the claims were procedurally barred and the motion should be summarily denied. In particular, the People argued: a) the claims were based on the record of the proceedings in the trial court and could have been raised on direct appeal; and (b) allegations of facts essential to support

the motion were made solely by the defendant, unsupported by any other affidavit or evidence, and there was no reasonable possibility that these unsupported allegations were true.

12.    By decision and order dated July 12, 2012, Supreme Court (Hollie, J.) denied defendant's motion "in all respects." In a memorandum opinion, the court held that defendant was barred from raising issues that were based on the record because defendant could have raised them on appeal but failed to do so (*Id.*) In addition, the court held that defendant had not "set forth sufficient newly discovered evidence of such a nature that if said evidence had been received at trial, the verdict would have been more favorable to the defendant" (*Id.*).

13.    Subsequently, on August 6, 2012, defendant sought leave to appeal to this Court from Supreme Court's order of denial. The People submitted opposition papers, and in an order dated October 19, 2012, this Court denied leave.

**The Present Motion**

14.    In papers dated November 13, 2012, defendant moves *pro se* for a writ of error *coram nobis*, claiming that he was denied the effective assistance of appellate counsel who failed to communicate with defendant prior to submitting the Appellate Division brief, and failed to investigate the medical evidence of rape or to consult defense experts to rebut the People's expert medical and psychological evidence regarding the significance of a lack of physical evidence in a rape case and the workings of the Child Sexual Abuse

5

Accommodation Syndrome.[1]

15.    On December 13, 2012, the People received an affirmation from defendant's appellate attorney in response to defendant's *coram nobis* application.

16.    As explained more fully in the attached memorandum of law, defendant's claim of ineffective assistance of appellate counsel is meritless and his application should be denied.

WHEREFORE, and for the reasons set forth in the accompanying memorandum of law, the People respectfully request that defendant's motion for a writ of error *coram nobis* be denied.

Dated:      Kew Gardens, New York
            February 8, 2013


                                    _____
                                    JILL GROSS MARKS
                                    Assistant District Attorney
                                    (718) 286-5882


To:    Abu Khan
       07-A-4685
       Green Haven Correctional Facility
       P.O. Box 4000
       Stormville, N.Y. 12582

_____

[1] On or about November 21, 2013, defendant filed a section 440.10 motion to vacate the judgment of conviction in Queens County Supreme County, claiming he received the ineffective assistance of trial counsel who a) failed to adequately investigate the case; and b) failed to consult with or call a medical expert to challenge the medical evidence of penetration and the viability of the Child Sexual Abuse Accommodation Syndrome. The People's response to that motion is to be filed February 20, 2013.

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
-----------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,          :          MEMORANDUM
                                                                            OF LAW
                                        Respondent,          :

               -against-                                        :

ABU KHAN,                                                       :

                    Defendant.                                 :

-----------------------------------------------------------------x

## ARGUMENT

### DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

Defendant's appellate counsel provided him with effective assistance by raising meaningful and well-researched issues in his brief. Moreover, appellate counsel need not have raised every non-frivolous issue urged by defendant in his motions. Instead, appellate counsel properly exercised professional judgment in determining which issues to raise on appeal. And because defendant's claims are not properly appellate claims, counsel reasonably decided not to raise any of them in his brief on direct appeal. Indeed, defendant fails to raise a cognizable claim to support his contention that appellate counsel was ineffective and the writ should be denied.

To establish a claim of ineffective assistance of appellate counsel, a defendant must establish that his attorney did not provide him with "meaningful representation." *People v.*

7

*Stultz*, 2 N.Y.3d 277 (2004). Thus, the "essential inquiry in assessing the constitutional adequacy of appellate representation is . . . whether, viewed objectively, counsel's actions are consistent with those of a reasonably competent appellate attorney." *People v. Borrell*, 12 N.Y.3d 365, 368 (2009); *see also People v. Ramchair*, 8 N.Y.3d 313, 316 (2007).

The Court of Appeals has noted that meaningful representation of an appellate attorney "need not be perfect." *People v. Borrell*, 12 N.Y.3d at 368. Thus, the Court has explicitly stated that "this standard is not stringent – that it is in fact 'undemanding.'" *Id.*, citing *People v. Turner*, 5 N.Y.3d 476, 482 (2005). Indeed, the Court of Appeals has stated that it has "often tolerated errors by counsel where the overall representation was nonetheless capable of characterization as 'meaningful.'" *People v. Borrell*, 12 N.Y.3d at 368. In short, "the relevant and, indeed, dispositive threshold issue" when courts consider *coram nobis* applications "is not whether defendant's representation could have been better but whether it was, on the whole, constitutionally adequate." *Id.* at 370.

When considering the effectiveness of an appellate attorney, the appellate court should review the "fairness of the proceedings as a whole." *Stultz*, 2 N.Y.3d at 284. It follows that the length of the brief and number of issues raised are significant but not dispositive factors in assessing counsel's tactics. *Stultz*, 2 N.Y.3d at 285. Consequently, counsel does not have to "brief or argue every issue that may have merit" and "ha[s] latitude in deciding which points to advance and how to order them." *Stultz*, 2 N.Y.3d at 285; *see People v. Borrell*, 12 N.Y.3d at 368; *see generally Jones v. Barnes*, 463 U.S. 745, 751-754 (1983).

8

Further, to establish ineffectiveness of counsel on appeal, a defendant must "'demonstrate the absence of [any] strategic or other legitimate explanations' for a decision not to brief" an issue." *People v. Borrell*, 12 N.Y.3d at 369, citing *People v. Rivera*, 71 N.Y.2d 705, 709 (1988). And a defendant cannot do this if the record reveals any strategy "*that might well have been* pursued by a reasonably competent attorney." *People v. Satterfield*, 66 N.Y.2d 796, 799 (1985) (emphasis added); *Flores*, 84 N.Y.2d at 188.

Finally, the competence of counsel is presumed. *People v. Postell*, 45 A.D.3d 609, 610 (2d Dept. 2007); *see Rivera*, 71 N.Y.2d at 709. The presumption of competence that is part of the "meaningful representation" standard applies to appellate counsel as well, recognizing that "[j]ust as defense attorneys enjoy a wide latitude in defending clients at the trial level, appellate lawyers treat cases with considerable differences in style and approach." *Stultz*, 2 N.Y.3d at 285.

When evaluating the appellate representation under the federal standards, a court must review appellate counsel's performance according to the two-pronged standard established for reviewing a trial counsel's performance in *Strickland v. Washington*, 466 U.S. 668, supra. *See Evitts v. Lucy*, 469 U.S. 387 (1985). This test requires that a defendant demonstrate first, that counsel's performance fell below an objective standard of reasonableness, and then, that there is a "reasonable probability" that, but for counsel's error, the outcome would have been different. *Strickland v. Washington*, 466 U.S. at 688-94.

As such, in attempting to demonstrate that appellate counsel's performance was

9

deficient based on a failure to raise a claim, a defendant must demonstrate more than the omission by appellate counsel of a non-frivolous argument; the defendant must also show that but for the failure to raise the argument, there is a reasonable probability that the outcome of the appellate process would have been different. *See Jameson v. Coughlin*, 22 F.3d 427, 429 (2d Cir.), *cert. denied*, 513 U.S. 888 (1994); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.), *cert. denied*, 513 U.S. 820 (1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1993), *cert. denied*, 508 U.S. 912 (1993). There is a strong presumption that an appellate counsel's decision not to raise other claims falls within a wide range of reasonable professional conduct. *Holmes v. Bartlett*, 810 F. Supp. 550, 561 (S.D.N.Y. 1993) quoting *Strickland v. Washington*, 466 U.S. at 689.

Applying these principles to defendant's claims, defendant here has not overcome the presumption of adequate assistance by showing that counsel's actions were deficient and prejudicial to him.  In this case, appellate counsel not only raised the only potentially meritorious issue before this Court and properly omitted issues that lacked merit, but also submitted a brief that was well-written, with relevant legal and factual arguments. The one-point-brief submitted by appellate counsel was persuasive, competent, thorough, and wholly adequate in presenting defendant's strongest claims to this Court. It effectively summarized the record and presented the hearing and trial proceedings in a light favorable to defendant. And appellate counsel chose colorable claims when he argued that defendant's right to a fair trial was violated by the admission of uncharged Florida crime-evidence and photographic

portraits of the child at the ages of five to seven.  Indeed, this Court found defense counsel's arguments compelling enough to warrant a relatively lengthy opinion, explaining why the trial court's challenged evidentiary rulings were proper.

Defendant, however, claims that he was denied effective assistance of appellate counsel because the issues raised by counsel were meritless, or could not have resulted in a reversal of his conviction, and because he failed to "raise a solidly meritorious argument regarding consultation with medical experts" (Defendant's Motion at 13).  Thus, although defendant claims counsel's assistance "was so nominal it amounted to the substantial equivalent of being assigned no counsel at all" (*Id.* at 1), defendant fails to identify any weakness at all in appellate counsel's chosen claims, relying instead on a general complaint that counsel "submit[ted] poorly drafted arguments" (*Id.* at 3, 13).  Defendant also asserts that, if more than nominal, counsel's assistance "still did not reach a level of performance sufficient to satisfy an objective standard of reasonableness" (*Id.* at 1).  Defendant is wrong, and his generalizations fail to appreciate the careful selection of appellate issues demonstrated in counsel's brief.  Indeed, had defense counsel succeeded in arguing that the uncharged-Florida-crime evidence and the photographs of the victim as a little girl were improperly admitted, he would have had a very strong argument that defendant's conviction should be reversed because of the damaging nature of that evidence.  Any experienced appellate attorney's review of the record would have revealed that these evidentiary issues were the most compelling issues on appeal.  Thus, appellate counsel's raising of these issues, and his capable discussion of the relevant law and facts, is strong evidence of his

11

effectiveness.

Nor is there any merit to defendant's complaint about the issues appellate counsel should have raised. Defendant claims counsel was ineffective for "omitt[ing] meritorious arguments upon which a reversal of the conviction could of [sic] been had" (id at 3). Defendant cites (at page 3) appellate counsel's failure to consult a medical expert "to rule out . . . penetration" and a psychological expert to address the child sexual abuse accommodation syndrome. These issues, defendant claims, "were supported by both the facts in the record and prior decisional law. . . and should have been obvious from even a casual reading of the record" (Id at 3-4). But the consultation of experts is not the province of appellate counsel and hence the failure to do so would not have been a claim cognizable on direct appeal. In short, as the issues that defendant claims counsel failed to argue have no place in an appellate brief, defense counsel properly declined to raise them.

At most, appellate counsel could have argued that trial counsel was ineffective for failing to consult experts, but that is not defendant's claim. Nor would such a claim have been proper. As appellate counsel correctly notes in his responsive affidavit, defendant's claim of trial counsel's ineffectiveness could not have been raised on appeal. Defendant's *coram nobis* papers are replete with references to material about the potential nature and scope of testimony from defense experts -- but none of that is part of the record on appeal. Thus, a claim based on those allegations could not have been raised on direct appeal.

In any event, defendant has raised essentially the same claims of counsel's ineffectiveness in a motion now pending in Supreme Court, Queens County, under section

12

440.10 of the Criminal Procedure Law. That is the proper forum for review of the merits of defendant's claim of trial counsel's ineffectiveness, at least in the first instance, and defendant's application for *coram nobis* relief on this ground must be rejected.

In sum, defendant received the effective assistance of appellate counsel, and none of the claims raised by defendant could have been successful if raised by counsel on appeal. For this reason, defendant's petition for *coram nobis* relief should be denied.

## CONCLUSION

For the reasons stated above, defendant's motion for a writ of error *coram nobis* should be summarily denied.

Respectfully submitted,


RICHARD A. BROWN
District Attorney
Queens County


JOHN M. CASTELLANO
JILL A. GROSS MARKS
    Assistant District Attorneys
     of Counsel


February 8, 2013

13

# *EXHIBIT B*

# Supreme Court of the State of New York
## Appellate Division : Second Judicial Department

M157792
1/

JOHN M. LEVENTHAL, J.

2013-03604

DECISION & ORDER ON APPLICATION

The People, etc., plaintiff,
v Abu Khan, defendant.

(Ind. No. 2147/06)

       Application by the defendant, pursuant to CPL 450.15 and 460.15 for a certificate granting leave to appeal to this Court from an order of the Supreme Court, Queens County, dated March 6, 2013, which has been referred to me for determination.

       Upon the papers filed in support of the application and the papers filed in opposition thereto, it is

       ORDERED that the application is denied.

JOHN M. LEVENTHAL
Associate Justice

June 11 , 2013

PEOPLE v KHAN, ABU

# State of New York

# Court of Appeals

Courtesy Copy
Original Filed in ECF
docket number 14-CV-5456

BEFORE: HON. VICTORIA A. GRAFFEO,
                                    Associate Judge

---

THE PEOPLE OF THE STATE OF NEW YORK,

                                              Respondent,

    -against-

ABU KHAN,

                                              Appellant.

**ORDER
DENYING
LEAVE**

---

    Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure

Law § 460.20 from an order in the above-captioned case;*

    UPON the papers filed and due deliberation, it is

    ORDERED that the application is denied.

Dated: June 25ᵗʰ , 2013

    at Albany, New York

_Victoria A. Graffeo_
Associate Judge

*Description of Order: Order of the Appellate Division, Second Department, dated April 17,
2013, denying defendant's application for a writ of error coram nobis.