

1   SUPREME COURT OF THE STATE OF NEW YORK

2   COUNTY OF QUEENS:   CRIMINAL TERM:   PART K-20

3   ----------------------------------x   Indictment No.
    THE PEOPLE OF THE STATE OF NEW YORK  :   2147/2006

4                                        :
            -against-                    :

5   ABU KHAN                             :
                                         :

6                                        :
                                         :

7                  Defendant            :
    ----------------------------------x

                    March 16, 19, 20, 21, 22,

8                       26, 27, 28, 29 of 2007
                    125-01 Queens Boulevard

9                   Kew Gardens, New York 11415

10

    B E F O R E:

11

                        THE HONORABLE  RONALD HOLLIE,

12                                              Justice
    A P P E A R A N C E S:

13

                        Honorable Richard A. Brown

14                      For the People:
                        District Attorney - Queens County

15                      125-01 Queens Boulevard
                        Kew Gardens, New York 11415

16                      BY:  MINA MALIK, ESQ.
                        Assistant District Attorney

17

18

                        For the Defendant:

19                      ROBERT JOHNSTON, ESQ.
                        Defense Counsel

20

21

22

23                                      Viola L. Dunnom, SCR

24

25



1          COURT CLERK:  Calendar 1.  Indictment

2      2147 of 2006.  Abu Khan.  On for trial.

3          MS. MALIK:  For the People ADA Mina

4      Malik.

5          MR. JOHNSTON:  Robert H. Johnston for Mr.

6      Abu Khan.

7          THE COURT: Good morning Mr. Johnston.

8          MR. JOHNSTON:  Yes.

9          THE COURT:  Counsel please approach.

10         (Whereupon, an off the record discussion

11     was held at the bench.)

12         THE COURT: We have just had a bench

13     conference Mr. Khan.  You should know that one of

14     the things that I do, first of all Mr. Khan my name

15     is Judge Hollie, this case has been sent to this

16     part for trial.  Ms. Malik is this case being moved

17     to trial.

18         MS. MALIK:  Yes your Honor.

19         THE COURT: And so Mr. Khan prior to trial

20     what I do is make it a practice of inquiring of both

21     counsel what this case is about as far as the

22     allegations are concerned and also to make a

23     judgement as to how much time would be needed to try

24     the case.

25         And that is the reason that I was having

1    a bench conference with both your lawyer and Ms.

2    Malik. This case will be adjourned to 10 AM Monday

3    morning. At that point there will be further

4    argument made on the trial issues that exist in this

5    case.

6              Counsel on Monday morning also I will

7    have you talk to your client about waiving his

8    Antommarchi waiver. And Al if you can give him the

9    form now.

10             MR. JOHNSTON: Can I have a minute judge.

11             THE COURT: Sure.

12             MR. JOHNSTON: Judge, I have discussed

13   the matter with my client. He is going to waive

14   those rights that he has.

15             THE COURT: Mr. Khan have you had a chance

16   to read that form.

17             MR. JOHNSTON: Yes. I have explained it

18   to him judge.

19             THE COURT: Well, I just want Mr. Khan

20   to, he has read it also. Okay.

21             MR. JOHNSTON: Yes, sir.

22             THE COURT: All right. Mr. Khan I have in

23   my hands this form that is called a waiver of the

24   defendants presence at voir dire side-bar

25   conferences. Have you had a chance to read this

1          form.

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  If there is anything on the

4          form that you did not understand did you have an

5          opportunity to discuss this with your attorney

6          sitting next to you.

7                    THE DEFENDANT:  Yes.

8                    THE COURT:    The court finds that there

9          is a knowing and intelligent waiver of the

10         defendants right to be present at side-bar

11         conferences. I am noting that with my signature on

12         the bottom of this form.

13                   Okay.  There being nothing further that

14         needs be done today this matter is adjourned to 10

15         AM Monday morning on the 19th.  Same bail

16         conditions.

17                       (Whereupon, matter is adjourned to March

18         19, 2007 at 10 AM).

19                    ***********************************

20

21

22

23

24

25

```
 1   SUPREME COURT OF THE STATE OF NEW YORK

 2   COUNTY OF QUEENS:   CRIMINAL TERM:   Part K-20

 3   ----------------------------------------x   Indictment No.
     THE PEOPLE OF THE STATE OF NEW YORK     :   2147/2006
 4

 5              -against-                     :

 6                                            :

 7   ABU KHAN                                 :

 8                        Defendant           :

 9   ----------------------------------------x

10                    March 19, 2007

11                    125-01 Queens Boulevard
                      Kew Gardens, New York 11415
12

13   B E F O R E:   THE HONORABLE   RONALD HOLLIE,
                                               Justice
14

15   A P P E A R A N C E S:

16              Honorable Richard A. Brown
                For the People:
17              District Attorney - Queens County
                125-01 Queens Boulevard
18              Kew Gardens, New York 11415
                BY:   MINA MALIK, ESQ.
19                    Assistant District Attorney

20
                For the Defendant:
21              ROBERT JOHNSTON, ESQ.
                Defense Counsel
22

23

24                              Viola L. Dunnom, SCR

25
```

1                 COURT CLERK:  Calendar 3 case on trial.

2      Indictment 2147 of 06.  Abu Khan.

3                 MS. MALIK:  Mina Malik for the People.

4                 MR. JOHNSTON:  Robert Johnston.

5                 MR. VIRUET:  Samuel Viruet. Co-counsel

6      for Mr. Khan.

7                 THE COURT: Mr. Khan is now also present.

8      Mr. Khan your lawyer Mr. Viruet, co-counsel has

9      asked that he sit at counsel table with you is that

10     okay with you.

11               THE DEFENDANT:  Yes, sir.

12               THE COURT: This matter has been on the

13     calendar to handle any other pre-trial issues that

14     are present in this case. Ms. Malik.

15              MS. MALIK:  Yes, your Honor.  Your Honor

16     in this case I would be asking to introduce evidence

17     of the rapes that are alleged to have occurred in

18     Florida. Right now the defendant is facing these

19     charges here in New York.  But he also has I believe

20     counts of sexual battery in Florida and there is a

21     detainer on the defendant in this case.

22            And those acts involve the complaining

23     witness in this case as well as her younger brother

24     Jaeshawn Benn.

25            With respect to the acts in Florida and

1    the complainant in this case Ashley Martinez I would

2    be asking to introduce the evidence of those rapes.

3    I have a case for you your Honor.

4                THE COURT:    And the reason that you

5    would be asking to use the Florida cases is what.

6                MS. MALIK:    Well, in this particular case

7    in our case here in New York the incident stems from

8    1997 to 2000 and then there is a break in the

9    incident ostensibly because the family moves down to

10   Florida where the acts and the sexual abuse

11   continues in Florida.   So the rapes in this case

12   pickup on November 30, 2004 when the defendant is

13   charged in that incident even though there is a

14   break from 2000 to 2004.

15               So I would be seeking to introduce it to

16   show the pattern of escalating sexual conduct to

17   Martinez prior to this charged rape.   Because there

18   is such a long break between 2000 and 2004 I think

19   that the jury is going to be left to speculate that

20   does not make any sense if he is abusing her until

21   -- from the time that  -- of 5 to 6 years old.

22   What happened in 2004 when he commits the crime of

23   rape on November 30 of 2004. I think that it's

24   background information.

25               It explains the relationship between the

                                                          vld

1    defendant and the complainant. It places the event

2    in question in a believable context. I would like to

3    hand up to the Court People versus Juan Rosario. 34

4    Appellate Division. 3rd. 370. Which was decided

5    November 28 of 2006. I am also handing one over to

6    defense counsel. And in this particular case the

7    People versus Juan Rosario the court properly

8    scrutinized evidence relating to the defendants

9    pattern of escalating conduct to wit; the child

10   victim prior to the charged crime. The court found

11   that the evidence had little prejudicial effect and

12   it was to explain the relationship between the

13   defendant and the victim and to place the events in

14   question in a believable context.

15             Particularly since the defendant in this

16   case made a major issue of the victims delay in

17   reporting the charge of criminal conduct. I suspect

18   that the defense in this case is going to make a

19   big deal with that issue, the delay in reporting

20   because the actual outcry was not until April of

21   2006.

22             THE COURT: When was the acts that you say

23   occurred in Florida what were the years in which the

24   acts occurred in Florida.

25             MS. MALIK: I do not have the specific

vld

1    date right now.

2              THE COURT:    You are saying that those

3    dates are prior to the November 2004 incident for

4    which the defendant stands charged in this case.

5              MS. MALIK:    Absolutely it's my

6    understanding that the November 2004 incident was

7    the last time that anything ever happened.

8              THE COURT: Now, in these years from 1997

9    through November of 2004 was the defendant and the

10   victim living in the same household.

11             MS. MALIK:    One moment your Honor.  Yes,

12   your Honor between 1997 and 2004 they were living in

13   the same household.  There are instances of time

14   where the defendant left Florida to come up to New

15   York to work. So there are periods of time. But for

16   all intents and purposes they were living in the

17   same household both here and New York and in

18   Florida.

19             THE COURT: And what is the relationship

20   of the defendant to the complainant.

21             MS. MALIK:    The defendant was the

22   complainant mother's boyfriends.

23             THE COURT: You also asked that you use

24   --  that you be allowed to use a complainant filed

25   in   Florida involving this defendant and a son, a

1    boy.

2              MS. MALIK:  I am not seeking to go

3    into -- I am not seeking to go into the allegations

4    involving the son.

5              THE COURT: All right.

6              MS. MALIK:  And my understanding that the

7    defendant has not been formally charged in Florida.

8    There was a detainer here.  He has not been indicted

9    or arrested on those charges in Florida.

10             THE COURT: Okay.  Mr. Johnston.

11             MR. JOHNSTON:  Yes judge it's our opinion

12   and I have some cases for the court that that type

13   of testimony is totally unnecessary in this

14   particular case.  And that the only thing that such

15   evidence would do would totally prejudice the jury

16   and the prejudice would totally out weigh any

17   probative value to the issues that are concerned in

18   this particular case.

19             Of course the prosecutor could bring out

20   the fact that from 2000 to 2004 the defendant was

21   down in Florida living with the complainants mother

22   and the complainant without going into any details

23   about any allegations of sexual misconduct.  And

24   then he came back to New York and the girl came up

25   to New York to stay with her grandparents.  And they

vld

1    were in the same location staying at the same house

2    for all of one day. So the continuity issue could

3    be satisfied without going into the nuts and bolts

4    of allegations of sexual misconduct in Florida.

5            And as I indicated to the court I think

6    that that would unduly prejudice my client and his

7    ability to get a fair trial. The question then

8    remains well what if the defendant takes the witness

9    stand. Would the prosecutor be allowed to ask him

10   questions about allegations of sexual abuse in

11   Florida.

12           Regarding the Sandoval issues and again I

13   would indicate to the court it's the defendants

14   position although he could simply deny it that even

15   the asking of those types of questions would be

16   overly prejudicial and would deprive him of a fair

17   trial and especially since the matter in Florida

18   although there is a detainer he has not been

19   arrested on those matters. He has not been indicted

20   on those matters. And Florida has just filed a

21   detainer to bring him to Florida when this case

22   terminated. So I would indicate to the court that we

23   will be opposed to that type of testimony.

24           THE COURT: It would seem to be just on

25   the surface you know referencing those matters in

1    Florida is there any reason Ms. Malik to mention

2    that there is a detainer that Florida has lodged

3    against the defendant its mmerely that there were

4    acts with which the defendant is facing charges for

5    in Florida as opposed to a mechanism that Florida

6    has a procedure that Florida has filed with this

7    state to bring the defendant back do you follow my

8    question.

9              MS. MALIK:  I think so your Honor.  I

10   don't think that  -- I think that I am seeking to go

11   into just the acts themselves that this was a

12   continuing sexual abuse pattern that went on in

13   Florida as well.  I do not see any reason to

14   mention.

15             THE COURT:  And that there were no

16   charges filed against him.  Has she in fact filed

17   charges for those acts against the defendant in

18   Florida.

19             MS. MALIK:  Yes she made a police report

20   your Honor.

21             THE COURT:  So the  -- you are not

22   requesting to go into the fact that the Florida

23   authorities have filed a detainer against him only

24   that she in Florida has filed a complaint against

25   the defendant in Florida for what she says that he

1       did to her in Florida.

2                   MS. MALIK:  Yes your Honor.

3                   THE COURT: What is the nature of the acts

4       that she is saying happened in Florida relative to

5       the charges that the defendant is facing here.

6                   MS. MALIK:  That he raped her in Florida

7       as well when she was living there with him.

8                   THE COURT: This indictment does it also

9       -- I do not have it in front of me it also goes

10      back to incidents that occurred between 1997 and

11      2000.

12                  MS. MALIK:  That's correct your Honor.

13      Those incidents are for 2 or more acts of sexual

14      conduct between January first of 1997 and December

15      31 of 2000 where the defendant touched her breasts

16      and had  -- made her touch his penis when the

17      complaining witness was less than 11 years old.  And

18      those acts encompassed the course of conduct in the

19      second degree as well as the sex abuse 2 on this

20      indictment.

21                  THE COURT: All right.  It appears to me

22      and my ruling is that the application by the People

23      to be able to go into the allegations that the

24      victim had made the so called victim in this case

25      had made against the defendant in Florida those

                                    vld

1       occasions being prior to this 11/2004 date I will

2       allow but will not allow the People to mention the

3       fact that Florida has filed a detainer against the

4       defendant for those alleged crimes.

5                   I would give a curative instruction to

6       the jury counsel if you wish on that issue that the

7       defendant is not here being charged with those

8       crimes.  It's only being offered for a limited

9       purpose of showing a pattern that would explain the

10      gap in time between the year 2000, year in New York

11      and the new complaint in New York that was filed in

12      November of 2004.  Any questions.

13                  MR. JOHNSTON:  No judge.  Just as I

14      indicated we will object to that testimony.

15                  THE COURT:  Exception noted.

16                  MR. JOHNSTON:  And the only other thing

17      judge is that in the way of housekeeping I read the

18      hospital or the doctors report on the examination of

19      Ashley Martinez by a Dr. Rosenfeld that was done in

20      June of 2006.  In that interview that she had with

21      her to find out exactly what she claimed happened

22      there is language that indicates that Ashley the

23      girl said that or told the doctor that the accused

24      had also sexually abused her brother which the DA

25      has agreed not to go into those allegations. His

1       name is Jaeshawn Benn.  J-A-E-S-H-A-W-N  B-E-N-N.

2                So I would ask that if the People intend

3       to offer these medical records in evidence that

4       those words about the accusation against the

5       defendant regarding Jaeshawn Benn that they be

6       redacted from any medical records since the DA has

7       agreed not to go into those matter.

8                THE COURT: Agreed Ms. Malik.

9                MS. MALIK:  Yes your Honor.

10               THE COURT: Also is there any time where

11      the acts are alleged to have been committed where

12      the brother was present or any other child was

13      present, acts against the victim in this case.

14               MS. MALIK:  Not in New York your Honor.

15               THE COURT:  All right.  And so the

16      brother is not an outcry witness.  He is not

17      directly involved in any of these acts that the

18      defendant is being accused of in this trial.

19               MS. MALIK:  At this point I do not

20      anticipate calling him as a witness in this trial.

21               THE COURT: Anything else.

22               MR. JOHNSTON:  No your Honor.

23               MS. MALIK:  Your Honor, I do have another

24      application in terms of introducing evidence. I

25      would be asking the court to allow the People to

1    introduce evidence of the defendants prior physical

2    and verbal abuse of the complainant witnesses

3    mother.  The reason being Ashley Martinez when she

4    was a young girl witnessed the defendant being both

5    physically and exhibiting abusive behavior to her

6    mother in terms of slapping her, pushing her,

7    knocking her down.

8         As well as verbally abusive calling her

9    dumb.  Fat. Stupid.  Telling her to shut up.  Saying

10   that nobody wanted her because she already had 4

11   kids and she was fat.  The complainant witness was

12   also verbally abused by the defendant.  I would be

13   asking to go into those facts because I think that

14   it goes to her state of mind.  It's relevant to show

15   why she did not outcry for such a long time.  Was

16   living not living in an environment where she knew

17   what the defendant was capable of especially after a

18   day or night of drinking when he got physically

19   abusive towards her mother and verbally abusive

20   towards her mother.

21        THE COURT: These are questions that you

22   would want to pose to the victim.

23        MS. MALIK:  To the victim as well as to

24   the mother your Honor.  And I do have a case for the

25   court as well I will hand one over to defense

1    counsel.

2                THE COURT:   I can understand those

3    questions of the child but why the mother.

4                MS. MALIK:   I anticipate that the mother

5    is going to be called as a witness your Honor.  And

6    I think that she should be allowed to testify to

7    that. That this was the kind of relationship that

8    they had later on in their relationship.

9                THE COURT:   Later on meaning in the

10   years of 1997 through 2000 or around November of

11   2004.

12               MS. MALIK:   I would say about the end of

13   1998 and on.

14               THE COURT: I have no questions as to the

15   child. Those questions being asked as to the child.

16   And Mr. Johnston what is your sense as to the People

17   being allowed to ask those questions of either the

18   child or the childs mother.

19               MR. JOHNSTON:   I don't know judge.  This

20   was a surprise.  I am caught a little off guard.

21   Could I think about this for a few minutes.

22               THE COURT: Sure.

23               (Whereupon, there is a pause in the

24   proceedings.)

25               MR. JOHNSTON:   Judge I just want to put

1      this a little bit in prospective.  The defendant

2      returned to Florida from Queens on December first.

3      Apparently.

4                      THE COURT: December first of.

5                      MR. JOHNSTON:  Of 2004.  Apparently they

6      did have some problems between the 2 of them.

7                      THE COURT: Mr. Khan and the girl's

8      mother.

9                      MR. JOHNSTON:  And Leslie Martinez the

10     mother.  He came back to the house on December 10th

11     around 5 in the morning and found her in bed with

12     another man.  That incident escalated and the police

13     were called.

14                     According to my client that is the only

15     time that there was any police involvement or any

16     sort of situation that could be considered physical

17     or difficult.  I asked him if he had any problem

18     with Leslie during all the years that they met or

19     were living together.  He said no.  I am assuming

20     that from what the DA said that the mother Leslie is

21     going to testify that during the relationship that

22     there was not only physical abuse but verbal abuse.

23     That's why I was caught off guard.

24                     He told me that there was one incident in

25     Florida what he caught her in bed with another

1     person.  If I am right that Leslie is going to say

2     that there was a course of conduct during their

3     relationship of physical and verbal abuse I guess it

4     has some relevance to the issues that we are

5     involved in here.  Or at least the child might have

6     some relevance as a reason why she didn't report

7     right away these allegations of sexual abuse and

8     rape.

9               THE COURT:   Approach please.

10              (Whereupon, an off the record discussion

11    was held at the bench.)

12              THE COURT: Okay Ms. Malik based on the

13    application that you have made to inquire of the

14    victim in this case the reason why she had withheld

15    notifying the authorities of these past attacks and

16    those reasons include any observations that they

17    made as to what has been happening in the house

18    between her mother and the defendant over the course

19    of how many months or years that over the objection

20    of the defense that information can be asked of the

21    victim in this case.

22              As to the mother are you still asking at

23    this point that you will be allowed to call her as a

24    witness to that violence on your direct case.

25              MS. MALIK:  I am going to withdraw that

1     application at this time your Honor.  I am going to

2     ask that if I can look into case law regarding that

3     specific issue that we be able to go back into that

4     again for me to reargue it.

5              THE COURT: Okay.  After side-bar I have

6     given an extension on consent to the People until

7     Wednesday to find out more about what happened in

8     that Florida matter as far as the car rental case.

9     And if I believe that there is a Sandoval

10    application that is to be made relative to that case

11    they have until Wednesday to make that issue clear

12    to me.  Anything else prior to bringing over the

13    panel.

14             MR. JOHNSTON:  No.

15             MS. MALIK:  No your Honor.

16             THE COURT: All right.  Well, it's now

17    12:15 Al.  I don't know if we can do anything prior

18    to lunch other than bring them into the building

19    even if that. What is your sense.

20             THE COURT: All right.  It's 12:15. After

21    speaking at side-bar with all counsel and my staff

22    this is a very difficult day as far as this

23    courthouse is concerned with a lot of people and

24    press around on an unrelated case.  As far as

25    expeditiously processing a panel both into the

1       building and into this part it could probably be

2       best accomplished this afternoon at 2:30.

3               So counsel I will send my staff to get

4       the panel at 2:15.  It may take them a half hour or

5       so to get them here.  If you can reassemble at 3

6       o'clock this afternoon.  Thank you.

7               (Whereupon, a brief recess was taken.)

8               COURT CLERK:  Recall calendar 3 case on

9       trial indictment 2147 of 06.  Abu Khan.

10              THE COURT: All counsel are present as is

11      the defendant outside the presence of the panel. As

12      you may have learned we found it impossible to get a

13      panel over to this building today. That's been this

14      parts experience. So this matter is put over to 10

15      AM tomorrow morning. We will have the panel brought

16      over as soon in the morning as possible.

17              MR. JOHNSTON:  Thank you your Honor.

18              MS. MALIK:  Thank you your Honor.

19              THE COURT: Same bail conditions.

20              (Whereupon, matter is adjourned to March

21      20, 2007 at 10 AM).

22              ********************************

23

24

25

1   SUPREME COURT OF THE STATE OF NEW YORK

2   COUNTY OF QUEENS:   CRIMINAL TERM:   Part K-20

3   ----------------------------------------x   Indictment No.
    THE PEOPLE OF THE STATE OF NEW YORK      :   2147/2006
4

5              -against-                     :

6                                            :

7   ABU KHAN                                 :

8                        Defendant           :

9   ----------------------------------------x

10                      March 20, 2007

11                      125-01 Queens Boulevard
                        Kew Gardens, New York 11415
12

13  B E F O R E:   THE HONORABLE   RONALD HOLLIE,
                                          Justice
14

15  A P P E A R A N C E S:

16              Honorable Richard A. Brown
                For the People:
17              District Attorney - Queens County
                125-01 Queens Boulevard
18              Kew Gardens, New York 11415
                BY:  MINA MALIK, ESQ.
19                   Assistant District Attorney

20
                For the Defendant:
21              ROBERT JOHNSTON, ESQ.
                Defense Counsel
22

23

24                              Viola L. Dunnom, SCR

25

                                                         vld

```
 1              COURT CLERK:  Calendar 1 case on trial.
 2      Indictment 2147 of 2006.  Abu Khan.
 3              COURT OFFICER:  Prospective jurors
 4      entering.
 5              COURT CLERK:  Please rise.  Raise your
 6      right hand.  Do you solemnly swear or affirm that
 7      you will answer truthfully all questions asked of
 8      you pertaining to your qualifications as fair and
 9      impartial jurors in the trial of this indictment so
10      help you God?
11              (Whereupon, yes is answered by all).
12              COURT CLERK: So sworn.  You may be
13      seated.
14              THE COURT: Good morning and welcome to
15      Part K-20. I am Ronald D. Hollie.  I am the justice
16      of the supreme court who has been assigned to in
17      this jurisdiction in this criminal case.  The name
18      of this case is the People of the State of New York
19      against Abu Khan.  We select a juror by asking
20      prospective jurors questions.  The purpose of the
21      questions is to select from among you a jury which
22      will be fair and impartial to the defendant and to
23      the State of New York.
24              The purpose of the questions is not to
25      -- I lost my thought on this matter.  We select a
```

1    jury by asking prospective jurors questions. The

2    purpose of those questions is to select from among

3    you a jury which will be fair and impartial to the

4    defendant and to the People of the State of New

5    York.

6            The purpose of questions is not to

7    embarrass or unnecessarily pry into any private

8    areas of your lives.  The jury selection process is

9    often called voir dire.  That is a french term that

10   means to speak the truth. You must give a truthful

11   answer.  If you are uncomfortable giving a truthful

12   answer in open court you may ask for what is called

13   a side-bar.

14           At that point I will invite you to

15   approach and share your answer with me and the

16   attorneys out of the hearing of the other

17   prospective jurors.

18           In this case the State of New York

19   against Abu Khan the People in this case are

20   represented by Ms. Malik who is an ADA in the Queens

21   DA office.  Ms. Malik.

22           MS. MALIK:  Good morning ladies and

23   gentlemen.

24           THE COURT:  The defendant is Abu Khan and

25   he is represented by his attorneys Mr. Samuel Viruet

1    and Mr. Robert Johnston.

2              MR. VIRUET:   Good morning.

3              MR. JOHNSTON:    Good morning.

4              THE COURT: Now again we are here because

5    the defendant has been indicted.  Meaning that he

6    has been charged by a Queens Grand Jury with several

7    crimes. He has been charged with 4 separate crimes.

8    Each of those crimes are listed as a separate count

9    of an indictment.  And what I will do is read that

10   indictment to you now.  And again each count

11   represents a charge that the defendant is here being

12    -- is here facing trial for.

13              In the first count the Grand Jury of the

14   county of Queens by this indictment accuse the

15   defendant of the crime of rape in the first degree

16   committed as follows.

17              Okay the first count, the Grand Jury of

18   the county of Queens by this indictment accuse the

19   defendant of the crime of rape in the first degree

20   committed as follows.

21              That the defendant Abu Khan on or about

22   November 30th in the year of 2004 in the county of

23   Queens being 18 years old or more engaged in sexual

24   intercourse with Ashley Martinez a person less than

25   13 years old.

1          In the second count the Grand Jury of the

2     county of Queens by this indictment accuse the

3     defendant of the crime of sexual conduct against a

4     child in the second degree committed as follows.

5          That the defendant Abu Khan on or about

6     between January 1, 1997 and December 31, 2000 in the

7     county of Queens over a period of time not less than

8     3 months of duration knowingly and intentionally

9     engaged in 2 or more acts of sexual conduct to wit;

10    the defendant did place his hands on the breasts and

11    place his penis in the hands of Ashley Martinez a

12    child less than 11 years old.

13         And in the third count the Grand Jury of

14    the county of Queens by this indictment accuse the

15    defendant of the crime of endangering the welfare of

16    a child committed a follows.

17         That the defendant on or about November

18    30 of 2004 in the county of Queens knowingly acted

19    in a manner likely to be injurious to the physical,

20    mental or moral welfare of Ashley Martinez a child

21    less than 17 years old.

22         And the fourth count the Grand Jury of

23    the county of Queens by this indictment accuse the

24    defendant of the crime of sexual abuse in the second

25    degree committed as follows.

1        That the defendant on or about November

2    30 of 2004 in the county of Queens subjected Ashley

3    Martinez a person less than 14 years old to sexual

4    contact by touching the breasts of Ashley Martinez

5    with the hands of the defendant.

6        What will happen at this point is that

7    the court clerk Mr. Al Blake will randomly draw the

8    names of 14 prospective jurors. They will be seated

9    in the box to my right. Questioning will be asked to

10   the jurors in the jury box.  They will be loud

11   enough for you to hear.  Now, before jury selection

12   is over many if not all of you will be called to the

13   jury box and asked similar questions. I want to

14   thank you in advance for your willingness to serve

15   as jurors in this criminal case. I know that it's a

16   sacrifice to be here.  I want you to know that you

17   honor our constitution and form of government when

18   you allow yourself to be included in a process in

19   which a person accused of a crime can exercise his

20   right to have a trial before a jury of his peers.

21        COURT CLERK:  Juror number one, Ling Ma.

22   Last name, M-A. First name Ling, L-I-N-G.  Juror

23   number 2, Jae Kim. Last name, K-I-M.   First name

24   Jae, J-A-E. Juror number 3, Jue Bao.  Last name,

25   B-O-A. First name Jue, J-U-E.  Juror number 4, Danny

1    Lam.  Last name, L-A-M.  First name Danny,

2    D-A-N-N-Y.

3              Juror number 5, Shalou Lee. Last name,

4    L-E-E.  First name Shalou, S-H-A-L-O-U.  Juror

5    number 6, Kevin Burgos. Last name, B-U-R-G-O-S.

6    First name Kevin, K-E-V-I-N.  Juror number 7 Fay

7    Gooding.  Last name G-O-O-D-I-N-G. First name Fay,

8    F-A-Y.

9              Juror number 8, Chang Kim.  Last name,

10   K-I-M.  First name Chang, C-H-A-N-G.  Juror number

11   9, Lucy Am. Last name A-M.  First name Lucy,

12   L-U-C-Y.  Juror number 10 Benneett Roth.  Last name

13   Roth.  R-O-T-H.  First name, Bennett, B-E-N-N-E-T-T.

14             Juror number 11, Carolia Zarzabal.  Last

15   name, Z-A-R-Z-A-B-A-L. First name, Carolia,

16   C-A-R-O-L-I-A.  Juror number 12, Norman Choy.  Last

17   name, C-H-O-Y.  First name, Norman.  N-O-R-M-A-N.

18   Juror number 13, Edward Aguirre.  Last name,

19   A-G-U-I-R-R-E.  First name, Edward.  E-D-W-A-R-D.

20   Juror number 14, Bobby Fletcher.  Last name,

21   Fletcher, F-L-E-T-C-H-E-R.  First name Bobby,

22   B-O-B-B-Y.

23             THE COURT: Good morning again.  Now folks

24   the first series of questions that I have of you

25   have nothing to do with the questionnaire in your

1      hands. It's questions that I will ask you from here.

2      And since I am looking at 14 faces and need an

3      answer from each of you then I will need you each to

4      give me a loud yes, no answer or if you wish move

5      your heads up and down for yes or sideways for no.

6                  Lets go with the easy, that is the

7      easiest.  Is it fair to say that you are each over

8      18 years old.  Are you each residents of Queens

9      county and citizens of this country.  Have either of

10     you ever been convicted of a felony.  Are you each

11     able to read and understand and speak English.  Mr.

12     Kim.  All right I have 2 Kim's.

13                 A PROSPECTIVE JUROR:  Not too much.

14                 THE COURT:   There was a look on your

15     face like you were not understanding everything that

16     I was saying.  Yes, Mr. Kim.

17                 A PROSPECTIVE JUROR:  Sometimes I do not

18     understand.

19                 THE COURT:   So there were things that I

20     have said so far that while you heard me you did not

21     quite understand everything that I said and did you

22     have a chance to read that form.

23                 A PROSPECTIVE JUROR:  On the 11 questions

24     I understand.  The rest of them --

25                 THE COURT: I understand.  So I will

 1    excuse both Kims.  Thank you.  Ms. Lee.

 2              A PROSPECTIVE JUROR:  Also I couldn't

 3    complete the whole thing.  There are some parts I do

 4    not really understand.

 5              THE COURT:  Now and Ma'am you are Ms.

 6    Lee.

 7              A PROSPECTIVE JUROR:  Yes.

 8              THE COURT:   Is it that you did not

 9    understand the words or did not understand the

10    concept.

11              A PROSPECTIVE JUROR:  The concept.  And

12    some words I do not understand stand. The way that

13    you saying right now I understand.  Just afraid that

14    I can go through the whole process.

15              THE COURT: What we will do is that

16    because you understand the words but not necessarily

17    concepts once we reach those questions if you still

18    do not understand the concept let me know then.  And

19    I ask you if the question, if there is any question

20    that I ask that you do not understand please raise

21    your hand and let me know.  Anyone else.  Yes Ms.

22    Bao.

23              A PROSPECTIVE JUROR:  Maybe I only can

24    catch some of your words.

25              THE COURT: So there are words that you

1      understand but some words that you don't.

2                  A PROSPECTIVE JUROR:  Many words.

3                  THE COURT:   Counsel consent.

4                  MR. JOHNSTON:  Yes.

5                  MS. MALIK:  Yes.

6                  THE COURT:   Thank you Ms. Bao.  I will

7      excuse you Ms. Bao from this case.  Everyone else is

8      fine.  Juror number 3.

9                  COURT CLERK: Juror number 3, Barbara

10     Stanford.   Last name, S-T-A-N-F-O-R-D.  First name

11     Barbara, B-A-R-B-A-R-A.  Juror number 2, Isaura

12     Arteaga.  Last name, A-R-T-E-A-G-A.  First name,

13     Isaura, I-S-A-U-R-A.   Juror number 8, Pamela

14     Browne.  Last name Browne, B-R-O-W-N-E.  First name

15     Pamela.  P-A-M-E-L-A.

16                 THE COURT: Okay these questions are for

17     Ms. Arteaga, Ms. Stanford and Ms. Brown just to

18     bring you three ladies up to where I am with the

19     others. Are you each over 18 years old. Residents of

20     Queens county. Citizens of this country.  Have

21     either of you been convicted of a felony.  Are you

22     able to read understand and speak English.

23                 THE COURT:   Back to the entire panel.

24     Do you know me, the ADA, defendant or defense

25     counsel or to your knowledge any of our family or

1    friends.

2                   PROSPECTIVE JURORS:  No.

3                   THE COURT:   There are several people who

4    may testify at this trial.  I will read those names

5    now. Those names include Ashley Martinez, Leslie

6    Martinez, Ann Martinez, Jaeshawn Benn, B-E-N-N.

7                   Jean Swaby.  S-W-A-B-Y.  Dr. Jamie

8    Hoffman-Rosenfeld. Dr. Don Lewittes.  Detective Luz

9    Figueroa.  Do either of you know anyone by those

10   names.

11                  PROSPECTIVE JURORS:  No.

12                  THE COURT: Now Mr. Choy I did not see any

13   movement or hear your voice.

14                  A PROSPECTIVE JUROR:  I said no.

15                  THE COURT:   This crime is alleged to have

16   occurred the 2 areas are 121st Street in College

17   Point Queens and in Ozone Park Queens.  Relative to

18   the College Point address meaning 121st Street.  Do

19   either of you know the area.

20                  PROSPECTIVE JURORS:  No.

21                  THE COURT: This trial we fully expect to

22   be over at least by Friday March 30th so it's

23   relatively a short trial as far as time commitment

24   is concerned.  I say that to now ask you these

25   questions.  Do either of you have any hearing

1    handicap or any other type of disability that would

2    prevent you from sitting as a juror to the latest

3    Friday March 30th.

4             PROSPECTIVE JURORS:  No.

5             THE COURT:  Do you have any extreme

6    hardship or other matter that would prevent you from

7    giving your full attention during the trial.

8             A PROSPECTIVE JUROR:  I have a state

9    board exam coming up.

10            THE COURT:  When.

11            A PROSPECTIVE JUROR: Right now I do not

12   have a date.

13            THE COURT:  If you do not have it by now

14   then I would think  -- that is a state test.

15            A PROSPECTIVE JUROR:  Yes.

16            THE COURT:  Normally they give you at

17   least 2 weeks notice.

18            A PROSPECTIVE JUROR:  Yes.

19            THE COURT:  So my guess is that that will

20   be beyond this trial.

21            A PROSPECTIVE JUROR:  Okay.

22            THE COURT: Do any of you have any

23   religious or moral or ethical beliefs or reasons

24   that would prevent you from finding a person guilty

25   even if that guilt was proven to you beyond a

1   reasonable doubt.

2              A PROSPECTIVE JUROR:  No.

3              THE COURT:   Now I have noticed that as I

4   am asking more and more questions that your answers

5   have become more and more muted.  It started first

6   with answers that I could hear.  And then with every

7   successive question then your answers became lower

8   and lower and lower. More difficult to hear.

9              Mr. Aguirre you have had both a low voice

10  and also you have not had much in the way of a body

11  movement.  So I am saying all of that please to say

12  that it's more helpful for me to know what your

13  answers are if you make that answer clear.  So if

14  you want to yell the answers out to me that's fine

15  too.

16             Okay.  So going over that last question

17  do any of you have any religious, moral or ethical

18  beliefs or reasons that would prevent you from

19  finding a person guilty even if that guilt were

20  proven to you beyond a reasonable doubt.

21             PROSPECTIVE JURORS:  No.

22             THE COURT:   Better.  You may know, if

23  not you will learn now that any person who is

24  arrested and charged with a crime in this country

25  they have a right not to testify. And as I sit here

1    now I have no way of nothing whether or not Mr. Khan

2    will testify in this trial.  And nor should I know

3    at this point in the trial.  But I am letting you

4    know that he has a right not to testify.  And I say

5    that to now ask you this question if Mr. Khan, if

6    you are chosen as a juror and if Mr. Khan chooses

7    not to testify would you each be able to follow my

8    instructions and not draw any inference unfavorable

9    to him because he clearly exercised his right not to

10   testify.

11             A PROSPECTIVE JUROR:  Yes.

12             A PROSPECTIVE JUROR:  I do not

13   understand.

14             THE COURT: Mr. Fletcher I did not see or

15   hear your answer.

16             A PROSPECTIVE JUROR:  My answer is I

17   believe I could.

18             THE COURT: Okay.  And Ms. Lee you are

19   saying that that question you did not understand.

20             A PROSPECTIVE JUROR:  I do not understand

21   yes.

22             THE COURT:  What I am saying is in that

23   question I am both giving you information and asking

24   a question.  The information that I am giving is

25   letting you know that all of us if we were arrested

1    and charged with a crime in this country each of us

2    has a right not to testify in trial.  That's a right

3    that we have as a citizen of this country.  But if

4    you are chosen as a juror and if someone stood on

5    his or her right not to testify then the jury will

6    not be able to hold that against the person simply

7    because he stood on his right not to testify.  And I

8    was asking whether or not you would be able to

9    follow my instruction and not hold it against him if

10   he chooses not to testify.  But only base your

11   verdict on the evidence that you hear in this trial.

12   Can you each do that.  Mr. Fletcher.

13            A PROSPECTIVE JUROR: Yes.

14            THE COURT:  Yes Ms. Ma.

15            A PROSPECTIVE JUROR:  I cannot follow

16   your instruction, the sentence.

17            THE COURT:  Meaning that you understand

18   the concept but.

19            A PROSPECTIVE JUROR:  I do not

20   understand.

21            THE COURT:  Okay.  Counsel consent.

22            MR. JOHNSTON:  Yes.

23            MS. MALIK:  Yes.

24            THE COURT:  All right.  Thank you Ms. Ma.

25   I will excuse you.

1          COURT CLERK:  Juror number 1.  Jennifer

2     Sandoval.  Last name S-A-N-D-O-V-A-L.   First name,

3     Jennifer.  JENNIFER.

4          THE COURT: Ms. Sandoval the same

5     questions that I have asked everyone else so far.

6     Just to bring you up to speed.  You are over 18

7     years old. A resident of Queens county. Citizen of

8     this country.

9          A PROSPECTIVE JUROR: Yes.

10         THE COURT:   Every convicted of a felony.

11         A PROSPECTIVE JUROR:  No.

12         THE COURT:   Able to read and understand

13    and speak English.

14         A PROSPECTIVE JUROR: Yes.

15         THE COURT:   Do you know me, the

16    defendant, defense counsel or the DA or any of our

17    family and friends.

18         A PROSPECTIVE JUROR:  No.

19         THE COURT: Do you know any of the people

20    listed who may be witnesses.

21         A PROSPECTIVE JUROR: No.

22         THE COURT:   Do you have any handicap or

23    disability that that would prevent you from serving

24    if chosen.

25         A PROSPECTIVE JUROR:  No.

1            THE COURT: Do you have an extreme

2       hardship that would prevent you from giving your

3       full attention to the trial.

4            A PROSPECTIVE JUROR:  No.

5            THE COURT:   Do you have any religious,

6       moral or ethical beliefs or reasons that would

7       prevent you from finding a person guilty if that

8       guilt were proven to you beyond a reasonable doubt.

9            A PROSPECTIVE JUROR:  Yes.

10           THE COURT:  As to the defendants right

11      not to testify if you are chosen as a juror if he

12      chooses not to testify would you be able to follow

13      my instructions and not draw any inference

14      unfavorable to him simply because he chooses not to

15      testify.

16           A PROSPECTIVE JUROR: No.

17           THE COURT: Back to the entire panel.

18      There are times when crimes are committed when there

19      is only a single person present.  That is the person

20      who is the alleged victim of that crime. So the law

21      is that if a juror believes a single witness to a

22      crime beyond a reasonable doubt that is enough to

23      convict.

24           There are some people who believe that

25      they cannot convict even if they believe a single

1    witness to a crime beyond a reasonable doubt because

2    it's only one person.  So my question is if you

3    believe a single witness to a crime beyond a

4    reasonable doubt can you convict.

5              A PROSPECTIVE JUROR:  Yes.

6              THE COURT: Everyone understand the

7    question.

8              A PROSPECTIVE JUROR:  Yes.

9              THE COURT:   Ms. Lee.

10             A PROSPECTIVE JUROR:  I understand your

11   question.  I do not know how to answer yes or no.  I

12   will say yes.

13             THE COURT: All right.  This is important

14   that we have either a yes or no answer. If you are

15   not sure.

16             A PROSPECTIVE JUROR:  I will say yes.

17             THE COURT:   You don't have to say yes.

18             A PROSPECTIVE JUROR:  All right. I am

19   choosing to say yes.

20             THE COURT:   Because you feel yes is the

21   your answer.

22             A PROSPECTIVE JUROR:  Yes.

23             THE COURT: Also as you have heard me read

24   this indictment the nature of the crimes charged

25   here is a sexual offense against a young female, a

```
 1          child.  And the defendant is an adult.  Is there
 2          anyone of you who because of the nature of the
 3          charges feels that they cannot give all sides in
 4          this case a fair trial.  Yes, Ms. Sandoval.
 5          Approach please.
 6                      (Whereupon, the following occurs at
 7          side-bar with all counsel present)
 8                      A PROSPECTIVE JUROR:  I was sexually
 9          abused when I was younger so for me it's very hard.
10                      THE COURT: I understand.  Counsel
11          consent.
12                      MR. JOHNSTON:  Yes.
13                      MS. MALIK:  Yes.
14                      THE COURT:  All right.  Thank you.  Ms.
15          Arteaga.
16                      A PROSPECTIVE JUROR:  Because I cannot
17          take that I have a bias.
18                      THE COURT:  Is it the nature of the
19          charges.
20                      A PROSPECTIVE JUROR:  Yes.
21                      THE COURT: And why do you think that.
22                      A PROSPECTIVE JUROR:  Because I am going
23          to say that he is guilty.
24                      THE COURT:  So the mere idea that an
25          adult is charged with a sexual offense at trial you
```

1    don't think that you can give that adult a fair

2    trial.

3               A PROSPECTIVE JUROR:  No.

4               THE COURT:   Consent.

5               MR. JOHNSTON:  Consent.

6               MS. MALIK:  Yes.

7               THE COURT:   And there was another hand.

8    Ms. Am.

9               A PROSPECTIVE JUROR:  One of my best

10   friends she got raped a few years ago.  She was

11   about at the time 17.  And then I was the only

12   confidence at that time.  And I told her to go to

13   the police.  She was too afraid.  Anyway she is

14   still living in this country.  It really effected me

15   a lot.

16              THE COURT:   All right.  That person to

17   her was it a relative.

18              A PROSPECTIVE JUROR:  No someone  -- no.

19   Just a total stranger.

20              THE COURT:  And she has told you that she

21   was so afraid that she wasn't willing to go to the

22   authorities and you are the one who talked to her.

23              A PROSPECTIVE JUROR:  Yes.

24              THE COURT:  And it effected you and her

25   obviously.

1              A PROSPECTIVE JUROR:  Yes.

2              THE COURT:   How long ago did this

3     happen.

4              A PROSPECTIVE JUROR:  Just a couple of

5     years ago.  And besides it's my major psychology. I

6     have seen and heard these cases a lot. So personally

7     I have a kind of bias.  So I don't think that I am

8     proper for this.

9              THE COURT:   All right.  Counsel consent.

10             MR. JOHNSTON:  Yes.

11             MS. MALIK:  Yes.

12             THE COURT:  Thank you.  Each of these are

13    excused.  And Mr. Burgos.

14             THE COURT:  Yes.

15             A PROSPECTIVE JUROR:  My mother was

16    sexually abused in the early part of her life.  And

17    my current girlfriend was actually abducted coming

18    home from school about 4 years ago.  And tried  --

19    attempted to sexually assault her but she was able

20    to get away.

21             THE COURT:   How did you learn about what

22    happened to your mother.

23             A PROSPECTIVE JUROR:  She told me as I

24    got older.

25             THE COURT: So you are saying this is a

1    case in which because of what happened in the past

2    to your current girlfriend and your mother has

3    explained to you what happened to her in her youth

4    you do not think that you can be fair.

5                    A PROSPECTIVE JUROR:  I could be as fair

6    as possible.

7                    THE COURT: Consent.

8                    MR. JOHNSTON:  Yes.

9                    MS. MALIK:  Yes.

10                   THE COURT:  Thank you for your candor I

11   will excuse you.  So Mr. Burgos, Ms. Sandoval, Ms.

12   Arteaga and Ms. Am are each excused.  And Brown

13   please approach.

14                   A PROSPECTIVE JUROR:  I am a mother of a

15   14 year old and a 16 year old.

16                   THE COURT:   Daughters.

17                   A PROSPECTIVE JUROR:  Yes I am a mother I

18   have 2 teenage daughters.  I feel like if somebody

19   touches my daughters there is no second chance.

20   That's the way that I feel.

21                   THE COURT:   But in this case the

22   defendant is accused and we want to know whether or

23   not those feeling that you have are so strong that

24   you do not know if you will be able to be fair to

25   both sides.

1              A PROSPECTIVE JUROR:  To be honest I

2    don't know if I can be fair to him to be honest.

3              THE COURT:  All right.  Consent.

4              MR. JOHNSTON:  Yes.

5              MS. MALIK:  Yes.

6              THE COURT:  Thank you for your candor.

7    Ms. Brown is excused.  And Ms. Lee approach please.

8    I want to sound her out to see if she is

9    understanding everything.  I just want to know how

10   you are doing as far as understanding everything.

11             A PROSPECTIVE JUROR:  I do not understand

12   the point.  I do not want to be probably not afraid

13   of --

14             THE COURT:  You're saying I think that

15   you grasp the concept, but you think that sometimes

16   the delay between hearing something and getting an

17   explanation you might miss out on something that is

18   important.

19             A PROSPECTIVE JUROR: Yes, I am afraid

20   that I misunderstand.  Some words I guessing myself.

21             THE COURT:  Understood.  Counsel

22   consent.

23             MR. JOHNSTON:  Yes.

24             MS. MALIK:  Yes.

25             THE COURT:  Okay. Thank you Ms. Lee. I

1       will excuse you. Ms. Lee is excused.

2                   (Whereupon, a side-bar record concludes.)

3                   COURT CLERK:  Juror number 1, Abraham

4       Gottesnan.  Last name, G-O-T-T-E-S-N-A-N.    First

5       name Abraham, A-B-R-A-H-A-M.  Juror number 2, Yet

6       Chang. Last name Chang, C-H-A-N-G. First name Yet,

7       Y-E-T.   Juror number 5 Christina Curatolo. Last name

8       Curatolo, C-U-R-A-T-O-L-O.   First name Christina,

9       C-H-R-I-S-T-I-N-A.

10                  Juror number 6, Carol Gray.  Last name

11      Gray, G-R-A-Y.   First name Carol, C-A-R-O-L.   Juror

12      number 8 Nicola Merilus.  Last name Merilus,

13      M-E-R-I-L-U-S.  First name Nicola, N-I-C-O-L-A.

14      Juror number 9, Emily Cheng.  Last name Cheng,

15      C-H-E-N-G.  First name Emily, E-M-I-L-Y.

16                  THE COURT: Okay.  To you 6 newest members

17      of this panel and with apologies to the ones who

18      were here already and have heard all of these

19      questions, but to the 6 new ones I will ask you the

20      same questions that I have asked everyone else so

21      far.  And please give me the loud yes no answer or

22      heads moving up or down.

23                  Are you each over 18 years old. Residents

24      of Queens county. Citizens of this country.  Have

25      ever been convicted of a felony.  Are you each able

                                                      vld

1          to read, understand and speak English.  Do either of

2          you know me, the ADA, defendant or defense counsel

3          or to your knowledge any of our family or friends.

4                    You heard me read from a list of people

5          who may testify at this trial.  Do you know anyone

6          by those names.  Yes Ms. Gottesnan.

7                    A PROSPECTIVE JUROR:  I believe that you

8          read Dr. Jamie Hoffman. I worked for her in LIJ. I

9          am a pediatrician in her department.

10                    THE COURT:   Is there anything that you

11          know about her or the kind of work that she does

12          that would have you treat her any differently than

13          you would any other witness as far as accepting or

14          believing what she has to say in this case.

15                    A PROSPECTIVE JUROR: No.

16                    THE COURT: And there is nothing about

17          your relationship or knowledge of her that makes you

18          feel that you could not give both sides in this case

19          a fair trial.

20                    A PROSPECTIVE JUROR:  No.

21                    THE COURT: This case will be over the

22          latest by Friday March 30th. Maybe sooner but

23          certainly not later.  Do either of you have any

24          hearing handicap or any type of disability that

25          would prevent you from sitting as a juror through to

1    Friday March 30th.

2                   A PROSPECTIVE JUROR:   No.

3                   THE COURT: Do you have a hardship or

4    other pressing matter that would prevent you from

5    giving your full attention to this trial.

6                   A PROSPECTIVE JUROR: No.

7                   THE COURT: Do you have any religious,

8    moral or ethical beliefs or reasons that would

9    prevent you from finding a person guilt even if that

10   were proven to you beyond a reasonable doubt.

11                  A PROSPECTIVE JUROR:   No.

12                  THE COURT: We have a person here who as

13   any person who is arrested and charged with a crime

14   in this country the defendant has a right not to

15   testify if he chooses not to testify.  If you are

16   chosen as a juror would you be able to follow my

17   instructions and not draw any inference unfavorable

18   to him because he chooses not to testify.

19                  A PROSPECTIVE JUROR:   Yes.

20                  THE COURT: And a single witness to a

21   crime there are times when crimes are committed when

22   there is only a single person present.

23                  Therefore the law is that if you believe

24   that the single witness to an event beyond a

25   reasonable doubt and what he or she says about that

1      event it amounts to a crime that is enough to

2      convict.

3                  My question is if you believe a single

4      witness beyond a reasonable doubt can you convict.

5      I hear the very strong yes and no and then I get to

6      this question and silence.  Okay.

7                  Just to give you time again to answer.

8      If you believe a single witness to a crime beyond a

9      reasonable doubt can you convict or do you feel that

10     you will would need a second witness or some other

11     person who was actually there to see to convict.

12     What is your --

13                 A PROSPECTIVE JUROR:  It would be harder

14     if it's just one witness.

15                 THE COURT:  Understood but this question

16     is assuming that you believe that single witness

17     beyond a reasonable doubt.  If you do not believe

18     them beyond a reasonable doubt then you cannot and

19     should not convict.  But if you believe them beyond

20     a reasonable doubt that is enough to convict.

21                 A PROSPECTIVE JUROR: Yes.

22                 THE COURT: All right.  Ms. Cheng.

23                 A PROSPECTIVE JUROR:  Yes.

24                 THE COURT:  And Mr, it's spelled

25     differently, both of you agree.

1          A PROSPECTIVE JUROR:  Yes.

2          A PROSPECTIVE JUROR:  Yes.

3          THE COURT: And is there anyone of you and

4    again I am speaking to the 6 new members of the

5    panel the nature the crime charged in this case it's

6    a sexual offense.  The accuser is a child.  And the

7    defendant is an adult.  The defendant is entitled to

8    a fair trial. We need to know whether or not because

9    of the nature of the charges can you give the

10   defendant a fair trial given the nature of the

11   charges.

12         A PROSPECTIVE JUROR:  Yes.

13         THE COURT: Ms. Curatolo.

14         A PROSPECTIVE JUROR: Yes.

15         THE COURT:   And Mr. Chang.

16         A PROSPECTIVE JUROR:  No.

17         THE COURT:   Approach please.

18         (Whereupon, a side-bar record begins.)

19         A PROSPECTIVE JUROR:  The thing is I know

20   a person who has been victimized by a raper.  So

21   it's very disturbing for me.

22         THE COURT: So the nature of the crime

23   charged.

24         A PROSPECTIVE JUROR:  It's very

25   disturbing. I just can't stand that.

1              THE COURT:   And that feeling is so
2       strong that you are not sure that you can give the
3       defendant a fair trial.
4              A PROSPECTIVE JUROR: Because I know a
5       person who it actually happened to her.
6              THE COURT:   In that case had that person
7       been arrested.
8              A PROSPECTIVE JUROR:  No, could not find
9       the person who did that.
10             THE COURT: Counsel consent.
11             MR. JOHNSTON:  Yes.
12             MS. MALIK:  Yes.
13             THE COURT:   Thank you Mr. Chang.
14             (Whereupon, a side-bar record concludes.)
15             THE COURT:   He is excused.  Auto.
16             COURT CLERK:  Juror number 2, Taina
17      Couvertier.  Last name Couvertier,
18      C-O-U-V-E-R-T-I-E-R.   First name Taina, T-A-I-N-A.
19             THE COURT: Ma'am your last name is
20      pronounced.
21             A PROSPECTIVE JUROR:  Couvertier.
22             THE COURT:   Better that I ask than even
23      try to pronounce it.  You are over 18 years old. A
24      resident of Queens county. Citizens of this country.
25             A PROSPECTIVE JUROR: Yes.

1            A PROSPECTIVE JUROR:  Yes.

2            THE COURT:   You read, write and

3       understand English.

4            A PROSPECTIVE JUROR: Yes.

5            A PROSPECTIVE JUROR:  Yes.

6            THE COURT:   Do you know me, the ADA, the

7       defense counsel or the defendant or to your

8       knowledge any of our family or friends.

9            A PROSPECTIVE JUROR:  No.

10           A PROSPECTIVE JUROR:  No.

11           THE COURT:   Do you know any one on the

12      list.

13           A PROSPECTIVE JUROR:  No.

14           A PROSPECTIVE JUROR:  No.

15           THE COURT:   Any hearing handicap or any

16      other type of handicap that would prevent you from

17      sitting as a juror to the latest Friday.

18           A PROSPECTIVE JUROR:  No.

19           A PROSPECTIVE JUROR:  No.

20           THE COURT:   Any extreme hardship that

21      would.

22           A PROSPECTIVE JUROR:  No.

23           A PROSPECTIVE JUROR:  No.

24           THE COURT: Do you have any religious,

25      moral or ethical beliefs or reasons that would

1     prevent you from finding a person guilty even if

2     that were proven to you beyond a reasonable doubt.

3                 A PROSPECTIVE JUROR: No.

4                 A PROSPECTIVE JUROR:  No.

5                 THE COURT:   If you are chosen as a juror

6     if the defendant chooses not to testify would you be

7     able to follow my instructions and not draw any

8     inference unfavorable to him because he chose not to

9     testify.

10                A PROSPECTIVE JUROR: Yes.

11                A PROSPECTIVE JUROR:  Yes.

12                THE COURT:   On the question of a single

13    witness if you believe a single witness beyond a

14    reasonable doubt that is enough to convict.  Can you

15    convict based on the testimony of a single witness

16    if you believe that witness beyond a reasonable

17    doubt.

18                A PROSPECTIVE JUROR: Yes.

19                A PROSPECTIVE JUROR:  Yes.

20                THE COURT:   Is there anything about the

21    nature of the charges including the fact that it's a

22    sexual offense charge that the accuser is a child

23    and that and that the defendant obviously is an

24    adult is there anything about the nature of the

25    charges that makes you feel that you could not be

1              fair to both sides in this case.

2                         A PROSPECTIVE JUROR:  No.

3                         A PROSPECTIVE JUROR:

4                         THE COURT: Thank you.  And now to the

5              questionnaire beginning with Mr. Gottesnan. I will

6              read through each question with him and get his

7              answers. And then beginning with Ms. Couvertier I

8              will read the question number and get her answer.

9                         Mr. Gottesnan, number one your name.

10                        A PROSPECTIVE JUROR: Abraham Gottesnan.

11                        THE COURT:  Place of birth.

12                        A PROSPECTIVE JUROR:   Toronto, Canada.

13                        THE COURT:  Area of residence.

14                        A PROSPECTIVE JUROR: Kew Gardens.

15                        THE COURT:  How long have you lived at

16             your current address.

17                        A PROSPECTIVE JUROR:  3 years.

18                        THE COURT:  How long have you lived in

19             this country.

20                        A PROSPECTIVE JUROR:  10 years.

21                        THE COURT:  Marital status .

22                        A PROSPECTIVE JUROR:  Married.

23                        THE COURT:   Your years of education or

24             highest degree.

25                        A PROSPECTIVE JUROR:  MD.

1                    THE COURT: And number 8, you work as a

2          pediatrician.

3                    A PROSPECTIVE JUROR: Schneider Childrens

4          Hospital, LIJ.

5                    THE COURT:   How long have you been there

6          for.

7                    A PROSPECTIVE JUROR: This is my third

8          year.

9                    THE COURT:   What kind of work does your

10         wife do.

11                   A PROSPECTIVE JUROR: She is a teacher.

12                   THE COURT:   Level of students.

13                   A PROSPECTIVE JUROR:  High school girls.

14                   THE COURT: Is there anything about either

15         the work that you do or the type of students that

16         your wife teaches anything that makes you feel you

17         could not be fair to both sides in this case.

18                   A PROSPECTIVE JUROR:  I feel that I can

19         be fair to both sides.  It's obvious that the work

20         that I do just in the last 48 hours I have spoken to

21         ACS but not a similar case but about a child

22         protective situation.

23                   THE COURT:   Frankly it's  -- you're quite

24         obviously and this is true of any comment that I

25         would make to any of the jurors you know yourselves

1      a lot more than we could in this brief time talking.

2      And you are the best judgement as to whether or not

3      you can be fair to both sides in this case. It does

4      not matter what you do for a living or the kind of

5      experiences that you had in the course of your life.

6                    If it's similar in nature we would need

7      you to be able to say that you can put those

8      experiences aside and be fair to both sides.  My

9      question of you doctor is can you put those

10     experiences aside and be fair to both sides in this

11     case.

12                   A PROSPECTIVE JUROR:  I believe that I

13     could.

14                   THE COURT: And I can safely interpret

15     that to say that you will.

16                   A PROSPECTIVE JUROR: Yes.

17                   THE COURT: Number 9, ever served on a

18     state or federal Grand Jury.

19                   A PROSPECTIVE JUROR:  No.

20                   THE COURT:   Number 10, ever served on a

21     state or federal trial jury.

22                   A PROSPECTIVE JUROR:  No.

23                   THE COURT:   Number 11 A any relative or

24     close friend been the victim of a crime.

25                   A PROSPECTIVE JUROR:  My house in Toronto

1  was broken into.

2          THE COURT:   Any one home at the time.

3          A PROSPECTIVE JUROR:  My sister saw the

4  burglar when he saw her he ran out.

5          THE COURT:   Anything about that crime

6  that makes you feel that you could not be fair to

7  both sides in this case.

8          A PROSPECTIVE JUROR: No.

9          THE COURT:   Any other answers to 11 A.

10          A PROSPECTIVE JUROR:  I have had property

11  stolen.

12          THE COURT:   Stolen how.

13          A PROSPECTIVE JUROR:  Stolen from my car.

14          THE COURT:   A car. Was it locked at the

15  time.

16          A PROSPECTIVE JUROR:  Probably was not

17  locked.

18          THE COURT: Anyone ever arrested and

19  charged with that.

20          A PROSPECTIVE JUROR:  No.

21          THE COURT:   Those items that were stolen

22  anything ever found.

23          A PROSPECTIVE JUROR: No.

24          THE COURT: Any other answers to 11 A.

25          A PROSPECTIVE JUROR:  No.

```
 1              THE COURT: 11 B any relative or close

 2       friend ever been a witness to a crime.

 3              A PROSPECTIVE JUROR: My sister witnessed

 4       the burglary at my house.

 5              THE COURT:   Any other answers to 11 B.

 6              A PROSPECTIVE JUROR:  No.

 7              THE COURT:   11 C, relative or close

 8       friend every been accused of a crime.

 9              A PROSPECTIVE JUROR: No.

10              THE COURT:   11 D, ever convicted of a

11       crime.

12              A PROSPECTIVE JUROR: No.

13              THE COURT: 11 E, ever testified in a

14       criminal proceeding.

15              A PROSPECTIVE JUROR:  No.

16              THE COURT:   11 F, been a party to a

17       civil lawsuit.

18              A PROSPECTIVE JUROR:  A grand parent who

19       was sued for someone who slipped on ice on their

20       property.

21              THE COURT:   That case was here in Queens

22       or.

23              A PROSPECTIVE JUROR:  In Brooklyn.

24              THE COURT:   You said grandparents.  A

25       case long ago resolved.
```

1           A PROSPECTIVE JUROR:  Not long ago.  In

2      the last 5 years.

3           THE COURT:   And anything about that

4      experience that makes you feel that you could not be

5      fair to both sides in this case.

6           A PROSPECTIVE JUROR: No.

7           THE COURT:   12 A, ever been employed by

8      a law enforcement agency or a criminal justice

9      agency.

10          A PROSPECTIVE JUROR: No.

11          THE COURT:   12 B, any relative or close

12     friend been employed by a law firm.

13          A PROSPECTIVE JUROR:  My brother is a

14     lawyer.

15          THE COURT: What kind of law does he

16     practice.

17          A PROSPECTIVE JUROR:  I don't know.

18          THE COURT: That practice is it here in

19     New York.

20          A PROSPECTIVE JUROR: Yes.

21          THE COURT: How long has he been an

22     attorney.

23          A PROSPECTIVE JUROR:  4 months.

24          THE COURT: So I would assume that he has

25     not had a wealth of experience as a lawyer yet.

1            A PROSPECTIVE JUROR: Yes.

2            THE COURT: Any other answers to 12 B.

3            A PROSPECTIVE JUROR:  I mean I have an

4    uncle of my wife who is a lawyer.  Who is a lawyer

5    who has been practicing many years in Manhattan.

6            THE COURT:   What kind of law does he

7    practice.

8            A PROSPECTIVE JUROR:  I would say general

9    issues. Contracts.

10           THE COURT:   Any other answers to 12 B.

11           A PROSPECTIVE JUROR:  No.

12           THE COURT:   Same answer to 12 C. Your

13   brother and your wife's uncle. Any other answers.

14           A PROSPECTIVE JUROR: No.

15           THE COURT: Probably the same answers to

16   12 D.  Any other answers.

17           A PROSPECTIVE JUROR: No.

18           THE COURT:   Number 13. Have you or

19   anyone close to you have a pleasant or such an

20   unpleasant experience with the police that you feel

21   that could you not be a fair and impartial juror.

22           A PROSPECTIVE JUROR:  No.

23           THE COURT:   Number 14 the law says that

24   an indictment is only an accusation of crime. You

25   cannot infer that a defendant is guilty because he

1          or she has been arrested and indicted by a Grand

2          Jury. Can you accept that concept and will you

3          follow the law that I will later present to you.

4                    A PROSPECTIVE JUROR:  Yes.

5                    THE COURT: Number 15 the law says that

6          the defendant is presumed innocent until he is

7          proven guilty beyond a reasonable doubt.  Can you

8          accept that and will you follow the law that I will

9          later present to you.

10                   A PROSPECTIVE JUROR: Yes.

11                   THE COURT:   Number 16, do you understand

12         that because you have heard no evidence up to this

13         point if you were asked to vote right now that you

14         would have to vote the defendant is not guilty.

15                   A PROSPECTIVE JUROR:  Yes.

16                   THE COURT: Number 17, the law says that

17         the prosecution has the burden of proving the

18         defendant guilty beyond a reasonable doubt.  Can you

19         accept that and will you follow the law that I will

20         later present to you.

21                   A PROSPECTIVE JUROR: Yes.

22                   THE COURT:   Number 18, do you know any

23         reason why you could not sit as a fair and impartial

24         juror in this case.

25                   A PROSPECTIVE JUROR:  No.

1         THE COURT: Thank you sir.  Ms. Couvertier

2    number one please.

3         A PROSPECTIVE JUROR: Taina Couvertier.

4    Puerto Rico.  7 years.  I am sorry, Hollis, Queens.

5    7 years.  28 years.

6         THE COURT: 6.

7         A PROSPECTIVE JUROR:  Married.

8         THE COURT:  7.

9         A PROSPECTIVE JUROR:  A year and a half.

10   And in college.

11        THE COURT:  8.

12        A PROSPECTIVE JUROR:  Me and my husband

13   are both unemployed.

14        THE COURT: Was there any time that you

15   worked full time.

16        A PROSPECTIVE JUROR:  I would say in 98.

17        THE COURT:  When you were working full

18   time back in 98 what did you do.

19        A PROSPECTIVE JUROR:  A receptionist at

20   an animal clinic.

21        THE COURT:  When you were working there

22   how long did you work there.

23        A PROSPECTIVE JUROR:  8 months.

24        THE COURT: Your husband what kind of work

25   was he doing when he was last working full time.

1    A PROSPECTIVE JUROR: He was a male

2    sorter in the Conde Naste building in Manhattan

3    which they have different magazine companies in

4    there. He worked there for I believe 5 months.

5              THE COURT:   Number 9.

6              A PROSPECTIVE JUROR:  No.

7              THE COURT: 10.

8              A PROSPECTIVE JUROR: Yes.

9              THE COURT: 10 A.

10             A PROSPECTIVE JUROR: Yes.

11             THE COURT: Civil or criminal case.

12             A PROSPECTIVE JUROR:  Civil.

13             THE COURT:   One or more times.

14             A PROSPECTIVE JUROR:  Once.

15             THE COURT: In that case who was suing who

16   for what.

17             A PROSPECTIVE JUROR:  The plaintiff was

18   suing the defendant because they basically they got

19   hit by the defendant they were in the airport.  I

20   think got trapped between a car in front of them and

21   the defendants car.  I think that they were crossing

22   the street and they got trapped. They are suing for

23   injuries I guess.

24             THE COURT:   10 B.

25             A PROSPECTIVE JUROR: No it was settled.

vld

1           THE COURT:    10 C.

2           A PROSPECTIVE JUROR:  I believe it was

3    Spring of 2002.

4           THE COURT: 11 A.  Victim of a crime.

5           A PROSPECTIVE JUROR: No.

6           THE COURT:   11 B.  Witness to a crime.

7           A PROSPECTIVE JUROR: No.

8           THE COURT: 11 C. Accused of a crime.

9           A PROSPECTIVE JUROR:  No.

10          THE COURT:   11 D.  Convicted of a crime.

11          A PROSPECTIVE JUROR:  No.  No.  No.

12          THE COURT:    12 A.

13          A PROSPECTIVE JUROR: No.

14          THE COURT:    B.

15          A PROSPECTIVE JUROR:  Yes.

16          THE COURT:  12 C and D.

17          A PROSPECTIVE JUROR:  No. No.

18          THE COURT:    Number 13.

19          A PROSPECTIVE JUROR:  No.

20          THE COURT: 14.

21          A PROSPECTIVE JUROR:  Yes.

22          THE COURT: 15.

23          A PROSPECTIVE JUROR:  Yes.

24          THE COURT: 16.

25          A PROSPECTIVE JUROR:  Yes.

```
 1                    THE COURT:   17.

 2                    A PROSPECTIVE JUROR:   Yes.

 3                    THE COURT: And 18.

 4                    A PROSPECTIVE JUROR:   No.

 5                    THE COURT:   Thank you.  Ms. Stanford

 6          number one please.

 7                    A PROSPECTIVE JUROR:  Barbara Stanford.

 8          New York.  Jamaica, Queens.  28 years.  All my life.

 9          Divorced.

10                    THE COURT:   7.

11                    A PROSPECTIVE JUROR:  High school.

12                    THE COURT:   8.

13                    A PROSPECTIVE JUROR:  I have a son.

14                    THE COURT:   Well --

15                    A PROSPECTIVE JUROR:  My occupation.  I

16          am sorry.  Senior coordinator.  Like an

17          administrator.

18                    THE COURT:   What kind of business.

19                    A PROSPECTIVE JUROR:  Utility.

20                    THE COURT: You have been working with

21          them now for how long.

22                    A PROSPECTIVE JUROR:  40 years.

23                    THE COURT:   I know that you said that

24          you're divorced. What kind of work did your

25          ex-husband do.
```

1              A PROSPECTIVE JUROR:  I don't know it's

2      been so long ago.

3              THE COURT:  Well, since it's been that

4      long ago I guess that it does not matter.

5              A PROSPECTIVE JUROR:  I am not sure.

6              THE COURT: Any children of working age.

7              A PROSPECTIVE JUROR: Yes.

8              THE COURT: How many and what do they do.

9              A PROSPECTIVE JUROR:  One.  A truck

10     driver.

11             THE COURT: Number 9.

12             A PROSPECTIVE JUROR:  No.

13             THE COURT:  10.

14             A PROSPECTIVE JUROR: No.

15             THE COURT: 11 A.

16             A PROSPECTIVE JUROR:  Yes.

17             THE COURT: Who and what kind of a crime.

18             A PROSPECTIVE JUROR:  Car stolen.

19             THE COURT:  One or more times.

20             A PROSPECTIVE JUROR:  One.

21             THE COURT: Car ever found after it was

22     taken.

23             A PROSPECTIVE JUROR:  The shell of the

24     car.

25             THE COURT: Anyone ever arrested and

1              charged with the crime.

2                          A PROSPECTIVE JUROR: No.

3                          THE COURT: Any other answers to 11 A.

4                          A PROSPECTIVE JUROR: No.

5                          THE COURT: 11 B.

6                          A PROSPECTIVE JUROR:  No.

7                          THE COURT: 11 C.

8                          A PROSPECTIVE JUROR: No.

9                          THE COURT:   D.

10                         A PROSPECTIVE JUROR:  No.

11                         THE COURT:   E.

12                         A PROSPECTIVE JUROR:  No.

13                         THE COURT: F.

14                         A PROSPECTIVE JUROR: No.

15                         THE COURT: 12 A.

16                         A PROSPECTIVE JUROR: No.

17                         THE COURT: B.

18                         A PROSPECTIVE JUROR:  No.

19                         THE COURT:   C.

20                         A PROSPECTIVE JUROR:  No.

21                         THE COURT:   D.

22                         A PROSPECTIVE JUROR:  No.

23                         THE COURT:   13.

24                         A PROSPECTIVE JUROR:  No.

25                         THE COURT: 14.

1          A PROSPECTIVE JUROR:  Yes.

2          THE COURT: 15.

3          A PROSPECTIVE JUROR:  Yes.

4          THE COURT: 16.

5          A PROSPECTIVE JUROR:  Yes.

6          THE COURT: 17.

7          A PROSPECTIVE JUROR: Yes.

8          THE COURT:  18.

9          A PROSPECTIVE JUROR: No.

10         THE COURT:   Mr. Lam number one.

11         A PROSPECTIVE JUROR:  Dan Lam.  New York.

12    Kew Gardens. My while life.  25 years.

13              THE COURT:   5.

14         A PROSPECTIVE JUROR:  Sorry that is --

15    number 4 was 7.  7 years.  Number 5 is whole life.

16              THE COURT:   6.

17         MR. JOHNSTON:  Single.

18              THE COURT:   7.

19         A PROSPECTIVE JUROR:  Bachelors degree.

20    Arts.

21              THE COURT: BA.

22         A PROSPECTIVE JUROR: Yes.

23              THE COURT:   And the Arts being what

24    subjects.

25         A PROSPECTIVE JUROR:  Music.

1                    THE COURT: Number 8.

2                    A PROSPECTIVE JUROR:  Administrative

3          assistant.

4                    THE COURT: In what kind of a business.

5                    A PROSPECTIVE JUROR:  Non profit artists

6          organization.

7                    THE COURT:   What do you do with them.

8                    A PROSPECTIVE JUROR:  A number of things.

9          Membership.  Development.  Offers.

10                   THE COURT:  You have been working with

11         them for how long now.

12                   A PROSPECTIVE JUROR:  A year and a half.

13                   THE COURT:   Number 9.

14                   A PROSPECTIVE JUROR:  No.

15                   THE COURT: 10.

16                   A PROSPECTIVE JUROR: Yes.

17                   THE COURT:   10 A.

18                   A PROSPECTIVE JUROR: Civil case.

19                   THE COURT:   One or more times.

20                   A PROSPECTIVE JUROR: Once.

21                   THE COURT:   10 B.

22                   A PROSPECTIVE JUROR:  I was an alternate

23         juror.

24                   THE COURT:   10 C.

25                   A PROSPECTIVE JUROR:  That was in I

1      believe May of 2002.

2                   THE COURT: 11 A.

3                   A PROSPECTIVE JUROR:  Yes, burglary

4      house.

5                   THE COURT: Anyone home at the time.

6                   A PROSPECTIVE JUROR: No.

7                   THE COURT:   Anyone arrested and charged

8      with the crime.

9                   A PROSPECTIVE JUROR: No.

10                  THE COURT:  Was the crime investigated by

11     the police.

12                  A PROSPECTIVE JUROR:  I believe so I was

13     a little bit young at the time.

14                  THE COURT: Any other answers to 11 A.

15                  A PROSPECTIVE JUROR: No.

16                  THE COURT:   11 B.

17                  A PROSPECTIVE JUROR: No.

18                  THE COURT:   C.

19                  A PROSPECTIVE JUROR:  No.

20                  THE COURT:   D.

21                  A PROSPECTIVE JUROR:  No.

22                  THE COURT:   E.

23                  A PROSPECTIVE JUROR:  No.

24                  THE COURT: F.

25                  A PROSPECTIVE JUROR:  No.

1          THE COURT:   12 A.

2          A PROSPECTIVE JUROR:   No.

3          THE COURT:   B.

4          A PROSPECTIVE JUROR:   No.

5          THE COURT:   C.

6          A PROSPECTIVE JUROR:   No.

7          THE COURT:   D.

8          A PROSPECTIVE JUROR:   No.

9          THE COURT:   13.

10         A PROSPECTIVE JUROR:   No.

11         THE COURT: 14.

12         A PROSPECTIVE JUROR:   Yes.

13         THE COURT: 15.

14         A PROSPECTIVE JUROR:   Yes.

15         THE COURT:   16 yes.

16         THE COURT: 17.

17         A PROSPECTIVE JUROR:   Yes.

18         THE COURT: 18.

19         A PROSPECTIVE JUROR:   No.

20         THE COURT:   Thank you sir.  Ms. Curatolo

21    number one.

22         A PROSPECTIVE JUROR: Christina Curatolo.

23    New York.  Bayside.  Whole life.  Whole life.

24    Single.  BS in Accounting.

25         THE COURT:  8.

1              A PROSPECTIVE JUROR:  Accountant.

2              THE COURT: What kind of a business do you

3       work for as an accountant.

4              A PROSPECTIVE JUROR:  I work for a

5       company in the city.

6              THE COURT:   For how long.

7              A PROSPECTIVE JUROR: This is my second

8       year.

9              THE COURT: Are you going for your CPA or

10      are you going to.

11             A PROSPECTIVE JUROR:  I passed my exam.

12      I am waiting to get my 2 years of experience in.

13      Then I will be fully licensed.

14             THE COURT: Number 9.

15             A PROSPECTIVE JUROR:  No.

16             THE COURT:   10.

17             A PROSPECTIVE JUROR: No.

18             THE COURT: 11 A.

19             A PROSPECTIVE JUROR:  No.

20             THE COURT:   B.

21             A PROSPECTIVE JUROR: No.

22             THE COURT:   C.

23             A PROSPECTIVE JUROR:  No.

24             THE COURT:   D.

25             A PROSPECTIVE JUROR:  No.

1           THE COURT:   D.

2           A PROSPECTIVE JUROR:  No.

3           THE COURT:   E and F.

4           A PROSPECTIVE JUROR: No.

5           THE COURT: 12 A.

6           A PROSPECTIVE JUROR: No.

7           A PROSPECTIVE JUROR:  No.

8           THE COURT:   13.

9           A PROSPECTIVE JUROR:  No.

10          THE COURT:   14.

11          A PROSPECTIVE JUROR:  Yes.

12          THE COURT:   15.

13          A PROSPECTIVE JUROR:  Yes.

14          THE COURT: 16.

15          A PROSPECTIVE JUROR: Yes.

16          THE COURT:   17.

17          A PROSPECTIVE JUROR:  Yes.

18          THE COURT:   18.

19          A PROSPECTIVE JUROR: No.

20          THE COURT:   Thank you Ms. Gray number

21     one.

22          A PROSPECTIVE JUROR:  Carol Gray.

23     Kingston, Jamaica.  Jamaica, New York.  Over 30

24     years.  35 years.

25          THE COURT:   So I am understanding that

```
 1          you have been living at home that you are living
 2          there for over 30 years.
 3                      A PROSPECTIVE JUROR: Yes.
 4                      THE COURT:   6.
 5                      A PROSPECTIVE JUROR:  Single.  JD.
 6                      THE COURT: Number 8.
 7                      A PROSPECTIVE JUROR:  Lawyer.
 8                      THE COURT:  What kind of law do you
 9          practice.
10                      A PROSPECTIVE JUROR:  Mostly criminal
11          defense.
12                      THE COURT: And for how long have you been
13          a defense attorney and an attorney.
14                      A PROSPECTIVE JUROR:  An attorney over 15
15          years.
16                      THE COURT:   How many of those years have
17          you been a defense attorney.
18                      A PROSPECTIVE JUROR:  Over 11.
19                      THE COURT:   Are you working in your own
20          firm or do you work for a big agency.
21                      A PROSPECTIVE JUROR:  I work for a fairly
22          small firm in Brooklyn.
23                      THE COURT: Fairly small meaning how many
24          attorneys in that firm.
25                      A PROSPECTIVE JUROR:  About 25.
```

1              THE COURT:    And you have been working

2         with them for how long.

3              A PROSPECTIVE JUROR: 10 years.

4              THE COURT:    Number 9.

5              A PROSPECTIVE JUROR: No.

6              THE COURT: 10.

7              A PROSPECTIVE JUROR:  Yes.

8              THE COURT:    10 A.

9              A PROSPECTIVE JUROR: One of each.

10             THE COURT:    In the criminal case what

11        was the charge in this case.

12             A PROSPECTIVE JUROR:  Robbery.

13             THE COURT: Was that case here in Queens.

14             A PROSPECTIVE JUROR:  Yes.

15             THE COURT: 10 B.  For both of the cases.

16             A PROSPECTIVE JUROR:  Yes.

17             THE COURT: And.

18             A PROSPECTIVE JUROR:  Wait sorry.   The

19        civil yes. The criminal no.

20             THE COURT: And was that no because there

21        was a disposition of the case prior to the jury

22        having to deliberate or because it was --

23             A PROSPECTIVE JUROR: Yes.

24             THE COURT:   Hung.

25             A PROSPECTIVE JUROR: Not hung.

1          THE COURT: And 10 C.

2          A PROSPECTIVE JUROR:  I believe that it

3    was in 2003 early. Early part the year.

4          THE COURT: 11 A.  Victim of a crime.

5          A PROSPECTIVE JUROR:  Long, long time

6    ago.

7          THE COURT:  Who and what kind of a crime.

8          A PROSPECTIVE JUROR:  Someone tried to

9    snatch my coat from me.

10          THE COURT:  And the coat that you were

11    wearing at the time.

12          A PROSPECTIVE JUROR:  Yes.

13          THE COURT: That's even more brazen than I

14    mean if it was on your arm.

15          A PROSPECTIVE JUROR: No I was wearing it.

16          THE COURT: And you said that they tried

17    to snatch your coat.  What happened.

18          A PROSPECTIVE JUROR:  I fought them.

19          THE COURT:  It was one.

20          A PROSPECTIVE JUROR:  It was one person.

21          THE COURT:  A male.

22          A PROSPECTIVE JUROR:  A male.

23          THE COURT:  And in that struggle were you

24    hurt in any way.

25          A PROSPECTIVE JUROR:  Not really.

1           THE COURT: Was he ever caught and charged

2     with that crime.

3           A PROSPECTIVE JUROR: No.

4           THE COURT:   How old were you at the time

5     that this happened.

6           A PROSPECTIVE JUROR:  A teenager.

7           THE COURT:   Any other answers to 11 A.

8           A PROSPECTIVE JUROR:  Just regular

9     vandalism of your car.  Windows broken.  That type

10    of thing.

11          THE COURT:   Anyone ever arrested and

12    charged with those crimes.

13          A PROSPECTIVE JUROR:  No.

14          THE COURT: Same answers to 11 B. Any

15    other answers to 11 B.

16          A PROSPECTIVE JUROR: No.

17          THE COURT: 11 C.

18          A PROSPECTIVE JUROR:  No.

19          THE COURT:   D.

20          A PROSPECTIVE JUROR:  No.

21          THE COURT: E.

22          A PROSPECTIVE JUROR:  No.

23          THE COURT: F.

24          A PROSPECTIVE JUROR:  Yes.

25          THE COURT: Who and who sued who for what.

1          A PROSPECTIVE JUROR:  My brother was a

2    plaintiff suing different businesses who don't pay.

3              THE COURT: In small claims court.

4              A PROSPECTIVE JUROR:  Yes some and some

5    civil.

6              THE COURT: 12 A.

7              A PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Who do you know that works

9    for what agency.

10             A PROSPECTIVE JUROR: I have a friend that

11   works for law enforcement.

12             THE COURT:   What branches.

13             A PROSPECTIVE JUROR:  New York City

14   Police Department.  Some corrections.

15             THE COURT: Any other answers to 12 A.

16             A PROSPECTIVE JUROR:  Agencies, yes.

17             THE COURT: Any other agencies include.

18             A PROSPECTIVE JUROR:  Even like CJA.  I

19   know people who work for CJA.  The court system.

20   Everything within the courts dealing with defense.

21   I know people.

22             THE COURT:  Other than yourself any other

23   answers to 12 B.

24             A PROSPECTIVE JUROR:  Yes.

25             THE COURT:   Friends and colleagues.

1       Running the gamut.

2                       A PROSPECTIVE JUROR:  Yes.

3                       THE COURT:   Bar Association and the

4       like.

5                       A PROSPECTIVE JUROR: Yes.

6                       THE COURT:  Same answers to 12 C.

7                       A PROSPECTIVE JUROR: Yes. The same

8       answer.

9                       THE COURT: And same answer to 12 D.

10                      A PROSPECTIVE JUROR:  That's what I do.

11                      THE COURT:   Number 13.

12                      A PROSPECTIVE JUROR:  No.

13                      THE COURT:   14.

14                      A PROSPECTIVE JUROR:  Yes.

15                      THE COURT:   15.

16                      A PROSPECTIVE JUROR: Yes.

17                      THE COURT: 16.

18                      A PROSPECTIVE JUROR:  Yes.

19                      THE COURT:   17 is.

20                      A PROSPECTIVE JUROR:  Yes.

21                      THE COURT:   18.

22                      A PROSPECTIVE JUROR:  No.

23                      THE COURT: Okay.  Thank you Ms. Gray.

24      What we'll do is that I will stop my questions with

25      Ms. Gray. It is now prior to lunch.  It's time to

1    break for lunch. Please follow the instructions of

2    the officer.  Come back from lunch at 2:15.  This

3    afternoon I will pickup with Ms. Gooding at that

4    time. Have a great lunch.  See you this afternoon at

5    2:15.

6              (Whereupon, jurors exit the courtroom)

7              THE COURT: Anything further.

8              MS. MALIK:  No your Honor.

9              MR. JOHNSTON:  Nothing judge.

10             THE COURT:   See you this afternoon.

11             (Whereupon, a luncheon recess was taken.)

12             COURT CLERK:  Recall case on trial.

13   Calendar 2, Abu Khan.

14             THE COURT: Ready all.

15             MR. JOHNSTON:  Yes.

16             MS. MALIK:  Yes.

17             COURT OFFICER:  Jury panel entering.

18             THE COURT: So when we were last together

19   I mentioned that when we come back from lunch I

20   would begin with Ms. Gooding.  So number one please.

21             A PROSPECTIVE JUROR:  Fay Gooding.

22   Guyana.  Queens Village, 13 years.  16 years in this

23   country.  Single.  I didn't go to school here but I

24   have a GED.

25             THE COURT:   Number 8.

1              MR. JOHNSTON:  I work I am a nurse at Mt.

2       Sinai Hospital.

3              THE COURT:   What do you do in nursing.

4              A PROSPECTIVE JUROR:  As a patient care

5       associate.

6              THE COURT:  How long have you been

7       working with them.

8              A PROSPECTIVE JUROR:  13 years.

9              THE COURT:   Any children of working age.

10             A PROSPECTIVE JUROR:  One child.  He is

11      looking for a job right now.

12             THE COURT: Is there any time that he

13      worked full time.

14             A PROSPECTIVE JUROR:  For a short time.

15             THE COURT: Short time meaning a matter of

16      weeks or months.

17             A PROSPECTIVE JUROR:  About 3 months.

18             THE COURT:   In those months what kind of

19      work was he doing.

20             A PROSPECTIVE JUROR:  He was in a factory

21      doing packaging at night.

22             THE COURT: Number 9.

23             A PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Grand Jury.

25             A PROSPECTIVE JUROR:  No state jury.

1               THE COURT: Number 9 is Grand Jury so the

2       answer to number 9 is no.

3               A PROSPECTIVE JUROR:  No.

4               THE COURT:   Number 10 is yes.

5               A PROSPECTIVE JUROR: Yes state jury.

6               THE COURT:   10 A.

7               A PROSPECTIVE JUROR:  Civil case yes.

8               THE COURT:   1 or more times.

9               A PROSPECTIVE JUROR:  One time.

10              THE COURT:   10 B.

11              A PROSPECTIVE JUROR:  No.

12              THE COURT:   10 C.

13              A PROSPECTIVE JUROR:  2000 I think.

14              THE COURT: In that case was it settled

15      before you had to deliberate.

16              A PROSPECTIVE JUROR:  It was settled.

17              THE COURT: 11 A.

18              A PROSPECTIVE JUROR:  My sister.

19              THE COURT:   And what kind of a crime was

20      she a victim of.

21              A PROSPECTIVE JUROR:  They broke into her

22      apartment.

23              THE COURT:   Anyone home at that time.

24              A PROSPECTIVE JUROR:  No she was at work.

25              THE COURT:   Anyone arrested and charged

```
 1          with that crime.

 2                    A PROSPECTIVE JUROR:  No.

 3                    THE COURT: Any other answers to 11 A.

 4                    A PROSPECTIVE JUROR:  No.

 5                    THE COURT:    That crime was it

 6          investigated by the police.

 7                    A PROSPECTIVE JUROR:  The police was

 8          called.  She just leave the apartment and she move

 9          to Queens.

10                    THE COURT:    So that crime did not happen

11          in Queens.

12                    A PROSPECTIVE JUROR:  It happened in

13          Brooklyn.

14                    THE COURT: 11 B.

15                    A PROSPECTIVE JUROR:  No.

16                    THE COURT: 11 C.

17                    A PROSPECTIVE JUROR:  No.

18                    THE COURT:    D.

19                    A PROSPECTIVE JUROR:  No.

20                    THE COURT:    E.

21                    A PROSPECTIVE JUROR:  No.

22                    THE COURT: F.

23                    A PROSPECTIVE JUROR:  No.

24                    THE COURT:   12 A.

25                    A PROSPECTIVE JUROR: Yes.
```

1          THE COURT:   Who works for what law

2     enforcement.

3          A PROSPECTIVE JUROR:  My cousin is a

4     correction officer.

5          THE COURT: How long has he been a

6     correction officer.

7          A PROSPECTIVE JUROR:  Almost 3 years I

8     think.

9          THE COURT:   City corrections or state

10     corrections at Rikers.

11          A PROSPECTIVE JUROR:  Yes.

12          THE COURT: Any other answers to 12 A.

13          A PROSPECTIVE JUROR:  No.

14          THE COURT:  B.

15          A PROSPECTIVE JUROR:  No.

16          THE COURT: C.

17          A PROSPECTIVE JUROR:  No.

18          THE COURT:  D.

19          A PROSPECTIVE JUROR:  No.

20          THE COURT:   Number 13.

21          A PROSPECTIVE JUROR:  No.

22          THE COURT: 14.

23          A PROSPECTIVE JUROR:  Yes.

24          THE COURT:   15.

25          A PROSPECTIVE JUROR:  Yes.

```
 1                    THE COURT:   16.

 2                    A PROSPECTIVE JUROR:  Yes.  Yes and no.

 3                    THE COURT: Ms. Merilus.

 4                    A PROSPECTIVE JUROR:  Nicola Merilus.

 5      Jamaica, West Indies.  Cambria Heights.  6 years.

 6      27 years.  Married.  I have my associates in

 7      business.

 8                    THE COURT: Number 8.

 9                    A PROSPECTIVE JUROR:  Licensed practical

10      nurse.

11                    THE COURT: For how long have you been in

12      the nursing field.

13                    A PROSPECTIVE JUROR:  8 years.

14                    THE COURT:   And how many of those years

15      have you been a licensed practical nurse.

16                    A PROSPECTIVE JUROR:  5 years.

17                    THE COURT:   What kind of work does your

18      husband do.

19                    A PROSPECTIVE JUROR:  He is a manager for

20      UPS.

21                    THE COURT:   In the work that you do you

22      work in a hospital.

23                    A PROSPECTIVE JUROR:  A doctors office.

24                    THE COURT:   How long have you worked

25      there.
```

```
 1                    A PROSPECTIVE JUROR:   Right now this
 2         current job its 2 month now I just switched jobs.
 3         Leaving another dermatology practice for about 8
 4         years.
 5                    THE COURT:   Now you have said that your
 6         husband is a manager at UPS. How long has he been
 7         doing that.
 8                    A PROSPECTIVE JUROR:  18 years.
 9                    THE COURT:  Any children of working age.
10                    A PROSPECTIVE JUROR:  No.
11                    THE COURT: Number 9.
12                    A PROSPECTIVE JUROR:  No.
13                    THE COURT:  10.
14                    A PROSPECTIVE JUROR:  Yes.
15                    THE COURT:   10 A.
16                    A PROSPECTIVE JUROR: Criminal.  Once.
17                    THE COURT:  What was the charge in that
18         case.
19                    A PROSPECTIVE JUROR:  Multiple counts I
20         think it was like 40 plus counts and that case I
21         believe that there were like attempted murder.
22         Sodomy.  Things of that nature.
23                    THE COURT:  It was a single defendant or
24         multiple defendants.
25                    A PROSPECTIVE JUROR:  Single.
```

1                    THE COURT: 10 B.

2                    A PROSPECTIVE JUROR:  Yes.

3                    THE COURT: And C.

4                    A PROSPECTIVE JUROR:  October 2002.

5                    THE COURT:   Where was that case here in

6          Queens county.

7                    A PROSPECTIVE JUROR:  Nassau County.

8                    THE COURT:   11 A.

9                    A PROSPECTIVE JUROR:  No.

10                   THE COURT: B.

11                   A PROSPECTIVE JUROR:  No.

12                   THE COURT: C.

13                   A PROSPECTIVE JUROR:  No.

14                   THE COURT:   12 A.

15                   A PROSPECTIVE JUROR: Yes, my brother in

16         law is a New York City detective.

17                   THE COURT:  Any other answers to 12 A.

18                   A PROSPECTIVE JUROR:  No.

19                   THE COURT:   B.

20                   A PROSPECTIVE JUROR:  Yes, my cousin in

21         the state of Texas.

22                   THE COURT: What kind.

23                   A PROSPECTIVE JUROR:  A defense attorney.

24                   THE COURT:   In the state of Texas.

25                   A PROSPECTIVE JUROR: Yes.

1              THE COURT:    How many years.

2              A PROSPECTIVE JUROR:  2 years.

3              THE COURT:    Any other answers to 12 B.

4              A PROSPECTIVE JUROR: No.

5              THE COURT:    Same answers to 12 C.

6              A PROSPECTIVE JUROR: No.

7              THE COURT:    12 D.

8              A PROSPECTIVE JUROR:  No.

9              THE COURT:    13.

10             A PROSPECTIVE JUROR:  No.  No.  Yes.

11    Yes.  Yes.  And no.

12             THE COURT:    Ms. Cheng.

13             A PROSPECTIVE JUROR:  Emily Cheng. Hong

14    Kong. Kew Gardens.  8 months.

15             THE COURT: Prior to where you are living

16    now where did you live.

17             A PROSPECTIVE JUROR:  Flushing.

18             THE COURT:    Number 5.

19             A PROSPECTIVE JUROR:  23 year. Married.

20    A DPT, Doctorate in Physical Therapy.  Unemployed.

21             THE COURT:    When was the last time that

22    you were employed full time.

23             A PROSPECTIVE JUROR:  I have been on

24    rotation not working.

25             THE COURT: How long have you had your

                                                         vld

1           DPT.

2                       A PROSPECTIVE JUROR:  I got it in May of

3           06.

4                       THE COURT: Number 9.

5                       A PROSPECTIVE JUROR:  No.

6                       THE COURT:   10.

7                       A PROSPECTIVE JUROR: No.

8                       THE COURT:   11 A.

9                       A PROSPECTIVE JUROR:  No.

10                      THE COURT:  B.

11                      A PROSPECTIVE JUROR:  No.

12                      THE COURT:   C.

13                      A PROSPECTIVE JUROR: No.

14                      THE COURT:   D.

15                      A PROSPECTIVE JUROR:  No.

16                      THE COURT:   F.

17                      A PROSPECTIVE JUROR: No.

18                      THE COURT:   12 A.  No, no, no.

19                      THE COURT: 13.  No.

20                      THE COURT:   14.

21                      A PROSPECTIVE JUROR:  Yes, yes, yes, yes,

22          no.

23                      THE COURT:  Mr. Roth.

24                      A PROSPECTIVE JUROR:  Bennett Roth.

25          Queens.  Flushing.  Kew Gardens. 17 years.  All my

1           life.  Married.  Bachelors.

2                     THE COURT: What subject.

3                     A PROSPECTIVE JUROR:  Business.

4                     THE COURT:  8.

5                     A PROSPECTIVE JUROR:  Supervisor at

6           Postal Office.

7                     THE COURT:  How long have you been

8           working with the Post Office.

9                     A PROSPECTIVE JUROR: 27 years.

10                    THE COURT:  How long have you been a

11          supervisor.

12                    A PROSPECTIVE JUROR: 23 of them.

13                    THE COURT: What part of the service do

14          you supervise.

15                    A PROSPECTIVE JUROR:  Tenant manager

16          Kennedy Airport.

17                    THE COURT:  Wife works.

18                    A PROSPECTIVE JUROR:  Housewife. Small

19          children.  Grand Jury no.

20                    THE COURT:  10.

21                    A PROSPECTIVE JUROR: Yes.

22                    THE COURT: 10 A.

23                    A PROSPECTIVE JUROR:  Yes.  One.  The

24          charge was burglary.

25                    THE COURT:  10 B.

 1                     A PROSPECTIVE JUROR:  It was.  A verdict

 2      was reached but was a second alternate.  Was not

 3      part of it.

 4                     THE COURT:  10 C.

 5                     A PROSPECTIVE JUROR:  4 or 5 years.

 6                     THE COURT: Were you around at the time

 7      that verdict was rendered.

 8                     A PROSPECTIVE JUROR: No.

 9                     THE COURT: Had you then called back to

10      find out what happened with the case.

11                     A PROSPECTIVE JUROR:  I did call back.

12      They were sequestered.

13                     THE COURT:  11 A.

14                     A PROSPECTIVE JUROR: Yes.

15                     THE COURT:  Who and what kind of a

16      crime.

17                     A PROSPECTIVE JUROR:  Car theft.

18                     THE COURT:  One or more times.

19                     A PROSPECTIVE JUROR:  Once.

20                     THE COURT:  Car ever found.

21                     A PROSPECTIVE JUROR:  No.

22                     THE COURT: Anyone arrested and charged.

23                     A PROSPECTIVE JUROR: Not that I know of.

24                     THE COURT:  Any other answer to 11 A.

25                     A PROSPECTIVE JUROR: No.

```
 1                      THE COURT: B.

 2                      A PROSPECTIVE JUROR:  No.  No.  No.

 3                      THE COURT:   In those 27 years in the post

 4           office never witnessed any crime.

 5                      A PROSPECTIVE JUROR:  No.

 6                      THE COURT: 12 A.

 7                      A PROSPECTIVE JUROR:  No.

 8                      THE COURT:   B.

 9                      A PROSPECTIVE JUROR:  No, no.

10                      THE COURT:   13.

11                      A PROSPECTIVE JUROR:  No, yes, yes, yes,

12           yes.

13                      THE COURT:   And 18.

14                      A PROSPECTIVE JUROR:  No.

15                      THE COURT:   Thank you sir.  Ms.

16           Zarzabal.

17                      A PROSPECTIVE JUROR:  Carolia Zarzabal.

18           Puerto Rico.  Rego Park, Queens.  25 years.  A long

19           time.

20                      THE COURT:   Number 6.

21                      A PROSPECTIVE JUROR:  Married.

22                      THE COURT:  7.

23                      A PROSPECTIVE JUROR: High school.

24                      THE COURT: 8.

25                      A PROSPECTIVE JUROR:  Accounting.
```

1          THE COURT: What do you do in accounting.

2          A PROSPECTIVE JUROR:  I do the

3     collections and the payouts to the authors.

4          THE COURT: What kind of company do you

5     work for.

6          A PROSPECTIVE JUROR:  Literary agency.

7          THE COURT:  How long have you been there.

8          A PROSPECTIVE JUROR:  23 years.

9          THE COURT: And so the collections that

10    you send is to the.

11         A PROSPECTIVE JUROR:  Royalties to the

12    authors of the various books.

13         THE COURT: What kind of work does your

14    husband do.

15         A PROSPECTIVE JUROR:  He installs radios

16    and antennas in cars. Things like that.

17         THE COURT: He was his own boss.

18         A PROSPECTIVE JUROR: No.

19         THE COURT:  Any children of working age.

20         A PROSPECTIVE JUROR:  No children.

21         THE COURT:   9.

22         A PROSPECTIVE JUROR:  No.

23         THE COURT:   10.

24         A PROSPECTIVE JUROR: Yes.

25         THE COURT: A.

1                    A PROSPECTIVE JUROR:  Civil once.

2                    THE COURT: 10 B.

3                    A PROSPECTIVE JUROR:  I guess yes.  It

4         was an elevator thing where a person got caught in

5         an elevator.

6                    THE COURT:  So it wasn't settled.

7                    A PROSPECTIVE JUROR:  They asked for an

8         amount of money.

9                    THE COURT:  So you had deliberated on

10        liability and you were saying that it was settled as

11        far as damages are concerned.

12                   A PROSPECTIVE JUROR:  Yes.

13                   THE COURT: 10 C.

14                   A PROSPECTIVE JUROR:  A long time ago.

15                   THE COURT:   Not as long as you have been

16        living in this country.

17                   A PROSPECTIVE JUROR: No.

18                   THE COURT: 11 A.

19                   A PROSPECTIVE JUROR:  No.

20                   THE COURT:   B.

21                   A PROSPECTIVE JUROR:  No, no, no, no.

22                   THE COURT: 12 A.

23                   A PROSPECTIVE JUROR:  No.

24                   THE COURT: B.

25                   A PROSPECTIVE JUROR:  No.  No.

1           THE COURT:    13.

2           A PROSPECTIVE JUROR:  No, yes.

3           THE COURT:    15.

4           A PROSPECTIVE JUROR: Yes.

5           THE COURT:    16.

6           A PROSPECTIVE JUROR:  Yes.

7           THE COURT: 17.

8           A PROSPECTIVE JUROR:  Yes.

9           THE COURT: 18.

10          A PROSPECTIVE JUROR:  No.

11          THE COURT: All right.  Thank you. Mr.

12     Choy.

13          A PROSPECTIVE JUROR:  Norman Choy.  New

14     York.  East Elmhurst.  30 years.

15          THE COURT:    5.

16          A PROSPECTIVE JUROR: All my life.  Did

17     divorced.  EBA.  Number 8 retired.

18          THE COURT:    From what.

19          A PROSPECTIVE JUROR:  Data processing.

20          THE COURT: What a wonderful thing to

21     actually to be as young as you are to say that I am

22     retired.  Most of us cannot say that.

23          A PROSPECTIVE JUROR:  It doesn't mean

24     that I will stay retired.

25          THE COURT:    How long have you been

```
 1            retired.

 2                      A PROSPECTIVE JUROR:  3 years.

 3                      THE COURT: And retired to me means that

 4            you are no longer busy working in what you were in

 5            and you are not necessarily now looking to go into

 6            any other career.  If it happens it happens.

 7                      A PROSPECTIVE JUROR:  At the current time

 8            yes.

 9                      THE COURT:   I think that you said that

10            you are divorced. What does your ex-wife do.

11                      A PROSPECTIVE JUROR:  She was an

12            executive secretary at a fashion firm.

13                      THE COURT: Any children.

14                      A PROSPECTIVE JUROR:  No.

15                      THE COURT: Number 9.

16                      A PROSPECTIVE JUROR:  No.  No.

17                      THE COURT:  11 A.

18                      A PROSPECTIVE JUROR:  Car vandalism.

19                      THE COURT:   Anyone caught and charged.

20                      A PROSPECTIVE JUROR: No.

21                      THE COURT:   Any other answers to 11 A.

22                      A PROSPECTIVE JUROR:  No.

23                      THE COURT:  B.

24                      A PROSPECTIVE JUROR:  No, no, no.

25                      THE COURT: 12 A.
```

1                        A PROSPECTIVE JUROR:  No.

2                        THE COURT:    B.

3                        A PROSPECTIVE JUROR:  No, no, no.

4                        THE COURT:   13.

5                        A PROSPECTIVE JUROR:  No.

6                        THE COURT: 14.

7                        A PROSPECTIVE JUROR:  Yes, yes, yes, yes.

8                        THE COURT:    18.

9                        A PROSPECTIVE JUROR:  No.

10                       THE COURT: Mr. Aguirre.

11                       A PROSPECTIVE JUROR:  Edward Aguirre.

12          Ecuador.   Astoria.  2 months.

13                       THE COURT:   Prior to that are you were

14          living where.

15                       A PROSPECTIVE JUROR:  18 years in

16          Astoria.

17                       THE COURT:   Number 5.

18                       A PROSPECTIVE JUROR:  36 years.

19          Divorcing now.  2 years college.

20                       THE COURT:   8.

21                       A PROSPECTIVE JUROR:  Non profit

22          organization at the present.

23                       THE COURT:   Doing what.

24                       A PROSPECTIVE JUROR:  It's promoting

25          China's national support for next years Olympics.

                                                           vld

1          THE COURT:   It's national sport is.

2          A PROSPECTIVE JUROR:  It's called coshu

3     (ph).  It's confusing to American people.

4          THE COURT:   And you have been doing that

5     kind of work for how long.

6          A PROSPECTIVE JUROR:  Since 2002.

7          THE COURT:   I know that you said that

8     you were in the process of getting divorced. What

9     does your wife do.

10         A PROSPECTIVE JUROR:  Gymnastics coach.

11         THE COURT: Is she working for a

12    particular.

13         A PROSPECTIVE JUROR:  For a gymnastics

14    school.

15         THE COURT:   She has been associated with

16    that school for how long.

17         A PROSPECTIVE JUROR:  About 12, 13 years.

18         THE COURT: And I imagine that she is

19    working with younger certainly smaller framed people

20    smaller than I am.

21         A PROSPECTIVE JUROR:  Youths and

22    teenagers.

23         THE COURT: Number 9.

24         A PROSPECTIVE JUROR:  No.

25         THE COURT:   10.

1          A PROSPECTIVE JUROR:  No.

2          THE COURT:   11 A.

3          A PROSPECTIVE JUROR:  No.

4          THE COURT:   B.

5          A PROSPECTIVE JUROR:  No, no.

6          THE COURT:   11 B.

7          A PROSPECTIVE JUROR:  No.

8          THE COURT:   E.

9          A PROSPECTIVE JUROR:  No, no.

10         THE COURT:   12 A.

11         A PROSPECTIVE JUROR:  No.

12         THE COURT:   B.

13         A PROSPECTIVE JUROR:  Yes.

14         THE COURT: Who do you know that works for

15    what kind of a law firm.

16         A PROSPECTIVE JUROR:  Myself I worked for

17    a law firm in the city.

18         THE COURT: Worked or work now.

19         A PROSPECTIVE JUROR:  Worked.  I was desk

20    top support.

21         THE COURT:   You worked with them for how

22    long.

23         A PROSPECTIVE JUROR:  A year.

24         THE COURT:   And when was the most recent

25    time that you worked with them.

1                    A PROSPECTIVE JUROR:  This is back in the

2          mid 90's.

3                    THE COURT: Any other answers to 12 B.

4                    A PROSPECTIVE JUROR: No.

5                    THE COURT:   C.

6                    A PROSPECTIVE JUROR:  No.

7                    THE COURT:   D.

8                    A PROSPECTIVE JUROR:  No.

9                    THE COURT:   13.

10                   A PROSPECTIVE JUROR:  No, yes, yes, yes,

11         yes.

12                   THE COURT:   18.

13                   A PROSPECTIVE JUROR:  No.

14                   THE COURT:   And Mr. Fletcher number one.

15                   A PROSPECTIVE JUROR:  Bobby Fletcher.

16         South Carolina.  Jamaica.

17                   THE COURT:  4.

18                   A PROSPECTIVE JUROR:  We are on 4 now.  6

19         years.

20                   THE COURT:   5.

21                   A PROSPECTIVE JUROR:  All my life.

22                   THE COURT:   6.

23                   A PROSPECTIVE JUROR:  Widower.

24                   THE COURT:   Number 7.

25                   A PROSPECTIVE JUROR:  8.

```
 1              THE COURT:    Number 8.
 2              A PROSPECTIVE JUROR: A porter.
 3              THE COURT:   What kind of building do you
 4      work as a porter.
 5              A PROSPECTIVE JUROR:  An apartment
 6      building.
 7              THE COURT:  Not a commercial building an
 8      apartment building.
 9              A PROSPECTIVE JUROR:  Yes.
10              THE COURT:  How long have you been a
11      porter for.
12              A PROSPECTIVE JUROR:  Years, 34.
13              THE COURT:   Have you worked at that same
14      complex each of those 34 years.
15              A PROSPECTIVE JUROR:  Yes.
16              THE COURT: How long have you been a
17      widower.
18              A PROSPECTIVE JUROR:  9 years.
19              THE COURT: Any children of working age.
20              A PROSPECTIVE JUROR:  2.
21              THE COURT:   What kind of work do they
22      do.
23              A PROSPECTIVE JUROR: Teacher and a dental
24      assistant.
25              THE COURT:   What level student does the
```

1          teacher teach if you know.

2                    A PROSPECTIVE JUROR: She is a dean.  So I

3          don't know what she teaches.

4                    THE COURT: All right.  Number 9.

5                    A PROSPECTIVE JUROR:  Yes but I don't

6          remember the case.

7                    THE COURT:  9 is asking about a Grand

8          Jury.

9                    A PROSPECTIVE JUROR:  Well I have served

10         the Grand Jury, civil and federal.  But I do not

11         remember the case.

12                   THE COURT:  So you had served on a Grand

13         Jury it was a state Grand Jury meaning here in

14         Queens county.

15                   A PROSPECTIVE JUROR:  In Brooklyn.

16                   THE COURT:  Was it state or federal Grand

17         Jury.

18                   A PROSPECTIVE JUROR:  I think it was

19         state.

20                   THE COURT:  So you served on a Grand

21         Jury one time.

22                   A PROSPECTIVE JUROR:  Right.

23                   THE COURT:  And you are saying in the

24         answer to number 10 as far as the trial jury is

25         concerned you also sat on a trial jury.

1                        A PROSPECTIVE JUROR: Yes.

2                        THE COURT: And a civil case.

3                        A PROSPECTIVE JUROR: Yes.

4                        THE COURT:   And a criminal case.

5                        A PROSPECTIVE JUROR: Yes.

6                        THE COURT:   You do not know what the

7        charge was in the criminal case.

8                        A PROSPECTIVE JUROR:  Well not really.

9        Because all 3 of them I think were dismissed.

10                       THE COURT:   Okay.

11                       A PROSPECTIVE JUROR:  I don't know which

12       is which but it was crazy.  It was crazy cases.

13                       THE COURT:   So you had the misfortune of

14       being chosen for 3 crazy cases.

15                       A PROSPECTIVE JUROR:  Right.

16                       THE COURT: 11 A.  Victim of a crime.

17                       A PROSPECTIVE JUROR:  I had 4 cars

18       stolen.

19                       THE COURT:   Anyone ever caught and

20       charged.

21                       A PROSPECTIVE JUROR:  Once.

22                       THE COURT:   Any idea as to how they were

23       caught.

24                       A PROSPECTIVE JUROR:  Yes they were

25       parked outside the house and a cop passed by and saw

1          them going into the trunk. He asked for

2          registration. They did not have it.

3                     THE COURT:   Had that case gone into

4          court.

5                     A PROSPECTIVE JUROR:  Yes.

6                     THE COURT:   Are you satisfied with how

7          the case was handled in court.

8                     A PROSPECTIVE JUROR:  Well I don't know

9          how it turned out I never heard nothing else about

10         it.

11                    THE COURT:   Any other answer to 11 A.

12                    A PROSPECTIVE JUROR:  No.

13                    THE COURT: 11 B.  Witness to a crime.

14                    A PROSPECTIVE JUROR:  No.

15                    THE COURT:   11 C.

16                    A PROSPECTIVE JUROR: No.

17                    THE COURT:   D.

18                    A PROSPECTIVE JUROR:  No.

19                    THE COURT:   E.

20                    A PROSPECTIVE JUROR:  No.

21                    THE COURT:   F.

22                    A PROSPECTIVE JUROR:  Yes.

23                    THE COURT:   Who sued who for what.

24                    A PROSPECTIVE JUROR:  I sued a guy who he

25         was supposed to put some cabinets up. I paid him

1        half the money he never did it.

2                    THE COURT:  You sued him in small claims

3        court.

4                    A PROSPECTIVE JUROR:  Yes.

5                    THE COURT:   How did that case turn out.

6                    A PROSPECTIVE JUROR:  Not too good I

7        never got nothing.

8                    THE COURT:   12 A.

9                    A PROSPECTIVE JUROR:  No.

10                   THE COURT:   B.

11                   A PROSPECTIVE JUROR:  No.

12                   THE COURT:   C.

13                   A PROSPECTIVE JUROR:  No.

14                   THE COURT:   D.

15                   A PROSPECTIVE JUROR:  No.

16                   THE COURT:   13.

17                   A PROSPECTIVE JUROR:  No.

18                   THE COURT:   14.

19                   A PROSPECTIVE JUROR:  Yes.

20                   THE COURT:   15.

21                   A PROSPECTIVE JUROR:  Yes.

22                   THE COURT:  16.

23                   A PROSPECTIVE JUROR:  Yes.

24                   THE COURT:   17.

25                   A PROSPECTIVE JUROR:  Yes.

1                    THE COURT:    18.

2                    A PROSPECTIVE JUROR:    No.

3                    THE COURT:    Thank you Mr. Fletcher.

4          Thank you all for being patient with me and my

5          questions.

6                    Now you have a chance to be asked

7          questions by the attorneys.   Beginning first with

8          the ADA Ms. Mina Malik.

9   VOIR DIRE

10  BY MS. MALIK:

11                   MS. MALIK:   Thank you your Honor.   Good

12         afternoon ladies and gentlemen of the jury.   Again

13         my name is Mina Malik and I work in the Special

14         Victims Bureau in the DA's office.

15                   I am given the responsibility of

16         presenting this case to you at this time.   There is

17         no right or wrong answers here.   What we are looking

18         for are honest answers so that we can pick a jury

19         that can be fair to both the People of the state of

20         New York as well as to the defendant who sits before

21         you okay.   So I appreciate your candor so far.   I

22         would ask that you please keep that up.   First just

23         by a show of hands who has children here.   Okay.

24         Lets starts with you Mr.  -- Dr. Gottesnan how old

25         are they.

1              A PROSPECTIVE JUROR:  8, 7, 3 and 3

2       months.  I have 4.

3                   THE COURT:   Busy.

4                   MS. MALIK:  Busy.  And how many girls and

5       boys.

6                   A PROSPECTIVE JUROR:  One girl who is 3

7       and the rest are boys.

8                   THE COURT:   Ms. Couvertier.

9                   A PROSPECTIVE JUROR:  2 and 10 months and

10      22 months.  A girl and boy.

11                  THE COURT:   Ms. Stanford.

12                  A PROSPECTIVE JUROR: My child is grown.

13                  THE COURT:   Who is next Ms. Gray.

14                  A PROSPECTIVE JUROR:  I have 2 children.

15      9 and 4 both girls.

16                  MS. MALIK:  And Ms. Gooding.

17                  A PROSPECTIVE JUROR:  One.

18                  MS. MALIK:  Ms. Merilus.

19                  A PROSPECTIVE JUROR: Yes I have a girl

20      and boy. The girl is 8. The boy is 2.

21                  MS. MALIK:  And who is next Mr. Roth.

22                  A PROSPECTIVE JUROR:  3 children.  10

23      years old.

24                  MS. MALIK:  Triplets.

25                  A PROSPECTIVE JUROR:  Yes, 2 girls, one

1    boy.

2                    MS. MALIK:  Mr. Choy.

3                    A PROSPECTIVE JUROR:  No.

4                    MS. MALIK:  Mr. Aguirre.

5                    A PROSPECTIVE JUROR:  2, a boy and girl.

6    11 and 14.

7                    MS. MALIK:  Mr. Fletcher.

8                    A PROSPECTIVE JUROR:  3 girls.

9                    MS. MALIK:  So I wanted to talk to you

10   about that ladies and gentlemen of the jury about

11   children.  How many of you as a child were taught to

12   obey authority and to obey adults. Is it safe to say

13   everybody here and those of you who have children do

14   you teach your children as well to respect authority

15   and obey adults.

16                   A PROSPECTIVE JUROR:  Yes.

17                   MS. MALIK:  Do you believe that a child

18   should be required to resist sexual advances to hold

19   an adult accountable to their behavior.  Do you

20   believe that.  If sexual advances are made towards a

21   child that they are required to resist those

22   advances. Anybody else.

23                   A PROSPECTIVE JUROR:  Yes.

24                   MS. MALIK:  You believe that.

25                   A PROSPECTIVE JUROR:  Resist as in to

1    report or to resist not to let it happen.

2              MS. MALIK:  Not to let it happen.  How

3    many of you believe that they should be required to

4    resist.

5              A PROSPECTIVE JUROR: Yes.

6              MS. MALIK:  You believe that they should

7    be required.  Could you have raise your hands.

8              THE COURT:   Let me clear in my own head

9    as to what that means.  She had asked you initially

10   of the kinds of things that you were taught as

11   children and the ways that you are raising your

12   children.  So to my own mind I am not sure whether

13   or not the question is that she is asking is are you

14   teaching your children to resist or if you think

15   that any child that is set upon by an adult should

16   physically resist.  Ms. Malik would you make that

17   clear or maybe I should.

18             MS. MALIK:  I would like you to your

19   Honor please.

20             THE COURT: One of the things that you

21   would be asked to do if you are chosen as a juror in

22   this case is to first determine the facts and then

23   apply the law as I give it to you at the end of case

24   to those facts.

25             If the law is that a child does not have

1        to physically resist would you take the position

2        that in order to find someone guilty a child has to

3        physically resist.  Do you follow my question.  I am

4        essentially asking would you follow what the law is

5        or would you impose your own view as to what a child

6        should do in a situation that that child is facing.

7        Would you impose what you think the law should be or

8        would you impose or interpret the law that exists.

9                    A PROSPECTIVE JUROR:  Now it's getting

10       more complicated.

11                   A PROSPECTIVE JUROR:  Can I say

12       something. Are you saying that if the kid is like is

13       willing, under age and if the adult messes with her

14       we consider that rape is that what you are saying.

15                   THE COURT:    That isn't kind of like  --

16       I am not saying that this is what the facts in this

17       case is.  But using an example that example in

18       certain cases the law is it doesn't matter what the

19       child will consent to do it's unlawful for an adult

20       to have any contact with a child given that childs

21       age.

22                   Now some people may feel that well the

23       child did not resist.  The child did not say no.

24       But the law is that simple because if the fact is

25       that the child is under a certain age they cannot

1    consent.  It doesn't matter what they said.  If and

2    I am not saying that this is a fact pattern in this

3    case just to answer Mr. Fletchers question to try to

4    better answer his question.  And also to address

5    some of what Ms. Malik was asking.

6              There are times when what you may view to

7    be the appropriate actions of an alleged victim

8    comes in conflict with what the law is as to what

9    someone who is accused can or cannot do to that

10   alleged victim.  One of the areas where there is a

11   conflict or can be a problem is with the age of the

12   child.

13             Our law is that if you are under a

14   certain age a child can't consent.  And is there

15   anyone of you who are feels that that law meaning a

16   law that is designed to protect a child under a

17   certain age meaning that they cannot consent.  Do

18   you  feel that is unfair.  Or can you follow that

19   law.

20             A PROSPECTIVE JUROR:  Yes follow the law.

21             THE COURT:   Each of you can follow the

22   law. The law says that a child under a certain age

23   cannot consent.  Can you follow that law. It does

24   not matter what the child says.  If the child is

25   under that age then they cannot consent.

1          A PROSPECTIVE JUROR: Yes.

2          THE COURT:   In a case like this would

3     you, can you each commit to follow the law that is

4     and not impose what you think the law should be.

5          A PROSPECTIVE JUROR:  Yes.

6          THE COURT:   Okay Ms. Malik.

7          MS. MALIK:   Thank you your Honor.  Ms.

8     Curatolo what do you think a pedophile looks like.

9          A PROSPECTIVE JUROR:  It could be male,

10    female. Young or old.

11         MS. MALIK:   How about you Dr. Gottensnan

12    what do you  think.

13         A PROSPECTIVE JUROR:  I agree with that

14    answer it could be either.

15         MS. MALIK:   Everybody agree with that

16    answer.

17         A PROSPECTIVE JUROR:  Yes.

18         MS. MALIK:   I would like you to take a

19    look at the defendant.  Is there anything about him

20    that makes you think that just from looking at him

21    on appearance alone that he could not have done the

22    crimes that he is accused of doing.

23         MR. JOHNSTON:   Judge, I am going to

24    object to that.

25         THE COURT:   Sustained.

1          MR. JOHNSTON:  I think that is going into

2     qualification.

3          MS. MALIK:  Can you all agree with me

4     that you cannot judge a book by it's cover.

5          A PROSPECTIVE JUROR:  Yes.

6          MS. MALIK:  Can you all agree that

7     regardless of how charming or charismatic that a

8     person can be that behind closed doors that you may

9     not know the person behind closed doors.

10          A PROSPECTIVE JUROR:  Yes.

11          MS. MALIK:  Can you promise me that you

12     will keep that in mind as you listen to this case.

13          A PROSPECTIVE JUROR:  Yes.

14          MS. MALIK:  I would like to talk to you

15     ladies and gentlemen of the jury about the one

16     witness issue which his Honor brought up to you

17     earlier.

18          You all agree that if you believe the

19     witness, one witness to a crime beyond a reasonable

20     doubt that each and every one of you would be able

21     to convict in this case.  What I would like to ask

22     you now is that what if that one witness were a

23     teenager would that change your answer in any way

24     given that the person is younger and not considered

25     to be an adult.

1           Maybe a young teenager would that change

2     your answer in any way when you said earlier on that

3     you would be able to convict if you believe that

4     person. Mr. Lam would that change your answer.

5           A PROSPECTIVE JUROR: No.  If there is

6     reason to believe beyond a reasonable doubt whatever

7     that person is saying I would believe them.

8           MS. MALIK:  Can you all understand that

9     when you combine a sex act and that act is criminal

10    in nature that obviously people would not be

11    committing that out in public or out in the street

12    where there are other witnesses. Can you understand

13    that Mr. Choy.

14          A PROSPECTIVE JUROR: Yes.

15          MS. MALIK:  Can you appreciate that.

16          A PROSPECTIVE JUROR: Yes.

17          MS. MALIK:  So the fact that the one

18    witness may be a young teenager would that change

19    your answer in any way or if you believed her would

20    you still be able to convict.

21          A PROSPECTIVE JUROR:  Yes.

22          MS. MALIK:  How about you Ms. Curatolo.

23          A PROSPECTIVE JUROR:  I agree.

24          MS. MALIK:  You would be able to convict.

25          A PROSPECTIVE JUROR:  Yes.

1              MS. MALIK:  Ms. Stanford.

2              A PROSPECTIVE JUROR:  I would.

3              MS. MALIK:  Ms. Couvertier.

4              A PROSPECTIVE JUROR: Yes.

5              MS. MALIK:  Dr. Gottesnan.

6              A PROSPECTIVE JUROR: Yes.

7              MS. MALIK:  Ms. Merilus.

8              A PROSPECTIVE JUROR:  Yes.

9              MS. MALIK:  Ms. Cheng.

10             A PROSPECTIVE JUROR:  Yes.

11             MS. MALIK:  Mr. Roth.

12             A PROSPECTIVE JUROR:  Yes.

13             MS. MALIK:  Ms. Zarzabal.

14             A PROSPECTIVE JUROR:  Yes.

15             MS. MALIK:  Ms. Gooding. You would be

16      able to convict if it's a teenager and just one

17      witness.

18             A PROSPECTIVE JUROR: Yes.

19             THE COURT:   Mr. Fletcher.

20             A PROSPECTIVE JUROR:  Yes.

21             THE COURT: Mr. Aguirre.

22             A PROSPECTIVE JUROR:  Yes.

23             MS. MALIK:  You are going to hear what is

24      called testimonial evidence ladies and gentlemen.

25      That is evidence that comes before you through

1    witness testimony those who take the stand right

2    here and words that come out of their mouths.  You

3    are going to be asked to do what you have done years

4    and years before which is to basically evaluate the

5    case based on the testimony that comes from that

6    witness chair right there and the words that come

7    out of the witnesses mouths.

8              I will tell you right now you are not

9    going to hear any fingerprint evidence. This is not

10   CSI. There is no magic fairy dust that solves the

11   case in an hour.  You are not going to hear about

12   DNA blood evidence or any positive medical evidence.

13   Sometimes the scientific evidence is just not

14   possible even though it's expected. Would you need

15   more than witness testimony to convict in that

16   scenario.

17             MR. JOHNSTON:  I am going to object to

18   the form of the question judge.

19             THE COURT:   Overruled.

20             MS. MALIK:  Would you.

21             A PROSPECTIVE JUROR:  Yes I would.

22             MS. MALIK:  You would need more than a

23   witnesses testimony.

24             A PROSPECTIVE JUROR:  Obviously it would

25   depend on the testimony. I guess that I could be

1    swayed. I would like more that than just the say so

2    of a person.

3                MS. MALIK:  Dr., sometimes definitive

4    medical evidence is just not possible.  Haven't you

5    come address that in some of your pediatric cases.

6                A PROSPECTIVE JUROR:  Yes.

7                MS. MALIK:  Can you think of one that

8    comes to mind that maybe a child comes in and says

9    that something happened and there is just no medical

10   evidence.

11               A PROSPECTIVE JUROR:  Yes.

12               MS. MALIK:  And you believed that child

13   anyway.

14               A PROSPECTIVE JUROR: Yes.

15               MS. MALIK:  So if you found the child

16   credible then you could convict in this case despite

17   the fact that there is no medical evidence.

18               A PROSPECTIVE JUROR:  Yes, but you know I

19   would I wouldn't operate not I would not operate on

20   a person just on a matter of say so.  On a matter of

21   treating a sore throat I would accept the testimony.

22               MS. MALIK:  You have come across that in

23   your own occupation.

24               A PROSPECTIVE JUROR: Yes.

25               THE COURT:   How about you Mr. Lam.

 1              A PROSPECTIVE JUROR:

 2              MS. MALIK:  There is no scientific

 3      evidence assume that for a moment. All you have is

 4      the witnesses testimony.  Would you if you found the

 5      witness credible would you be able to convict or

 6      would you need more.  Would you need scientific

 7      evidence.

 8              A PROSPECTIVE JUROR:  If the testimony

 9      from the person is credible enough that would be

10      enough.

11              MS. MALIK:  Do you feel that way Ms.

12      Couvertier.

13              A PROSPECTIVE JUROR:  I agree.

14              MS. MALIK:  You would be able to convict

15      even though there is no scientific evidence.

16              A PROSPECTIVE JUROR:  If I find that the

17      witness is credible yes.

18              MS. MALIK:  Ms. Stanford.

19              A PROSPECTIVE JUROR: Yes.

20              MS. MALIK:  You would you be fine with

21      that.

22              A PROSPECTIVE JUROR: Yes.

23              MS. MALIK:  Ms. Curatolo.

24              A PROSPECTIVE JUROR:  I agree.

25              MS. MALIK:  Does anybody here need more

1      than the witnesses testimony if they find the

2      witnesses testimony credible. Would you be expecting

3      more medical evidence. Scientific evidence. Anything

4      of that nature.  Ms. Merilus how do you feel about

5      that.

6                 A PROSPECTIVE JUROR:  If the person seems

7      credible yes I would go along with that.

8                 THE COURT:   You have 2 minutes.

9                 MS. MALIK:  Thank you your Honor. Anybody

10     in the back row.  Would you need any scientific

11     evidence.  Mr. Roth, Mr. Fletcher, Dr. Gottesnan how

12     do you  think that a child should act when they are

13     testifying. Particular about sex acts.

14                A PROSPECTIVE JUROR:  I don't know.  I

15     don't know if there is a way that they should act.

16                MS. MALIK:  And that's true.  How many of

17     you are comfortable with us here today about where

18     you live.  However many kids that you have and all

19     of that.  Are you as comfortable here in the

20     courtroom as a room full of strangers as you would

21     be in your house.

22                A PROSPECTIVE JUROR:  No.

23                MS. MALIK:  Can you promise me that you

24     will keep that in mind when you see the witnesses

25     come in, in this case.  Especially the child witness

1    that they might react differently. They might cry.

2    They might be emotionless. They might be silent for

3    a while. Can you take that into consideration when

4    evaluating the testimony.

5            A PROSPECTIVE JUROR:  Yes.

6            MS. MALIK:  Ladies and gentlemen I would

7    ask I would like to ask you is there any one here

8    who knows someone that has been abused.

9            A PROSPECTIVE JUROR:  Professionally not

10   personally.

11           THE COURT:   30 seconds.

12           MS. MALIK:  Thank you your Honor. If the

13   evidence shows that a child delayed in reporting

14   would you listen to the reason as to why they

15   delayed in reporting the incident and take that into

16   consideration.  And Dr. Gottesnan what are some

17   reasons why a child would delay in reporting.

18           MR. JOHNSTON:  I am going to object to

19   that.

20           THE COURT: Sustained.

21           MS. MALIK:  Can you promise me that you

22   will take that into consideration ladies and

23   gentlemen. Okay.  Ladies and gentlemen of the jury

24   there is no jury school. There is nothing like that.

25   All I ask you to do is to be fair and impartial in

1       this case and to follow the law and to be free from

2       sympathy and not leave your common sense at the door

3       as you walk in if you are chosen to be on this case.

4       Can you promise me those things.

5                   A PROSPECTIVE JUROR:   Yes.

6                   MS. MALIK:   Thank you very much.

7                   THE COURT:   All right.   Thank you. Mr.

8           Johnston.

9       VOIR DIRE

10      BY MR. JOHNSTON:

11                  MR. JOHNSTON:   Good afternoon folks. I am

12          Bob Johnston.   I am the attorney for Mr. Abu Khan

13          and I have co-counsel involved with this matter as

14          well Mr. Samuel Viruet. I want to welcome you to

15          this particular part and this particular case.

16                  Now there is something that we should

17          discuss right off because it was mentioned by the

18          judge and the DA a few minutes ago. This concept

19          about the one witness thing.   It's not quite as

20          simple as what it has been made out so far.

21                  The judge at the end of the case is going

22          to give you the legal instruction on how to come to

23          a decision in this case.   But even if you think that

24          a witness is credible you know they could be telling

25          the truth.   They seemed to be honest. That's just

1    not enough because if you remember question 17 in

2    the questionnaire said that the People have the

3    burden of proving the defendant guilt beyond a

4    reasonable doubt.

5           So at the end of the case even though you

6    might believe that one witness seemed to be somewhat

7    credible if in it's entirety the evidence does not

8    satisfy you that the People have proven each and

9    every element of the crime beyond a reasonable doubt

10   then the defendant is entitled to a verdict of not

11   guilty.  Does everybody understand that concept.

12          You might believe this Ashley Martinez

13   who is making the accusations against Mr. Khan. You

14   might say you know she could be telling the truth

15   but that is not enough.  You have to be convinced

16   beyond a reasonable doubt that what she tells you is

17   the truth and that what she says proves all of the

18   elements of the crime beyond a reasonable doubt.

19   Anybody have any problem with that.  Very good.

20          All right.  Mr. Gottesnan you indicated

21   to the courts that are you were familiar with one of

22   the witnesses that the People intend to call a Ms.

23   Rosenfeld right.

24          A PROSPECTIVE JUROR: Yes.

25          MR. JOHNSTON:  How much of a relationship

1      do you have with her.

2              A PROSPECTIVE JUROR:  It goes back

3      several years in my medical school that I went to

4      Albert Einstein in the Bronx. At the time she was

5      working out of Montefiore Medical Center.  She was

6      the professor of child abuse as part of the

7      pediatric program. I took at least one class with

8      her which involved her showing slides and speaking

9      about that topic.

10             Now that I am at LIJ she is recently last

11     year joined the program there as the child

12     protective coordinator for the hospital.  The person

13     that you call if you have questions about child

14     protective issues.

15             MR. JOHNSTON:  Here is going to come the

16     $64,000.00 question. She is going to take the

17     witness stand and she is going to testify that she

18     examined this Ashley Martinez.

19             MS. MALIK:  Objection your Honor.

20             THE COURT: Well, you cannot tell him.

21             MR. JOHNSTON:  No I am not going to say

22     what she is going to say.  I don't know yet.  Based

23     on what I do know she is going to testify right.

24     And you as you're sitting there might decide based

25     on your experience and your education that her

1    opinion is wrong based on what she testifies to

2    about the nature of the examination.

3        Now the evidence in the case is basically

4    her testimony not how you whether or not you feel

5    that she is right or wrong.  Would you be able to

6    objectively analyze Dr. Rosenfeld's testimony or do

7    you think that you might say to yourself well she

8    was one my professors.  She is an expert in the area

9    I am going to lean towards her side and go with her

10   opinion rather than my own certain opinion.

11       A PROSPECTIVE JUROR:  That is a hard

12   question for me to answer. I would have to take

13   everybody into consideration.  I do know her.  I do

14   respect her opinion. If she said something wrong I

15   would disagree with her.

16       MR. JOHNSTON:  Okay.  It's a tough spot

17   to be in I admit it.  I am not going to ask

18   everybody questions because the judge in his voir

19   dire with you folks covered many things that defense

20   counsel often likes to cover so I am only going to

21   ask certain people a few questions but I do not want

22   to get buzzed.

23       Lets see of those of you who have young

24   children Ashley or one of the witnesses who is going

25   to be the one that is claiming that the defendant

1        abused her she is about 14 and a half now and she is

2        going to claim that back in --

3                 MS. MALIK:  Objection your Honor.

4                 THE COURT:   Sustained.

5                 MR. JOHNSTON:  Well the indictment says

6        the indictment says that in 1997 he did some certain

7        things that were improper.

8                 MS. MALIK:  Objection your Honor.

9                 THE COURT:   Overruled.

10                MR. JOHNSTON:  That's approximate what

11       the indictment says.  And she is more than likely

12       going to come under cross examination because of

13       something that the DA just told us in her voir dire

14       that it was not immediately reported right away.

15               MS. MALIK:  Objection.

16               THE COURT:   Overruled.

17               MR. JOHNSTON:  Is there anyone here that

18       feels that they would not consider the fact that a

19       child does not report allegations of sexual abuse

20       for maybe almost 10 years. Do you think that would

21       be something that you might want to consider during

22       the course of your deliberations and ask yourself is

23       there any logical reasonable evidence to explain why

24       that happened.

25            Is there anyone here that would not at

1        least consider that fact.  So by your silence I

2        assume that you all would consider that and see if

3        the explanations that the witness gives are

4        reasonable for why she delayed for more than 10

5        years before making a report of any sexual abuse.

6        Would everybody consider that.  That's all I want to

7        know.  Would you consider that.

8                    A PROSPECTIVE JUROR: Yes.

9                    MR. JOHNSTON:  You might feel that there

10       is a reasonable explanation. But later on you might

11       also say that you know that is not reasonable at

12       all. And it creates some doubt on her testimony.

13       Now those of you who sat on a Grand Jury know that

14       in a Grand Jury you basically or you usually only

15       hear one side of the case. The prosecutor comes into

16       the Grand Jury.  Presents cases, witnesses and you

17       are asked to vote an indictment.  Most of the time

18       the defendant is not  present.  And he does not have

19       an attorney with him or there is nobody to represent

20       the accused.  And that is one of the reasons why the

21       judge in his questionnaire told you that the fact

22       that somebody has been indicted is not evidence of

23       anything.

24                    You know to be honest I have some friends

25       that I have conversations with and they told me if

1           somebody had been arrested and indicted they

2           probably did something wrong or there is no doubt

3           about it that they did something wrong because they

4           had been arrested and indicted.  I tell him that you

5           would not be a good juror in this case or in any

6           case because the law is contrary to that.  That the

7           fact that somebody has been arrested and indicted is

8           not evidence of anything.  It's testimony and

9           exhibits in a court of law in front of a jury that

10          determines whether or not somebody is guilty or not.

11          Is there anyone that has any problem following that

12          particular article or principle of law.  I know Ms.

13          Gray you don't.

14                    A PROSPECTIVE JUROR:  No.

15                    MR. JOHNSTON:  Listen I am going to be

16          honest with you.  You are a defense attorney right.

17                    A PROSPECTIVE JUROR:  Yes.

18                    MR. JOHNSTON:  You probably represented

19          people accused of crimes many times.

20                    A PROSPECTIVE JUROR: Yes.

21                    MR. JOHNSTON:  Does that make you feel

22          that you would favor Mr. Khan or myself or our side

23          or could you even though you work that side you

24          could be fair and impartial and be fair to the DA

25          and fair to the defendant.

1           A PROSPECTIVE JUROR:  Yes.

2           MR. JOHNSTON:  Those of you who have been

3      a victim of a crime.  You had your house burglarized

4      or your car stolen or something like that. Those

5      incidents have nothing to do with this case. You all

6      said that you would not let them bias your opinion

7      against Mr. Khan because he is accused of a crime. I

8      don't think that there is any problem with that.

9           I guess here is based on what we have

10     discussed so far the judges voir dire, the DA's voir

11     dire and what I have just said to you a few minutes

12     ago is there anyone who feels that they could not be

13     a fair and impartial juror in this case.

14          Okay.  By your silence I believe that

15     everybody will give the defendant a fair shake. Hold

16     the People to their burden of proving guilt beyond a

17     reasonable doubt of each and every material element

18     of the crime charged.  Thank you very much.  I have

19     no further questions judge.

20          THE COURT:  Thank you Mr. Johnston.  All

21     right.  This is  -- there are matters that will be

22     handled in the course of this trial that are matters

23     of law that gets handled outside of the presence of

24     the jury.  This is one of those times.

25          Please follow the instructions of the

1      officer.   Those in the jury box if you wish you can

2      leave a jacket or bag in your seat.   Follow the

3      officers instruction. Wait outside and we will bring

4      you back in here in about 10 minutes or so.

5                   (Whereupon, prospective jurors exit the

6      courtroom)

7                   THE COURT: When you are ready let me

8      know.

9                   MR. JOHNSTON:  We are ready judge.

10                  MS. MALIK:  Yes judge.

11                  THE COURT:   Looking at number 1 through

12     7 People cause.

13                  MS. MALIK:  None for cause your Honor.

14                  THE COURT:   Defense could you say.

15                  MR. JOHNSTON:  None for cause.

16                  THE COURT:   People peremptory.

17                  MS. MALIK:   Number 3 Ms. Stanford.

18     Number 6 Ms. Gray and number 7 Ms. Gooding.

19                  THE COURT:   Defense peremptory.

20                  MR. JOHNSTON:  Was there a ruling on the

21     challenge for cause for number 1.

22                  THE COURT:   There was no cause as to 1.

23                  MR. JOHNSTON:  Okay. Number 1 we are

24     challenging. Number 5.  Number 9.

25                  THE COURT:  No first 7. That's it

1    defense.

2              MR. JOHNSTON:  Number 1 and.

3              THE COURT:   Number 2 and 4 are the 2

4    that are left.

5              MR. JOHNSTON:  Yes.

6              THE COURT:  So number 2 is juror number

7    one.  And number 4 becomes juror number 2.  Looking

8    now at number 8 through 14 People cause.

9              MS. MALIK:  None for cause your Honor.

10             THE COURT:   Defense cause.

11             MR. JOHNSTON:  None for cause.

12             THE COURT:   People peremptory.

13             MS. MALIK:  Number 13 Mr. Aguirre.

14   Number 11 Mr. Zarzabal.  Number 12 Mr. Choy.

15             THE COURT:   That's it People.

16             MS. MALIK:  That's it your Honor.

17             THE COURT:   Defense peremptory.

18             MR. JOHNSTON:  Number 9 that's it.

19             THE COURT: Ms. Cheng.

20             MR. JOHNSTON:  Yes.

21             THE COURT: Number 3, juror number 3 will

22   be Ms. Merilus.  4 is Mr. Roth.  5 will be Mr.

23   Fletcher.

24             COURT CLERK: We agree that juror number 1

25   is Taina Couvertier, juror number 2 is Danny Lam,

vld

1    juror number 3 is Nicola Merilus, juror number 4 is

2    Bennett Roth and juror number 5 is Bobby Fletcher.

3    We agree.

4              MS. MALIK:  Yes.

5              MR. JOHNSTON:  Yes.

6              COURT CLERK: People have used 6 and the

7    defense has used 3 peremptories.

8              COURT OFFICER:  Ready judge.

9              THE COURT: Yes.

10             COURT OFFICER:  Lynn Risner and Ann

11   Pheifer (ph).

12             THE COURT:   Now ladies I know that it

13   was any number of times since you have been in the

14   room that there were moments that you did not hear.

15             A PROSPECTIVE JUROR: Yes, I had to ask

16   someone what he  -- what he's being tried for and I

17   would have come up to you to say that I have a

18   problem so can I come up now or no.

19             THE COURT:  You are there.  You can

20   explain now.

21             A PROSPECTIVE JUROR: My daughter works

22   for Legal Aid and she worked for JRD Division. She

23   represents children that have been abused, sexually

24   assaulted.  I think I may have a problem.

25             THE COURT:   You have a child problem.

1          A PROSPECTIVE JUROR: Right.

2          THE COURT:   One is a physical issue

3     meaning that your hearing in this room is

4     diminished. You do not hear everything that is being

5     said.

6          A PROSPECTIVE JUROR:  Right.

7          THE COURT:   You also say that you have

8     an added problem because your daughter is working

9     with kids who are abused. You do not think that you

10    could be a fair juror.

11         A PROSPECTIVE JUROR:  I  -- not that she

12    discusses anything.

13         THE COURT:   Understood.  And Ms.

14    Pheifer.

15         A PROSPECTIVE JUROR: I cannot hear you

16    your Honor.

17         THE COURT: Even at this,  like here.

18    Close like this.

19         A PROSPECTIVE JUROR:  When you  -- I mean

20    until right now I was not even sure of what the case

21    was about.

22         THE COURT:  You had no idea what the case

23    was about.

24         A PROSPECTIVE JUROR:  I know that it was

25    sexual. I did not realize that it was rape.

vld

 1          A PROSPECTIVE JUROR:  I would like to

 2     know why don't you use the microphone.

 3          THE COURT: What I will do is because I

 4     agree it is difficult for you both to hear me in

 5     this room. So because of that difficulty and I do

 6     not want there to be of any further problem as far

 7     as you're understanding either me or the other

 8     people that will speak in this trial what I will do

 9     is that I will excuse you both from this trial.

10          A PROSPECTIVE JUROR:  What does that

11     mean. Does that mean that we have to go back to the

12     room and be picked again.

13          THE COURT:  I cannot --

14          A PROSPECTIVE JUROR:  Us being here for

15     the 2 days --

16          COURT OFFICER:  That's up to them.  You

17     are dismissed from this particular case.

18          A PROSPECTIVE JUROR: Thank you very much.

19          COURT OFFICER:  Ready for the jury judge.

20          THE COURT:  We are.

21          COURT OFFICER:  Prospective jurors

22     entering.

23          COURT CLERK:  Jurors names that I call

24     remain seated. If I call your name remain seated.

25     The other jurors will report back immediately to

1       central jury.

2                       Juror number one Taina Couvertier.  Juror

3       number 2 Danny Lam.  Juror number 3 Nicola Merilus.

4       Juror number 4 Bennett Roth.  And juror number 5

5       Bobby Fletcher.  If I have called your name remain

6       seated.  If I did not call your name take your

7       belongings and report back to central jury.

8                       COURT CLERK:  Are the remaining jurors

9       acceptable to the People and the defense.

10                      MR. JOHNSTON:  Yes.

11                      MS. MALIK:  Yes.

12                      COURT CLERK:  Please rise and raise your

13      right hand. Do you solemnly swear or affirm that you

14      will try this indictment in a just and impartial

15      manner and to the best of your judgment and render a

16      verdict according to the law and the evidence so

17      help you God.

18                      (Whereupon, yes is answered by all )

19                      COURT CLERK:  So sworn.  You may be

20      seated.

21                      THE COURT:  As you heard your names

22      called and the number attached you are our first 5

23      jurors on this case.  So welcome to this jury.

24      There is nothing more for us to do with you today.

25      So please follow the instruction of the officer.

1     Come in at 2 PM afternoon.  In the meantime we'll

2     keep working and working with those members of the

3     panel who are in the audience. Welcome to the jury

4     and see you tomorrow afternoon at 2 PM.

5                 COURT OFFICER:  Panel please rise.

6     Everyone else remain seated. Follow me.

7                 (Whereupon, jurors exit the courtroom)

8                 COURT CLERK: Juror number one Euguen

9     Forsyth. Last name, F-O-R-S-Y-T-H.  First name,

10    E-U-G-E-N-E.  Juror number 2, Joseph Krawiec.  Last

11    name, K-R-A-W-I-E-C. First name, J-O-S-E-P-H.  Juror

12    number 3, Yolafda Trammell.  Last name,

13    T-R-A-M-M-E-L-L.  First name, Y-O-L-A-F-D-A. Juror

14    number 4, Kendall McLean.  Last name, M-C-L-E-A-N.

15    First name, K-E-N-D-A-L-L.

16                Juror number 5, Robert Spainer.  Last

17    name, S-P-A-I-N-E-R.  First name, R-O-B-E-R-T .

18    Juror number 6, Daniel Berthelly.   Last name,

19    B-E-R-T-H-E-L-L-Y.  First name, D-A-N-I-E-L .  Juror

20    number 7, Jennifer Wieland.  Last name,

21    W-I-E-L-A-N-D.  First name, J-E-N-N-I-F-E-R.  Juror

22    number 8, Angelita Medins.  Last name, M-E-D-I-N-S.

23    First name, A-N-G-E-L-I-T-A.

24                Juror number 9, Anthony Boehm.  Last

25    name, B-O-E-H-M.  First name, A-N-T-H-O-N-Y.  Juror

1      number 10, Christophea Gibbs.  Last name, G-I-B-B-S.

2      First name, C-H-R-I-S-T-O-P-H-E-A.  Juror number 11,

3      Peter Yuin.  Last name, Y-U-I-N.  First name,

4      P-E-T-E-R.  Juror number 12, George Sullivan.  Last

5      name, S-U-L-L-I-V-A-N.  First name, G-E-O-R-G-E.

6              Juror number 13, Sophia Alexandre.  Last

7      name, A-L-E-X-A-N-D-R-E.  First name, S-O-P-H-I-A.

8      Juror number 14, Marianna Tito.  Last name, T-I-T-O.

9      First name, M-A-R-I-A-N-N-A.

10             THE COURT: Good afternoon.

11             A PROSPECTIVE JUROR:  Good afternoon.

12             THE COURT: No surprises.  You heard the

13     kinds of questions that I will ask and you have also

14     seen that it's certainly a lot easier for me and

15     maybe you guys also if you speak up louder so that I

16     can hear each of your answers to the questions that

17     I ask. And again there are no surprises.

18             I will ask you the same questions that I

19     asked everyone else.  But please I know that you

20     have heard the questions over and over again.  Do

21     not start to answer the question before I finish

22     asking it.

23             With the first series of questions is it

24     fair to say that you are each over 18 years old.

25     Residents of Queens county. Citizens of this

1   country.

2               PROSPECTIVE JURORS:  Yes.

3               THE COURT:   Have either of you ever been

4   convicted of a felony.

5               PROSPECTIVE JURORS:  No.

6               THE COURT:   Each of you are able to

7   read, understand and speak English.

8               PROSPECTIVE JURORS: Yes.

9               THE COURT:   Do you know me, the ADA, the

10   defendant or defense counsel or to your knowledge

11   any of our family or friends.

12               PROSPECTIVE JUROR:  No.

13               THE COURT:  You heard me read from a list

14   of people who are to testify in this trial.  Do you

15   know anyone by those names.

16               PROSPECTIVE JURORS:  No.

17               THE COURT:   Do any of you have any

18   hearing problem or handicap or any other type of

19   disability that would prevent you from sitting as a

20   juror to the latest of Friday March 30th.

21               PROSPECTIVE JURORS:  No.

22               THE COURT:   Do you have any extreme

23   hardship that would prevent you from giving your

24   full attention to the end of this trial.

25               PROSPECTIVE JURORS:  No.

1          THE COURT:    I knew that it was going too

2     well. Mr. Forsyth.

3          A PROSPECTIVE JUROR:  I have tickets to

4     fly out on Wednesday the 28th.

5          THE COURT: And there are tickets that

6     have been purchased.  You are ready to go and

7     nothing will stop you from going there.

8          A PROSPECTIVE JUROR:  Well.

9          THE COURT:   Never say never.

10         A PROSPECTIVE JUROR: My outside deadline

11    is that I have to be there on April 12 for sure.

12         THE COURT:   We have reason to believe

13    that the case may be over by Wednesday, but if it's

14    not are you saying that it will be difficult for you

15    to change your ticket.

16         A PROSPECTIVE JUROR:  Difficult but not

17    impossible.

18         THE COURT:   And to change it will it

19    cost you anything.

20         A PROSPECTIVE JUROR: I am not sure.

21         THE COURT:   I would not want to cost you

22    anything.

23         A PROSPECTIVE JUROR:  I don't know. It's

24    frequent flyer miles.  And I have travel insurance.

25         THE COURT: You are an experienced

1    traveler. It should not cost you much of anything.

2    It should not be a problem but you are saying that

3    it is an issue.

4                   A PROSPECTIVE JUROR: Yes.

5                   THE COURT:   And the only issue.

6                   A PROSPECTIVE JUROR:  Yes.

7                   THE COURT: And yes Ms. Gibbs.

8                   A PROSPECTIVE JUROR:  I am in my first

9    trimester of pregnancy.  I miscarried in November.

10   I am being monitored by my doctor.  I have to go

11   regularly for blood work. That is something that

12   changes at unexpected times.

13                  THE COURT: Consent.

14                  MR. JOHNSTON:  Yes.

15                  MS. MALIK:  Yes.

16                  THE COURT:   All right.  I will excuse you

17   Ms. Gibbs. Best of luck to you.

18                  A PROSPECTIVE JUROR:  Thank you very

19   much.

20                  THE COURT: There was a third person yes.

21   Mr. Yuin.

22                  A PROSPECTIVE JUROR:  Yes is there a

23   possibility that we can get sequestered.

24                  THE COURT:   No.

25                  A PROSPECTIVE JUROR:  Then I got no

issue.

THE COURT:  All right.

COURT CLERK:  Juror number 10 Samuel Santiago. S-A-N-G-I-A-T-O.  First name Samuel. S-A-M-U-E-L.

THE COURT: Good afternoon Mr. Santiago.

A PROSPECTIVE JUROR:  Hi.

THE COURT:  Same questions that I have asked everyone else to bring you up to where I am. Over 18 years old. Resident of Queens county. Citizen of this country.

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Convicted of a felony.

A PROSPECTIVE JUROR: No.

THE COURT:  Speak and understand English.

A PROSPECTIVE JUROR: Yes.

THE COURT: Do you know me, the ADA, the defendant or defense counsel or to your knowledge any of our family or friends.

A PROSPECTIVE JUROR: No.

THE COURT:  You heard me read from a list of people who may testify do you know one by those names.

A PROSPECTIVE JUROR: Yes.

1            THE COURT:   Who you heard me read from a

2    list of people who may testify in this trial. Do you

3    know anyone by those names.

4            A PROSPECTIVE JUROR:   No.

5            THE COURT:   Do you have any hearing

6    handicap or any other type of handicap or disability

7    that would prevent you from sitting as a juror to

8    the latest Friday March 30.

9            A PROSPECTIVE JUROR:   Yes.

10           THE COURT:   That is what sir.

11           A PROSPECTIVE JUROR: I can.

12           THE COURT:   You can.  You can sit no

13   problem you are saying.  Sir approach please.

14           (Whereupon, a side-bar record begins.)

15           THE COURT: I was just wondering if you

16   were hearing everything that I was saying.

17           A PROSPECTIVE JUROR:   No, no I have not

18   hear.  I was here about 5 years ago. I came here.

19           THE COURT:   Consent.

20           MR. JOHNSTON:   Yes.

21           MS. MALIK:   Yes.

22           THE COURT:   Thank you. I will excuse

23   you.

24           A PROSPECTIVE JUROR:   Okay.

25           (Whereupon, a side-bar record concludes.)

1          COURT CLERK:  Juror number 10 Helen Chin.

2     Last name Chin.  C-H-I-N.  First name Helen.

3     H-E-L-E-N.

4               THE COURT:  Good afternoon Ms. Chin.

5               A PROSPECTIVE JUROR: Good afternoon.

6               THE COURT:  Same questions that I have

7     asked everyone else.  You're over 18 years old.

8     Resident of Queens county. Citizen of this country.

9               A PROSPECTIVE JUROR:  Can I have a

10    side-bar with you.

11              THE COURT:  Sure.

12              (Whereupon, a side-bar record begins.)

13              THE COURT: Yes.

14              A PROSPECTIVE JUROR:  Two things.  First

15    of all I have difficulty hearing. So sometimes I

16    have trouble hearing.  In fact I have trouble

17    hearing you.  And second of all I was raped and

18    assaulted a while ago.  I don't think that I would

19    be fair and impartial.

20              THE COURT:  Given that the charges in

21    this case and your personal experience you do not

22    think that you can be fair.

23              A PROSPECTIVE JUROR:  I don't think that

24    I could be.

25              THE COURT:  Consent.

```
 1                    MR. JOHNSTON:  Yes.

 2                    MS. MALIK:  Yes.

 3                    THE COURT:    Thank you Ms. Chin for your

 4         honesty.  She is excused.

 5                    (Whereupon, a side-bar record concludes.)

 6                    COURT CLERK:  Juror number 10.  Ravendra

 7         Hiralall.  Last name H-I-R-A-L-A-L-L.  First name

 8         Ravendra.  R-A-V-E-N-D-R-A.

 9                    THE COURT:  Good afternoon Mr. Hiralall.

10         Same questions you are over 18 years old. Resident

11         of Queens county. Citizen of this country.

12                    A PROSPECTIVE JUROR:  Yes.

13                    THE COURT:    Ever convicted of a felony.

14                    A PROSPECTIVE JUROR:  No.

15                    THE COURT:    Any problem speaking or

16         understanding English.

17                    A PROSPECTIVE JUROR: No.

18                    THE COURT:    Do you know me, the ADA, the

19         defendant or the defense counsel or any of our

20         family or friends.

21                    A PROSPECTIVE JUROR:  No.

22                    THE COURT:  And you heard me read from a

23         list of people who may testify.  Do you know any of

24         them.

25                    A PROSPECTIVE JUROR:  No.
```

```
 1              THE COURT: Any handicap or disability

 2     that would prevent you from sitting on the jury.

 3              A PROSPECTIVE JUROR:  No.

 4              THE COURT:   And sir do you have any

 5     extreme hardship or other pressing matter that would

 6     prevent you from giving your full attention to this

 7     trial.

 8              A PROSPECTIVE JUROR:  No.

 9              THE COURT:   Do either of you have any

10     religious, moral or ethical beliefs or reasons that

11     would prevent you from finding a person guilty even

12     if you believed even if that guilt were established

13     beyond a reasonable doubt.

14              A PROSPECTIVE JUROR:  No.

15              THE COURT: The defendant has a right not

16     to testify.  If you are chosen as a juror if he

17     chooses not to testify would you be able to follow

18     my instructions and not draw any inference

19     unfavorable to him because he exercises his right

20     not to testify.

21              A PROSPECTIVE JUROR:  Yes.

22              THE COURT: And again any questions answer

23     with a nice loud yes or no.  Now it was the effort

24     was lacking so your answer to this last question was

25     no.
```

1          A PROSPECTIVE JUROR:  Yes.  The answer is

2     yes it was no.

3          THE COURT:  It's been a long day for me

4     too.  Single witness.  There are times when crimes

5     are committed that only a single person is present.

6     The law is that if you the jury and every individual

7     juror believes a single witness beyond a reasonable

8     doubt that is enough to convict.  My question is can

9     you convict on the testimony of a single witness if

10    you believe that witness beyond a reasonable doubt.

11          A PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Mr. Krawiec answered yes.

13          A PROSPECTIVE JUROR: Yes.

14          THE COURT: And is there anything about

15    the nature of this crime charged meaning that you

16    have a sexual offense and a lone victim who is a

17    child and the defendant is an adult is there

18    anything about the nature of the charges that makes

19    you feel that you could not be fair to both sides in

20    this case.  Mr. Krawiec.

21          A PROSPECTIVE JUROR: I have an issue with

22    the offense.

23          THE COURT:  Approach please.

24          (Whereupon, a side-bar record begins.)

25          THE COURT: Yes, sir.

1              A PROSPECTIVE JUROR:   I have a 16 year

2       old niece who was raped by an adult.   Actually the

3       family has moved to Florida and left the state.

4              THE COURT:   That adult was a family

5       member.

6              A PROSPECTIVE JUROR: Yes it was a family

7       member.

8              THE COURT:   Consent.

9              MR. JOHNSTON:   Yes.

10             MS. MALIK:   Yes.

11             THE COURT:   Thank you for your candor

12      it's important for us to know that.

13             THE COURT: Mr. Boehm, Yes.

14             A PROSPECTIVE JUROR:   Basically 3

15      reasons.   One of my brothers is with the California

16      Department and The Crime Information Bureau.   He is

17      in charge of information on sex offenders.

18             Also I have a friend in Florida who is in

19      a task force that tracks down pedophiles and my

20      sister in-law was raped years later.   Still you know

21      I suffer the effects of this.

22             THE COURT:   And so you know that in

23      reality I guess we are talking here to find out

24      whether or not you can put all of that aside.

25             A PROSPECTIVE JUROR:   It would be hard to

1    especially what they have already said about the

2    person you know I had 2 incidents where they are

3    terrified years later.

4              THE COURT:   The fact pattern is it's

5    close to home.  As far your experience with this

6    kind of case and your family.

7              A PROSPECTIVE JUROR:  Yes.

8              THE COURT: Consent.

9              MR. JOHNSTON:  Yes.

10             MS. MALIK:  Yes.

11             THE COURT:   Thank you for your candor

12   sir.  And Ms. Alexandre.

13             THE COURT: I didn't Ma'am.

14             A PROSPECTIVE JUROR:  I cannot sit on

15   this because I was a victim when I was younger so.

16             THE COURT:   Had this person ever been

17   arrested and charged.

18             A PROSPECTIVE JUROR:  He was not.

19             THE COURT:   You said that it was a

20   family member.

21             A PROSPECTIVE JUROR: Yes.

22             MR. JOHNSTON:  Consent.

23             MS. MALIK:  Consent.

24             THE COURT:   Thank you for your candor.

25             COURT CLERK: Juror number 2 Merdina

1    Bailey. Last name B-A-I-L-E-Y.  First name Merdina.

2    M-E-R-D-I-N-A. Juror number 9 Carol Battipaglia.

3    Last name, B-A-T-T-I-P-A-G-L-I-A.  First name Carol,

4    C-A-R-O-L. Juror number 13, Regina Corker.  Last

5    name C-O-R-K-E-R.  First name Regina, R-E-G-I-N-A.

6              THE COURT:  These questions are to those

7    recent members of this box.  Ms. Battipaglia, Ms.

8    Bailey and Ms. Corker do you  -- I ask you the same

9    questions that I have asked everyone else so far.

10             Each of you are over 18 years old.

11   Residents of Queens county. Citizens of this

12   country.

13             PROSPECTIVE JURORS: Yes.

14             THE COURT:   Ever been convicted of a

15   felony.

16             PROSPECTIVE JURORS:  No.

17             THE COURT:  Are you each able to read,

18   understand and speak English.

19             A PROSPECTIVE JUROR:  Yes.

20             THE COURT: Do you know me, the ADA, the

21   defendant, defense counsel or any of our family or

22   friends.

23             A PROSPECTIVE JUROR:  No.

24             THE COURT:   Ms. Bailey.

25             A PROSPECTIVE JUROR:  Yes, I live in

1    Rochdale.

2              THE COURT:  You believe that you know me.

3              (Whereupon, a side-bar record begins.)

4              THE COURT:   Let me start with Ms. Bailey

5    by knowing that when some one either knows me or

6    something about me they sometimes wonder if they

7    should tell somebody or how to say it.  So you are

8    living in the same co-op that I am living in.

9              A PROSPECTIVE JUROR:  I live in Rochdale.

10             THE COURT:   What do you know about me.

11             A PROSPECTIVE JUROR:  Well, I don't know

12   anything personal. I just know.

13             THE COURT:   You know the name.  You know

14   I am on the board of that development.  And is there

15   anything that you find that you heard about me or

16   anything that makes you feel that you could not be

17   fair to both sides.

18             A PROSPECTIVE JUROR:  No because if I

19   know you.  My mother  -- I have other questions. My

20   mother is 85 years old. I have to help with her.

21   She has a heart problem.  She has epilepsy.  I have

22   to be with her in the afternoons. She has seizures.

23             THE COURT:  So you are saying that your

24   mother is 85 and she has seizures.

25             A PROSPECTIVE JUROR:  No, she has a heart

1     problem and she has Alzheimers.  I have someone who

2     helps with her sometimes in the afternoon to feed

3     her.

4          THE COURT:  So you are a care giver to

5     your mother.

6          A PROSPECTIVE JUROR:  I help. She has

7     seizures and when she comes in the afternoon

8     sometimes my father is at work and I have to stay

9     with her.

10         THE COURT:  So there are a number of

11    things that you do for your family members your

12    mother included.

13         A PROSPECTIVE JUROR: Yes.

14         THE COURT:  That takes up so much of

15    your time and energy.

16         A PROSPECTIVE JUROR: Yes.

17         THE COURT: That you do not know if you

18    will be able to devote that kind of energy to this

19    trial.

20         A PROSPECTIVE JUROR:  Yes.

21         THE COURT:  Those things that you are

22    doing are things that your family members rely on

23    you to do.

24         A PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Consent.

1          MR. JOHNSTON:  Yes.

2          MS. MALIK:  Yes.

3          THE COURT:  I will excuse you.

4          A PROSPECTIVE JUROR: Thank you.

5          THE COURT:  She is excused.

6          (Whereupon, a side-bar record concludes.)

7          COURT CLERK:  Juror number 2 Andrea

8     Mentar.  Last name M-E-N-T-A-R.  First name Andrea,

9     A-N-D-R-E-A.

10         THE COURT: Good afternoon Ms. Mentar.

11    Same questions.  You are over 18 year old. Resident

12    of Queens county.  Citizen of this country.

13         A PROSPECTIVE JUROR: Yes.

14         THE COURT:  Ever convicted of a felony.

15         A PROSPECTIVE JUROR:  No.

16         THE COURT:  Read and understand and

17    speak English.

18         A PROSPECTIVE JUROR: Yes.

19         THE COURT: Do you know me, the ADA, the

20    defendant or defense counsel or any of our family or

21    friends.

22         A PROSPECTIVE JUROR:  No.

23         THE COURT:  Now to both yourself and Ms.

24    Battipaglia and Ms. Corker you heard me read from a

25    list of people who may testify in this trial do you

                                                       vld

know anyone by those names.

A PROSPECTIVE JUROR:  No.

THE COURT:  Do you have any hearing handicap or any other type of handicap or disability that would prevent you from sitting as a juror to the latest Friday March 30.

A PROSPECTIVE JUROR:  No.

THE COURT:  Do you have a hardship that would prevent you from giving your full attention to this trial.

A PROSPECTIVE JUROR: No.

THE COURT: Any religious, moral or ethical beliefs that would prevent you from finding a person guilty and if that was proven to you beyond a reasonable doubt.

A PROSPECTIVE JUROR:  No.

THE COURT:  The defendant has a right not to testify.  If you are chosen as a juror if he chooses not to testify would you each be able to follow my instructions and not draw any inference unfavorable to him because he chose not to testify.

THE COURT: Ms. Corker.

A PROSPECTIVE JUROR: Can I come speak to you.

(Whereupon, a side-bar record begins.)

1          THE COURT:   Yes.

2              A PROSPECTIVE JUROR: When you were giving

3      the charges out my body reacted.  I was raped by my

4      uncle.  I have a niece who was mugged and almost

5      raped and in therapy for years. I served as a juror

6      for a number of years.  I did 2 civil and I was

7      sequestered.

8              THE COURT:   Okay.  I understand that.

9      Given your personal background and given what almost

10     happened to a niece of yours and the crime charged

11     is too close to home for you to be able to be fair

12     to both sides.

13             A PROSPECTIVE JUROR:  I cannot even look

14     at the man.  I don't know what he looks like.

15             MR. JOHNSTON:  Consent.

16             MS. MALIK:  Consent.

17             THE COURT:   She is excused.

18             (Whereupon, a side-bar record concludes.)

19             COURT CLERK:  Juror number 13, Francis

20     Clark.  Last name Clark, C-L-A-R-K.  First name

21     Francis.  FRANCIS.

22             THE COURT:   Good afternoon Mr. Clark.

23             A PROSPECTIVE JUROR: Hi.

24             THE COURT:   Are you over 18 years old.

25     Resident of Queens county.  Citizen of this country.

1          A PROSPECTIVE JUROR: Yes.

2          THE COURT:   Ever convicted of a felony.

3          A PROSPECTIVE JUROR: No.

4          THE COURT:   Are you able to read,

5    understand and speak English.

6          A PROSPECTIVE JUROR:  Yes.

7          THE COURT:   Do you know me, the ADA,

8    defense counsel, the defendant or any of our family

9    or friends.

10         A PROSPECTIVE JUROR: No.

11         THE COURT:   You heard me read from a

12   list of people who may testify in this trial do you

13   know anyone by those names.

14         A PROSPECTIVE JUROR: No.

15         THE COURT:   Do you have a hearing

16   handicap or any other type of handicap or disability

17   that would prevent you from sitting as a jurors.

18         A PROSPECTIVE JUROR:  No.

19         THE COURT:   Do you have an extreme

20   hardship that would prevent you from giving your

21   full attention to this trial.

22         A PROSPECTIVE JUROR:  No.

23         THE COURT:   Do you have any religious,

24   moral or ethical beliefs or reasons that would

25   prevent you from finding a person guilty even if it

1          was proven to you beyond a reasonable doubt.

2                   A PROSPECTIVE JUROR:  No.

3                   THE COURT:    The defendant has a right

4          not to testify.  If you are chosen as a juror if he

5          chooses not to testify would you be able to follow

6          my instructions and not draw any inference

7          unfavorable to him because he chose not to testify.

8                   A PROSPECTIVE JUROR: Yes.

9                   THE COURT:    Would both yourself and to

10         Ms. Mentar and Ms. Battipaglia with reference to a

11         single witness if you believe a single witness to a

12         crime beyond a reasonable doubt can you convict.

13                  A PROSPECTIVE JUROR:  Yes.

14                  A PROSPECTIVE JUROR: If I believe it.

15                  THE COURT:    If you believe beyond a

16         reasonable doubt.

17                  A PROSPECTIVE JUROR:  Yes.

18                  THE COURT:    And is there anything about

19         the nature of these charges that the defendant is

20         facing meaning that it's a sexual offense.  It's

21         charged that it's against a minor, a young girl.

22         And the fact that it's an adult there anything about

23         the nature of the crime charged that makes you feel

24         that you could not be fair to both sides in this

25         case.

1          A PROSPECTIVE JUROR:  Can I discuss that

2     with you.

3          THE COURT:   Yes.

4          (Whereupon, a side-bar record begins.)

5          A PROSPECTIVE JUROR:  My niece when she

6     was 10 years old her stepfather when she was alone

7     in the house was watching porno movies.  And I don't

8     know if I could be you know objective.

9          THE COURT:   He had not touched her.

10          A PROSPECTIVE JUROR:  He did not touch

11     her.  She called me up on the phone.  She was

12     crying. I told her to get out the house.

13          THE COURT:   That's a relative.

14          A PROSPECTIVE JUROR:  My niece. She was

15     my niece and that was her step father.

16          THE COURT:   So you may find the facts of

17     this case too similar to him.

18          A PROSPECTIVE JUROR:  Yes it turns me. I

19     just don't like anything about this type of crime.

20          THE COURT:   Consent.

21          MR. JOHNSTON:  Yes.

22          MS. MALIK:  Yes.

23          THE COURT:   Thank you.  I will excuse

24     me.

25          (Whereupon, a side-bar record concludes.)

1                    COURT CLERK:  Juror number 9 Lian King.

2          Last name King.  K-I-N-G.  First name Lian.

3          L-I-A-N.

4                    THE COURT:  Good afternoon Mr. King.

5                    A PROSPECTIVE JUROR: Hi.

6                    THE COURT:  Are you over 18 years old.

7          Resident of Queens county. Citizen of this country.

8                    A PROSPECTIVE JUROR:  Yes.

9                    THE COURT: Every been convicted of a

10         felony.

11                   A PROSPECTIVE JUROR:  No.

12                   THE COURT:  Any problem with speaking or

13         understanding English.

14                   A PROSPECTIVE JUROR: Yes.

15                   THE COURT: Do you know me, the DA,

16         defense counsel, the defendant or to your knowledge

17         know any of our family or friends.

18                   A PROSPECTIVE JUROR:  I don't.

19                   THE COURT:  You heard me read from a list

20         of people who may testify in this trial.  Do you

21         know any of those names.

22                   A PROSPECTIVE JUROR:  No.

23                   THE COURT: Do you have any hearing

24         handicap or any other type of handicap that would

25         prevent you from being a juror.

                                                      vld

1              A PROSPECTIVE JUROR:  No.

2              THE COURT:  Do you have an extreme

3    hardship or other pressing matter that would prevent

4    you from giving your full attention to this trial.

5              A PROSPECTIVE JUROR:  Tomorrow night.

6              THE COURT:  A flight ticket purchased.

7              A PROSPECTIVE JUROR:  Yes.  Purchased.

8              THE COURT:  You are so gone. So out of

9    here.  Consent.

10             MR. JOHNSTON:  Yes.

11             MS. MALIK:  Yes.

12             THE COURT:  Thank you Mr. King I will

13   excuse you.

14             COURT CLERK:  Juror number 9 Adriana

15   Santos.  Last name Santos.  SANTOS.  First name

16   Adriana.  A-D-R-I-A-N-A.

17             THE COURT: Good afternoon Ms. Santos.  It

18   seems that you were happy that your name and number

19   was finally called.  Are you over 18 years old. A

20   resident of Queens county and a citizen of this

21   country.

22             A PROSPECTIVE JUROR: Yes.

23             THE COURT: Ever convicted of a felony.

24             A PROSPECTIVE JUROR: No.

25             THE COURT:  Any problem speaking or

                                                    vld

1        understanding English.

2                    A PROSPECTIVE JUROR:  Absolutely not.

3                    THE COURT:   Do you know me, the DA,

4        defense  counsel or the defendant to your knowledge

5        any of our family or friends.

6                    A PROSPECTIVE JUROR: No.

7                    THE COURT:   You heard the names of people

8        mentioned.  Do you know any of those names.

9                    A PROSPECTIVE JUROR:  No.

10                   THE COURT:   Do you have any hearing

11       handicap or any other type of handicap or disability

12       that would prevent you from serving as a juror.

13                   A PROSPECTIVE JUROR:  No.

14                   THE COURT:   Do you have any extreme

15       hardship or other pressing matter that would prevent

16       you from serving on this jury.

17                   A PROSPECTIVE JUROR:  Inconvenience

18       that's it.

19                   THE COURT:   Minor stuff.

20                   THE COURT:   Do you have any religious,

21       moral or ethical reasons that would prevent  you

22       from finding a person guilty even if it was proven

23       beyond a reasonable doubt.

24                   A PROSPECTIVE JUROR: No.

25                   THE COURT:   Do you understand that the

1    defendant if you are chosen as a juror if he chooses

2    not to testify that you follow my instructions and

3    not draw any inference unfavorable to him because he

4    chooses not to testify.

5              A PROSPECTIVE JUROR:  Yes.

6              THE COURT:   On the question of a single

7    witness if you believe a single witness to a crime

8    beyond a reasonable doubt can you convict.

9         `  A PROSPECTIVE JUROR:  Yes.

10             THE COURT:   Finally is there anything

11   about the nature of the crimes charged meaning that

12   it's a sexual offense involving a minor female child

13   with the defendant being an adult male is there

14   anything about the nature of the crime charged that

15   makes you feel that you cannot be fair to both

16   sides.

17             A PROSPECTIVE JUROR:  Yes.

18             THE COURT:   Yes you can be.

19             MR. JOHNSTON:  No I cannot be.

20             THE COURT: You were doing so well. That

21   is something you thought about as the questions were

22   asked of others and searched yourself.

23             A PROSPECTIVE JUROR:  Yes.

24             THE COURT:   Counsel consent.

25             MR. JOHNSTON:  Yes.

1            MS. MALIK:  Yes.

2            THE COURT:    Thank you.

3            COURT CLERK:   Juror number 9 Salini

4     Sharma.  Last name Sharma.  S-H-A-R-M-A.  First name

5     Salina.  S-A-L-I-N-A.

6            THE COURT:   Now Ms. Sharma good

7     afternoon.  Before I take you through all of the

8     questions I will ask whether or not based on the

9     questions that you have heard so far is there

10    anything that you wish to tell me.

11            A PROSPECTIVE JUROR:  Yes.

12            (Whereupon, a side-bar record begins.)

13            A PROSPECTIVE JUROR:  Good afternoon.   I

14    was raped at 17.

15            THE COURT: A relative or a stranger.

16            A PROSPECTIVE JUROR: Somebody that I

17    knew.

18            THE COURT:  Was he prosecuted.

19            A PROSPECTIVE JUROR:  Back home in my

20    country.

21            THE COURT: So given that fact you don't

22    think that you can be fair to both sides.

23            A PROSPECTIVE JUROR:  I don't think so.

24            THE COURT:   Any questions.

25            MR. JOHNSTON:  Consent.

                                                    vld

1          MS. MALIK:  No.

2          THE COURT:   I will excuse you.  Thank

3      you for your candor.

4              (Whereupon, a side-bar record concludes.)

5          THE COURT:   Excuse excused.

6          COURT CLERK:  Juror number 9 Shang Hu.

7      Last name, H-U .  First name Shang.  S-H-A-N-G.

8          THE COURT:   Good afternoon.

9          A PROSPECTIVE JUROR:  Good afternoon.

10          THE COURT:   Now Ma'am are you able to

11      read and understand English.

12          A PROSPECTIVE JUROR:  Understand a little

13      bits.

14          THE COURT:   Yes.

15          THE COURT: Consent.

16          MR. JOHNSTON:  Yes.

17          MS. MALIK:  Yes.

18          THE COURT:   I will excuse you.

19          COURT CLERK: Juror number 9 Martha

20      Cervantes.  Last name, C-E-R-V-A-N-T-E-S.  First

21      name Martha, M-A-R-T-H-A.

22          THE COURT: Good afternoon Ms. Cervantes.

23      Ma'am as you have seen there are a number of people

24      who did not want to sit in that seat you know.  But

25      I have a sense that you want to claim that seat as

1    yours.  So let me start by  -- before I go through

2    every question with you is there anything about any

3    of the questions that I have said so far that you

4    have learned that you would have any difficulty

5    with.

6                   A PROSPECTIVE JUROR:  No.

7                   THE COURT:   All right.  Lets go from the

8    top Ma'am.  Are you over 18.  Resident of Queens

9    county.  Citizen of this country.

10                  A PROSPECTIVE JUROR: Yes.

11                  THE COURT: Ever convicted of a felony.

12                  A PROSPECTIVE JUROR: No.

13                  THE COURT:   Are you able to speak and

14   understand English.

15                  A PROSPECTIVE JUROR:  Yes.

16                  THE COURT: Do you know me, the DA,

17   defense counsel or the defendant or to your

18   knowledge know any of our family or friends.

19                  A PROSPECTIVE JUROR: No.

20                  THE COURT:   You heard me read from a

21   list of people who may testify at this trial do you

22   know any of those names.

23                  A PROSPECTIVE JUROR:  No.

24                  THE COURT: Do you have any hearing

25   handicap or any handicap that would prevent you from

1       sitting as a juror.

2               A PROSPECTIVE JUROR:  No.

3               THE WITNESS: Any extreme hardship that

4       would prevent you from sitting as a juror.

5               A PROSPECTIVE JUROR:  No.

6               THE COURT:   Do you have any religious,

7       moral or ethical belief or reasons that would

8       prevent you from finding a person guilty even if it

9       was proven to you beyond a reasonable doubt.

10              A PROSPECTIVE JUROR:  No.

11              THE COURT:   If you are chosen as a juror

12      and the defendant chooses not to testify you would

13      be able to follow my instructions and not draw any

14      inference unfavorable to him.

15              A PROSPECTIVE JUROR: Yes.

16              THE COURT: Would you believe a single

17      witness to a crime beyond a reasonable doubt can you

18      convict.

19              A PROSPECTIVE JUROR: Yes.

20              THE COURT:   Finally is there anything

21      about the nature of the crime charged meaning that

22      it's a sexual offense involving a young girl with

23      the defendant being an adult male is there anything

24      about the nature of the charge that makes you feel

25      that you could not be fair to both sides in this

1    case.

2                    A PROSPECTIVE JUROR:   No.

3                    THE COURT:   Thank you for those answers.

4    And with those answers I will excuse the entire

5    panel for the balance of the day. We will begin with

6    the questionnaire tomorrow morning. Have a great

7    day. See you tomorrow morning at 10 AM .

8                    (Jurors exit the courtroom)

9                    THE COURT:   Anything further.

10                   MS. MALIK:   No your Honor.

11                   MR. JOHNSTON:   No your Honor.

12                   THE COURT: See you tomorrow morning.

13                   (Whereupon court stands in recess until

14   tomorrow March 21, 2007).

15                   ************************************

16

17

18

19

20

21

22

23

24

25

```
 1   SUPREME COURT OF THE STATE OF NEW YORK

 2   COUNTY OF QUEENS:   CRIMINAL TERM:  Part K-20

 3   ----------------------------------------x    Indictment No.
     THE PEOPLE OF THE STATE OF NEW YORK     :    2147/2006
 4

 5           -against-                       :

 6                                           :

 7   ABU KHAN                                :

 8                       Defendant           :

 9   ----------------------------------------x

10                        March 21, 2007

11                        125-01 Queens Boulevard
                          Kew Gardens, New York 11415
12

13   B E F O R E:   THE HONORABLE  RONALD HOLLIE,
                                         Justice
14

15   A P P E A R A N C E S:

16           Honorable Richard A. Brown
             For the People:
17           District Attorney - Queens County
             125-01 Queens Boulevard
18           Kew Gardens, New York 11415
             BY:  MINA MALIK, ESQ.
19               Assistant District Attorney

20
             For the Defendant:
21           ROBERT JOHNSTON, ESQ.
             Defense Counsel
22

23

24                            Viola L. Dunnom, SCR

25
```

1              COURT CLERK:  Case on trial.  Indictment

2        2147 of 06.  Abu Khan.

3              MS. MALIK:  Mina Malik for the People.

4              MR. JOHNSTON:  Robert Johnston and Samuel

5        Viruet for the defense.

6              COURT CLERK:  The defendant is present

7        and produced from the pens.

8              MS. MALIK:  Good morning your Honor.

9              MR. JOHNSTON:  Good morning judge.

10             MR. VIRUET:  Good morning judge.

11       Co-counsel for Mr. Khan.

12             THE COURT: Good morning to you also Mr.

13       Khan.  Prior to the panel being brought in anything

14       that needs to be discussed or are we ready to go

15       forward.

16             MS. MALIK:  No your Honor.

17             MS. MALIK:  Actually, your Honor, can we

18       approach for a moment.

19             THE COURT: Sure.

20             (Whereupon, an off the record discussion

21       was held at the bench.)

22             COURT OFFICER:  Panel entering.

23             COURT CLERK:  Both sides stipulate that

24       the prospective panel is present and seated in their

25       assigned seats.

1              MS. MALIK:  Yes.

2              MR. JOHNSTON:  Yes.

3              THE COURT: Good morning again.

4              A PROSPECTIVE JUROR:  Good morning.

5              THE COURT:   This morning we will start

6      with the questionnaire and starting with Mr.

7      Forsyth, 1 please.

8              A PROSPECTIVE JUROR:  Eugene Forsyth.

9              THE COURT:   If you would keep your voice

10     up.

11             A PROSPECTIVE JUROR:  New York city.

12     Flushing.  30 years.  All my life.  Single.

13     Masters.

14             THE COURT: In what subject.

15             A PROSPECTIVE JUROR:  Chemistry.

16     Environmental Science.

17             THE COURT: Number 8.

18             A PROSPECTIVE JUROR:  Retired teacher.

19             THE COURT: What level students do you

20     teach.

21             A PROSPECTIVE JUROR:  Juniors mostly high

22     school.

23             THE COURT:   And what subject did you

24     teach I imagine maybe chemistry.

25             A PROSPECTIVE JUROR: Yes. General

1    science. Some math.

2            THE COURT:   How many years had you been

3    a teacher.

4            A PROSPECTIVE JUROR:  30 all together.

5            THE COURT: And how many years now have

6    you been retired.

7            A PROSPECTIVE JUROR:  4 years retired.

8            THE COURT:   Enjoying that time retired.

9            A PROSPECTIVE JUROR:  Not as much as I

10   hoped.

11           THE COURT:  I know from our earlier brief

12   conversation that you like to travel or do travel

13   and so your frequent flier miles are up and able to

14   be used.

15           A PROSPECTIVE JUROR: Yes.

16           THE COURT: Any children of working age.

17           A PROSPECTIVE JUROR:  No.

18           THE COURT:  9.

19           A PROSPECTIVE JUROR:  No.

20           THE COURT: 10.

21           A PROSPECTIVE JUROR:  Criminal.

22           THE COURT: 10 is yes.

23           A PROSPECTIVE JUROR:  Yes. Criminal.

24           THE COURT:   One or more times.

25           A PROSPECTIVE JUROR:  1976 or so.

1          THE COURT: What was the charge in that

2    case.

3          A PROSPECTIVE JUROR:  I don't recall.

4    Well, as I recall the man jumped a security gate at

5    one of the New York airports with a gun.

6          THE COURT:  10 B.

7          A PROSPECTIVE JUROR:  Yes.

8          THE COURT: C.

9          A PROSPECTIVE JUROR:  1999.

10          THE COURT: 11 A.

11          A PROSPECTIVE JUROR:  No.

12          THE COURT: B.

13          A PROSPECTIVE JUROR:  No no, no, no.

14          THE COURT: 12 A.

15          A PROSPECTIVE JUROR:  Myself for 6 months

16    as a civilian with NYPD.

17          THE COURT:  Any other answers to 12 A.

18          A PROSPECTIVE JUROR:  No.

19          THE COURT: 12 B.

20          A PROSPECTIVE JUROR:  No.

21          THE COURT:   C.

22          A PROSPECTIVE JUROR:  No.

23          THE COURT:   D.

24          A PROSPECTIVE JUROR:  No.

25          THE COURT: 13.

1          A PROSPECTIVE JUROR: No.

2          THE COURT:    14.

3          A PROSPECTIVE JUROR:  Yes.

4          THE COURT: 15.

5          A PROSPECTIVE JUROR:  Yes.

6          THE COURT: 16.

7          A PROSPECTIVE JUROR: Yes.

8          THE COURT:    17.

9          A PROSPECTIVE JUROR: Yes.

10          THE COURT: 18.

11          A PROSPECTIVE JUROR:  Yes, well only

12    because I mention the flight.

13          THE COURT: Okay.  Do you feel that is

14    still a problem or do you think that.

15          A PROSPECTIVE JUROR:  In terms of my

16    rendering a decision no.

17          THE COURT: Thank you sir. Ms. Mentar.

18          A PROSPECTIVE JUROR:  Andrea Mentar.

19    Aruba.  Kew Gardens. 8 years, 42.  Divorced.  BA.

20          THE COURT: What subject.

21          A PROSPECTIVE JUROR:  Business

22    Administration.

23          A PROSPECTIVE JUROR:  Case manager for

24    the City of New York.

25.          THE COURT: And what kinds of cases do you

1    manage.

2              A PROSPECTIVE JUROR:  Provide services

3    for the elderly, mentally and physically challenged.

4              THE COURT:   You have been doing that for

5    how long.

6              A PROSPECTIVE JUROR:  16 years.

7              THE COURT:   In the course of the kind of

8    work that you do how many cases do you manage at any

9    given time.

10             A PROSPECTIVE JUROR:  It varies monthly.

11   But the total case load is over 300.

12             THE COURT:   And you have in that case

13   load of 300 cases you have some who are elderly and

14   disabled. You have a mix of.

15             A PROSPECTIVE JUROR:  It's a mix. The

16   majority would be geriatric.

17             THE COURT:  I know that you said that you

18   are divorced. What does your ex-husband do.

19             A PROSPECTIVE JUROR:  Advertising.

20             THE COURT:  Number 9.

21             A PROSPECTIVE JUROR:  No.

22             THE COURT: 10.

23             A PROSPECTIVE JUROR:  No.

24             THE COURT:   11 A.

25             A PROSPECTIVE JUROR:  No.

1              THE COURT:    B.

2              A PROSPECTIVE JUROR:    No.

3              THE COURT:    C.

4              A PROSPECTIVE JUROR:    No.

5              THE COURT:    D.

6              A PROSPECTIVE JUROR:    No.

7              THE COURT:   E.

8              A PROSPECTIVE JUROR:    No.

9              THE COURT: 11 F.

10             A PROSPECTIVE JUROR:    No.

11             THE COURT:    12 A.

12             A PROSPECTIVE JUROR:    Sorry, I missed

13    that can I come up.

14             THE COURT:    Sure.

15             (Whereupon, a side-bar record begins.)

16             A PROSPECTIVE JUROR:    I do have a cousin

17    that was in jail for rape.

18             THE COURT: In jail where.

19             A PROSPECTIVE JUROR:    Clinton

20    Correctional Facility.

21             THE COURT:    So the crime happened here

22    in the states.

23             A PROSPECTIVE JUROR:    Yes it was actually

24    in Queens county.

25             THE COURT: First cousin.

```
 1                    A PROSPECTIVE JUROR: Yes.  It's my

 2         mothers sisters son.

 3                    THE COURT: Is he someone that you

 4         associate with often.

 5                    A PROSPECTIVE JUROR:  Yes.

 6                    THE COURT: How close were you.

 7                    A PROSPECTIVE JUROR:  Well, we are all

 8         cousins. He was a younger cousin that we played with

 9         or visited frequently.

10                    THE COURT: He was found guilty after

11         trial and arrested in Queens county.  Indicted in

12         Queens county.  Prosecuted in court.

13                    A PROSPECTIVE JUROR:  He did not have a

14         trial. He pled guilty.

15                    THE COURT: The victim in that case was it

16         another adult.

17                    A PROSPECTIVE JUROR: Yes.

18                    THE COURT: What do you think about the

19         process being involved.

20                    A PROSPECTIVE JUROR:  Whatever happened

21         to him.  The police arrested him.  And that was it.

22         He pled guilty.  He went to jail.

23                    THE COURT: Is there anything about him

24         having gone through that process that and that he

25         being arrested in Queens, indicted by the Queens DA
```

1          office handled by this court building anything about

2          any of that, his involvement in the process that

3          makes you feel that you could not be fair.

4                    A PROSPECTIVE JUROR: No.

5                    THE COURT:   You can be fair.

6                    A PROSPECTIVE JUROR: Yes.

7                    THE COURT: Any comments.

8                    MR. JOHNSTON:  No.

9                    MS. MALIK:  No.

10                   THE COURT:  Since you are here I might as

11         well finish asking the balance of the questions.  So

12         the answer that you just gave is an answer to 11 C.

13         And D.

14                   A PROSPECTIVE JUROR:  Right.

15                   THE COURT:   Any other answers to that.

16                   A PROSPECTIVE JUROR:  No.

17                   THE COURT: 11 E.

18                   A PROSPECTIVE JUROR:  No.

19                   THE COURT: F.

20                   A PROSPECTIVE JUROR:  No.

21                   THE COURT:   12 A.

22                   A PROSPECTIVE JUROR:  No.

23                   THE COURT:   B.

24                   A PROSPECTIVE JUROR:  No.  No.

25                   THE COURT:  13.

1                    A PROSPECTIVE JUROR:  No.

2                    THE COURT:  16.

3                    A PROSPECTIVE JUROR:  Yes.

4                    THE COURT:  15.

5                    A PROSPECTIVE JUROR:  Yes, yes, yes, no.

6                    THE COURT:  The matter involving your

7         cousin was it  -- had it been in the press.

8                    A PROSPECTIVE JUROR: Yes.

9                    THE COURT:  It was covered heavily in

10        the newspapers.

11                   A PROSPECTIVE JUROR:  I remember I did

12        not know that it was his picture. That Friday and

13        that Sunday he was arrested.

14                   THE COURT: Did your family suffer any --

15                   A PROSPECTIVE JUROR:  No.

16                   THE COURT:  -- difficulty with him having

17        been identified.

18                   A PROSPECTIVE JUROR:  No.

19                   THE COURT:  Was there a particular level

20        of violence connected to the crime a knife or a gun

21        or anything like that.

22                   A PROSPECTIVE JUROR:  I don't think so.

23        I think this was a first offense.  He had never been

24        in any trouble.

25                   MS. MALIK:  If I may do you think that

1        justice was served in that case.

2                     A PROSPECTIVE JUROR:  Sure.  He was

3        guilty.

4                     MS. MALIK:  You said that you were close

5        to him growing up what year did this happen.

6                     A PROSPECTIVE JUROR:  I think that he has

7        been in jail 10 years now.

8                     MS. MALIK:  So you were close to him I am

9        not sure hold old you are.  Were you close to him

10       when you got in your adult life or just as kids.

11                    A PROSPECTIVE JUROR:  We were close. As

12       adults we saw each other.

13                    MS. MALIK:  Okay.

14                    THE COURT: Thank you.

15                    (Whereupon, a side-bar record concludes.)

16                    THE COURT:  And Ms. Trammell. Number one.

17                    A PROSPECTIVE JUROR:  Yolafda Trammell.

18       New York City.  Far Rockaway 16 years.  All my life.

19       Single.  12.

20                    THE COURT:   8.

21                    A PROSPECTIVE JUROR:  Park and

22       Recreations.

23                    THE COURT:   What do you do.

24                    A PROSPECTIVE JUROR:  Maintain the parks.

25                    THE COURT:   You have been working with

1        the city for how long now.

2                    A PROSPECTIVE JUROR:  6 months.

3                    THE COURT:  What kind of work had you

4        done before that.

5                    A PROSPECTIVE JUROR:  Medical secretary.

6                    THE COURT: And in that position how long

7        had you worked in that field.

8                    A PROSPECTIVE JUROR:  15 years.

9                    THE COURT: Had you worked for the same

10       employer each of those 15 years.

11                   A PROSPECTIVE JUROR:  No.

12                   THE COURT:   How long had you worked with

13       that most recent employer.

14                   A PROSPECTIVE JUROR:  6 years.

15                   THE COURT: Any children of working age.

16                   A PROSPECTIVE JUROR:  No.

17                   THE COURT: Number 9.

18                   A PROSPECTIVE JUROR:  No.

19                   THE COURT:  10.

20                   A PROSPECTIVE JUROR:  No.

21                   THE COURT:  11 A.

22                   A PROSPECTIVE JUROR:  No.

23                   THE COURT: B.

24                   A PROSPECTIVE JUROR:  No.

25                   THE COURT: C.

1                    A PROSPECTIVE JUROR:  No.

2                    THE COURT: D.

3                    A PROSPECTIVE JUROR:  No.

4                    THE COURT:   E.

5                    A PROSPECTIVE JUROR:  No.

6                    THE WITNESS:  F.

7                    A PROSPECTIVE JUROR:  No.

8                    THE COURT: So in the years in the time

9         that you have been working with the parks department

10        you have not seen any crimes in the parks

11        department.

12                   A PROSPECTIVE JUROR:  No.

13                   THE COURT:   Crimes in the city parks.

14                   A PROSPECTIVE JUROR:  No.

15                   THE COURT: 12 A.

16                   A PROSPECTIVE JUROR:  No.

17                   THE COURT: B.

18                   A PROSPECTIVE JUROR:  No.

19                   THE COURT:   C.

20                   A PROSPECTIVE JUROR:  No.

21                   THE COURT: D.

22                   A PROSPECTIVE JUROR:  No.

23                   THE COURT: 13.

24                   A PROSPECTIVE JUROR:  No.

25                   THE COURT: 14.

1                    A PROSPECTIVE JUROR:  Yes, yes, yes.

2                    THE COURT:  18.

3                    A PROSPECTIVE JUROR:  No.

4                    THE COURT: Mr. McLean.

5                    A PROSPECTIVE JUROR: Can I have a

6        side-bar please.

7                    (Whereupon, a side-bar record begins.)

8                    A PROSPECTIVE JUROR:  I don't think that

9        I can be fair in this case. I have  -- do have 2

10       little sisters younger.  And I have a mother that is

11       obsessive about that.  She posts pictures on our

12       refrigerator every day.

13                   THE COURT:  Of pedophiles.

14                   A PROSPECTIVE JUROR:  Of pedophiles.  I

15       can not afford to be here too.  My job only pays for

16       a certain amount of days. I cannot do it.  I got

17       bills.

18                   THE COURT: What kind of work do you do.

19                   A PROSPECTIVE JUROR:  I work for an

20       advertising company.  Block Advertisement.

21                   THE COURT:  How long have you been

22       working with them.

23                   A PROSPECTIVE JUROR:  8 months now.

24                   THE COURT:  I understand.  Consent.

25                   MS. MALIK:  Yes.

1           MR. JOHNSTON:   Yes.

2           THE COURT:   Thank you.

3           A PROSPECTIVE JUROR:   Thank you.

4           THE COURT: He is excused.

5           (Whereupon, a side-bar record concludes.)

6           COURT CLERK:   Seat number 4 Mohammad

7    Karim. Last name is K-A-R-I-M.

8           THE COURT: Okay moving forward and Mr.

9    Spainer number 1.

10          A PROSPECTIVE JUROR:   Robert Spainer.

11   Ocean side, Long Island.  Bayside.  10 years.  All

12   my life.  I am married but it's not recognized here

13   as a partner.  High school.  Auto motive biller.

14          THE COURT:   As a biller are you working

15   for one of the major automotive companies.

16          MR. SPAINER:   Yes.

17          THE COURT:   You have been working with

18   them for how long now.

19          A PROSPECTIVE JUROR:   6 months.

20          THE COURT:   Prior to working with them

21   what did you do.

22          A PROSPECTIVE JUROR:   I was at a

23   different dealership for 4 years.

24          THE COURT:   Doing similar type of work.

25          A PROSPECTIVE JUROR: No I was in sales.

1              THE COURT:   Sales of cars.

2              A PROSPECTIVE JUROR:  Yes.

3              THE COURT: What kind of work does your

4      partner do.

5              A PROSPECTIVE JUROR:  He is in an

6      arbitration and mediation company.

7              THE COURT:   He has been working with

8      them for how long.

9              A PROSPECTIVE JUROR:  About 8 years.

10             THE COURT:   Number 9.

11             A PROSPECTIVE JUROR:  No.

12             THE COURT: 10.

13             A PROSPECTIVE JUROR:  Yes.

14             THE COURT:   10 A.

15             A PROSPECTIVE JUROR:  It was a civil

16     case.

17             THE COURT:   One or more times.

18             A PROSPECTIVE JUROR: One.

19             THE COURT:   10 B.

20             A PROSPECTIVE JUROR:  Yes.

21             THE COURT: C.

22             A PROSPECTIVE JUROR:  About 10 years.

23             THE COURT: 11 A.

24             A PROSPECTIVE JUROR:  Yes.

25             THE COURT: Who and what kind of a crime.

```
 1                    A PROSPECTIVE JUROR:  It was a car theft.

 2                    THE COURT: Anyone ever caught and charged

 3          with the crime.

 4                    A PROSPECTIVE JUROR:  No.

 5                    THE COURT:  It was here in Queens county.

 6                    A PROSPECTIVE JUROR:  It was in Bayside.

 7                    THE COURT: Any other answers to 11 A.

 8                    A PROSPECTIVE JUROR:  No.

 9                    THE COURT: 11 B.

10                    A PROSPECTIVE JUROR:  No.

11                    THE COURT:   C.

12                    A PROSPECTIVE JUROR:  No.

13                    THE COURT: D.

14                    A PROSPECTIVE JUROR:  No.

15                    THE COURT:   E.

16                    A PROSPECTIVE JUROR:  No.

17                    THE COURT: F.

18                    A PROSPECTIVE JUROR:  No.

19                    THE COURT: 12 A.

20                    A PROSPECTIVE JUROR:  Yes.

21                    THE COURT:   Who works for what agency.

22                    A PROSPECTIVE JUROR:  My uncle was a

23          police officer.  He died when I was very young.

24                    THE COURT:   Any other answers to that.

25                    A PROSPECTIVE JUROR:  No.
```

1                    THE COURT:  12 B.

2                    A PROSPECTIVE JUROR:  No.

3                    THE COURT:  C.

4                    A PROSPECTIVE JUROR:  No.

5                    THE COURT:  D.

6                    A PROSPECTIVE JUROR:  No.

7                    THE COURT: 13.

8                    A PROSPECTIVE JUROR:  No.

9                    THE COURT:  14.

10                   A PROSPECTIVE JUROR:  Yes, yes, yes.

11                   THE COURT: 18.

12                   A PROSPECTIVE JUROR:  No.

13                   THE COURT:  Thank you sir.  Mr.

14      Berthelly.

15                   A PROSPECTIVE JUROR:  Daniel Berthelly.

16      New York City.  Ozone Park.  4 years.  All my life.

17      Single.  Bachelors in Social Science.

18                   THE COURT:  Number 8.

19                   A PROSPECTIVE JUROR:  Department manager

20      in College Point Kinkos.

21                   THE COURT:  You have been working with

22      them for how long.

23                   A PROSPECTIVE JUROR:  3 months now.

24                   THE COURT: How many months have you been

25      a manager.

```
 1                    A PROSPECTIVE JUROR:  3 months.  I worked
 2          prior as a manager at Target.
 3                    THE COURT: And you said that you have
 4          been working with Home Depot for how long.
 5                    A PROSPECTIVE JUROR:  10 month.
 6                    THE COURT:   How long were you with
 7          Target.
 8                    A PROSPECTIVE JUROR:  3 months and CVS
 9          for 7 years.
10                    THE COURT: The drugstore chain.
11                    A PROSPECTIVE JUROR:  Yes.
12                    THE COURT:   Number 9.
13                    A PROSPECTIVE JUROR:  No.
14                    THE COURT: 10.
15                    A PROSPECTIVE JUROR:  No.
16                    THE COURT:   11 A.
17                    A PROSPECTIVE JUROR:  Yes can I speak to
18          you too in private.
19                    (Whereupon, a side-bar record begins.)
20                    THE COURT:   Yes.
21                    A PROSPECTIVE JUROR:  I don't know if
22          this is going to effect any thing.  My mother was
23          raped and I have a cousin that was raped as well.
24                    THE COURT: How old were you at the time
25          that your mother.
```

vld

1        A PROSPECTIVE JUROR:  My mother was raped

2   it was before I was born. My friend was raped when

3   she was 19.

4        THE COURT:  How old did your mom tell you

5   she was.

6        A PROSPECTIVE JUROR: She is young age. 8

7   or 9.

8        THE COURT: Did she tell you whether or

9   not the person that raped her was a relative or a

10  stranger.

11       A PROSPECTIVE JUROR: It was one of her

12  friends actually.  It happened in her country.

13       THE COURT: Your friend was raped when she

14  was 19.

15       A PROSPECTIVE JUROR: 18 or 19. The

16  gentleman was charged and sentenced I believe to 3

17  or 4 years something like that.

18       THE COURT: Did you know her at the time

19  that she was going through this.

20       A PROSPECTIVE JUROR:  Yes.

21       THE COURT:  Was there a process of

22  having an arrest, he being indicted, coming to court

23  and a full resolution of this case.

24       A PROSPECTIVE JUROR: Yes.

25       THE COURT: How did she handle the

1       process.

2                   A PROSPECTIVE JUROR:  Well the thing is

3       that I was there for her during that time but the

4       whole process I mean I really do not know specifics.

5       It was like 6 years ago.

6                   THE COURT: And as important and for our

7       purpose and you being here how did you handle being

8       with her.

9                   A PROSPECTIVE JUROR:  I was very

10      effected.  It was a tough time.

11                  THE COURT: Now while it's something that

12      you will always remember we need to know if you

13      could set that aside and give this case a fair

14      trial.

15                  A PROSPECTIVE JUROR:  I don't know.  I

16      really do not know.  I will try.  This is why I sat

17      here this long. I don't know.

18                  THE COURT:  Any questions.

19                  MS. MALIK:  You recognize that what

20      happened to your mother and I am sorry that happened

21      to your mother. You recognize that what happened to

22      her and your friend are separate and apart from this

23      case.  And you have to judge this case on the facts

24      and the evidence that come out in this trial.

25      Knowing that can you give this guy a fair trial.

1             A PROSPECTIVE JUROR:  I will try.

2             MS. MALIK:  Can you absolutely say yes.

3             A PROSPECTIVE JUROR:  Not 100 percent.  I

4     will try.

5             THE COURT: We understand and appreciate

6     that and we are absolutely sure that you will try as

7     best that you can but instead we need the kind of

8     assurance that you are being honest.  This is

9     probably the wrong kind of case for you to give that

10    kind of assurance.  And I am  -- I am actually

11    saying it wondering whether or not if I am

12    understanding you correctly.

13            If I am misstating something correct me.

14    I am hearing you want to do your civic duty you are

15    a responsible young man who understands the

16    responsibility of being a juror.  Also responsible

17    in you telling us candidly you know what your limits

18    are so what I will do is that I will excuse you from

19    this trial.  And know that you can sit on any other

20    case except this charge. Thank you for your candor.

21            (Whereupon, a side-bar record concludes.)

22            THE COURT: He is excused.

23            COURT CLERK: Seat number 6 first name

24    Yoginder Vohra.   Last name V-O-H-R-A.  First name

25    Yoginder, Y-O-G-I-N-D-E-R.

THE COURT:   Okay.  Moving forward. Ms. Wieland, number 1.

A PROSPECTIVE JUROR:  Jennifer Wieland. Brooklyn.  Sunnyside, Queens. 4 years.  Entire life. Single.  Bachelors in Communicative Disorders.  I am also board certified.

THE COURT:   Number 8.

A PROSPECTIVE JUROR:  I work for the Queens Library as a health literacy teacher.  I am also a health counselor and wellness coach.

THE COURT: Is there any of those one positions that you are doing full time.

A PROSPECTIVE JUROR:  It's the same thing. I am certified as a health counselor.  I just working in different areas.

THE COURT:   So for the public library is that a full time position with them or part time.

A PROSPECTIVE JUROR:  It's part time with the library.

THE COURT: And in the field that you are board certified that is again holistic.

A PROSPECTIVE JUROR:  Holistic health counselor.

THE COURT: What is it that you do for your clients/patients in that area.

1           A PROSPECTIVE JUROR:  Most clients for

2      nutritional needs. Health problems.  I study instead

3      of just the regular food pyramid additional food

4      theory.  It's get healthier faster.  Also a wellness

5      coach. That is also another area

6      relationship/career.

7           THE COURT: You have been doing that kind

8      of work for how long now.

9           A PROSPECTIVE JUROR: 2 years.

10          THE COURT:  How do you identify the

11     clients that you work with.

12          A PROSPECTIVE JUROR:  How do I identify.

13          THE COURT:  Meaning is yours a professor

14     or a field of practice that you have business cards

15     not that I am looking for it right now.  How does

16     one contact you and seek your advice.

17          A PROSPECTIVE JUROR:  I do have a

18     business card.  I suppose they contact me.  I do

19     workshops. As you would contact a nutritionist.  I

20     work through a chiropractor to whom I get referrals.

21          THE COURT:  Number 9.

22          A PROSPECTIVE JUROR:  No.

23          THE COURT:  10.

24          A PROSPECTIVE JUROR:  No.

25          THE COURT: 11 A.

1              A PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Who and what kind of a

3       crime.

4              A PROSPECTIVE JUROR:  I had my purse

5       stolen twice. Wallet stolen. When I was a child my

6       apartment was broken into a couple of times.

7              THE COURT:  Anyone home at the time your

8       home was broken into.

9              A PROSPECTIVE JUROR:  No we were home.  I

10      think one time maybe a burglar was going out the

11      window while we were coming in when I was a child.

12             THE COURT:  Any other answers to 11 A.

13             A PROSPECTIVE JUROR:  My mother had her

14      chain pulled off her.  She was coming home from work

15      on the train.

16             THE COURT:  11 B.

17             A PROSPECTIVE JUROR:  I was raised in

18      Brooklyn.

19             THE COURT: In any of those crimes anyone

20      ever arrested and charged.

21             A PROSPECTIVE JUROR:  No.

22             THE COURT: And these crimes are all in

23      Brooklyn.

24             A PROSPECTIVE JUROR:  No I had my purse

25      stolen once in Brooklyn and once in Elmhurst just 6

1          months ago.

2                     THE COURT:   Any other answers to 11 A.

3                     A PROSPECTIVE JUROR:  No.

4                     THE COURT:  Some of what you had

5          described as an answer to 11 B.  Any other answers

6          to 11 B.

7                     A PROSPECTIVE JUROR:  No.

8                     THE COURT:  C.

9                     A PROSPECTIVE JUROR:  No.

10                    THE COURT: D.  No.  No.  No.

11                    THE COURT:   12 A.

12                    A PROSPECTIVE JUROR:  I was an EMT I

13         worked on an ambulance for 4 years. I know a lot of

14         police officers.

15                    THE COURT:   So there was a time in your

16         experience that you also worked as an EMT tech.

17                    A PROSPECTIVE JUROR:  Yes.

18                    THE COURT:  And you said that you were

19         working as and EMT for 4 years.

20                    A PROSPECTIVE JUROR:  Yes.

21                    THE COURT: Any other answers to 12 A.

22                    A PROSPECTIVE JUROR:  No.

23                    THE COURT: B.

24                    A PROSPECTIVE JUROR:  My best friend is a

25         clerk in a law firm.

```
 1                THE COURT: Any idea as to what kind of
 2       work that friend does for the law firm.  What does
 3       he or she do as a clerk.
 4                A PROSPECTIVE JUROR:  Yes, she just
 5       assists the attorneys.
 6                THE COURT:   12 C.
 7                A PROSPECTIVE JUROR: No, no.
 8                THE COURT:   13.
 9                A PROSPECTIVE JUROR:  No.
10                THE COURT: 14.
11                A PROSPECTIVE JUROR:  Yes, yes, yes.
12                THE COURT:   18.
13                A PROSPECTIVE JUROR: No.
14                THE COURT:  Ms. Medins.
15                A PROSPECTIVE JUROR:  Angelita Medins.
16       Philippines.  Forest Hills.  8 years.  20 years.
17       Married.  Associates degree Computer Operator  No.
18       I am sorry.  Computer IT support.
19                THE COURT: And what kind of agency or
20       company are you working with.
21                A PROSPECTIVE JUROR:  Advertising agency.
22                THE COURT:   How long.
23                A PROSPECTIVE JUROR:  12 years.
24                THE COURT:   Did you say that you are
25       married.
```

1                    A PROSPECTIVE JUROR: Yes.

2                    THE COURT: What does your husband do.

3                    A PROSPECTIVE JUROR:  Computer

4      networking.

5                    THE COURT: And he has been doing that for

6      how long now.

7                    A PROSPECTIVE JUROR:  12 years.

8                    THE COURT:  Is he in his own business or

9      does he work for someone.

10                   A PROSPECTIVE JUROR:  He works for

11     someone.

12                   THE COURT: How long has he worked with

13     them.

14                   A PROSPECTIVE JUROR:  I would say less

15     than a year.

16                   THE COURT:  But he has been in the field

17     for 12 years.

18                   A PROSPECTIVE JUROR:  Yes.

19                   THE COURT: Number 9.

20                   A PROSPECTIVE JUROR:  No.

21                   THE COURT:  10.

22                   A PROSPECTIVE JUROR:  No.

23                   THE COURT: 11 A.

24                   A PROSPECTIVE JUROR:  No.

25                   THE COURT:   B.

```
 1              A PROSPECTIVE JUROR:  No.

 2              THE COURT:  C.

 3              A PROSPECTIVE JUROR:  No.

 4              THE COURT:  D.

 5              A PROSPECTIVE JUROR:  No.

 6              THE COURT:  E.

 7              A PROSPECTIVE JUROR: No.

 8              THE COURT:  F.

 9              A PROSPECTIVE JUROR:  No.

10              THE COURT: 12 A.

11              A PROSPECTIVE JUROR:  Yes, a brother in

12      law is a New York police officer.

13              THE COURT: So your husband's brother.

14              A PROSPECTIVE JUROR:  My husband's

15      sisters husband.

16              THE COURT:  Any other answers to 12 A.

17              A PROSPECTIVE JUROR: No.

18              THE COURT: B.

19              A PROSPECTIVE JUROR: Yes a cousin who

20      works in a law firm.

21              THE COURT:  Any idea as to what he or

22      she does.

23              A PROSPECTIVE JUROR:  Clerical.

24              THE COURT:  C.

25              A PROSPECTIVE JUROR: Yes.
```

1              THE COURT: Who has had what.

2              A PROSPECTIVE JUROR:  A cousin graduated

3        from school last year.

4              THE COURT: And any idea as to what kind

5        of law that cousin is practicing.

6              A PROSPECTIVE JUROR:  No.

7              THE COURT: Maybe the same answers to 12

8        D.

9              A PROSPECTIVE JUROR:  No.

10             THE COURT:   13.

11             A PROSPECTIVE JUROR:  No.

12             THE COURT:   14.

13             A PROSPECTIVE JUROR:  Yes, yes, yes, yes.

14             THE COURT:   18.

15             A PROSPECTIVE JUROR:  No.

16             THE COURT: Thank you Ms. Cervantes.

17             A PROSPECTIVE JUROR:  Martha Cervantes.

18       Peru.  Flushing.  Corona.  12 years.  27 years.

19       Married.  2 years of college. I work in a

20       manufacturing company. I am the junior officer. I

21       have been doing that for 18 years.

22             THE COURT: What do you do for them as the

23       junior credit officer.

24             A PROSPECTIVE JUROR:  I refund and give

25       credit to customers for returned merchandise.

1             THE COURT:  What kind of work does your

2      husband do.

3             A PROSPECTIVE JUROR:  He is a time keeper

4      and security.

5             THE COURT:   For what kind of company.

6             A PROSPECTIVE JUROR:  A university.

7             THE COURT:   He has been doing that for

8      how long.

9             A PROSPECTIVE JUROR:  On and off for

10     about 8 years.

11            THE COURT:   Any children of working age.

12            A PROSPECTIVE JUROR:  I have a daughter

13     recently moved to Carolina. She is an associates

14     worker.

15            THE COURT: Number 9.

16            A PROSPECTIVE JUROR:  No.

17            THE COURT: 10.

18            A PROSPECTIVE JUROR:  No.

19            THE COURT: 11 A.

20            A PROSPECTIVE JUROR:  No.

21            THE COURT: B.

22            A PROSPECTIVE JUROR:  No.  No.  No.  No.

23            THE COURT: 12 A.

24            A PROSPECTIVE JUROR:  No.

25            THE COURT: B.